1  PAMELA L. COX (State Bar No. 191883)
   **HEMAR, ROUSSO & HEALD, LLP**
2  15910 Ventura Boulevard, 12th Floor
   Encino, California  91436
3  (818) 501-3800; (818) 501-2985 (Fax)
   e-mail: pcox@hemar-rousso.com
4  Refer to File Number: 3968-20080200-PLC

5  Attorneys for Defendant
   FIRST FEDERAL BANK OF CALIFORNIA
6

7

8                IN THE UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  DEBORAH E. JOHNSON and              CASE  NO. C08-00264PVT
    GERALD D. JOHNSON,
12                                      DEFENDANT'S REQUEST FOR
                                        JUDICIAL NOTICE IN SUPPORT OF
13              Plaintiffs,             ITS MOTION TO DISMISS
                                        PLAINTIFFS' COMPLAINT
14        v.
                                        Hearing:
15  FIRST FEDERAL BANK OF               Date : March 4, 2008
    CALIFORNIA,                         Time: 10:00 a.m.
16                                      Courtroom:  5

17                                      Patricia V. Trumbell, Magistrate

18              Defendant.
19  _____

20       **TO THE HONORABLE PATRICIA V. TRUMBELL, MAGISTRATE**

21  **AND ALL INTERESTED PARTIES:**

22      Defendant FIRST FEDERAL BANK OF CALIFORNIA (hereinafter "Defendant" or

23  "First Federal") hereby respectfully requests that the Court take judicial Notice of the

24  following documents.  This request is made pursuant to Rule 201 of the Federal Rules of

25  Evidence in connection with Defendant's Motion to Dismiss Plaintiffs' Complaint for

26  Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief can

27  be Granted.

28  //

                                    1

## BASIS FOR JUDICIAL NOTICE

The Court may take Judicial Notice of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). That is true of each of the following:

1.    Plaintiff Deborah E. Johnson's Voluntary Petition (Chapter 13) filed with the United States Bankruptcy Court on November 7, 2007 and pending as case number 07-53614, a true and correct copy of which is attached hereto as Exhibit "1."

2.    Plaintiff Deborah E. Johnson's Chapter 13 Plan filed on November 7, 2007 in case number 07-53614, a true and correct copy of which is attached hereto as Exhibit "2."

3.    Order and Notice of Dismissal filed on January 4, 2008 in Plaintiff Deborah E. Johnson's Chapter 13 bankruptcy, Case No. 07-53614, a true and correct copy of which is attached hereto as Exhibit "3."

4.    Deborah E. Johnson's Motion to Convert Case to Chapter 7, filed on January 11, 2008 in Case No. 07-53614 , a true and correct copy of which is attached hereto as Exhibit "4."

5.    First Federal's Motion for Relief from Stay filed in Deborah E. Johnson's bankruptcy, Case No. 07-53614 , a true and correct copy of which is attached hereto as Exhibit "5."  The note and deed of trust at issue in this action are attached as Exhibits "1" and "2" to the Exhibit "5" Motion for Relief from Stay.

DATED: January 28, 2008          HEMAR, ROUSSO & HEALD, LLP

                                 By:  _Pamela L. Cox_
                                      PAMELA L. COX
                                      Attorneys for Defendant
                                      FIRST FEDERAL BANK OF
                                      CALIFORNIA

2

1

PROOF OF SERVICE

2 STATE OF CALIFORNIA     )
                             )

3 COUNTY OF LOS ANGELES  )

4     I am employed in the County of Los Angeles, State of California.  I am over the age of

5 eighteen and not a party to the within action.  My business address is Hemar, Rousso & Heald, LLP. ("the business") 15910 Ventura Boulevard, 12th Floor, Encino, CA  91436.

6     I am readily familiar with the business's practice for collection and processing of

7 correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of

8 business.

9     On January 28, 2008, I served the foregoing document described as **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS**

10 **PLAINTIFFS' COMPLAINT** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

11 **DEBORAH E. JOHNSON**
**PO Box 4448**

12 **Carmel, CA 93921-4448**

13 **GERALD D. JOHNSON (Pro Se, Filing Party)**
**PO Box 4448**

14 **Carmel, CA 93921-4448**

15

16 XX  At my business address, I placed such envelope for deposit with the ___Federal Express or XX U.S. Postal Office  by placing them for collection and mailing on that date following

17 ordinary business practices.

18 ___ I delivered such envelope(s) by hand to the offices of the addressees.

19 ___ I caused such copies to be facsimiled to the persons set forth.

20 XX (State)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

21 ___ (Federal) I declare under penalty of perjury under the laws of the United States of

22 America that I am employed in the office of a member of the bar of this court at whose direction the service was made.

23

24     Executed on January 28, 2008 at Encino, California.

25

26

27 SANAZ ADNANI

28

1
PROOF OF SERVICE

Official Form 1 (4/07)

| United States Bankruptcy Court<br>Northern District of California | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Johnson, Deborah Elizabeth** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**xxx-xx-4449** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**2nd Avenue/2nd NE of Dolores**<br>**Carmel By The Sea, CA**<br>ZIP Code **93921** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Monterey** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>**P.O. 4448**<br>**Carmel By The Sea, CA**<br>ZIP Code **93921-4448** | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>■ Chapter 13<br><br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box)<br>■ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☐ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br><br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

■ Debtor estimates that funds will be available for distribution to unsecured creditors.

☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ☐ $0 to<br>$10,000 | ☐ $10,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ■ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ■ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

| Voluntary Petition<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Johnson, Deborah Elizabeth** |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet)

| Location<br>Where Filed: **- None -** | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)

| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>   Signature of Attorney for Debtor(s)      (Date) |

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

### Exhibit D

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor - Venue
(Check any applicable box)

■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Statement by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes)

☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | **Name of Debtor(s):**<br>**Johnson, Deborah Elizabeth** |
|---|---|

<strong>Signatures</strong>

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _Deborah Elizabeth Johnson_
Signature of Debtor **Deborah Elizabeth Johnson**

X _Deborah Elizabeth Johnson_
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

_11-06-2007_
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Attorney**

X _____
Signature of Attorney for Debtor(s)

_____
Printed Name of Attorney for Debtor(s)

_____
Firm Name

_____
Address

_____
Telephone Number

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Form 6-Summary (10/06)

# United States Bankruptcy Court
### Northern District of California

In re    **Deborah Elizabeth Johnson**

_____
Debtor

Case No. _____

Chapter _____ **13** _____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 1,300,000.00 | | |
| B - Personal Property | Yes | 4 | 17,066.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 1,066,580.49 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 78,300.67 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 2 | | | 2,451.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 6,975.07 |
| Total Number of Sheets of ALL Schedules | | 17 | | | |
| Total Assets | | | 1,317,066.00 | | |
| Total Liabilities | | | | 1,144,881.16 | |

Official Form 6 - Statistical Summary (10/06)

# United States Bankruptcy Court
## Northern District of California

In re   **Deborah Elizabeth Johnson**

Debtor

Case No. _____

Chapter _____ **13**

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

☐ Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) (whether disputed or undisputed) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | 2,451.00 |
| Average Expenses (from Schedule J, Line 18) | 6,975.07 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | 0.00 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | 400.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | 0.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | 0.00 |
| 4. Total from Schedule F | | 78,300.67 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | 78,700.67 |

Form B6A
(10/05)

In re     **Deborah Elizabeth Johnson**                                          Case No. _____
                                  _____
                                              Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **2nd Avenue 2NE of Dolores Street Carmel, CA 93921** | **Equitable interest** | **W** | **1,300,000.00** | **1,061,680.49** |

| | | |
|---|---|---|
| Sub-Total > | **1,300,000.00** | (Total of this page) |
| Total > | **1,300,000.00** | |

**_0_**  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

Form B6B
(10/05)

In re    **Deborah Elizabeth Johnson**                                        Case No. _____
                                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
In providing the information requested in this form, do not include the name or address of a minor child. Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Bank of America Carmel-By-The-Sea Branch San Francisco, CA 94137**<br><br>**Acct. No.: 06392-03520** | C | 600.00 |
| | | **Wescom Credit Union P.O. Box 7058 Pasadena, CA 91109**<br><br>**Acct. No.: 322206** | W | 1.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | **Household goods** | C | 6,065.00 |
| | | **Tools, Air Compressor, Generator, Charger, Yard Tools** | C | 1,400.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | **Paintings/Art** | C | 300.00 |
| | | **Train Set** | C | 250.00 |
| 6.  Wearing apparel. | | **Clothes** | C | 600.00 |
| 7.  Furs and jewelry. | | **Wedding Rings & Watches** | C | 500.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | | **Smith & Wesson .38 (Police Issue)** | C | 200.00 |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >        9,916.00
(Total of this page)

___**3**___ continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions, Evanston, IL - (800) 492-8037      Best Case Bankruptcy

Case: 07-53054

Form B6B
(10/05)

In re    **Deborah Elizabeth Johnson** _____

                                Debtor

Case No. _____

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >      0.00
(Total of this page)

Sheet __1__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-4037

Form B6B
(10/05)

In re    **Deborah Elizabeth Johnson**

Case No. _____

_____
Debtor

# SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **1999 Volvo V70** | C | **4,500.00** |
| | | **1985 Yamaha Riva Scooter** | C | **2,000.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | **Computer, printer, fax, office furniture** | C | **600.00** |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **Cell Phones** | C | **50.00** |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |

Sub-Total >          7,150.00
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Form B6B
(10/05)

In re    **Deborah Elizabeth Johnson**                                    Case No. _____
                                          Debtor

# SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

| | | |
|---|---|---|
| Sub-Total > (Total of this page) | | 0.00 |
| Total > | | 17,066.00 |

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

Form B6C
(4/07)

In re    **Deborah Elizabeth Johnson**               Case No. _____
                                         Debtor

# SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:      ☐ Check if debtor claims a homestead exemption that exceeds
(Check one box)                                         $136,875.
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Real Property** | | | |
| 2nd Avenue 2NE of Dolores Street Carmel, CA 93921 | C.C.P. § 704.950 | 50,000.00 | 1,300,000.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Bank of America Carmel-By-The-Sea Branch San Francisco, CA 94137 | C.C.P. § 704.020 | 600.00 | 600.00 |
| Acct. No.: 06392-03520 | | | |
| Wescom Credit Union P.O. Box 7058 Pasadena, CA 91109 | C.C.P. § 704.020 | 1.00 | 1.00 |
| Acct. No.: 322206 | | | |
| **Household Goods and Furnishings** | | | |
| Household goods | C.C.P. § 704.020 | 6,065.00 | 6,065.00 |
| Tools, Air Compressor, Generator, Charger, Yard Tools | C.C.P. § 704.020 | 1,400.00 | 1,400.00 |
| **Books, Pictures and Other Art Objects; Collectibles** | | | |
| Paintings/Art | C.C.P. § 704.020 | 300.00 | 300.00 |
| Train Set | C.C.P. § 704.020 | 250.00 | 250.00 |
| **Wearing Apparel** | | | |
| Clothes | C.C.P. § 704.020 | 600.00 | 600.00 |
| **Furs and Jewelry** | | | |
| Wedding Rings & Watches | C.C.P. § 704.040 | 500.00 | 500.00 |
| **Firearms and Sports, Photographic and Other Hobby Equipment** | | | |
| Smith & Wesson .38 (Police Issue) | C.C.P. § 704.020 | 200.00 | 200.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| 1999 Volvo V70 | C.C.P. § 704.010 | 0.00 | 4,500.00 |
| 1985 Yamaha Riva Scooter | C.C.P. § 704.010 | 2,000.00 | 2,000.00 |
| **Office Equipment, Furnishings and Supplies** | | | |
| Computer, printer, fax, office furniture | C.C.P. § 704.060 | 600.00 | 600.00 |
| **Machinery, Fixtures, Equipment and Supplies Used in Business** | | | |
| Cell Phones | C.C.P. § 704.020 | 50.00 | 50.00 |
| | | **Total:** 62,566.00 | 1,317,066.00 |

___0___ continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037               Best Case Bankruptcy

Official Form 6D (10/06)

In re __Deborah Elizabeth Johnson_____,    Case No. _____
                                              Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community |  | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
|  |  | H W J C |  |  |  |  |  |  |  |
| Account No. xxxxx2970 |  |  |  | First Mortgage |  |  |  |  |  |
| First Federal Bank of California P.O. Box 80025 City Of Industry, CA 91716-8025 |  | W |  | 2nd Avenue 2NE of Dolores Street Carmel, CA 93921 |  |  |  |  |  |
|  |  |  |  | Value $               1,300,000.00 |  |  |  | 885,272.85 | 0.00 |
| Account No. xxxxxxxxxx6716 |  |  |  | Second Mortgage |  |  |  |  |  |
| National City P.O. Box 856153 Louisville, KY 40285-6153 |  | W |  | 2nd Avenue 2NE of Dolores Street Carmel, CA 93921 |  |  |  |  |  |
|  |  |  |  | Value $               1,300,000.00 |  |  |  | 176,407.64 | 0.00 |
| Account No. xxxxx4010 |  |  |  | 2004 |  |  |  |  |  |
| Union Bank of California P.O. Box 85643 San Diego, CA 92186-5643 |  | C |  | Auto Loan  1999 Volvo V70 |  |  |  |  |  |
|  |  |  |  | Value $                    4,500.00 |  |  |  | 4,900.00 | 400.00 |
| Account No. |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |
|  |  |  |  | Value $ |  |  |  |  |  |

__0__   continuation sheets attached

| | Subtotal (Total of this page) | 1,066,580.49 | 400.00 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 1,066,580.49 | 400.00 |

Case: 07-53661

Official Form 6E (4/07)

In re    **Deborah Elizabeth Johnson**                                                        Case No. _____

                                          Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 or 13 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**  (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trust or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                                   _____0_____ continuation sheets attached

Official Form 6F (10/06)

In re    **Deborah Elizabeth Johnson**                                   Case No. _____

_____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts filing a case under chapter 7, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxx-xxxxxx-x1005**<br><br>**American Express Optima**<br>**P.O. Box 0001**<br>**Los Angeles, CA 90096-0001** | | W | 1999<br>**Credit Card** | | | | 520.31 |
| Account No. **xxxx-xxxxxx-x1000**<br><br>**American Express Optima**<br>**P.O. 0001**<br>**Los Angeles, CA 90096-0001** | | W | 1993<br>**Credit Card** | | | | 5,318.29 |
| Account No. **xxxx-xxxx-xxxx-1056**<br><br>**Bank of America**<br>**P.O. Box 15726**<br>**Wilmington, DE 19886** | | W | 1999<br>**Credit Card** | | | | 12,321.66 |
| Account No. **xxxx-xxxx-xxxx-5507**<br><br>**Capital One**<br>**P.O. Box 60024**<br>**City Of Industry, CA 91716-0024** | | W | 2001<br>**Credit Card** | | | | 2,178.88 |
| **2**    continuation sheets attached | | | | Subtotal<br>(Total of this page) | | | 20,339.14 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re    **Deborah Elizabeth Johnson**
_____    Case No. _____
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxx-xxxx-xxxx-5595** <br><br> **Chase Card Member Services** <br> **P.O. Box 94014** <br> **Palatine, IL 60094-4014** | | W | Credit Card | | | | 12,761.36 |
| Account No. **xxxx-xxxx-xxxx-6064** <br><br> **Chase Card Member Services** <br> **P.O. Box 94014** <br> **Palatine, IL 60094-4014** | X | C | 2005 <br> Credit Card | | | | 5,648.13 |
| Account No. **xxx xxx 874 7** <br><br> **Chevron Credit Bank** <br> **P.O. Box 2001** <br> **Concord, CA 94529-0001** | | W | 1985 <br> Gas Card | | | | 1,844.84 |
| Account No. **xx-xxx-xxx-767-0** <br><br> **Macy's** <br> **P.O. Box 689195** <br> **Des Moines, IA 50368** | | W | 1994 <br> Credit Card | | | | 411.06 |
| Account No. **xxxx9582** <br><br> **Nordstrom FSB** <br> **Colorado Service Center** <br> **P.O. Box 6566** <br> **Englewood, CO 80155-6566** | | W | 2006 <br> Credit Card | | | | 5,109.19 |

Sheet no. __1__ of __2__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

25,774.58

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

Official Form 6F (10/06) - Cont.

In re  **Deborah Elizabeth Johnson**
_____
Debtor

Case No. _____

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. xxxx-xxxx-xxxx-0312 <br> **Sears** <br> P.O. Box 6937 <br> The Lakes, NV 88901-6937 | | W | 1983 <br> Credit Card | | | | 381.94 |
| Account No. xxxx-xxxx-xxxx-8151 <br> **Target National Bank** <br> P.O. Box 59317 <br> Minneapolis, MN 55459-0317 | X | C | 1998 <br> Credit Card | | | | 2,062.86 |
| Account No. xxxx-xxxx-xxxx-4150 <br> **Union Plus Credit** <br> P.O. Box 60102 <br> Los Angeles, CA 90096 | X | C | 1987 <br> Credit Card | | | | 14,841.62 |
| Account No. xxxx xxxx xxxx 0365 <br> **Washington Mutual** <br> P.O. Box 1097 <br> Northridge, CA 91328-1097 | | W | Credit Card | | | | 4,787.31 |
| Account No. xxxx06-02 <br> **WestCom Credit Union** <br> P.O. Box 7058 <br> Pasadena, CA 91109-7058 | | W | 1985 <br> Line of Credit | | | | 10,113.22 |

Sheet no. __2__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal (Total of this page) | 32,186.95 |
| Total (Report on Summary of Schedules) | 78,300.67 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037    Best Case Bankruptcy

Form B6G
(10/05)

In re   **Deborah Elizabeth Johnson**                              Case No. _____

                                        Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| | |

   **0**   continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

    Best Case Bankruptcy

Form B6H
(10/05)

In re    **Deborah Elizabeth Johnson** _____    Case No. _____
                                        Debtor

# SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Gerald Dean Johnson**<br>**P.O. Box 4448**<br>**Carmel By The Sea, CA 93921-4448** | **Chase Card Member Services**<br>**P.O. Box 94014**<br>**Palatine, IL 60094-4014** |
| **Gerald Dean Johnson**<br>**P.O. Box 4448**<br>**Carmel By The Sea, CA 93921-4448** | **Target National Bank**<br>**P.O. Box 59317**<br>**Minneapolis, MN 55459-0317** |
| **Gerald Dean Johnson**<br>**P.O. Box 4448**<br>**Carmel By The Sea, CA 93921-4448** | **Union Plus Credit**<br>**P.O. Box 60102**<br>**Los Angeles, CA 90096** |

__0__   continuation sheets attached to Schedule of Codebtors

Official Form 6I (10/06)

In re    **Deborah Elizabeth Johnson**
_____    Case No. _____
                                                       Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Married** | RELATIONSHIP(S):  **Daughter** | AGE(S):  **20** |

| Employment:* | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | **Salesperson** |
| Name of Employer | | **J. Jill** |
| How long employed | | **One year** |
| Address of Employer | | **One Talbots Drive**  **Hingham, MA 02043** |

***See Attachment for Additional Employment Information**

INCOME:  (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions  (Prorate if not paid monthly) | $ | 0.00 | $ | 832.00 |
| 2. Estimate monthly overtime | $ | 0.00 | $ | 0.00 |
| 3. SUBTOTAL | $ | 0.00 | $ | 832.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | 0.00 | $ | 114.00 |
| b. Insurance | $ | 0.00 | $ | 0.00 |
| c. Union dues | $ | 0.00 | $ | 0.00 |
| d. Other (Specify): _____ | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | 114.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 0.00 | $ | 718.00 |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | 1,733.00 |
| 8. Income from real property | $ | 0.00 | $ | 0.00 |
| 9. Interest and dividends | $ | 0.00 | $ | 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | 0.00 |
| 11. Social security or government assistance (Specify): _____ | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 12. Pension or retirement income | $ | 0.00 | $ | 0.00 |
| 13. Other monthly income (Specify): _____ | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | 1,733.00 |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 0.00 | $ | 2,451.00 |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15) | | $ | 2,451.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**Debtor's spouse, Gerald Johnson, is seeking work. He has been a realtor for eight years, but has not received any compensation during 2007 due to the down-turn in the real estate market.**

Official Form 6I (10/06)

In re  <u>Deborah Elizabeth Johnson</u>                                     Case No. _____

                              Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)
### Attachment for Additional Employment Information

| Debtor | | |
|---|---|---|
| Occupation | **Customer Service/Bookkeeper** | |
| Name of Employer | **Safeway, Inc.** | |
| How long employed | **5 months** | |
| Address of Employer | **P.O. Box 99** | |
| | **Pleasanton, CA 94566-0009** | |

Official Form 6J (10/06)

In re **Deborah Elizabeth Johnson**                                                Case No. _____

                                                                Debtor(s)

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed.  Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ 4,695.89 |
| a. Are real estate taxes included?          Yes ___    No  X | | |
| b. Is property insurance included?          Yes ___    No  X | | |
| 2. Utilities:          a. Electricity and heating fuel | | $ 100.00 |
| b. Water and sewer | | $ 150.00 |
| c. Telephone | | $ 170.00 |
| d. Other  **Garbage** | | $ 34.00 |
| 3. Home maintenance (repairs and upkeep) | | $ 0.00 |
| 4. Food | | $ 400.00 |
| 5. Clothing | | $ 40.00 |
| 6. Laundry and dry cleaning | | $ 40.00 |
| 7. Medical and dental expenses | | $ 100.00 |
| 8. Transportation (not including car payments) | | $ 150.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ 0.00 |
| 10. Charitable contributions | | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
| a. Homeowner's or renter's | | $ 114.17 |
| b. Life | | $ 0.00 |
| c. Health | | $ 0.00 |
| d. Auto | | $ 95.00 |
| e. Other _____ | | $ 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify)    **See Detailed Expense Attachment** | | $ 449.61 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | | |
| a. Auto | | $ 0.00 |
| b. Other _____ | | $ 0.00 |
| c. Other _____ | | $ 0.00 |
| d. Other _____ | | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ 236.40 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ 0.00 |
| 17. Other  **School Expenses** | | $ 200.00 |
| Other _____ | | $ 0.00 |

18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.)          $ 6,975.07

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

_____

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. | Average monthly income from Line 15 of Schedule I | $ 2,451.00 |
| b. | Average monthly expenses from Line 18 above | $ 6,975.07 |
| c. | Monthly net income (a. minus b.) | $ -4,524.07 |

Official Form 6J (10/06)

In re   **Deborah Elizabeth Johnson**                                    Case No. _____

                                Debtor(s)

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)
## Detailed Expense Attachment

**Specific Tax Expenditures:**

| | |
|---|---|
| Property Taxes | $ 285.00 |
| Federal/State Income Taxes from second job | $ 164.61 |
| Total Tax Expenditures | $ 449.61 |

Official Form 6-Declaration. (10/06)

# United States Bankruptcy Court
## Northern District of California

In re  **Deborah Elizabeth Johnson**

Debtor(s)

Case No. _____

Chapter      **13**      _____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

       I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of **18** sheets *[total shown on summary page plus 2]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **11- 6- 07**

Signature

**Deborah Elizabeth Johnson**
Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Official Form 7
(04/07)

# United States Bankruptcy Court
### Northern District of California

In re    <u>Deborah Elizabeth Johnson</u>                                  Case No.                   

                                             Debtor(s)            Chapter      <u>13</u>

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$4,606.25** | **Deborah Elizabeth Johnson** |
| | **J.Jill** |
| | **One Talbots Drive** |
| | **Hingham, MA 02043** |
| | |
| | **Income: 1/1/07-Present: $4,606.25** |
| | **Income: 1/1/06-12/31/06: $1,717.50** |
| **$8,000.00** | **Deborah Elizabeth Johnson** |
| | **Safeway, Inc.** |
| | **P.O. Box 99** |
| | **Pleasanton, CA 94566** |

Software Copyright (c) 1996-2007 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

2

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

      AMOUNT               SOURCE

**3. Payments to creditors**

None
■

*Complete a. or b., as appropriate, and c.*

a. *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS<br>OF CREDITOR | DATES OF<br>PAYMENTS | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
■

b. *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,475. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF<br>PAYMENTS/<br>TRANSFERS | AMOUNT<br>PAID OR<br>VALUE OF<br>TRANSFERS | AMOUNT STILL<br>OWING |
|---|---|---|---|

None
■

c. *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND<br>RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL<br>OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
■

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT<br>AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY<br>AND LOCATION | STATUS OR<br>DISPOSITION |
|---|---|---|---|

None
■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE<br>BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF<br>PROPERTY |
|---|---|---|

3

**5. Repossessions, foreclosures and returns**

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

**7. Gifts**

None ■ List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

**8. Losses**

None ■ List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case**. (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

**9. Payments related to debt counseling or bankruptcy**

None ☐ List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Money Management International Inc**<br>**9009 W Loop South, 7th FL**<br>**Houston, TX 77096** | **October, 2007** | **$50** |

4

**10. Other transfers**

None ■  a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ■  b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ■  List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

**12. Safe deposit boxes**

None ■  List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■  List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■  List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

5

**15. Prior address of debtor**

None
■    If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor
occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate
address of either spouse.

ADDRESS                          NAME USED                          DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None
■    If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho,
Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the
commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in
the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous
or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to,
statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly
owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material,
pollutant, or contaminant or similar term under an Environmental Law

None
■    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable
or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known,
the Environmental Law:

SITE NAME AND ADDRESS        NAME AND ADDRESS OF        DATE OF        ENVIRONMENTAL
                             GOVERNMENTAL UNIT          NOTICE         LAW

None
■    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous
Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS        NAME AND ADDRESS OF        DATE OF        ENVIRONMENTAL
                             GOVERNMENTAL UNIT          NOTICE         LAW

None
■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which
the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the
docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                      DOCKET NUMBER              STATUS OR DISPOSITION

6

### 18 . Nature, location and name of business

None
■

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|------|------|------|------|------|

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|------|---------|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement **only** if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None
■

a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|------------------|-------------------------|

None
■

b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|-------------------------|

None
■

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|

None
■

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------------------|-------------|

7

**20. Inventories**

None  ■  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
| --- | --- | --- |

None  ■  b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
| --- | --- |

**21 . Current Partners, Officers, Directors and Shareholders**

None  ■  a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
| --- | --- | --- |

None  ■  b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
| --- | --- | --- |

**22 . Former partners, officers, directors and shareholders**

None  ■  a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
| --- | --- | --- |

None  ■  b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
| --- | --- | --- |

**23 . Withdrawals from a partnership or distributions by a corporation**

None  ■  If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**24. Tax Consolidation Group.**

None  ■  If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

**25. Pension Funds.**

None  ■  If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER (EIN) |
| --- | --- |

8

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date _____11-6 - 07_____          Signature _____

**Deborah Elizabeth Johnson**
Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

B 201 (04/09/06)

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF CALIFORNIA

## NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
## OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

### 1. Services Available from Credit Counseling Agencies

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses.

### 2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

#### Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

#### Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)**
    Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)**
    Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

    A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney
    I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

X _____

_____
Printed Name of Attorney
Address:

Signature of Attorney                    Date

### Certificate of Debtor
    I (We), the debtor(s), affirm that I (we) have received and read this notice.

**Deborah Elizabeth Johnson**
_____
Printed Name(s) of Debtor(s)

X _____ 11-6-07
Signature of Debtor                    Date

Case No. (if known) _____

X _____
Signature of Joint Debtor (if any)                    Date

Official Form 1, Exhibit D (10/06)

# United States Bankruptcy Court
## Northern District of California

In re    Deborah Elizabeth Johnson _____      Case No. _____

                                               Debtor(s)         Chapter    **13**

# EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

■ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Must be accompanied by a motion for determination by the court.][Summarize exigent circumstances here.]* ____

**If the court is satisfied with the reasons stated in your motion, it will send you an order approving your request. You must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy case and promptly file a certificate from the agency that provided the briefing, together with a copy of any debt management plan developed through the agency. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. A motion for extension must be filed within the 30-day period. Failure to fulfill these requirements may result in dismissal of your case. If the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing, your case may be dismissed.**

Software Copyright (c) 1996-2006 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

Official Form 1, Exh. D (10/06) - Cont.

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*
    ☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
    ☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
    ☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: *Deborah Elizabeth Johnson*
                   **Deborah Elizabeth Johnson**

Date: 11-6-07

Software Copyright (c) 1996-2006 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

# United States Bankruptcy Court
## Northern District of California

In re   Deborah Elizabeth Johnson _____   Case No. _____

_____ Debtor(s)   Chapter   **13** _____

## STATEMENT RE PAYMENT ADVICES

☐   Attached are copies of all payment advices or other evidence of payment that I/we received from my/our employer(s) within the 60 days before the filing of this bankruptcy case. I/we have blocked out all but the last four digits of my/our social security number(s) wherever they appear on the attached copies.

☐   I/We received no payment advices or other evidence of payment from my/our employer(s) within the 60 days before the filing of this bankruptcy case.

I/we declare under penalty of perjury that the above statement is true and correct to the best of my/our knowledge, information, and belief.

Date  *11 – 6 – 07* _____   Signature _____

                                           Deborah Elizabeth Johnson
                                           Debtor

Date _____   Signature _____

                                           Attorney

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

NAME:   Deborah E Johnson
SSN:    XXX-XX-4449     CHECK DATE:  11/01/2007
EMP.ID: 9417350         CHECK NO.:  251-2028723

PAY BEGIN DATE:  10/21/20(
PAY END DATE:    10/27/20(
PAY RATE:        $10.1(

| HOURS AND EARNINGS: | ------------CURRENT------------ | | | ----------YTD---------- | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | D |
| Regular | 10.100 | 40.00 | 404.00 | 450.51 | 4,550.15 | Fed Wi( |
| 1st Prem | 0.250 | 12.70 | 3.18 | 231.52 | 57.90 | Fed FI( |
| AdjLateLun 102007 102007 | | | 10.20 | | 20.36 | Fed OA! |
| Sun Reg | | | | 63.52 | 641.55 | CA Witl |
| Sun Prem | | | | 63.52 | 211.68 | CA SDI |
| Sunday OT | | | | 0.15 | 3.41 | |
| OT 1.5 | | | | 1.02 | 15.45 | |
| FLSA | | | | | 0.15 | |
| H-Day Wrk | | | | 8.00 | 80.80 | |
| HD Wk Prem | | | | 8.00 | 8.00 | |
| FedHoliday | | | | 6.92 | 69.89 | |
| STR TRN | | | | 34.73 | 350.77 | |
| Reg Hr Adj | | | | 4.00 | 40.40 | |
| Total: | | 52.70 | 417.38 | 871.89 | 6,050.51 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | | AFTER-TAX-DEDUCTION! | |
|---|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | | CURREN |
| | | | | | |
| Total: | | | Total: | | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00(

MESSAGE:

    S.E.A.See?s Candies gift certificates available for the holidays -no expiration date.Discount tickets for: Disneyland/Cal. Adv.,Movie tickets, See?s Candies, Legoland CA,Universal Studios, SeaWorld and Monterey Bay Aquarium. Got Vacation Plans Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation packages. Want to take a cruise? For cruises & land packages ? Call Ambassador Tours 1-800-989-9000. Order work shirts with a credit card from the Employee Store in Pleasanton.  Call (925)467-2769 or come in.  Employee Store hours: 8am ? 4pm, Monday - Friday, except Wednesday, 8am ? 1:30pm. Thank you for your S.E.A. support!

FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS

| NAME: | Deborah E Johnson | | PAY BEGIN DATE: | 10/14/200 |
|---|---|---|---|---|
| SSN: | XXX-XX-4449 | CHECK DATE: 10/25/2007 | PAY END DATE: | 10/20/200 |
| EMP.ID: | 9417350 | CHECK NO.: 251-2010943 | PAY RATE: | $10.10 |

| HOURS AND EARNINGS: | ----------CURRENT---------- | | | ----------YTD---------- | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | D |
| Regular | 10.100 | 39.88 | 402.79 | 410.51 | 4,146.15 | Fed Wit |
| First Shift Premium | 0.250 | 15.77 | 3.94 | 218.82 | 54.72 | Fed FIC |
| Overtime 1.5 | 15.167 | 0.12 | 1.82 | 1.02 | 15.45 | Fed OAS |
| Sunday Regular Hours | | | | 63.52 | 641.55 | CA With |
| Sunday Premium | | | . | 63.52 | 211.68 | CA SDI |
| Sunday Overtime | | | | 0.15 | 3.41 | |
| FLSA | | | | | 0.15 | |
| Holiday Worked | | | | 8.00 | 80.80 | |
| Holiday Worked Premium | | | | 8.00 | 8.00 | |
| Federal Holiday | | | | 6.92 | 69.89 | |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Total: | | 55.77 | 408.55 | 819.19 | 5,633.13 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | AFTER-TAX-DEDUCTIONS | |
|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | CURREN |
| | | | | |
| Total: | | | Total: | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-000

MESSAGE:

S.E.A.Disney On Ice - High School Musical tickets available, Raiders Football tickets available now limited quantities. Discovery Kingdom (Marine World) Halloween Fright Fest ticket order form available now. Discount tickets for: Disneyland/Cal. Adv., Movie tickets, See Candies, Legoland CA, Universal Studios SeaWorld and Monterey Bay Aquarium. Got Vacation Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation packages. Want to take a cruise? For cruises & land packages - Call Ambassador Tours 1-800-989-9000. Order work shirts with a credit card from the Employee Store in Pleasanton. Call (925) 467 or come in. Employee Store hours: 8am ? 4pm, Monday - Friday, except Wednesday, 8am ? 1:30pm. Thank you for your S.E.A. support!

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

NAME:     Deborah E Johnson                                    PAY BEGIN DATE: 10/07/200
SSN:      XXX-XX-4449        CHECK DATE:  10/18/2007            PAY END DATE:   10/13/200
EMP.ID:   9417350            CHECK NO.:   251-1993165           PAY RATE:       $10.10

HOURS AND EARNINGS:      -----------------CURRENT----------------   ----------YTD-----------
DESCRIPTION              RATE     HOURS      EARNINGS     HOURS      EARNINGS          D

| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | |
|---|---|---|---|---|---|---|
| FLSA | | | 0.07 | | 0.15 | Fed Wit |
| Regular | 10.100 | 32.00 | 323.20 | 370.63 | 3,743.36 | Fed FIC |
| Sunday Regular Hours | 10.100 | 8.00 | 80.80 | 63.52 | 641.55 | Fed OAS |
| First Shift Premium | 0.250 | 15.70 | 3.93 | 203.05 | 50.78 | CA With |
| Sunday Premium | 3.333 | 8.00 | 26.66 | 63.52 | 211.68 | CA SDI |
| Overtime 1.5 | 15.167 | 0.18 | 2.73 | 0.90 | 13.63 | |
| Sunday Overtime | | | | 0.15 | 3.41 | |
| Holiday Worked | | | | 8.00 | 80.80 | |
| Holiday Worked Premium | | | | 8.00 | 8.00 | |
| Federal Holiday | | | | 6.92 | 69.89 | |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Total: | | 63.88 | 437.39 | 763.42 | 5,224.58 | Total: |

BEFORE-TAX-DEDUCTIONS                            AFTER-TAX-DEDUCTIONS
DESCRIPTION         CURRENT      YTD    DESCRIPTION                    CURREN

Total:                                 Total:

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-000

MESSAGE:

    S.E.A.Disney On Ice - High School Musical tickets available. Raiders Football
    tickets available now limited quantities. Discovery Kingdom (Marine World
    Halloween Fright Fest ticket order form available now.  Discount tickets for:
    Disneyland/Cal. Adv., Movie tickets, See Candies, Legoland CA, Universal Studios
    SeaWorld and Monterey Bay Aquarium.  Got Vacation Plans? Call Get-Away-Today
    -866-386-8747 or 1-800-523-6116 for vacation packages.  Want to take a cruise?
    For cruises & land packages - Call Ambassador Tours 1-800-989-9000.  Order work
    shirts with a credit card from the Employee Store in Pleasanton.  Call (925) 467
    or come in.  Employee Store hours: 8am ? 4pm, Monday - Friday, except
    Wednesday. 8am ? 1:30pm.  Thank you for your S.E.A. support!

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

| NAME: | Deborah E Johnson | | | PAY BEGIN DATE: | 09/30/200 |
|---|---|---|---|---|---|
| SSN: | XXX-XX-4449 | CHECK DATE: | 10/11/2007 | PAY END DATE: | 10/06/200 |
| EMP.ID: | 9417350 | CHECK NO.: | 251-1975266 | PAY RATE: | $10.10 |

| HOURS AND EARNINGS: | ----------------CURRENT---------------- | | | ----------YTD---------- | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | D |
| Regular | 10.100 | 40.00 | 404.00 | 338.63 | 3,420.16 | Fed Wit |
| First Shift Premium | 0.250 | 17.00 | 4.25 | 187.35 | 46.85 | Fed FI( |
| Sunday Regular Hours | | | | 55.52 | 560.75 | Fed OAS |
| Sunday Premium | | | | 55.52 | 185.02 | CA With |
| Sunday Overtime | | | | 0.15 | 3.41 | CA SDI |
| Holiday Worked | | | | 8.00 | 80.80 | |
| Holiday Worked Premium | | | | 8.00 | 8.00 | |
| Federal Holiday | | | | 6.92 | 69.89 | |
| Overtime 1.5 | | | | 0.72 | 10.90 | |
| FLSA | | | | | 0.08 | |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Total: | | 57.00 | 408.25 | 699.54 | 4,787.19 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | AFTER-TAX-DEDUCTION! | |
|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | CURREN |
| | | | | |
| Total: | | | Total: | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-000

MESSAGE:

S.E.A.Disney On Ice - High School Musical tickets available. Raiders Football tickets available now limited quantities. Discovery Kingdom (Marine World) Halloween Fright Fest ticket order form available now. Discount tickets for: Disneyland/Cal. Adv., Movie tickets, See Candies, Legoland CA, Universal Studios SeaWorld and Monterey Bay Aquarium. Got Vacation Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation packages. Want to take a cruise? For cruises & land packages - Call Ambassador Tours 1-800-989-9000. Order work shirts with a credit card from the Employee Store in Pleasanton. Call (925) 467 or come in. Employee Store hours: 8am ? 4pm, Monday - Friday, except Wednesday, 8am ? 1:30pm. Thank you for your S.E.A. support!

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

| | | | | | | |
|---|---|---|---|---|---|---|
| NAME: | Deborah E Johnson | | | | PAY BEGIN DATE: | 09/02/200 |
| SSN: | XXX-XX-4449 | CHECK DATE: | 09/13/2007 | | PAY END DATE: | 09/08/200 |
| EMP.ID: | 9417350 | CHECK NO.: | 251-1904687 | | PAY RATE: | $10.10 |

| HOURS AND EARNINGS: | ----------------CURRENT---------------- | | | ----------YTD----------- | | DI |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | |
| FLSA | | | 0.02 | | 0.08 | Fed Wit |
| Regular | 10.100 | 32.00 | 323.20 | 210.63 | 2,127.36 | Fed FIC |
| Holiday Worked | 10.100 | 8.00 | 80.80 | 8.00 | 80.80 | Fed OAS |
| First Shift Premium | 0.250 | 15.00 | 3.75 | 115.03 | 28.77 | CA With |
| Holiday Worked Premium | 1.000 | 8.00 | 8.00 | 8.00 | 8.00 | CA SDI |
| Federal Holiday | 10.100 | 6.92 | 69.89 | 6.92 | 69.89 | |
| Overtime 1.5 | 15.133 | 0.15 | 2.27 | 0.72 | 10.90 | |
| Sunday Regular Hours | | | | 31.52 | 318.35 | |
| Sunday Premium | | | | 31.52 | 105.04 | |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Total: | | 70.07 | 487.93 | 451.07 | 3,150.52 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | AFTER-TAX-DEDUCTIONS | |
|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | CURREN |
| | | | | |
| Total: | | | Total: | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-000

MESSAGE:

S.E.A. - Disneyland/Cal. Adv, Movie tickets, See Candies, Legoland CA, Universal
Studios,Magic Mountain, SeaWorld and Monterey Bay Aquarium. Got Vacation
Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation package
Want to take a cruise? For cruises & land packages - Call Ambassador Tours
1-800-989-9000. Order work shirts with a credit card from the Employee Store in
Pleasanton call (925) 467-2769 or come in. Employee Store hours: 8am ? 4pm
Monday - Friday,except Wednesday, 8am ? 1:30pm.  Thank you for your S.E.A.
support!

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

```
NAME:   Deborah E Johnson                          PAY BEGIN DATE:  08/26/20
SSN:    XXX-XX-4449      CHECK DATE:  09/06/2007    PAY END DATE:    09/01/20
EMP.ID: 9417350          CHECK NO.:   251-1887036   PAY RATE:        $10.1
```

HOURS AND EARNINGS: ---------------CURRENT---------------- ----------YTD------------

| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | |
|---|---|---|---|---|---|---|
| Regular | 10.100 | 24.00 | 242.40 | 178.63 | 1,804.16 | Fed Wi |
| Sunday Regular Hours | 10.100 | 8.00 | 80.80 | 31.52 | 318.35 | Fed FI |
| First Shift Premium | 0.250 | 13.55 | 3.39 | 100.03 | 25.02 | Fed OA |
| Sunday Premium | 3.333 | 8.00 | 26.66 | 31.52 | 105.04 | CA Wit |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | CA SDI |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Overtime 1.5 | | | | 0.57 | 8.63 | |
| FLSA | | | | | 0.06 | |
| Total: | | 53.55 | 353.25 | 381.00 | 2,662.59 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | | AFTER-TAX-DEDUCTION | |
|---|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | | CURREN |
| | | | | | |
| Total: | | | Total: | | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00(

MESSAGE:

S.E.A. - Disneyland/Cal. Adv, Movie tickets, See Candies, Legoland CA, Universal
Studios,Magic Mountain, SeaWorld and Monterey Bay Aquarium. Got Vacation
Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation package
Want to take a cruise? For cruises & land packages - Call Ambassador Tours
1-800-989-9000. Order work shirts with a credit card from the Employee Store in
Pleasanton call (925) 467-2769 or come in. Employee Store hours: 8am ? 4pm,
Monday - Friday,except Wednesday, 8am ? 1:30pm.  Thank you for your S.E.A.
support!

FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS

| NAME: | Deborah E Johnson | | PAY BEGIN DATE: | 08/05/20 |
|---|---|---|---|---|
| SSN: | XXX-XX-4449 | CHECK DATE: 08/16/2007 | PAY END DATE: | 08/11/20 |
| EMP.ID: | 9417350 | CHECK NO.: 251-1833755 | PAY RATE: | $10.1 |

| HOURS AND EARNINGS: | ----------------CURRENT---------------- | | | ----------YTD---------- | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | C |
| Regular | 10.100 | 32.00 | 323.20 | 90.63 | 915.36 | Fed Wi |
| First Shift Premium | 0.250 | 15.86 | 3.97 | 56.45 | 14.12 | Fed FI |
| Overtime 1.5 | 15.147 | 0.34 | 5.15 | 0.57 | 8.63 | Fed OA |
| Sunday Regular Hours | | | | 15.52 | 156.75 | CA Wit |
| Sunday Premium | | | | 15.52 | 51.72 | CA SDI |
| Store Training | | | | 34.73 | 350.77 | |
| FLSA | | | | | 0.06 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Total: | | 48.20 | 332.32 | 217.42 | 1,547.97 | Total: |

| | BEFORE-TAX-DEDUCTIONS | | | | AFTER-TAX-DEDUCTION | |
|---|---|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | | DESCRIPTION | | CURREN |
| | | | | | | |
| Total: | | | | Total: | | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00(

MESSAGE:

S.E.A.The Circus is coming to town in August at the Oakland and San Jose Arenas
& in September at the Arco Arena - reservation forms available now.Good Any Day
PINK order form with discounted ticket prices available now for May 1-Sept.2007
Great America, Six Flags Discovery Kingdom (formerly Marine World), Disneyland/
Cal. Adv., Movie tickets, Legoland CA, Universal Studios, Magic Mtn, SeaWorld
and Monterey Bay Aquarium. Got Vacation Plans? Call Get-Away-Today1-866-386-
8747 or 1-800-523-6116 for vacation packages.Want to take a cruise? For cruises
& land packages-Call Ambassador Tours Order work shirts with a Credit card from
the Employee Store 1-800-989-9001.in Pleasanton call (925)467-2769 or come in.
Employee Store hours: 8am ? 4pm, Monday - Friday, except Wednesday, 8aM -1:30pm.

FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS

```
NAME:    Deborah E Johnson              ri            PAY BEGIN DATE:  08/19/20
SSN:     XXX-XX-4449       CHECK DATE:  08/30/2007    PAY END DATE:    08/25/20
EMP.ID:  9417350           CHECK NO.:   251-1869340   PAY RATE:              $10.1
```

| HOURS AND EARNINGS: | ------------------CURRENT----------------- | | | ----------YTD------------- | | C |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | |
| Regular | 10.100 | 40.00 | 404.00 | 154.63 | 1,561.76 | Fed Wi |
| First Shift Premium | 0.250 | 16.40 | 4.10 | 86.48 | 21.63 | Fed FI( |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | Fed OA: |
| Sunday Regular Hours | | | | 23.52 | 237.55 | CA Wit |
| Sunday Premium | | | | 23.52 | 78.38 | CA SDI |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Overtime 1.5 | | | | 0.57 | 8.63 | |
| FLSA | | | | | 0.06 | |

| Total: | | 56.40 | 408.10 | 327.45 | 2,309.34 | Total: |
|---|---|---|---|---|---|---|

| | BEFORE-TAX-DEDUCTIONS | | | | AFTER-TAX-DEDUCTION | |
|---|---|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | | CURREN | |

| Total: | | | Total: | |
|---|---|---|---|---|

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00(

MESSAGE:

S.E.A -The 18th Annual Campout is in September - reservation forms available now
due date 8/31/07.Good Any Day PINK order form with discounted ticket prices
available now for May 1 - Sept.2007- Great America, Six Flags Discovery Kingdom
(formerly MarineWorld), Disneyland/Cal.Adv., Movie tickets, Legoland CA,
Universal Studios, Magic Mtn, SeaWorld and Monterey Bay Aquarium. Got Vacation
Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for vacation
packages.Want to take a cruise? For cruises & land packages - Call Ambassador
Tours1-800-989-9000.Order work shirts with a credit card from the Employee Store
in Pleasanton call (925) 467-2769 or come in. Employee Store hours: 8am ? 4pm,
Monday - Friday, except Wednesday, 8am - 1:30pm.Thank you for your S.E.A.support

FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS

| NAME: | Deborah E Johnson | | | PAY BEGIN DATE: | 08/12/20 |
|---|---|---|---|---|---|
| SSN: | XXX-XX-4449 | CHECK DATE: | 08/23/2007 | PAY END DATE: | 08/18/20 |
| EMP.ID: | 9417350 | CHECK NO.: | 251-1851617 | PAY RATE: | $10.1 |

| HOURS AND EARNINGS: | ------CURRENT------ | | | ------YTD------ | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | C |
| Regular | 10.100 | 24.00 | 242.40 | 114.63 | 1,157.76 | Fed Wi |
| Sunday Regular Hours | 10.100 | 8.00 | 80.80 | 23.52 | 237.55 | Fed FI |
| First Shift Premium | 0.250 | 13.63 | 3.41 | 70.08 | 17.53 | Fed OA |
| Sunday Premium | 3.333 | 8.00 | 26.66 | 23.52 | 78.38 | CA Wit |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | CA SDI |
| Store Training | | | | 34.73 | 350.77 | |
| LC 226.7 Pay ALL | | | | | 10.16 | |
| Overtime 1.5 | | | | 0.57 | 8.63 | |
| FLSA | | | | | 0.06 | |
| Total: | | 53.63 | 353.27 | 271.05 | 1,901.24 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | | | AFTER-TAX-DEDUCTION | |
|---|---|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | | DESCRIPTION | CURREI | |
| Total: | | | | Total: | | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00

MESSAGE:

S.E.A -The 18th Annual Campout is in September · reservation forms available now
due date 8/31/07.Good Any Day PINK order form with discounted ticket prices
available now for May 1 - Sept.2007· Great America, Six Flags Discovery Kingdom
(formerly MarineWorld), Disneyland/Cal.Adv., Movie tickets, Legoland CA,
Universal Studios, Magic Mtn, SeaWorld and Monterey Bay Aquarium. Got Vacation
Plans? Call Get·Away·Today 1-866-386-8747 or 1-800-523-6116 for vacation
packages.Want to take a cruise? For cruises & land packages - Call Ambassador
Tours1-800-989-9000.Order work shirts with a credit card from the Employee Store
in Pleasanton call (925) 467-2769 or come in. Employee Store hours: 8am ? 4pm,
Monday - Friday, except Wednesday, 8am - 1:30pm.Thank you for your S.E.A.support

**FOLD AND TEAR ON PERFORATION - RETAIN STATEMENT OF EARNINGS**

| NAME: | Deborah E Johnson | | | | PAY BEGIN DATE: | 07/22/20( |
| SSN: | XXX-XX-4449 | CHECK DATE: | 08/02/2007 | | PAY END DATE: | 07/28/20( |
| EMP.ID: | 9417350 | CHECK NO.: | 251-1797636 | | PAY RATE: | $10.1( |

| HOURS AND EARNINGS: | ---------------CURRENT--------------- | | | ----------YTD----------- | | |
|---|---|---|---|---|---|---|
| DESCRIPTION | RATE | HOURS | EARNINGS | HOURS | EARNINGS | D |
| Sunday Regular Hours | 10.100 | 7.52 | 75.95 | 7.52 | 75.95 | Fed Wit |
| First Shift Premium | 0.251 | 15.20 | 3.81 | 21.73 | 5.44 | Fed FIC |
| Sunday Premium | 3.332 | 7.52 | 25.06 | 7.52 | 25.06 | Fed OA! |
| Store Training | 10.100 | 23.73 | 239.67 | 34.73 | 350.77 | CA With |
| LC 226.7 Pay ALL | | | 10.16 | | 10.16 | CA SDI |
| Regular | | | | 26.63 | 268.96 | |
| Prior Week's Adjustment/ | | | | 4.00 | 40.40 | |
| Overtime 1.5 | | | | 0.08 | 1.21 | |
| Total: | | 53.97 | 354.65 | 102.21 | 777.95 | Total: |

| BEFORE-TAX-DEDUCTIONS | | | AFTER-TAX-DEDUCTION! | |
|---|---|---|---|---|
| DESCRIPTION | CURRENT | YTD | DESCRIPTION | CURREN |
| | | | | |
| Total: | | | Total: | |

SAFEWAY INC., P.O. BOX 99, PLEASANTON, CA 94566-00(

MESSAGE:

S.E.A. The Circus is coming to town in August ? watch for the reservation forms. Good Any Day PINK order form with discounted ticket prices available now for May 1 - Sept. 2007- Great America, Six Flags Discovery Kingdom (formerly Marine World),Disneyland/Cal. Adv. Movie tickets, Legoland CA,Universal Studios, Magic Mountain, SeaWorld and Monterey Bay Aquarium. Got Vacation Plans? Call Get-Away-Today 1-866-386-8747 or 1-800-523-6116 for Disneyland, LasVegas,Florida, Caribbean and Hawaii vacation packages. And, now AIRFARE is available for your packages-call for more information. Want to take a cruise? For cruises & land packages - Call Ambassador Tours 1-800-989-9000. Need work shirts?Call the Employee Store in Pleasanton and order with a credit card ? (925) 467-2769.

## United States Bankruptcy Court
### Northern District of California

In re   Deborah Elizabeth Johnson

_____
                                              Debtor(s)

Case No. _____
Chapter   **13**   _____

## CREDITOR MATRIX COVER SHEET

     I declare that the attached Creditor Mailing Matrix, consisting of __**3**__ sheets, contains the correct, complete and current names and addresses of all priority, secured and unsecured creditors listed in debtor's filing and that this matrix conforms with the Clerk's promulgated requirements.

Date:   *11- 6 - 07*   _____        *Deborah Elizabeth JJk*

Software Copyright (c) 1996-2005 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

American Express Optima
P.O. 0001
Los Angeles, CA 90096-0001


Bank of America
P.O. Box 15726
Wilmington, DE 19886


Capital Management Services
726 Exchange Street, Suite 700
Buffalo, NY 14210


Capital One
P.O. Box 60024
City Of Industry, CA 91716-0024


Chase Card Member Services
P.O. Box 94014
Palatine, IL 60094-4014


Chevron Credit Bank
P.O. Box 2001
Concord, CA 94529-0001


First Federal Bank of California
P.O. Box 80025
City Of Industry, CA 91716-8025


Gerald Dean Johnson
P.O. Box 4448
Carmel By The Sea, CA 93921-4448

Macy's
P.O. Box 689195
Des Moines, IA 50368


National City
P.O. Box 856153
Louisville, KY 40285-6153


NCO Financial Systems, Inc.
P.O. Box 61247
Virginia Beach, VA 23466


Nordstrom FSB
Colorado Service Center
P.O. Box 6566
Englewood, CO 80155-6566


Sears
P.O. Box 6937
The Lakes, NV 88901-6937


T.D. Service Company
1820 E. First Street, Suite 210
P.O. Box 11988
Santa Ana, CA 92711-1988


Target National Bank
P.O. Box 59317
Minneapolis, MN 55459-0317


Union Bank of California
P.O. Box 85643
San Diego, CA 92186-5643

```
Union Plus Credit
P.O. Box 60102
Los Angeles, CA 90096


Washington Mutual
P.O. Box 1097
Northridge, CA 91328-1097


WestCom Credit Union
P.O. Box 7058
Pasadena, CA 91109-7058
```

**FILED**

**UNITED STATES BANKRUPTCY COURT**
NORTHERN DISTRICT OF CALIFORNIA

In re:  **Deborah Elizabeth Johnson**

_____
Debtor(s).

Case No.

**Chapter 13 Plan**

NOV 0 7 2007

United States CLERK
San Jose Bankruptcy Court
California

1.  The future earnings of the Debtor(s) are submitted to the supervision and control of the Trustee, and the Debtor(s) will pay to the Trustee the sum of ___**0.00**___ each month. Initial attorneys fees are requested in the amount of $_____
   ____ Debtor(s) elect a voluntary wage order.

2.  From the payments received, the Trustee will make disbursements as follows:
   (a)  On allowed claims for expenses of administration required by 11 U.S.C. § 507 (a)(2) in deferred payments.
   (b)  On allowed secured claims, which shall be treated and valued as follows:

| Name | Value of Collateral | Estimated Mortgage/Lease Arrears | Adequate Protection Payments (If specified) | Interest Rate (If Specified) |
|------|---------------------|----------------------------------|---------------------------------------------|------------------------------|
| **Union Bank of California** | 4,500.00 | | 81.67 | 0.00 |
| **First Federal Bank of California** | 1,300,000.00 | 24,000.00 | 0.00 | 9.10 |
| **National City** | 1,300,000.00 | 8,007.00 | 0.00 | 9.10 |

   [The valuations shown above will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less, and will be paid the adequate protection payments and the interest rates shown above. If an interest rate is not specified, 7% per annum will be paid. The remainder of the amount owing, if any, will be allowed as a general unsecured claim paid under the provisions of ¶ 2(d).]

   (c)  On allowed priority unsecured claims in the order prescribed by 11 U.S.C. § 507.
   (d)  On allowed general unsecured claims as follows:
      __X__ at a rate of __0__ cents on the dollar. The estimated term of the plan is __60__ months. (Percentage Plan)
      ____ the sum of ____ payable over ____ months, distributed pro rata, in amounts determined after allowed administrative, secured and priority unsecured claims are paid. The plan payments will continue at the highest monthly payment provided in ¶ 1 as necessary to pay all allowed administrative, secured and priority unsecured claims within sixty months of confirmation. (Pot Plan)

3.  The debtor(s) elect to reject the following executory contracts or leases and surrender to the named creditor(s) the personal or real property that serves as collateral for a claim. The debtor(s) waive the protections of the automatic stay and consent to allow the named creditor(s) to obtain possession and dispose of the following identified property or collateral without further order of the court. Any allowed unsecured claim for damages resulting from the rejection will be paid under paragraph 2(d).
   **-NONE-**

4.  The Debtor(s) will pay directly the following fully secured creditors and lessors or creditors holding long-term debt:

| Name | Monthly Payment |
|------|-----------------|
| **First Federal Bank of California** | 3,361.26 |
| **National City** | 1,334.63 |

5.  The date this case was filed will be the effective date of the plan as well as the date when interest ceases accruing on unsecured claims against the estate.

6.  The Debtor(s) elect to have property of the estate:
   ____ revest in the debtor(s) at such time as a discharge is granted or the case is dismissed.
   __X__ revest in the debtor(s) upon plan confirmation. Once property revests, the Debtor(s) may sell or refinance real or personal property without further order of the court, upon approval of the Chapter 13 Trustee.

_Deborah E. John_          11-6-07          _Deborah E. Jhn_
Debtor's Signature              Date

I, the undersigned, am the attorney for the above named Debtor(s) and hereby certify that the foregoing chapter 13 plan is a verbatim replica of pre-approved chapter 13 plan promulgated pursuant to B.L.R. 1007-1 for use in the San Jose Division.

Dated: _____        _____

_____
Attorney for Debtor(s)

Rev. 10/05 (This certification must be signed for any Model Chapter 13 Plan generated by WordPerfect, Word, or other word processing program.)

Software Copyright (c) 1996-2006 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                Best Case Bankruptcy

Form SFODM

## UNITED STATES BANKRUPTCY COURT
### Northern District of California

| In re Debtor(s): | Case No.: 07–53614 MM 13 |
|---|---|
| Deborah Elizabeth Johnson | Chapter: 13 |

## ORDER RE DISMISSAL OF CASE FOR FAILURE TO COMPLY

    1. Debtor failed to file, within 45 days after the date of filing of the petition, all of the following as required by section 521(a)(1) of the Bankruptcy Code:

* Statement of Current Monthly Income and means Test Calculation (Form B22)

    2. Debtor failed to obtain an extension of time to file the foregoing under section 521(i)(3) of the Bankruptcy Code; and

    3. The trustee has not requested that the case not be dismissed under section 521(i)(4) of the Bankruptcy Code.

    Now, therefore, the court confirms that the above–entitled case was dismissed as a matter of law pursuant to section 521(i)(1) of the Bankruptcy Code.

Dated: <u>1/4/08</u>

For the Court:

Gloria L. Franklin
Clerk of Court
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT

FILED

JAN - 2008

UNITED STATES BANKRUPTCY COURT
SAN JOSE, CALIFORNIA

DEBORAH ELIZABETH JOHNSON
        DEBTOR

CASE NO. 07-53614MM13
CHAPTER 13

MOTION TO CONVERT CHAPTER 13 CASE
TO CHAPTER 7

DEBTOR REQUEST CHANGE IN CHAPTER 13
FILING TO CHAPTER 7 BASED ON THE
INFORMATION NOTED IN THE ATTACHED
EXHIBIT "A1" FILED ON JAN. 03, 2008.

_____
MARILYN MORGAN
U.S. BANKRUPTCY JUDGE

_Deborah E. Joh_
_____
DEBORAH E. JOHNSON
JAN. 11, 2008

EXHIBIT "A 1"

Deborah Elizabeth Johnson
P.O.Box 4448
Carmel, California 93921
Telephone: 831-622-0132



United States Bankruptcy Court

North District Of California, San Jose

In Re:                                                    Case No. 07-53614-MM

Hermar, Rousso & Heald, LLP                               Chapter 13

Attorneys For Secured Creditor,
First Federal Bank Of California

Objection To Confirmation Of                              Deborah Elizabeth Johnson, Debtor
Chapter 13 Plan

Date: January 9, 2008
Time: 11:00 A.M.
Ctrm: 3070

To Secured Creditor, Chapte 13 Trustee and All Interested Parties:

1) Debtor's, intent in filing bankruptcy was and is to sell all  Debtor assets to payoff all Creditors if possible

Debtor's primary residence identified as 2nd Avenue 2NE of Dolores Street, Carmel, California 93921

is the one asset that Debtor expects to liquidate to pay all Creditors.  Debtor has attached 2

recent appraisals as ExhibitS "A" & "B" and the most recent MLS listing information as Exhibit "C".

The MLS listing start date of July 2007 will provide evidence Debtor's intent was and still is to sell the

listed property to pay all Creditors if possible.  Debtor has not made a payment on the monthly

mortgage due to First Federal Bank of California's continued misrepresentation of what is currently

owed on the mortgage, the amount required to bring the note current or the amount for payoff.

2) Debtor has attached Exhibit "D" which contains 5 written correspondences from First Federal Bank

of California that covers a time period from April 23, 2007 to June 18,2007 with payment amounts

from $3,930.89 to $16,237.82 to $13,102.77 to $16,472.66 to $14,635.94, stating these amounts were

required to bring the mortgage current, Debtor was given these amounts over the phone and in writting

as noted in Exhibit "D".  Debtor's property was listed for sale in July 2007 after that experience instead

of bringing any ursury lawsuits.

3) Debtor request that First Federal Bank Of California provide the Court and Debtor with a complete

detailed itemized list of what charges, interest, fees and principal amounts are included in the

$962,311.64 fee currently provided to the Court.  Debtor feels the current amount is inflated.

4) Debtor has attached as Exhibit "E", Debtor's "Borrower's Instructions" from First Federal Bank Of

California which required Debtor to convert $48,478.00 of unsecured debt to secured debt in order

to obtain the original loan.  Debtor would like that amount considered if possible when determining

what amount First Federal Bank Of California provides to the Court.

5) Debtor's intent is to liquidate assets under whatever Bankruptcy Chapter will allow the Court Trustee

to accomplish the liquidation.  Debtor is currently negotiating with 2 potential Buyers for the purchase of

the property at this time.

DATE: 01/03/2008

DEBORAH ELIZABETH JOHNSON

1    WAYNE R. TERRY - SBN 134685
     **HEMAR, ROUSSO & HEALD, LLP**
2    15910 Ventura Boulevard
     12th Floor
3    Encino, California 91436
     Telephone:    (818) 501-3800
4    Facsimile:    (818) 501-2985

5    Attorneys for Moving Party
     Secured Creditor First Federal Bank of California
6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9         **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

10   In Re                              )    Case No. 07-53614-MM
                                        )
11                                      )    Chapter 13
     DEBORAH ELIZABETH JOHNSON,         )
12                                      )    R.S. No.: WRT-78
                                        )
13        Debtor.                       )
                                        )    MOTION FOR RELIEF FROM STAY;
14   _____)    MEMORANDUM OF POINTS AND
                                        )    AUTHORITIES AND DECLARATIONS
15   FIRST FEDERAL BANK OF              )    OF CAROL A. BAXTER AND
     CALIFORNIA,                        )    MARK A. BRYANT IN SUPPORT
16                                      )    THEREOF
                                        )
17        Movant,                       )    (11 U.S.C. §§ 361, 362)
     vs.                                )
18                                      )    Date:   February 6, 2008
     DEBORAH ELIZABETH JOHNSON;         )    Time:   2:30 P.M.
19   DEVIN DERHAM-BURK, solely in his   )    Ctrm:   3070
     capacity as Chapter 13 Trustee of Deborah )
20   Elizabeth Johnson,                 )
                                        )
21        Respondents.                  )
                                        )
22   _____)

23        1.    Movant, First Federal Bank of California, complains of debtor, Deborah

24   Elizabeth Johnson (hereinafter "Respondent")[1] and alleges as follows:

25        2.    This Motion, seeking relief from automatic stay and adequate protection,

26   is a contested matter within the meaning of Fed. R. Bankr. P. 4001 and 9014 and as provided by

27   _____
        [1] Chapter 13 trustee Devin Derham-Burk is named as an accommodation party, solely in said
28   capacity.

                                        1

1   11 U.S.C. §362.

2        3.      This Court has original jurisdiction over this proceeding pursuant to 28

3   U.S.C. §§ 1471(c) and (e).

4        4.      Movant is informed and believes and thereon alleges that Respondent is

5   and at all times mentioned herein has been an individual residing in the State of California,

6   County of Monterey.

7        5.      On or about November 7, 2007, Respondent filed a Chapter 13 bankruptcy

8   Petition, thereby obtaining the benefits of the automatic stay under 11 U.S.C. §362 (a).

9        6.      Among the assets which purportedly are part of the Respondent's estate is

10  certain real property commonly known as 2nd Avenue 2E of Dolores Street, Carmel, California

11  93921 (hereinafter, "Property"). Debtor filed this bankruptcy case on the day before a scheduled

12  trustee's sale of the Property, as a purposeful measure to hinder and thwart Movant in the

13  protection of its rights as a secured creditor.

14       7.      On May 5, 2005, Respondent made, executed and delivered to Movant a

15  promissory note (hereinafter, "Note") in the face amount of $840,000.00 which Note required

16  monthly payments beginning in the amount of $3,661.26, due on the first day of each month. A

17  true and correct copy of the Note is attached hereto as Exhibit "1" and incorporated herein by this

18  reference as though set forth in full.

19       8.      Concurrently with the execution of the Note, and to secure payment of the

20  principal sum and interest as provided in the Note, Respondent executed and delivered to

21  Movant, as Beneficiary, a certain Deed of Trust with Assignment of Rents dated May 5, 2005,

22  (hereinafter, "Deed of Trust"). The Deed of Trust was duly recorded on May 15, 2005 as

23  Instrument No. 2005-048551, Official Records of Monterey County, California. A true and

24  correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by

25  this reference as though set forth in full.

26       9.      Unpaid principal under the Note as of the petition date was $885,272.85.

27       10.     Respondent has defaulted on her obligations under the Note and Deed of

28  Trust in failing to make payments due under the Note as and when due. Respondent last made

2

1  payment on May 23, 2007. At the time of the filing of the Petition on November 7, 2007, the

2  Respondent was eight payments in arrears, for the months of April through November 2007. The

3  pre-petition arrearage including late charges is $77,038.79.10. In addition, Respondent has failed

4  to make any post-petition monthly payments coming due. As of the date of the hearing,

5  payments and late charges will be in arrears in an amount not less than $80,919.72. Movant

6  estimates attorneys' fees compensable under the Note of $3,000. Therefore, by the date of the

7  hearing on this Motion, Respondent's liability on account of their obligations under the Note

8  shall be not less than $962,311.64.

9           11.     Movant holds the first priority deed of trust on the property. The second

10  mortgage is held by National City, with a balance of approximately $176,407.64 according to

11  Respondent's schedules. A true and correct copy of Respondent's Schedule D - Creditors

12  Holding Secured Claims ("Schedule D") is attached as Exhibit "3." Judicial notice of the

13  Court's own files and records is requested as to Schedule D, pursuant to Fed. R. Evid. Rule 201.

14           12.     In addition to Movant's claims of not less than $962,311.64 as of the date

15  of the hearing on this Motion, Respondent asserts a subordinate deed of trust in favor of National

16  City in the amount of $176,407.64. See Schedule D, Exhibit "3." Taking this assertion as true,

17  combined claims secured by the Property equal not less than $1,138,719.20.

18           13.     Movant has caused a current drive-by appraisal of the Property to be

19  prepared. See Appraisal by Mark A. Bryant dated December 14, 2007 ("Appraisal"), attached as

20  Exhibit "4." Per the Appraisal, the Property has a value of $1,050,000.00. Encumbrances

21  exceed the value of the Property, therefore, by not less than $88,719.00, before interest, penalties,

22  foreclosure costs and costs of sale.

23           14.     Considering the amount of the indebtedness secured by the Property, and

24  the costs of sale which would be incurred in selling the Property, there is no equity which could

25  be realized from the Property for the benefit of the Respondent's estate.

26           15.     The Property is not necessary for reorganization in light of the

27  Respondent's lack of equity and the utterly deficient plan filed by Debtor, plus the bad faith filing

28  of this bankruptcy case on the day before a scheduled trustee's sale. See Exhibit "3," and the

3

1  Respondent's Chapter 13 plan on file with the Court. The Debtor is ineligible to be a Debtor in

2  Chapter 13, and has proposed a plan which is unfeasible and in apparent bad faith. See the

3  Trustee's objection to plan, attached as Exhibit "5."

4          16.     Continuation of the automatic stay of 11 U.S.C. § 362(a) will work real

5  and irreparable harm to Movant and will deprive Movant of the adequate protection to which it is

6  entitled under 11 U.S.C. §§ 361 and 362, and the stay should be lifted, for the following reasons,

7  among others:

8          A.     Respondent lacks equity in the Property;

9          B.     Interest continues to accrue upon Movant's claim, and in the months since

10                 Respondent has defaulted on her obligation, she has not kept current on

11                 payments of principal and interest or other amounts due and owing;

12         C.     Respondent is without the funds necessary to preserve and maintain the

13                 Property in good condition and the value of the Property has declined and

14                 will continue to decline if not properly maintained; and

15         D.     The Property is not necessary for an effective reorganization by the

16                 Respondent, as evidenced by both the lack of equity therein, and by

17                 Respondent's ineligibility to be a Chapter 13 debtor.

18     **WHEREFORE,** Movant prays:

19     1.     For an order providing relief from automatic stay and allowing Movant to

20  immediately commence exercise of its rights under applicable law as to the Note and Deed of

21  Trust;

22     2.     For an order providing relief from the automatic stay as to any unlawful detainer

23  action that may be required on behalf of Movant, or its successors, or the bidder or assignees of

24  the bidder at the sale of the Property; or in the alternative, for an order, upon completion of the

25  foreclosure sale, that the Respondent herein give immediate possession of the premises to said

26  successful bidder;

27     3.     For an order awarding Movant relief from the automatic stay in any bankruptcy

28  proceeding brought by Respondent or any other titleholder to this property within 180 days

4

1    of entry of the Court's order;

2        4.        For such other and further relief as is just and proper.

3    DATED:        January **1f**, 2008        **HEMAR, ROUSSO & HEALD, LLP**

4

5

6        By: _____
                WAYNE R. TERRY
7                Attorneys for Movant
                FIRST FEDERAL BANK OF CALIFORNIA

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1    **POINTS AND AUTHORITIES IN SUPPORT OF**

2    **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

3    **INTRODUCTION**

4    In the present case, the Chapter 13 Petition was filed on November 7, 2007. The

5    Respondent was eight payments in arrears pre-petition and since the filing the Respondents has

6    made no payments.

7    **MOVANT MAY HAVE RELIEF FROM THE AUTOMATIC STAY TO**

8    **EXERCISE ITS RIGHTS REGARDING THE PROPERTY**

9    Pursuant to 11 U.S.C. § 362(d) of the Bankruptcy Code:

10    "On request of a party in interest and after notice and a hearing, the court

11    shall grant relief from the stay provided under subsection (a) of this section, such as by

12    terminating, annulling, modifying, or conditioning such stay --

13    (1) for cause, including the lack of adequate protection of an

14    interest in property of such party in interest; or

15    (2) with respect to a stay of an act against property under

16    subsection(a) of this section, if --

17    (A) the debtor does not have any equity in such property;

18    and

19    (B) such property is not necessary to an effective

20    reorganization."

21    The facts of this case demonstrate that the automatic stay should be lifted "for

22    cause." The Bankruptcy Codes mandates that secured creditors must, at minimum, be afforded a

23    reasonable assurance that the value of their security interests in property of a Debtor is and will

24    continue to be "adequately protected" by the Debtor.

25    Movant's interest in the Property is not being adequately protected. Respondent

26    defaulted on required monthly payments under the Note by failing to make eight monthly

27    payments due prior to her Chapter 13 petition, and all payments due thereafter.

28    In addition, there is no equity in the Property. In determining whether there is

6

1  equity on the subject property, all encumbrances, including all costs and fees, against the

2  property must be considered. In re Development, Inc., 36 B.R. 998(Bankr. D. Haw. 1984).  The

3  amount owing to Movant is not less than $962,311.64, and the Property is secured by a second

4  deed of trust totaling $176,407.64, resulting in encumbrances totaling not less than

5  $1,138.719.20.  The value of the Property is $1,050,000.00.  It is apparent that Respondent does

6  not have any equity in the Property, and the Property is of no value to the estate.  The entirety of

7  the elements for relief from stay pursuant to 11 U.S.C. § 362(d)(2) are therefore indisputably

8  present.

9

10  DATED:    January  /6 , 2008                HEMAR, ROUSSO & HEALD, LLP

11

12                                                                By:

13                                                                WAYNE R. TERRY
                                                                     Attorneys for Secured Credtor
14                                                                FIRST FEDERAL BANK OF CALIFORNIA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

**DECLARATION OF CAROL A. BAXTER**

**IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

I, CAROL A. BAXTER, hereby declare as follows:

1.    I am employed by First Federal Bank of California (hereinafter, "Movant") as its Senior Vice President, Loan Service Department. I am a custodian of the books, records and files of Movant, as those records pertain to loans or extensions of credit by Movant to Deborah Elizabeth Johnson (hereinafter, "Respondent"). I have personally worked on said records, and as to the facts contained herein, I know them to be true of my own personal knowledge or I have gained knowledge of them from the records of Movant which are prepared and maintained in the ordinary course of its business, at or near the time of the acts or occurrences depicted or represented by such records. If called upon as a witness, I could and would competently testify to the fact contained herein, as I have personal knowledge thereof.

2.    The records of Respondent are made in the ordinary course of Movant's business by persons with a business duty to Movant to make such records. The records were made at or near the time of the occurrence of the event which they purport to memorialize.

3.    Movant's records are kept on a computer system and organized by account number, including records of all contacts made by entities or individuals involved in a particular loan transaction. Similarly, a record of all payments received by Movant are input into Movant's computer system indicating the date on which the payment was received, its application to an outstanding loan, the balance remaining due and owing  after application of such proceeds, and whether a late charge is applicable based upon the date the payment was made.

4.    Movant's books and records for Respondent's accounts herein were kept in the manner described above.

5.    Among the assets which purportedly are part of the Respondent's estate is certain real property commonly known as 2nd Avenue 2NE of Dolores Street, Carmel, California 93921 (hereinafter, "Property").

6.    On May 5, 2005, Respondent made, executed and delivered to Movant a

8

1   promissory note (hereinafter, "Note") in the face amount of $840,000.00 which Note required

2   monthly payments beginning in the amount of $3,661.26. A true and correct copy of the Note is

3   attached hereto as Exhibit "1" and incorporated herein by this reference as though set forth in

4   full.

5          7.    Concurrently with the execution of the Note, and to secure payment of the

6   principal sum and interest as provided in the Note, Respondent executed and delivered to

7   Movant, as beneficiary, a certain Deed of Trust with Assignment of Rents dated May 5, 2005,

8   (hereinafter, "Deed of Trust"). The Deed of Trust was duly recorded on May 16, 2005 as

9   Instrument No. 2005-048551, Official Records of Monterey County, California. A true and

10  correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by

11  this reference as though set forth in full.

12         8.    Respondent has defaulted on her obligations under the Note and Deed of

13  Trust in failing to make payments due under the Note as and when due.

14         9.    My review of Movant's records reflects that unpaid principal under the

15  Note as of the petition date was $962,311.64.

16         10.    Respondent last made payment on May 23, 2007. At the time of the filing

17  of the bankruptcy petition on November 7, 2007, the Respondent was eight payments in arrears,

18  for April through November, 2007. The pre-petition arrearage including late charges is

19  $77,038.79. In addition, Respondents has failed to make any post-petition monthly payments

20  coming due. As of the date of this Motion, payments and late charges are in arrears in an amount

21  not less than $80,919.72 including payment for December, and this amount will have increased

22  by another $3,661.26 by the date of the hearing on this Motion, for total post-petition defaults of

23  not less than $80,919.72. Movant estimates attorneys' fees compensable under the Note of

24  $3,000. Therefore, by the date of the hearing on this Motion, Respondent's liability on account

25  of her obligations under the Note shall be not less than $962,311.64.

26         11.    Movant holds the first priority deed of trust on the property. I am

27  informed that the second mortgage is held by National City, with a balance of approximately

28  ///

1 | $176,407.64.

2 | 　　　　12.　　Movant's current appraisal shows the value of the Property to be no more

3 | than $1,050,000.00.  In foreclosing upon and reselling the Property, based on my experience in

4 | connection with loans on residential real property, Movant would incur real estate commissions

5 | totaling 6% of sales price and estimated costs of sale of 10% of the total sale price.  It is my

6 | opinion that sale of the Property would result in the following:

7 | 　　　　　　Sale:　　　　　　　$1,050,000.00

8 | 　　　　　　Cost of Sale (approx):$   105,000.00

9 | 　　　　　　Net:　　　　　　$  945,000.00

10 | 　　　　　　**LESS:**

11 | 　　　　　　Movant's Liens　　$ 962,311.64

12 | 　　　　　　Lien of National City $ 176,407.64

13 | 　　　　　　Equity to Estate:　　$ (193,719.28)

14 | 　　　　13.　　Considering the amount of the indebtedness secured by the Property and

15 | the costs of sale which would be incurred in selling the Property, there is no equity which could

16 | be realized from the Property for the benefit of the Respondents' estate.

17 | 　　　　　I declare under penalty of perjury under the laws of the United States of

18 | America that the foregoing is true and correct.

19 | 　　　　　Executed on January 3, 2008, at Santa Monica, California.

20

21

22

23 | 　　　　　　　　　　　　　　CAROL A. BAXTER
Declarant

24

25

26

27

28

10

1
2
## DECLARATION OF MARK A. BRYANT
## IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY
3
4          I, MARK A. BRYANT, hereby declare as follows:

5          1.      I am a real estate appraiser, licensed by the State of California Business,

6   Transportation and Housing Agency, Office of Real Estate Appraisers. I am a certified

7   residential real estate appraiser with significant experience in the assessment and appraisal of

8   residential real property in California.

9          2.      Attached as Exhibit "4" is an appraisal of real property relating to real

10  property located at 2nd Avenue 2NE of Dolores Street, Carmel, California 93921. I prepared that

11  appraisal, and its contents are true, accurate, and correct, based on my personal knowledge and

12  belief. The appraisal is dated as of December 14, 2007, and reflects a value for the property in

13  question of $1,050,000.00.

14          I declare under penalty of perjury under the laws of the United States of

15  America that the foregoing is true and correct.

16          Executed on January _03_, 2008, at Rancho Cordova, California.

17
18
19
20.
                                    _____
                                    **MARK A. BRYANT**
21                                   Declarant
22
23
24
25
26
27
28

11

# EXHIBIT "1"

AML WITH PAYRATE
NOTE SECURED BY DEED OF TRUST
(Adjustable Interest Rate Loan - CODI Index)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

**U.S. $ 840,000.00**                                                                Santa Monica, California

**Loan No.: 49792970**
                                                                                     May 5, 2005

**2nd Ave 2 NE of Dolores Street, Carmel, CA 93921**

                                                    (Property Address)

1.  In return for a loan that I have received, I promise to pay

    **EIGHT HUNDRED FORTY THOUSAND AND 00/100**

    Dollars (U.S. $ 840,000.00 ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  INTEREST
    (a)  Interest Rate
          Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of 5.796% . This is my initial interest rate. The interest rate I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.
    (b)  Interest Change Dates
          The interest rate I will pay may change on the **1st** day of **July, 2005** and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

    (c)  Interest Rate Limit
          So long as I own the property securing this Note, my interest rate will never be greater than **10.150%** , or lower than **3.800%** . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be **4.354%** percentage points above the greater of:

              (i) my initial interest rate, or
              (ii) my interest rate at the time of sale or transfer.
    (d)  The Index
          Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index"). The Index is determined by the Lender based upon the average of the last twelve calendar months' most recently published monthly yields on dealer offering rates on nationally traded three-month certificates of deposit. The Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve, rounded to the nearest one-thousandth of one percentage point (0.001%). Information on such monthly yields on three-month certificate of deposit dealer rates is published by the Federal Reserve Board. The most recent Index figure available as of the date 15 days before each Interest Change Date is the "Current Index."
          If the Index or any index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted index as of the last preceding Interest Change Date on which the prior index was available or the date of this Note, whichever occurs later, such that the sum of the substituted index and the adjusted Margin will be similar to the sum of the prior index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.
    (e)  Calculation of Interest Rate Changes
          Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **3.800%** percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will be my new interest rate until the next Interest Change Date.

3.  PAYMENTS
    (a)  Time and Place of Payments
          I will pay principal and interest by making payments every month.

          I will make my monthly payments on the first day of each month beginning on **July 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **June 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
          I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.


                    RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER

FUN 11001 (2004-03-01) OS 207
PAGE ONE

L◯No.: 49792970

(b) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of

THREE THOUSAND ONE HUNDRED SIXTY-EIGHT AND 20/100

Dollars (U.S. $ 3,168.20). This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on an interest rate of 2.150% . This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

(c) Payment Change Dates

My monthly payment may change as required by Section 3(d) below beginning on the 1st day of July, 2006, and on that day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

(d) Calculation of Monthly Payment Changes

At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075 in the event the Full Payment is greater than such monthly payment. The result of this calculation is called the "Limited Payment." Unless Sections 3(f) or 3(g) below requires me to pay a different amount, I will pay the Limited Payment.

(e) Additions / Reductions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from my unpaid principal.

(f) Limit on My Unpaid Principal; Increased Monthly Payment.

My unpaid principal can never exceed a maximum amount equal to ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%) of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

(g) Required Full Payment

On July 1, 2010, and on the same day every five years thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. At this time I will not have the option of paying the Limited Payment. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

4. NOTICES OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

Loan No.: 49792970

**7. LEGISLATION AFFECTING LENDER'S RIGHT**

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

**8. BORROWER'S FAILURE TO PAY AS REQUIRED**

(a) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(b) Accrual of Interest on Unpaid Balance

In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

(c) Default

If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

(d) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(e) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(f) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**11. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**12. SECURITY**

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: "Assumptions. During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

PAGE THREE

Loan No.: 49792970

### 13. CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

BORROWER(S):

_Deborah E. Johnson_, By _Gerald D. Johnson_,
as her attorney in fact

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

PAGE FOUR

FUN 11004

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

Loan No.: 49792970

## PREPAYMENT CHARGE RIDER TO
## NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated
May 5, 2005 by and between

Deborah E. Johnson, a married woman as her sole and separate property

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein
shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict
with any provision contained in the Note, the provisions hereof shall control.

1.    Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

"5. BORROWER'S RIGHT TO REPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only
is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am
doing so. I may make a full prepayment or partial prepayments.

Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ 168,000.00    (20
percent of the original loan amount; the "Permitted Prepayment") without penalty. During the first three
Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a
prepayment charge pursuant to the following schedule:

FIRST LOAN YEAR:      $ 25,200.00

SECOND LOAN YEAR:   $ 16,800.00

THIRD LOAN YEAR:       $ 8,400.00

After completion of the third Loan Year, there will be no prepayment charges for any full or partial
prepayments. As used in this Note, "Loan Year" means each year during the term of this Note
commencing thirty days before the first payment due date.

The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or
involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted
acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict
my right to prepay at any time without penalty, accrued but unpaid interest that has been added to
principal.

The Note Holder may require that any partial prepayments be made on the date monthly payments are due
and be in the amount of one or more monthly payments which would be applied towards principal. Any
partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the
principal balance of the Note which shall not relieve me of the obligation to make the installments each and
every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the
amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
My partial prepayment may reduce the amount of my monthly payments after the first Payment Change
Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset
by an interest rate increase."

2.    Partial Reduction and Deferral of Prepayment Charge

a.    Upon Borrower's written request at time of prepayment, Lender will provide Borrower with a credit in the
amount of $500.00 if an eligible new first trust deed loan that replaces this Loan ("New Loan" is obtained
from Lender. If this Loan is submitted by a mortgage broker, Lender shall waive an additional amount of
up to $500.00 in prepayment charges provided that the New Loan is submitted by the same mortgage
broker that originally submitted this Loan to Lender. Any credits hereunder shall be in the form either of
a reduction in the prepayment charge applicable to the New Loan or, at Borrower's option, a reduction in
the amount of the prepayment charge payable by Borrower upon payoff of this Loan.

b.    For purposes of this paragraph, eligible New Loans are as follows:

i.    Borrower either (a) obtains a new first trust deed loan from Lender secured by the same property
as this Loan (a refinance loan); or (b) obtains a new first trust deed loan from Lender secured by a
different property and pays off this Loan at the same time as the New Loan closes; and

ii.    The new loan must be subject to a prepayment charge for the first three years of the loan term;
and

FUN 16510 (2003-12-09)

Page 1

Loan No.: 49792970

iii. The prepayment charge on the New Loan will include the remaining dollar amount of the outstanding prepayment charge computed on this Loan, less the reduction referred to in Subsection a. above; and

iv. The New Loan terms will include an adjustment to the rate (if the new loan is a 3 year fixed rate interest-only product) or margin (if the new loan is a monthly ARM product) in an amount necessary to compensate the Lender on the new loan that is equivalent, in Lender's sole judgment, to the yield on this Loan.

c.  In the event that Borrower pays off this Loan in full, including payment of the prepayment charge, and within sixty days thereafter Borrower obtains a New Loan on another property from Lender, Borrower will be given a credit toward fees on the new loan in the amount referred to in Subsection a. above.

3.  Reduction of Prepayment Charge Upon Extension of New Loan to Buyer of Subject Property

At Borrower's and the buyer's written request, Lender will reduce the prepayment charge on this Loan by $500.00 ($1,000 if the same mortgage broker as Borrower used submits the loan from the buyer); if Borrower sells the property securing this Loan and the buyer finances the purchase with a new loan from Lender on the following terms and conditions:

a.  The new loan may NOT include a payment by Lender to Borrower, the buyer of the property secured by the deed of trust on this Loan, a mortgage broker or any other third parties; and

b.  The new loan must be subject to a prepayment charge on Lender's then current terms.

This provision does not constitute a commitment to make a new loan to Borrower or to any buyer of the subject property. Any new loan shall be subject to Lender's normal underwriting, credit review, appraisal, and other lending evaluation processes. This waiver applies only to the existing Loan, and not to any new loan.

4.  Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

_Deborah E. Johnson_ , _By Gerald _____, as her attorney in fact_

Deborah E. Johnson

# EXHIBIT "2"

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

Loan No. 49792970
Title Order No. 0707003629

Recorded at the Request of
Old Republic Title Company
Livermore



Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Old Republic Title**

CRROBERTA
5/16/2005
8:00:00

DOCUMENT: **2005048551**   Titles: 1/ Pages: 10

| | |
|---|---|
| Fees.... | 32.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $32.00 |

Space above this line for recorder's use

☐ CONSTRUCTION  ☒☒ NON-CONSTRUCTION
Deed of Trust and Assignment of Rents
ADJUSTABLE INTEREST RATE LOAN

THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND
MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL
(NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.

THIS DEED OF TRUST IS MADE ON        May 5, 2005                         The trustor is

**Deborah E. Johnson, a married woman as her sole and separate property**

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF
CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401
("Lender", "Note Holder" or" Beneficiary").

Borrower owes Lender the principal sum of
**EIGHT HUNDRED FORTY THOUSAND AND 00/100**

**Dollars (U.S. $ 840,000.00).**

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments,
with the full debt, if not paid earlier, due and payable on 06/01/2035. This Deed of Trust secures to Lender: (a) the repayment of the
debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with
interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and
agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction
loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance,
if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any
Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of
any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of
charges allowed by law for any statement regarding the obligation secured by this Deed of Trust.
For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in
trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following
described property located in **Monterey** County, California:

AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 1 PAGE

**010-126-022**

Which has the address of    **2nd Ave 2 NE of Dolores Street, Carmel, CA 93921**

("Property Address")

FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE

Loan No. 49792970

TOGETHER WITH all the improvements now or nereafter erected on the property and all present and future easements, rights, rights of way, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter made a part of the property. The following items are added to the Property description, and shall also constitute the Property covered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but no limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property.   All replacements and additions are also covered by this Deed of Trust.   Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the lien of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest**.  Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements**.  Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds**.  Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property.  Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.  Borrower agrees neither to abandon nor leave unattended the Property.  Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender.  All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee.  Lender shall have the right to hold all policies and renewals.  Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium.  If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note.  Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due.  The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

FUN 20102 (2003-11-12)
Page 2

(5) **Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) **Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) **Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called 'Impounds'. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future Impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) **Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property: or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) **Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) **Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) **Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) **Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) **Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

FUN 20103 (2003-11-12)

Page 3

Loan No. 49792970

(14) **Acceleration Clause; Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

(15) **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(16) **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

(17) **Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

(18) **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

(19) **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

(20) **Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

(21) **Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

(22) **Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

(23) **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

Case: 07-53614   Doc #: 19   Filed: 01/16/2008   Page 23 of 52

(24) **Default; Acceleration; Trustee's Sale upon Default.** For purposes of paragraph 14 and this paragraph 24, a "default" by Borrower shall mean a failure by Borrower to pay any monthly installment under the Note when due, or otherwise perform any obligation required by the Note, or a breach or default by Borrower of any of the provisions of the Deed of Trust, or a breach or default by Borrower under any other Deed of Trust, or other instrument secured by the property described in the Deed of Trust. Pursuant to paragraph 14 and this paragraph 24, in the event of a default by Borrower the entire principal amount outstanding under the Note and Deed of Trust and accrued interest thereon and late charges and other costs shall at once become due and payable at the option of the Note Holder without prior notice and regardless of any prior forbearings. Upon such a default by Borrower, Lender at its option may deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property described in the Deed of Trust. Lender shall also deposit with the Trustee the Deed of Trust and any notes and all documents evidencing expenditures secured thereby. If Lender invokes the power of sale and after the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, without demand on Borrower, Trustee may sell such Property at the time and place filed by such Trustee and such notice of sale, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to such rights as Borrower may have at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of such property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

(25) **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

(26) **Waiver of Statute of Limitations.** Time is of the essence in all of Borrower's obligations. To the extent permitted by law, Borrower waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

(27) **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. The right of inspection shall include, but is not necessarily limited to, the right to conduct tests upon and take samples of the soil, the air, and all other chemicals contained on the Property, within the subsurface of the Property, and in the air located upon the Property. If the Property is used for commercial or residential income purposes, at Lender's request Borrower shall deliver to Lender certified copies of all business records, a certified statement of gross and net annual income received from the Property during Borrower's previous fiscal year in such form and detail as Lender shall require, and any other financial statements or records relating to the Property.

(28) **Offsets.** No indebtedness secured by this Deed of Trust shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws), which Section provides:

"Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred with Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

(29) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which the Deed of Trust secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice, shall have the right to declare the indebtedness secured by the Deed of Trust, irrespective of the maturity date specified in the Note or notes, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

(30) **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

(31) **Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail, unless another method is required by law. The notice shall be sent to the Property address unless Borrower designates by notice a different address. Any notice to Lender must be given by first class mail to Lender's address stated above unless Lender designates a different address. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph, provided customary time for mail delivery shall have passed before such presumption is effective.

FUN 20105 (2003-11-12)

(32) **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

(33) **Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

(34) **Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

(35) **Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

(36) **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:
Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures; or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.
Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.
Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

(37) **Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99.499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

(38) **Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

(39) **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

(40) **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(41) **Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (I) a unit in, together with an undivided interest in the common interests of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (I) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owner Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation, By-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term 'extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or creation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further agrees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or may in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by landowners.

FUN 20107 (2003-11-12)

Loan 49792970

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

BORROWER(S):

_Deborah E. Johnson_ , _by Gerald D. Ja_____, as her attorney in fact

# ACKNOWLEDGMENT

STATE OF _California_                )
                                                          ) SS.
COUNTY OF _Monterey_             )

On _May 5, 2005_, before me, _Theresa Tiliaia Castro_,

personally appeared _Gerald D. Johnson_

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

> THERESA TILIAIA CASTRO
> Comm. # 1452741
> NOTARY PUBLIC - CALIFORNIA
> Monterey County
> My Comm. Expires Nov. 23, 2007

_Theresa Tiliaia Castro_ _(Seal)_

This Certificate must be attached to:

Title or type of Document: _Deed of Trust & Assignment of Rates._

Number of pages: _8_

Date of document: _May 5, 2005_

Signer(s) other than named above: _Deborah E. Johnson_

**Loan # 49792970**

Order No. : 0707003629

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Monterey, City of Carmel, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying Southerly of and contiguous with the Northerly boundary of Parcel A as said parcel is shown on the map above referred to.

END OF DOCUMENT

# EXHIBIT "3"

Official Form 6D (10/06)

In re    Deborah Elizabeth Johnson                                      Case No. _____
                                                    _____
                                                       Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing a "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H | W J | C | | | | | | |
| Account No. xxxxx2970 | | | | | First Mortgage | | | | | |
| First Federal Bank of California P.O. Box 80025 City Of Industry, CA 91716-8025 | | | W | | 2nd Avenue 2NE of Dolores Street Carmel, CA 93921 | | | | | |
| | | | | | Value $          1,300,000.00 | | | | 885,272.85 | 0.00 |
| Account No. xxxxxxxxxx6716 | | | | | Second Mortgage | | | | | |
| National City P.O. Box 856153 Louisville, KY 40285-6153 | | | W | | 2nd Avenue 2NE of Dolores Street Carmel, CA 93921 | | | | | |
| | | | | | Value $          1,300,000.00 | | | | 176,407.64 | 0.00 |
| Account No. xxxxx4010 | | | | | 2004 | | | | | |
| Union Bank of California P.O. Box 85643 San Diego, CA 92186-5643 | | | C | | Auto Loan 1999 Volvo V70 | | | | | |
| | | | | | Value $          4,500.00 | | | | 4,900.00 | 400.00 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |

|  | | |
|---|---|---|
| <u>   0   </u>  continuation sheets attached | Subtotal (Total of this page) | 1,066,580.49 | 400.00 |
| | Total (Report on Summary of Schedules) | 1,066,580.49 | 400.00 |

# EXHIBIT "4"

File No. 07120094 Page #1

# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
2nd Avenue 2NE of Dolores Street
Vol 14 Par Maps PG 58 Par B  (See Prelim.)
Carmel, CA 93921

### FOR:
First Federal Bank of California
401 Wilshire Blvd.
Santa Monica, CA  90401

### AS OF:
December 14, 2007

### BY:
Mark A. Bryant
First Federal Bank of California
401 Wilshire Blvd.
Santa Monica, CA 90401

| Borrower/Client | Johnson | | | File No. | 07120094 |
|---|---|---|---|---|---|
| Property Address | 2nd Avenue 2NE of Dolores Street | | | | |
| City Carmel | County Monterey | | State CA | Zip Code | 93921 |
| Lender First Federal Bank of California | | | | | |

## TABLE OF CONTENTS

Cover Page ............................................................................................................................................................... 1
Supplemental Addendum ............................................................................................................................................. 2
Exterior-Only .............................................................................................................................................................. 3
Additional Comparables 4-6 ........................................................................................................................................ 9
Subject Photos ........................................................................................................................................................... 10
Comparable Photos 1-3 .............................................................................................................................................. 11
Comparable Photos 4-6 .............................................................................................................................................. 12
Addendum .................................................................................................................................................................. 13

**Supplemental Addendum**

File No. 07120094 Page #2  
File No.    07120094

| Borrower/Client   Johnson | | | |
|---|---|---|---|
| Property Address  2nd Avenue 2NE of Dolores Street | | | |
| City  Carmel | County  Monterey | State  CA | Zip Code  93921 |
| Lender   First Federal Bank of California | | | |

IN ACCORDANCE WITH YOUR REQUEST, I HAVE PERSONALLY INSPECTED AND APPRAISED THE REAL PROPERTY AT:

### 2nd Avenue 2NE of Dolores Street

THE PURPOSE OF THIS APPRAISAL IS TO PROVIDE THE LENDER/CLIENT WITH AN ACCURATE, ADEQUATELY SUPPORTED OPINION OF THE MARKET VALUE OF THE SUBJECT PROPERTY.

THE SCOPE OF WORK FOR THE ACCOMPANYING APPRAISAL IS BASED UPON AT MINIMUM; (1) PERFORM A VISUAL INSPECTION OF THE EXTERIOR AREAS OF THE SUBJECT AT LEAST FROM THE STREET, (2) INSPECT THE NEIGHBORHOOD, (3) INSPECTION OF EACH OF THE COMPARABLES AT LEAST FROM THE STREET, (4) RESEARCH, VERIFY AND ANALYSE DATA FROM RELIABLE PUBLIC AND PRIVATE SOURCES, AND (5) REPORT HIS/HER ANALYSIS, OPINIONS AND CONCLUSIONS IN THIS APPRAISAL REPORT.  THE APPRAISER HAS NOT ATTEMPTED TO INDEPENDENTLY VERIFY THE EXISTANCE OF BUILDING PERMITS, FINAL INSPECTION REPORTS, CONDITIONAL USE PERMITS, VARIANCES OR OTHER LEGAL DOCUMENTS RELATED TO THE DEVELOPMENT OF THE SUBJECTS SITE AND IT'S IMPROVEMENTS.  THE APPRAISER IS NOT RESPONSIBLE FOR ANY ITEMS OF FACT CONTAINED IN PUBLIC RECORDS OR SOURCES DEEMED RELIABLE THAT ARE INCORRECT.  ANY DISCREPANCIES BETWEEN SOURCES AS TO THE DATA WAS RESOLVED TO THE APPRAISERS SATISFACTION.

THE VALUE CONCLUSIONS STATED HEREIN ARE OF THE EFFECTIVE DATE OF THIS APPRAISAL.  IN OUR OPINION, THE CONCLUSION OF MARKET VALUE AS OF THE ASCRIBED EFFECTIVE DATE IS:

## $1,050,000

THE VALUE CONCLUSIONS STATED HEREIN ARE "SUBJECT TO" REVISION IF NEW INFORMATION IS MADE AVAILABLE FROM INSPECTIONS, DISCLOSURE STATEMENTS, INACCURATE REAL ESTATE INFORMATION, OTHER DATA RECEIVED, REVIEWED, AND/OR SUBMITTED BY ANY PERSON OR ENTITY THAT WILL MATERIALLY AFFECT THE CONDITION OF THE PROPERTY AND/OR CONCLUSION OF VALUE.

THE APPRAISER PERFORMED AN EXTERIOR INSPECTION OF THE SUBJECT WHICH WAS MADE FROM THE "CURB" AND INCLUDES AN OBSERVATION OF THE IMPROVEMENTS FROM THE STREET OR SIDEWALK IN FRONT OF THE SUBJECT PROPERTY.  AN APPRAISER IS NOT AN EXPERT IN THE FIELD OF BUILDING INSPECTION, WOOD INFESTATION OR ENGINEERING.  AN EXPERT IN THE FIELD OF ENGINEERING AND/OR SEISMIC HAZARD DETECTION SHOULD BE CONSULTED IF AN ANALYSIS OF SEISMIC SAFETY AND SEISMIC STRUCTURAL SAFETY IS DESIRED.  THE APPRAISER SHOULD NOT BE RELIED UPON AS TO WHETHER SEISMIC PROBLEM EXISTS, OR DOES NOT ACTUALLY EXIST.  EXCEPT AS SPECIFICALLY INDICATED IN THIS APPRAISAL, NO REPORTS, DISCLOSURE STATEMENTS, CERTIFIED HAZARD ZONE REPORT, CONDOMINIUM DOCUMENTS, STUDIES AND/OR SURVEYS WERE PRESENTED AND/OR REVIEWED BY THIS APPRAISER THAT WOULD NEGATIVELY IMPACT THE PROPERTY OTHER THAN THOSE MENTIONED IN THE BODY OF THE REPORT.

ADDITIONALLY, THE EXISTANCE OF HAZARDOUS SUBSTANCES AND/OR MATERIAL WITHOUT LIMITATION THAT MAY BE PRESENT ON THE PROPERTY OR OTHER ENVIRONMENTAL CONDITIONS WERE NOT CALLED TO THE APPRAISERS ATTENTION NOR DID THE APPRAISER BECOME AWARE OF SUCH DURING THE INSPECTION.  THE APPRAISER HAS NO KNOWLEDGE OF SUBSTANCES AND/OR MATERIALS UNLESS OTHERWISE STATED.  THE APPRAISER DOES NOT PROCESS THE EXPERTISE TO TEST OR IDENTIFY HAZARDOUS SUBSTANCES OR ENVIRONMENTAL CONDITIONS THAT MAY AFFECT THE VALUE OF THE PROPERTY.  THE INDICATED VALUE IS PREDICATED ON THE ASSUMPTION THAT NO SUCH CONDITION EXISTS ON THE PROPERTY OR IN SUCH PROXIMITY TO CAUSE A LOSS IN VALUE.  NO RESPONSIBILITY IS ASSUMED.  THE CLIENT IS URGED TO RETAIN EXPERTS IN THE APPROPRIATE FIELDS TO CONSULT IN REGARDS TO HAZARDOUS SUBSTANCES OR MATERIALS.

QUESTIONS ABOUT HAZARDS INVOLVING THE SUBJECT PROPERTY SHOULD BE ANSWERED BY CONSULTING THE APPROPRIATE OFFICIAL MAP OR LOCAL FIRM DETERMINATION SERVICES.

THE INTENDED USER OF THIS REPORT IS THE ABOVE REFERENCED LENDER/CLIENT.  THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL .  SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL FORM, AND DEFINITION OF MARKET VALUE.  NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

THE VALUE CONCLUSIONS STATED HEREIN ARE AS OF THE EFFECTIVE DATE AS STATED IN THE BODY OF THE APPRAISAL, AND CONTINGENT UPON THE CERTIFICATION AND LIMITING CONDITIONS ATTACHED.  THE ATTACHED REPORT CONTAINS THE DESCRIPTION, ANALYSIS, AND SUPPORTIVE DATA FOR THE CONCLUSIONS, FINAL OPINION OF VALUE, DESCRIPTIVE PHOTOGRAPHS, LIMITING CONDITIONS AND APPROPRIATE CERTIFICATIONS.

Bryant Property Profile

File No. 07120094 Page #3

## Exterior-Only Inspection Residential Appraisal Report

07120094
File # 07120094

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 2nd Avenue 2NE of Dolores Street | City Carmel | State CA | Zip Code 93921 |
|---|---|---|---|---|

Borrower Johnson    Owner of Public Record Johnson    County Monterey

Legal Description Vol 14 Par Maps PG 58 Par B (See Prelim.)

Assessor's Parcel # 010 126 022 000    Tax Year 2006    R.E. Taxes $ 4,060.10

Neighborhood Name Carmel by the Sea    Map Reference 1153 EF1    Census Tract 0118.00

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ None Known    ☐ PUD    HOA $ ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Foreclosure

Lender/Client First Federal Bank of California    Address 401 Wilshire Blvd., Santa Monica, CA 90401

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). The subject has a listing box with flyers noted @ $1,195,000. This listing was not found on the local MLS.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. N/A - Not a purchase transaction

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid. N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 700 Low 10 | | 2-4 Unit | 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | | | | Multi-Family | % |
| Neighborhood Boundaries The subject neighborhood is the incorporated community of Carmel by the Sea | | | | 4.0+ High | 100+/- | Commercial | % |
| village. | | | | 1.0+ Pred. | 50+/- | Other | 15 % |

Neighborhood Description The subject neighborhood is primarily single family residences of average to good condition. Homes vary in age, style, condition, and appeal. Community parks, schools, shopping and employment centers are within the city and neighboring cities. Major employment locally and within minutes.

Market Conditions (including support for the above conclusions) Market conditions are stable in the Carmel community. The community is very desirable. The housing market has slowed to a more "normal" market. Interest rates remain competitive. Home sales marketing times within 1-6 months. Seller concessions minimal.

| Dimensions See Plat map on Title Report | Area 4,000 SF | Shape Rectangular | View Neighborhood Area |
|---|---|---|---|

Specific Zoning Classification R01    Zoning Description Single Family Residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No    FEMA Flood Zone X    FEMA Map # 0601960000    FEMA Map Date N/A

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No Known adverse site conditions or external factors stated above know to the appraiser. The appraiser cautions that he is not an expert in these conditions and suggests contracting a specialists if there are concerns. Lot is lightly sloped to the rear. Homes in this neighborhood are typically on sloped lots, many with filtered water views.

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☒ Other (describe) Exterior Inspection/Realquest    Data Source for Gross Living Area Realquest/MLS

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | Concrete Slab ☐ Crawl Space ☐ | ☐ FWA ☐ HWBB | ☒ Fireplace(s) # 1 | ☐ None | |
| # of Stories 2 Story | Full Basement ☐ Finished ☐ | ☐ Radiant | ☐ Woodstove(s) # | ☒ Driveway # of Cars 1 | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Partial Basement ☐ Finished ☐ | ☒ Other FS | ☒ Patio/Deck | Driveway Surface Asphalt | |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls Wood Siding | Fuel Electric | ☒ Porch | ☒ Garage # of Cars 1 | |
| Design (Style) Traditional | Roof Surface Comp Shingle | ☐ Central Air Conditioning | ☒ Pool Per Realque | ☐ Carport # of Cars | |
| Year Built 1933 | Gutters & Downspouts Yes | ☐ Individual | ☒ Fence Wood | ☐ Attached ☐ Detached | |
| Effective Age (Yrs) 35 | Window Type Sliders | ☐ Other | ☒ Other Landscaping ☒ Built-in | | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☒ Washer/Dryer ☒ Other (describe) Assumed/DB Appraisal

Finished area above grade contains:    6 Rooms    2 Bedrooms    1.5 Bath(s)    1,188 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) Addition features are unknown to the appraiser as the assignment is a driveby appraisal. Data was extracted from Realquest/MLS and a dated appraisal supplied by the Bank.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).The condition of the property appeared fair/average for the neighborhood.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe.

There are no known physical deficiencies or adverse conditions that would affect the livability of the home. The appraiser notes that an interior inspection was not completed and that he is not an expert in such conditions. An expert should be consulted if there are concerns.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

The subject property conforms to the neighborhood.

| Freddie Mac Form 2055 March 2005 | Page 1 of 6 | Fannie Mae Form 2055 March 2005 |
|---|---|---|

File No. 07120094 Page #4

# Exterior-Only Inspection Residential Appraisal Report

07120094
File # 07120094

There are __11__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 947,000 to $ 1,695,000
There are __24__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 895,000 to $ 1,376,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2nd Avenue 2NE of Dolores Street | 2nd Ave 2SE of Dolores | | 0 Santa Rita St. | | 3 NE Lincoln/ 4th | |
| | Carmel, CA 93921 | Carmel, CA 93921 | | Carmel, CA 93921 | | Carmel, CA 93921 | |
| Proximity to Subject | | Across the street | | Approx. .39 mile | | Approx. .33 mile | |
| Sale Price | $ N/A | | $ 1,100,000 | | $ 1,080,000 | | $ 1,100,000 |
| Sale Price/Gross Liv. Area | $ N/A sq.ft. | $ 796.52 sq.ft. | | $ 900.00 sq.ft. | | $ 1157.89 sq.ft. | |
| Data Source(s) | | MLS/#665494/Realquest | | MLS#722656/Realquest | | MLS#750874/Realquest | |
| Verification Source(s) | | Ext. Inspection/Realquest | | Ext. Inspection/Realquest | | Ext. Inspection/Realquest | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | LP $1,325,000 | | LP $1,150,000 | | LP $1,069,000 | |
| Concessions | | DOM 281 Days | | DOM 43 Days | | DOM 14 Days | |
| Date of Sale/Time | | 09/06/07 COE | | 07/25/07 COE | | 10/19/07 COE | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 4,000 SF | 4,000 SF | | 6,000 SF | -20,000 | 4,000 SF | |
| View | Neighborhood A | Neighborhood A | | Neighborhood A | | Neighborhood A | |
| Design (Style) | Traditional | Traditional | | Traditional | | Tudor/Superior | -50,000 |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 74 | 99 | | 88 | | 99 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 6 / 2 / 1.5 | 6 / 2 / 2 | -10,000 | 6 / 2 / 1 | +10,000 | 6 / 2 / 2 | -10,000 |
| Gross Living Area | 1,188 sq.ft. | 1,381 sq.ft. | -17,000 | 1,200 sq.ft. | | 950 sq.ft. | +21,000 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FS-Electric | FAU | -2,000 | Wall/Similar | | Wall/Similar | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Car Garage | 2 Car Garage | -20,000 | 2 Car Garage | -20,000 | No Garage | +20,000 |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| Landscaping | Landsc.Avg. | Landsc.Avg. | | Landsc.Avg. | | Landsc.Avg. | |
| Fireplace | 1 FP | 1 FP | | 1 FP | | 1 FP | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 49,000 | ☐ + ☒ - | $ 30,000 | ☐ + ☒ - | $ 19,000 |
| Adjusted Sale Price | | Net 4.5 % | | Net 2.8 % | | Net 1.7 % | |
| of Comparables | | Gross 4.5 % | $ 1,051,000 | Gross 4.6 % | $ 1,050,000 | Gross 9.2 % | $ 1,081,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Paragon/MLS/Realquest
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Paragon MLS/Realquest
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None | None | None | None |
| Price of Prior Sale/Transfer | None | None | None | None |
| Data Source(s) | Realquest/MLS | Realquest/MLS | Realquest/MLS | Realquest/MLS |
| Effective Date of Data Source(s) | 12/14/07 | 12/14/07 | 12/14/07 | 12/14/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Based on past sales information for all comparables, property values
have increased and show good appreciation for the neighborhood community. The neighborhood is stable with minimal sales activity.
I have researched, verified, analyzed and reported on any current agreement of sale for the subject property, and offering for sale of the subject in
the 36 months prior to the effective date of the appraisal, and the prior sales of the subject property for a minimum of three years prior to the
effective date of the appraisal, unless otherwise indicated in this report.

Summary of Sales Comparison Approach    All comparables were extracted from the subjects community and give a value range for the subject. Reinfolink
MLS and Realquest were searched for applicable closed sales. Active listings and pendings sales were also evaluated. The comparables used in the
report were deemed appropriate for the assignment based on location, physical characteristics, condition and appeal. C1-3 are closed sales.
C4 & 5 are active listings. As adjusted, the comparable sales give a value range of $1,050,000 - $1,081,000. Comps were weighted evenly. Living
square foot adjustment were given at approx $90.00/SF. Lot adjustments were adjusted based on the utility and markets reaction. A reasonable
opinion of value set towards the low range @ $1,050,000.

Indicated Value by Sales Comparison Approach $ 1,050,000
Indicated Value by: Sales Comparison Approach $ 1,050,000    Cost Approach (if developed) $ N/A    Income Approach (if developed) $

The sales comparison approach was the only approach to value given, utilized and recognized as applicable to the assignment.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,050,000 , as of    December 14, 2007 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005    Page 2 of 6    Fannie Mae Form 2055 March 2005

File No. 07120094 Page #5

# Exterior-Only Inspection Residential Appraisal Report    File # 07120094

07120094

| | |
|---|---|
| ADDITIONAL COMMENTS | The appraiser notes that although the actual ages vary the effective ages appear similar, therefore no age adjustments have been used. |

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    N/A - The cost approach is no longer required.

| COST APPROACH | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | =$ |
| Source of cost data | DWELLING | Sq.Ft. @ $ | | =$ |
| Quality rating from cost service        Effective date of cost data | | Sq.Ft. @ $ | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | =$ |
| Cost Approach no longer required nor relied on. | Garage/Carport | Sq.Ft. @ $ | | =$ |
| | Total Estimate of Cost-New | | | =$ |
| | Less        Physical | Functional | External | |
| | Depreciation | | | =$( ) |
| | Depreciated Cost of Improvements | | | =$ |
| | "As-is" Value of Site Improvements | | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)        Years | INDICATED VALUE BY COST APPROACH | | | =$ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| INCOME | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $        N/A        X Gross Rent Multiplier        = $ | | | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM)        N/A | | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

| PUD INFORMATION | |
|---|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached | |
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | |
| Legal Name of Project | |
| Total number of phases        Total number of units        Total number of units sold | |
| Total number of units rented        Total number of units for sale        Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source(s) | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion. | |
| | |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options. | |
| Describe common elements and recreational facilities. | |

Freddie Mac Form 2055 March 2005                Page 3 of 6                Fannie Mae Form 2055 March 2005

Form 2055 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07120094 Page #6

07120094
File # 07120094

## Exterior-Only Inspection Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal assignment is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

File No. 07120094 Page #7

**Exterior-Only Inspection Residential Appraisal Report**    07120094
File # 07120094

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

File No. 07120094| Page #8

## Exterior-Only Inspection Residential Appraisal Report   File # 07120094

07120094

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  Mark A. Bryant | Signature |
| Name  Mark A. Bryant | Name |
| Company Name  Transunion SSI | Company Name |
| Company Address  11290 Point East Drive Suite 220 | Company Address |
| Rancho Cordova, CA 95742 | |
| Telephone Number  925-550-9137 | Telephone Number |
| Email Address | Email Address |
| Date of Signature and Report  December 16, 2007 | Date of Signature |
| Effective Date of Appraisal  December 14, 2007 | State Certification # |
| State Certification #  AR016173 | or State License # |
| or State License # | State |
| or Other (describe)  _____ State # _____ | Expiration Date of Certification or License |
| State  CA | |
| Expiration Date of Certification or License  3/23/2008 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 2nd Avenue 2NE of Dolores Street | ☐ Did inspect exterior of subject property from street |
| Carmel, CA 93921 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,050,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name  Jody Johnson | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  First Federal Bank of California | ☐ Did inspect exterior of comparable sales from street |
| Company Address  401 Wilshire Blvd., Santa Monica, CA 90401 | Date of Inspection |
| Email Address  jjohnson@ffbca.com | |

Freddie Mac Form 2055 March 2005        Page 6 of 6        Fannie Mae Form 2055 March 2005

File No. 07120094 Page #9

07120094
File # 07120094

## Exterior-Only Inspection Residential Appraisal Report

| · FEATURE | SUBJECT · | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 2nd Avenue 2NE of Dolores Street<br>Carmel, CA 93921 | 3 6th St.<br>Carmel, CA 93921 | | 2 SW 6th/Santa Rita Ave.<br>Carmel, CA 93921 | | | |
| Proximity to Subject | | Approx. .39 mile | | Approx. .33 mile | | | |
| Sale Price | $           N/A | | $      1,175,000 | | $      1,047,000 | | $ |
| Sale Price/Gross Liv. Area | $      N/A sq.ft. | $    867.16 sq.ft. | | $  1495.71 sq.ft. | | $           sq.ft. | |
| Data Source(s) | | MLS#708166/Realquest | | MLS#745153/Realquest | | | |
| Verification Source(s) | | Ext. Inspection/Realquest | | Ext. Inspection/Realquest | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | OLP $1,350,000 | | LP $1,298,000 | | | |
| Concessions | | DOM 299 Days | | DOM 126 Days | | | |
| Date of Sale/Time | | Active Listing | -100,000 | Active Listing | -100,000 | | |
| Location | Average | Average | | Average | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 4,000 SF | 4,200 SF | | 2,600 | +20,000 | | |
| View | Neighborhood A | Neighborhood A | | Neighborhood A | | | |
| Design (Style) | Traditional | Traditional | | Traditional | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 74 | 57 | | 79 | | | |
| Condition | Average | Average | | Average | | | |
| Room Count | Total 6 | Bdrms. 2 | Baths 1.5 | Total 6 | Bdrms. 2 | Baths 1 | +10,000 | Total 4 | Bdrms. 1 | Baths 1 | +40,000 | Total | Bdrms. | Baths |
| Gross Living Area | 1,188 sq.ft. | 1,355 sq.ft. | -15,000 | 700 sq.ft. | +44,000 | sq.ft. | |
| Basement & Finished | None | None | | None | | | |
| Rooms Below Grade | None | None | | None | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | FS-Electric | FAU | -2,000 | FAU | -2,000 | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 1 Car Garage | 1 Car Garage | | No Garage | +20,000 | | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | | |
| Landscaping | Landsc.Avg. | Landsc.Avg. | | Landsc.Avg. | | | |
| Fireplace | 1 FP | 1 FP | | 1 FP | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $    107,000 | ☒ + ☐ - | $    42,000 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net 9.1 % | | Net 4.0 % | | Net % | |
| of Comparables | | Gross 10.8 % | $  1,068,000 | Gross 23.5 % | $  1,089,000 | Gross % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | None | None | | |
| Price of Prior Sale/Transfer | None | None | | |
| Data Source(s) | Realquest/MLS | Realquest/MLS | | |
| Effective Date of Data Source(s) | 12/14/07 | 12/01/07 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 2055 March 2005

Fannie Mae Form 2055 March 2005

File No. 07120094| Page #10

## Subject Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Johnson | | | |
| Property Address | 2nd Avenue 2NE of Dolores Street | | | |
| City | Carmel | County Monterey | State CA | Zip Code 93921 |
| Lender | First Federal Bank of California | | | |



**Subject Front**

2nd Avenue 2NE of Dolores Street
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,188 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.5 |
| Location | Average |
| View | Neighborhood Area |
| Site | 4,000 SF |
| Quality | Average |
| Age | 74 |



**Subject Street**

Form PICPIX.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07120094 Page #11

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client Johnson | | | |
| Property Address 2nd Avenue 2NE of Dolores Street | | | |
| City Carmel | County Monterey | State CA | Zip Code 93921 |
| Lender First Federal Bank of California | | | |



### Comparable 1

2nd Ave 2SE of Dolores

| | |
|---|---|
| Prox. to Subject | Across the street |
| Sale Price | 1,100,000 |
| Gross Living Area | 1,381 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Average |
| View | Neighborhood Area |
| Site | 4,000 SF |
| Quality | Average |
| Age | 99 |



### Comparable 2

0 Santa Rita St.

| | |
|---|---|
| Prox. to Subject | Approx. .39 mile |
| Sale Price | 1,080,000 |
| Gross Living Area | 1,200 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1 |
| Location | Average |
| View | Neighborhood Area |
| Site | 6,000 SF |
| Quality | Average |
| Age | 88 |



### Comparable 3

3 NE Lincoln/ 4th

| | |
|---|---|
| Prox. to Subject | Approx. .33 mile |
| Sale Price | 1,100,000 |
| Gross Living Area | 950 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Average |
| View | Neighborhood Area |
| Site | 4,000 SF |
| Quality | Average |
| Age | 99 |

File No. 07120094 | Page #12

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client   Johnson | | | |
| Property Address  2nd Avenue 2NE of Dolores Street | | | |
| City   Carmel | County  Monterey | State  CA | Zip Code  93921 |
| Lender   First Federal Bank of California | | | |



### Comparable 4

3 6th St.

| | |
|---|---|
| Prox. to Subject | Approx. .39 mile |
| Sale Price | 1,175,000 |
| Gross Living Area | 1,355 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1 |
| Location | Average |
| View | Neighborhood Area |
| Site | 4,200 SF |
| Quality | Average |
| Age | 57 |



### Comparable 5

2 SW 6th/Santa Rita Ave.

| | |
|---|---|
| Prox. to Subject | Approx. .33 mile |
| Sale Price | 1,047,000 |
| Gross Living Area | 700 |
| Total Rooms | 4 |
| Total Bedrooms | 1 |
| Total Bathrooms | 1 |
| Location | Average |
| View | Neighborhood Area |
| Site | 2,600 |
| Quality | Average |
| Age | 79 |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

File No. 07120094| Page #13|



Business, Transportation & Housing Agency

## OFFICE OF REAL ESTATE APPRAISERS

# REAL ESTATE APPRAISER LICENSE

OREA APPRAISER IDENTIFICATION NUMBER    AR016173

## MARK A. BRYANT

has successfully met the requirements for a license as a residential real estate appraiser in the State of California and is, therefore, entitled to use the title "Certified Residential Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

Audit No.    77038

OFFICE OF REAL ESTATE APPRAISERS

Date Issued: March 24, 2006
Date Expires: March 23, 2008

STATE OF CALIFORNIA

THIS DOCUMENT CONTAINS A TRUE WATERMARK - HOLD UP TO LIGHT TO SEE "SAFE" AND "VERIFY FIRST"

Form SCA — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# EXHIBIT "5"

1 | DEVIN DERHAM-BURK, CHAPTER 13 TRUSTEE - DIVISION 5 #104353
    MAILING ADDRESS:    P.O. BOX 50013
2 |                     SAN JOSE, CA 95150-0013

3 | TELEPHONE:    (408) 354-4413
    FACSIMILE:    (408) 354-5513

4 |
5 |                    **UNITED STATES BANKRUPTCY COURT**
                 **NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5**
6 |
    IN RE:                                    CHAPTER 13 CASE NO. 07-5-3614MM
7 | DEBORAH ELIZABETH JOHNSON             FIRST AMENDED
                                          TRUSTEE'S OBJECTION TO CONFIRMATION
                                          WITH CERTIFICATE OF SERVICE
8 | Debtor(s)                             Pre-Hearing Conference Date: FEBRUARY 22, 2008
                                          Pre-Hearing Conference Time: 10:00AM
                                          Judge: Morgan
9 |                                       Pre-Hearing Conference Place: U.S. Bankruptcy Court, Salinas

10 | Devin Derham-Burk, Trustee in the above matter, objects to the Confirmation of this 0% Plan for
     the following reasons:

11 |
12 | 1. The debtor does not qualify for Chapter 13 pursuant to 11 U.S.C. Section 109(e). The debtor
     has scheduled secured debt totaling $1,066,580.49.

13 | 2. The plan is in violation of 11 U.S.C. Section 1322(d) in that the term exceeds 999 months.

14 | 3. The debtor has failed to propose to make any monthly plan payments to the Trustee pursuant
15 | to paragraph 1 of the Plan. The Trustee requests clarification.

16 | 4. The debtor has failed to file a Statement of Current Monthly Income and Calculation of
     Commitment Period and Disposable Income. The Trustee is unable to completely analyze the
17 | petition without this information.

18 | 5. The debtor has failed to provide the Trustee with a copy of her most recently filed federal
     income tax return. The Trustee is unable to recommend the case for confirmation until the
19 | debtor provides the Trustee with a copy of her 2006 federal income tax return.

20 | 6. The debtor has failed to provide the Trustee with copies of her pay advices for the 60 days
     preceding the filing of the petition from her employment with J. Jill. The Trustee is unable to
21 | recommend the case for confirmation until these documents are provided.

22 | 7. Creditors would receive more under a Chapter 7 liquidation, 11 U.S.C. Section 1325(a)(4).
     There is equity in the debtor's real property of approximately $21,069.51. Therefore, unsecured
23 | creditors cannot receive less than 27 cents on the dollar. Based on the above, the Trustee
     requests debtor file an Amended Plan to increase the dividend to unsecured creditors
24 | accordingly.

25 | 8. The debtor has failed to list her gross yearly income for the two years immediately preceding
     this filing under question #1 of the Statement of Financial Affairs. Therefore, the Trustee requests
26 | debtor file an Amended Statement of Financial Affairs to provide this information. The debtor
     must also list her non-filing spouse's year to date and gross yearly income for the two years
27 | immediately preceding this filing.

9. The Standing Trustee objects to confirmation of the debtors plan on the grounds that debtor has failed to submit to a mandatory examination at a Meeting of Creditors. This objection is based upon the following grounds.

a) 11 U.S.C. §341 requires the United States trustee to hold and conduct a Meeting of Creditors at which the debtors must appear. 11 U.S.C. §1302(a) provides that a qualified individual appointed under 28 U.S.C. §586(b) to serve as the standing trustee shall serve as trustee in the case. Devin Derham-Burk is the appointed standing trustee and serves as the trustee in the instant case. Therefore, it is the duty of Ms. Derham-Burk to preside at the Meeting of Creditors. 11 U.S.C. §343 provides that the standing trustee or the United States trustee, among others, may examine the debtor under oath at the Meeting of Creditors. Bankruptcy Rule 2003(b)(1) requires the trustee to examine the debtor under oath at the Meeting of Creditors. Bankruptcy Rule 2004(b) provides that the examination of the debtor may address the liabilities and financial condition of the debtor, any matter which may affect the administration of the estate, and any other matter relevant to the case or the formulation of a plan.

b) 11 U.S.C. §343 requires the debtors to appear and submit to an examination under oath at a Meeting of Creditors. Bankruptcy Rule 4002 requires the debtor to attend and submit to an examination at times ordered by the Court. In conformity with Section 343 and Rule 4002, the debtor was served with an *Order Establishing Procedures & Chapter 13 Notice for Meeting of Creditors,* wherein the debtors were ordered to appear at a Meeting of Creditors and was notified of the scheduled date for the required appearance.

c) In addition to the above duties, under 11 U.S.C. §521(3) the debtor has a duty to cooperate with the standing trustee as necessary to enable the standing trustee to perform her duties as trustee under the Bankruptcy Code.

d) 11 U.S.C. §1302(b)(2)(B) requires the standing trustee to appear and be heard at the hearing concerning confirmation of a plan. Additionally, 11 U.S.C. §1302(b)(1) imposes upon the standing trustee the duty under 11 U.S.C. §704(4) to investigate the financial affairs of the debtors. Taken in their totality, the standing trustee is charged with appearing at a plan confirmation hearing to make a recommendation to the court whether or not the debtors' plan meets the tests for confirmation.

e) Based upon the debtors' failure to appear at the Meeting of Creditors, the standing trustee has not been able to examine the debtor under oath, nor has she been able to determine fully whether the debtors' plan meets the tests for confirmation. Having been prevented from complying with her duty to investigate the debtor, and not having sufficient information to make a recommendation for confirmation, the standing trustee requests that confirmation be denied and that the debtor be ordered to appear at a rescheduled Meeting of Creditors upon penalty of dismissal of the case. Alternatively, the standing trustee requests that the case be dismissed for debtor's failure to cooperate as set forth above.

10. The debtor has failed to cooperate with the Standing Trustee as required under 11 U.S.C. Section 521(3) in that the debtor has failed to verify his/her identity and/or Social Security Number. Under 11 U.S.C. Section 1302(b)(1) the Standing Trustee has a duty to investigate the financial affairs of the debtor. Identity and the debtor's Social Security Number are key elements of the debtor's financial transactions. In order to verify that the financial information provided by the debtor relates to the name and Social Security Number provided on the petition the Standing Trustee requests that all debtors provide her with verification of identity and Social Security Number.

Case. 07-53614   Doc #: 13   Filed 01/28/2008   Page 49 of 52
draft pleading legal dds objection – Page 2 of 4
[c:\documents and settings\hansen\my documents\attorneys\pro-se debtors\johnson 0753614 01.doc]

1   THE TRUSTEE STRONGLY RECOMMENDS DEBTOR CONTACT AN EXPERIENCED CHAPTER 13 ATTORNEY
FOR ASSISTANCE.  DEBTOR'S FAILURE TO COMPLY WITH THE BANKRUPTCY CODE MAY RESULT IN
2   DISMISSAL OF THE CASE.

3

4

5   Dated: December 26, 2007

6                                       /s/ Devin Derham-Burk
                                       #104353 CHAPTER 13 TRUSTEE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Case 5:07-53614    Doc # 13    Filed 12/16/2008    Page 30 of 52
form pleading legal dds objection -- Page 3 of 4
[c:\documents and settings\hhansen\my documents\attorneys\pro-se debtors\johnson 0753614 01.doc]

1    ·CERTIFICATE OF SERVICE BY MAIL
[B.R. 7005, F.R.C.P. 5]

2        I am not less than 18 years of age and not a party to the within case.  My business address is 983 University Avenue, Bldg C Suite 100, Los Gatos, California 95032. I am familiar with

3    the processing of correspondence for mailing with the United States Postal Service. Correspondence placed in the internal mail collection system at the Office of Devin Derham-

4    Burk, Chapter 13 Standing Trustee is deposited with the United States Postal Service that same day in the ordinary course of business.  I am aware that on motion of the party served, service is

5    presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

6        On December 26, 2007, a true and accurate photo-copy of the following described document,

7

8    •   OBJECTION TO CONFIRMATION

9    was placed for service, in the Trustee's internal mail collection system, in a sealed envelope to be delivered by mail with the with the United States Postal Service with postage prepaid,

10   postage addressed as follows:

11           Deborah Johnson                              Pro-Se Debtor
             P O Box 4448

12       Carmel By the Sea, CA  93921

13        In addition to the foregoing, if any of the following are checked, service at the addresses

14   and/or fax numbers noted above was also completed by:
     ___ Facsimile Transmission

15   ___ Federal Express
     ___ Certified Mail

16   ___ Personal hand Delivery
     ___ Express mailing

17

         I declare under penalty of perjury under the laws of the United States of America and of
18   the State of California that the foregoing is true and correct and that this declaration was
     executed on December 26, 2007, at Los Gatos, California.

19

20                                                  _____/s/ Lesley M. Hansen_____

21                                                          #5911

22

23

24

25

26

27

[c:\documents and settings\hansen\my documents\attorneys\pro-se debtors\johnson 0753614 01.doc]

1

## PROOF OF SERVICE

2
       I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is Hemar, Rousso &

3
Heald, , LLP ("the business") 15910 Ventura Blvd., 12th Floor, Encino, CA 91436-2829.

4
       I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be

5
deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

6
       On January 16, 2008, I served the following document described as **MOTION**

7
**FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF CAROL A. BAXTER AND MARK A. BRYANT IN SUPPORT**

8
**THEREOF** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

9

10
**Chapter 13 Trustee**            **Debtor**

11
Devin Derham-Burk           Deborah Elizabeth Johnson
Chapter 13 Trustee            P.O. Box 4448

12
P.O. Box 50013              Carmel By The Sea, CA 93921-4448
San Jose, CA 95150-0013

13

14
**Office of the United States Trustee**   **Lienholder**
U.S. Federal Building           National City

15
280 S. 1st Street, #268         P.O. Box 856153
San Jose, CA 95113           Louisville, KY 40285-6153

16

17
<u>XX</u>   **(By First Class Mail)** At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date

18
following ordinary business practices.

19
___   **(Via Hand Delivery)** I delivered such envelope(s) by hand to the offices of the

20
      addressees.

21
___   **(Via E-Mail)** I caused such copies to be emailed to the person(s) set forth.

22
<u>XX</u>   (Federal) I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the bar of this court at whose

23
      direction the service was made.

24
      Executed on January 16, 2008, at Encino, California.

25

26
                    MARY ANN GRANZOW

27

28