Deborah E. Johnson
P.O.Box 4448
Carmel, California 93921-4448
Telephone: 831-622-0132

Gerald D. Johnson (Pro Se, filing party)
P.O.Box 4448
Carmel, California 93921-4448
Telephone: 831-622-0132
E-mail: aprgdj@cs.com

Plaintiffs



# United States District Court

## North District Of California

### San Jose Division

| | |
|---|---|
| Deborah E. Johnson and Gerald D. Johnson, | Case No.**C08 00264 PVT** |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | **FOR MORTGAGE & BANK FRAUD** |
| | **FRAUDULENT TRANSFER,** |
| First Federal Bank Of California | **TRUTH IN LENDING ACT &** |
| Defendant. | **RESCISSION VIOLATIONS,** |
| | **FOR RELIEF & DAMAGES** |
| | **JURY TRIAL DEMAND** |

1.      Jurisdiction.  This Court has jurisdiction because the Defendant has violated the Federal

Truth and Lending Act (TILA), bank and mortgage fraud laws, California State contract and

right of rescission laws among other Federal and State laws in regard to the Plaintiffs primary

residence, 2nd Avenue 2NE of Dolores Street, which is located in the City of Carmel in Monterey

County.

2.      Venue.  Venue is appropriate in this Court because subject property is located within

this district, Plaintiffs were contacted by an agent working on behalf of Defendant while residing

in this district, documents presented to Plaintiffs were presented or delivered to Plaintiffs within

this venue.

3.    Intradistrict Assignment. This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of the events, actions and damages which give rise to this lawsuit occurred in Monterey County.

4.    Plaintiffs, Deborah E. Johnson and Gerald D. Johnson, will prove with documents produced by Defendant, First Federal Bank of California, and other entities working for or under the direct supervision of the Defendant willfully and with intent to deceive, omitted, misrepresented and made material misstatements to commit mortgage fraud, bank fraud and fraudulently transfered the subject property into Defendant's name in an attempt to extinguish Plaintiffs' rights to rescind the contract. The Defendant was aware, through its Predatory Lending tactics and Home Ownership and Equity Protection Act (HOEPA) violations, Plaintiffs would be unable to fullfill the fraudulent contract, which is a violation of California State law, and that contract became the instrument used by the Defendant to take the Plaintiffs' property. The fraudulent transfer is currently being challenged in a counter suit to an unlawful detainer action filed by the Defendant in California State Superior Court.

5.    There are violations of the Truth In Lending Act in regards to material disclosures and right to rescind for Plaintiff, Gerald D. Johnson, which documents will prove his ownership rights in the subject property. Plaintiff, Deborah E. Johnson's right to rescind the contract is based on the fraud created at inception with the security instrument per California Law.

6.    The Defendant, in directing other entities to create an enterprise, has committed at least 3 related acts of fraud, misrepresentations and misstatements while using the mail and wire networks in commiting those acts. Defendant's actions come under the RICO Act for organized fraud. The Defendant has used bank funds in a scheme to defraud Plaintiffs and a financial institution for money and property. The Defendant's actions have occurred over a 30 month period and resulted in the taking of money and property by fraud.

**2**

Case No. C08 00264 PVT

7.    Defendant has misrepresented and made material misstatements in relation to financial
information to the Plaintiffs and the U.S Federal Bankruptcy Court as to the amount owed on the
subject property or what was owed to make the debt current.

8.    Defendant has violated Federal and State "Rescission Laws", California Common Law
as it relates to contracts obtained through fraud. Conclusive evidence of fraud was discovered
by Plaintiffs after reviewing mortgage documents in what Plaintiffs thought was initially a Predatory
Lending case which has now escalated into fraud with this amended complaint.

## STATEMENT OF FACTS

1.    Defendant qualified Plaintiffs for the loan on their primary residence located at 2nd
Avenue 2NE of Dolores Street in Carmel, California, based on the income of Plaintiff, Gerald D.
Johnson, which was $155,000.00 for year 2005, Plaintiff, Deborah E. Johnson, was residing out
of state from January thru June 2005 and did not earn any income during that period. Exhibit "A"
is the escrow documents from Old Republic Title addressed to Plaintiff, Gerald D. Johnson,
prepared on May 5, 2005 with instructions to remove Gerald D. Johnson from title of their primary
residence.    Exhibit "B" is the "Borrower/Escrow Instructions" from Old Republic Title of which
page 4 of 5 list the conditions to be met prior to funding, one item notes "the level of debt too high
(cards are maxed out)" and the other item, "Certified Copy of Quit Claim Deed". As noted at the
top of page 4 of 5, these are conditions from Defendant to Plaintiffs and must be met prior to
funding. These conditions and the removal of Plaintiff, Gerald D. Johnson, from title were first
presented to Plaintiffs at signing on May 5, 2005. Exhibit "C" is the list of credit accounts under
Plaintiff, Gerald D. Johnson, 9 months prior to the May 5, 2005 closing date with Defendant,
the total unsecured debt is $109,552.00  Plaintiff, Gerald D. Johnson's, unsecured debts listed in
Exhibit "C" were removed from the loan application, while his income was included on the

Case No. C08 00264 PVT

application. Defendant's employee, Tom Kronlage, is listed on all escrow documents at the inception of the contract to defraud Plaintiffs while utilizing bank funds.

2.      Exhibit "D" is the Old Republic Title Company's preliminary title report for the Plaintiffs primary residence, which clearly shows Plaintiff, Gerald D. Johnson, on title as joint tenant, this document was used as part of the closing documents on May 5, 2005. Exhibit "E" is the loan application used as part of the closing documents, this was produced by the agent working on behalf of the Defendant. On page 1 of 5, Plaintiff, Gerald D. Johnson, is named in the section titled "Title Will Be Held In What Names". Exhibit "F" is the previous mortgage note and statement from Novastar Home Mortgage that was faxed to the agent working on behalf of the Defendant at the request of the Defendant. The Plaintiff, Gerald D. Johnson, is clearly indicated on both documents. These documents, all produced by others, provides clear evidence of Plaintiff, Gerald D. Johnson's ownership interest and his right to all material disclosures and right to rescind any security instrument placed on the property.

3.      Exhibit "G" is the fax communications between Plaintiff and Defendant in regards to the rescission of the loan on May 5, 2005 after Plaintiff, Gerald D. Johnson, was removed from the loan documents at signing. Plaintiffs were called by Defendant and convinced that the removal of Plaintiff, Gerald D. Johnson, was necessary to receive a "favorable loan with his credit score" and is a "common business practice". The rescission, as noted in the fax communication cover sheet from Plaintiff to an employee working for Defendant, was not signed in error and represented only one party to the transaction, Plaintiff, Deborah E. Johnson. Plaintiff, Gerald D. Johnson, was never provided with or signed material disclosures and was not presented with 2 forms for his right to rescind the loan. The contract was rescinded. Defendant's employee, Darlene Phung, was in communication with Plaintiffs during this period.

4

4.      Plaintiffs' Exhibit "H" contains 5 written correspondences from Defendant that covers a time period from April 23, 2007 to June 18,2007 with 5 different payment amounts required to bring the account current after being late for one payment in April.  The payments were in the amounts of $3,930.89, $16,237.82, $13,102.77, $16,472.66 and $14,635.94.  These different payment amounts were given to Plaintiffs by phone and in writing from Defendant in response to phone calls from Plaintiffs to get an accurate amount to bring the account current.  Plaintiffs listed their property for sale in July 2007 after failing to establish an accurate amount to bring the account current or refinance.

5.      Exhibit "I" contains the written statement by Defendant's employee in Plaintiffs' Bankruptcy Court case.  Defendant's employee states that Plaintiff, Deborah E. Johnson, is in arrearage in payments for 8 months for $77,038.79 as of November 2007 or $80,919.72 as of the filing of the Bankruptcy case motion in January 2008 and Plaintiff, Deborah E. Johnson's, payments are $3,661.26 per month ( 8 months x $3,661.26 = $29,290.08), late fees would amount to over $50,000.00 to bring the account current, minus the $3,000.00 for attorney fees.  These figures are from the Declaration under penalty of perjury by Carol A. Baxter, Defendant's employee located on page 9, item 10 of Exhibit "I".  This is a clear misrepresentation of the amount owed.

6.      Plaintiffs were made aware of the fraudulent transfer on March 4, 2008 at the federal hearing in San Jose U.S. Federal Court for the civil suit related to this action.

7.      Proper notice of the foreclosure sale was not given to all parties with an ownership interest and no notice was given prior to the February 2008 transfer.

8.      Plaintiffs were served with the "Notice To Quit" on March 14, 2008 by a different law firm representing Defendant.  Defendant has filed an unlawful detainer action civil suit in Superior Court

Case No. C08 00264 PVT

of Monterey County.  Plaintiffs have filed a counter suit in response to the unlawful detainer action,

for contract fraud, bank fraud and fraudulent transfer, case number M89900, Superior Court of

California, County of Monterey, Monterey Division.

**9.**      Exhibit "J" & "K" are full appraisals on Plaintiffs property completed in May 2007,

with appraised values of $1,350,000 and $1,400,000.

**10.**      For correction of Court records, the only document signed by Plaintiff Deborah E. Johnson,

of all the loan documents signed in this transaction, is the recorded "Power of Attorney", giving

Plaintiff, Gerald D. Johnson, that authority.  This was done on recommendation by the Defendant

because Plaintiff, Deborah E. Johnson, was residing out of state at the time of the transaction.

## <u>LEGAL ARGUMENT</u>

**A.**      California contract law states;

**Fraud is the intentional misrepresentation of an important issue of the contract.  The**

**presence of fraud in a contractual proceeding makes the contract voidable by the party**

**upon whom the fraud was perpetrated.**

The Mortgage Bankers Association's definitions of mortgage fraud are;

(1)      **"Material misstatement, misrepresentation or omission relating to the property**

**or potential mortgage relied on by an underwriter or lender to fund."**

(2)      **"The intentional enticement of a financial entity to make, buy or insure a**

**mortgage loan when it would not otherwise have done so, had it possessed correct**

**information".**

The Defendant has willfully and knowingly given false and fraudulent information, while working

with and directing others.  Defendant's actions resulted in many violations which fall under the

Case No. C08 00264 PVT

above definitions for mortgage fraud. The Defendant commenced the second and most serious offense or violation with the fraudulent transfer that occured in February 2008. The Plaintiffs discovered the fraud in January 2008 after filing the complaint that is currently pending in Federal Court, case number C08-00264 PVT, which was filed on January 14, 2008, prior to the fraudulant transfer. The additional violations fall under 18 USC 1962, 18 USC 1344, 18 USC 1341, 18 USC 1343, 18 USC 1957, 18 USC 1345, Ca.Civ.Code 1596, 1598 and others.

**B.     " Consumer's right to rescind...In a credit transaction in which a security is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction."(12 CFR 226.23)**

Plaintiff, Gerald D. Johnson, was on title at the time of signing on May 5, 2005. Exhibit "A" clearly notes the time of signing and recording which was May 16, 2005. These violations are covered under 12 CFR 226.23 and section 125 of TILA. The preliminary title report in Exhibit "D" and the loan application in Exhibit "E" both are clear that Plaintiff, Gerald D. Johnson, should have been provided all material disclosures and the right to rescind the loan. The foreclosure process stopped the tolling of the 3 year right to rescind. Defendant has attempted to extinguish Plaintiff, Gerald D. Johnson's rescission rights with this fraudulant transfer, which was excuted with a security instrument created by fraud.

**C.     California Civil Code Section 1688. A contract is extinguished by its rescission.**

On May 5, 2005, Plaintiff, Gerald D. Johnson, signed the "Right to Cancel" as Plaintiff, Deborah E. Johnson's, "attorney in fact", Exhibit "G" is the entire written communications as it pertains to the rescission between Defendant and Plaintiff. Defendant wanted Plaintiff, Gerald D. Johnson, to state that the rescission was signed in error, Plaintiff's final note faxed to Defendant, states "Right to Cancel

was not signed in error, it was rescinded."

**California Civil Code Section 1689(b)(5)  A party to a contract may rescind the contract ....If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.**

**D.**    The foreclosure notice and sale did not include all consumers with an ownership interest in the property.

<u>CONCLUSION</u>

Based on the foregoing Statement Of Facts and Legal Argument, Plaintiffs plea to this Court is that you set aside the fraudulant transfer that is based on mortgage and bank fraud. Allow this civil suit to continue to discovery and trial, Plaintiffs would like to subpoena all escrow documents and communications related to this transaction from the Defendant, Old Republic Title Company and PMC Mortgage Company. The cross reference will prove the points and statements in this complaint. Plaintiffs ask this Court to restore the right to rescission based on the fraud at inception of the contract that was uncovered and the TILA disclosure rights denied Plaintiff Gerald D. Johnson.

Plaintiffs are proceeding "pro se" in this matter and in the current federal case and in the bankruptcy court filing that proceeded each, due to the financial damage caused by these actions.

Plaintiffs seek relief in the form of punitive damages, returned to the status quo in regards to Plaintiffs' primary residence prior to the fraudulent acts and any further relief which this Court deems appropriate for the damages suffered by the actions of Defendant. Plaintiffs demand a jury trial on all issues.

We declare under penalty of perjury that the foregoing statement of facts and documents are true and correct.

1

2   Dated: March _31_ , 2008

_Deborah E. Johnson_
Deborah E. Johnson, Plaintiff

3

_Gerald D. Johnson_
Gerald D. Johnson, Plaintiff (pro se)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**9**

# EXHIBIT "A"



# OLD REPUBLIC TITLE COMPANY

2205 Fourth Street • Livermore CA • 94550 • (925) 443-1400 • FAX (925) 447-8247

May 5, 2005

To:     OLD REPUBLIC TITLE COMPANY
        2205 Fourth Street
        Livermore, CA 94550

Re:     Escrow No.: 1114001775-TN
        Property:  2nd Avenue 2 NE of Dolores Street, Carmel, CA 93921

Old Republic Title Company, as Escrow Holder, is authorized and instructed to prepare a Grant Deed from Gerald D. Johnson, husband of Grantee to Deborah E. Johnson, a married woman as her sole and separate property, pertaining to real property described as 2nd Avenue 2 NE of Dolores Street, Carmel, CA 93921.

Said Grant Deed is to include the following clause:

"It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate property."

You are hereby authorized and instructed to record said Deed through this escrow as an accommodation only and WITH NO DEMAND FOR PAYMENT OF MONIES OR DELIVERY OF ANY DOCUMENTS TO THE UNDERSIGNED.  Affix no transfer tax to said Deed.

In connection therewith, the undersigned further declares and instructs Escrow Holder that any funds that may be deposited in this escrow, which are drawn from an account in which the undersigned is named as the account holder or co-holder, are to be treated as the sole and separate funds of the grantee named in the above referenced deed and used UNCONDITIONALLY according to said grantees instructions to escrow.

The undersigned understands and acknowledges that Escrow Holder will require written instructions from said grantee as to the disbursement of any funds deposited by the grantee or that are deposited on the grantees behalf, should this escrow cancel. Therefore, the undersigned hereby releases Escrow Holder of any responsibility to the undersigned for the disbursement of said funds in the event of the cancellation of this escrow.

Any fees incurred shall be paid by Grantee in the above referenced escrow.

_____
Gerald D. Johnson

You have been handed the above referenced document to be recorded as an accommodation only and you are further instructed not to issue any Owner's Policy of Title Insurance.

The undersigned grantee(s) hereby agree(s) to save and hold Old Republic Title Company harmless against any and all loss or damage, including attorney's fees and costs, sustained by the undersigned occasioned by its failure to purchase title insurance in connection with this transaction.

_____
Deborah E. Johnson

Accepted by: Old Republic Title Company

TN/tn

Date: _____ By: _____

RECORDING REQUESTED BY
Old Republic Title Company

ORDER #    1114001775-TN
APN        010-126-022

WHEN RECORDED MAIL TO

Name        Deborah E. Johnson
Street
Address     2nd Avenue 2 NE of Dolores Street
City
State       Carmel, CA 93921
Zip

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is _____ "Interspousal Deed" _____
(X) computed on full value of property conveyed, or
( ) computed on full value less of liens and encumbrances remaining at time of sale.
( ) Unincorporated area:    (X)    City of    Carmel _____
( ) Realty not sold.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Gerald D. Johnson and Deborah E. Johnson, husband and wife as Joint Tenants

**hereby GRANT(S) to**
Deborah E. Johnson, a married woman, as her sole and separate property

that property in City of Carmel, Monterey County, State of California, described as:
See "Exhibit A" attached hereto and made a part hereof.

It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate property.

Mail Tax Statements to    Grantee at address above

Date    May 05, 2005

STATE OF CALIFORNIA
COUNTY OF _____

On _____ before me, the
undersigned, a Notary Public in and for said State, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are described to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Name _____
        (typed or printed)

Gerald D. Johnson

Deborah E. Johnson

FTGIS-140 8/94

(This area for official notarial seal)

**MAIL TAX STATEMENT AS DIRECTED ABOVE**

RECORDING REQUESTED BY
Old Republic Title Company
ORDER #   1114001775-TN
APN        010-126-022

WHEN RECORDED MAIL TO

Name      Deborah E. Johnson
Street
Address   2nd Avenue 2 NE of Dolores Street
City
State      Carmel, CA 93921
Zip

Stephen L. Vagnini                    CRROBERTA
Monterey County Recorder              5/16/2005
Recorded at the request of            8:00:00
**Old Republic Title**

DOCUMENT: **2005048550**   Titles: 1/ Pages: 2



Fees....      11.00
Taxes...
Other...
AMT PAID     $11.00

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is _____ "Interspousal Deed"
(X) computed on full value of property conveyed, or
( ) computed on full value less of liens and encumbrances remaining at time of sale.
( ) Unincorporated area:    (X)   City of   Carmel
( ) Realty not sold.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Gerald D. Johnson and Deborah E. Johnson, husband and wife as Joint Tenants

**hereby GRANT(S) to**
Deborah E. Johnson, a married woman, as her sole and separate property

that property in City of Carmel, Monterey County, State of California, described as:
See "Exhibit A" attached hereto and made a part hereof.

It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the
grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate
property.

Mail Tax Statements to    Grantee at address above

Date    May 05, 2005

STATE OF CALIFORNIA
COUNTY OF    Monterey
On   May 5, 2005    before me, the
undersigned, a Notary Public in and for said State, personally appeared
Gerald D. Johnson

_Gerald D. Johnson_

_Deborah E. Johnson_, By

_Gerald D. G._, as her
attorney in fact.

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are described to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature   _Theresa Tiliaia Castro_

Name        Theresa Tiliaia Castro
                  (typed or printed)

FTGIS-140 8/94

THERESA TILIAIA CASTRO
Comm. # 1452741
NOTARY PUBLIC-CALIFORNIA
Monterey County
My Comm. Expires Nov. 23, 2007

(This area for official notarial seal)

**MAIL TAX STATEMENT AS DIRECTED ABOVE**

Order No. : 0707003629

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Monterey, City of Carmel, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying Southerly of and contiguous with the Northerly boundary of Parcel A as said parcel is shown on the map above referred to.

END OF DOCUMENT

Stephen L. Vagnini          CRROBERTA
Monterey County Recorder    5/16/2005
Recorded at the request of      8:00:00
**Old Republic Title**

DOCUMENT: **2005048549**

| Titles: 1/ | Pages: 1 |
| --- | --- |
| Fees.... | 8.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $8.00 |

RECORDING REQUESTED BY

DEBORAH E. JOHNSON

AND WHEN RECORDED MAIL TO

Name: Deborah E. Johnson
Street Address: P.O. Box 4448
City/State Zip: Carmel, CA 93921



SPACE ABOVE THIS LINE FOR RECORDER'S USE

## POWER OF ATTORNEY
## SPECIAL

Deborah E. Johnson _____ hereby appoints Gerald D. Johnson _____
Principal giving this power                                    Attorney in Fact
my true and lawful attorney in fact to act for me only with respect to the real property known as: 2nd Avenue, Carmel, CA 93921

In Principal's name, place and stead and only as to said real property, said attorney in fact is authorized:

(1) to demand, sue for , collect, and receive all money, debts, accounts, legacies, bequests, interests, dividends, annuities, and demands as are now or shall hereafter become due, payable or belonging to principal, and to take all lawful means, for the recovery thereof and to compromise the same, and give discharges for the same;

(2) to buy, sell and encumber said land, make contracts of every kind relative to said land, any interest therein or the possession thereof, and to take possession and exercise control over the use thereof;

(3) to buy, sell, mortgage, hypothecate, assign or transfer personal property located on said land, chooses in action and certificates or shares of capital stock and to transact every kind of business of whatever nature;

(4) to execute, acknowledge and deliver contracts of sale, escrow instructions, deeds, lease, including leases for minerals and hydrocarbon substances and assignments of leases, covenants, agreements and assignments of agreements, mortgages and assignments of mortgages, conveyances in trust to secure indebtedness or other obligations, and assign the beneficial interest thereunder, subordinations of liens or encumbrances, bills of lading, bills, bonds, notes, receipts, evidences of debts, releases and satisfactions of mortgages, requests to reconvey deeds of trust, partial or full, judgments, and other debts, and other instruments in writing of whatever kind and nature, all upon such terms and conditions as said attorney in fact shall approve.

(5) This document to expire within 90 days of execution.

GIVING AND GRANTING to said attorney in fact full power and authority to do everything relative to any of the foregoing as fully as principal might or could do if personally present and I hereby ratify and approve everything that said attorney in fact lawfully does by authority hereof.

Dated: April 20, 2005

_____
Deborah E. Johnson

STATE OF TEXAS
COUNTY OF HARRIS  } SS: 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

On 5/5/05, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Deborah E. Johnson personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

NIKHIL N. MEHTA
Notary Public, State of Texas
My Commission Expires
September 14, 2008

# EXHIBIT "B"

**First Federal Bank of California**
6053 W. Century Boulevard, St 400 4th Floor
Los Angeles, CA 90045

PLEASE RETURN DOCUMENTS TO THE ATTENTION OF: Tom Kronlage

# BORROWER/ESCROW INSTRUCTIONS

Old Republic Title
2205 Fourth St.

Livermore, CA 94550

ATTN: Theresa Nigro
(925)443-1400

Date:  May 5, 2005
Your Escrow No.:  1114001775
Our Loan No.:  49792970
Application No.:  12345937169
Reply To: Tom Kronlage
Telephone:  (310) 665-2341
Fax:  (310) 260-4053

We enclose loan documents as indicated below to be signed by the Borrowers therein designated, in the exact manner as the names are set forth. DO NOT allow the loan documents to leave your possession, except to be recorded or to be returned to us (and even then only with proper safeguards). DO NOT make or accept any changes, alterations and/or additions to our loan documents. Should there be errors of any nature, contact First Federal immediately and we will forward corrected documents. Client copies of all documentation are enclosed.

1. BORROWER - ESCROW INSTRUCTION - R
2. NOTE - CODI W PAY RATE (110% OR 125%)
3. PREPAY RIDER - CLASSIC 3 YEAR REBATE
4. DEED OF TRUST (PORTFOLIO)
5. TRUTH IN LENDING
6. NOTICE OF RIGHT TO CANCEL - VMP D064
7. REQUEST FOR TAX PAYER ID
8. ERROR AND OMMISSION
9. SIGNATURE / NAME AFFIDAVIT
10. BORROWER'S CERT & AUTHORIZATION

11. RESPA SERVICING DISCLOSURE
12. CUSTOMER IDENTIFICATION PROGRAM CIP

All documents are subject to recall from our office prior to recordation of the deed of trust. All fully executed loan documents, original conditions and insurance requirements must be received by our Loan office located at 6053 W. Century Blvd.,St 400, 4th Floor, Los Angeles, CA, for review and approval, no later than 10:00 a.m. local time the day prior to funding. Our proceeds will be in the form of a wire transfer. Any request for a wire transfer must be made by 10:00 a.m. local time the day prior to funding.
**Our offer to fund this loan expires on 06/27/2005** .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**YOU ARE REQUIRED TO FORWARD THE FOLLOWING ITEMS TO THIS BANK PRIOR TO FUNDING FOR OUR APPROVAL:**

1.    All loan documents, properly signed, except the Deed of Trust, Riders to the Deed of Trust, and Absolute Assignment of Rents & Leases which you may hold for recording, and RETURN A CERTIFIED COPY only to us. Certified copies of all notes and deeds of trust to record or to remain of record along with any subordination thereof. Secondary financing is not to exceed None and must be subordinate to the deed of trust in our favor.

2.    A preliminary title report, plotted plat map, ALTA report and documentary evidence from title insurer showing any transfer of the real estate security by deed recorded within six (6) months prior to the preliminary report. All supplemental and updated reports are also to be forwarded.

3.    Certified copy of your signed escrow instructions, including all supplements or amendments (including those regarding sales and/or loan commissions covering this property). If you are handling or have any knowledge of any other transaction on or related to the subject property which will record concurrently, is contingent on this escrow, will open or close immediately upon completion of this escrow, or which will transfer the same property, YOU MAY NOT close this escrow without our written consent. DO NOT request funds or authorize recording of our documents without receiving our written approval if you have information, or receive instructions, verbal or written, which will in any way alter the reported sales price or cash down payment.

4.    This loan is subject to receipt of a Flood Certification issued by our designated flood service company and may require flood insurance. If the property lies within a designated flood zone, we require minimum coverage of the loan amount or amount available, whichever is lower. If Flood Insurance is necessary we will require a copy of the completed Flood Insurance application and the receipt showing PAID IN FULL/PREPAID (premium cannot be paid through escrow). Impounds will be required for flood insurance if the Bank is impounding for any other item.

Borr01 (08-04-2004) (OS 257)

5.   Evidence of hazard insurance, signed and completed by Agent. On Condominiums and PUDs we require a copy of the declaration page of the master policy issued to the Homeowners Association as well as a certification of insurance for the individual unit. On all loans we require an original policy, binder or evidence of insurance prior to funding. All policies to contain Lenders Loss Payable, 438BFU and Cancellation Clause. The minimum amount of hazard insurance required is equal to the lesser of the replacement value of the improvements or the loan amount.

Lenders Loss Payable Endorsement to read as follows:
**FIRST FEDERAL BANK OF CALIFORNIA, IT SUCCESSORS & ASSIGNS**
P.O. Box 2130
Santa Monica, CA 90407-2130

The insurer must have a minimum of: A Class 5 or B+ Class 9 or better in the latest Best's Key Rating Guide. Policy term must be for a minimum of one (1) year with no less than 30 days remaining to expiration. New premiums must be prepaid in escrow. On properties with 5 or more units and all commercial buildings, we require Fire & Extended Coverage with Vandalism & Malicious Mischief, and $1,000,000 General Liability coverage. On all rental properties we require Loss of Rents coverage equal to 6 months rents.

If insurance is to be issued by **CALIFORNIA FAIR PLAN**, we require the original Fair Plan policy or Fair Plan's Binder Letter signed by a Fair Plan representative prior to funding. Applications are not acceptable.

**YOU MAY REQUEST FUNDS WHEN YOU ARE IN A POSITION TO PROVIDE THIS BANK WITH THE FOLLOWING:**

1.   Water Stock, if any, assigned to this Bank as First Pledgee for the Borrower.

2.   **1970 or 1970/rev. '84 (without Arbitration Provision) ALTA Lenders policy of Title Insurance (issued by a company acceptable to First Federal) with Endorsement No. 100 (without deletion), 110.8/110.9, and 116, 111.8,100.12/#5**

with a liability of $ **1,050,000.00** (NOTE: This amount may be greater than the loan amount if the loan documents allow negative amortization), showing title vested in the names of:

**Deborah E. Johnson, a married woman as her sole and separate property**

subject only to General and Special taxes for the fiscal year
and exceptions **1, 3-6** as set forth in preliminary title report from
**Old Republic Title** dated 02/10/2005, Order No. **0707003629** covering property known as

**2nd Ave 2 NE of Dolores Street, Carmel, CA 93921**

3.   Deed of Trust in favor of First Federal Bank of California in the amount of $ **840,000.00** to record as a first lien of record. The first payment of $ **3,168.20** including interest at **5.796%** per annum, plus impounds for taxes, insurance, and private mortgage insurance premium if any will be due on **July 1, 2005.** Payment information will be mailed to Borrowers at close of escrow.
Monthly Impound Payment: $ **0.00**
Total Monthly Payment: $ **3,168.20**

**X**_____   This payment may not constitute a fully amortized payment since it is based upon an initial pay rate which is less than the interest rate. The principal and interest amount necessary to make a fully amortized first payment at the interest rate stated in the Note is $4,926.59 .

FUN 12002 (05-02-2005)

4.    Certified copy of your closing statement to Borrowers, or RESPA/HUD 1 Statement when applicable, is to be forwarded to us immediately upon closing of your escrow.  Use of our loan proceeds is contingent upon our receipt of a certified copy of the buyer's and seller's closing statement or RESPA/HUD 1 at the close of escrow, containing all required information, **including the specific settlement service providers as shown below.**

**********************************************************************************************************

**CALCULATION OF LOAN PROCEEDS TO BE DISBURSED ON BEHALF OF OUR BORROWER:**
**WE WILL WITHHOLD** from the total loan amount

| | | |
|---|---|---|
| 811 | FFB Underwriting Fee | $300.00 |
| 812 | Tax Certification Fee (LandAmerica*) | $60.00 |
| 815 | Flood Determination Fee (LandAmerica*) | $14.00 |
| 816 | Wire Transfer Fee | $35.00 |
| 817 | FFB Document Preparation | $250.00 |

*In accordance with 24 CFR 3500.9 and these instructions, the HUD 1 settlement statement must be on the proper OMB form (#2502-265) and must include the above specific provider information.

Interest from and including date of disbursement of our funds TO **06/01/2005** at a rate of **$133.39** per day will be deducted from our loan funds.

**WE WILL INCLUDE** in the net proceeds the Broker Rebate, paid by First Federal, in the amount of **$16,800.00** which you are authorized to release to the Broker listed below upon verification of the recordation of the deed of trust in our favor. For disclosure purposes, you must add this Broker Rebate to the RESPA/HUD 1 Settlement Statement.  Broker payments and/or concessions, such as fee reductions, to Borrower are not acceptable without written approval from First Federal and the loan may not be funded without such approval. Any such payment or concession without Bank approval may violate loan terms and conditions.  The Broker name, address and telephone number are as follows:

**Pacific Mortgage Consultants Inc**
**700 Larkspur Landing Cir**
**Suite 275**
**Larkspur, CA 94939**
**Phone #:  (925)583-1772**

**YOU WILL COLLECT** from the Borrower the following loan related fees which you are then authorized to release to the above referenced Broker upon verification of the recordation of the deed of trust in our favor:

| | | |
|---|---|---|
| 809 | Mortgage Broker Appraisal Fee | $50.00 |
| 813 | Mortgage Broker Processing Fee | $690.00 |
| 814 | Mortgage Broker Misc. Fees | $495.00 |

When you can comply with these instructions, and when all other terms and conditions of our loan have been met, the net proceeds will be forwarded to: **Old Republic Title**

Loan No.: 49792970

BORROWER(S) UNDERSTAND AND AGREE FURTHER THAT IN ADDITION TO THE ABOVE REQUIREMENTS, THE FUNDING OF THIS LOAN IS FURTHER CONDITIONED UPON OUR RECEIPT AND APPROVAL OF THE FOLLOWING:

If loan does not fund by May 10, 2005, an updated Title Report will be required.

Signed and certified copies of all escrow instructions and any amendments thereto.

Escrow Amendment re: Property Address to show same as on preliminary title report

Escrow Amendment re: Loan Amount, Lender, Rate and Terms

Satisfactory Evidence of Insurance must be in our office prior to funding

Updated Preliminary Title Report needed if not within 90 days prior to Funding.

Copies of all demands for payoff of existing liens showing no delinquencies

Level of debt too high (cards are maxed out). Payoff a must: American Express $20919 & $10352 & $2791; HSBC Bank $14416

Loan priced up 10bp for LTV >70%

Escrow certified copy of Grant Deed

Estimated Closing Statement to reflect all Broker Fees including Rebate

Certified Copy of Quit Claim Deed.

WE REQUIRE FIRST INSTALLMENT TAXES BE PAID THROUGH ESCROW ON LOANS RECORDING ON OR AFTER OCTOBER 1ST OF EACH YEAR; SECOND INSTALLMENT TAXES MUST BE PAID THROUGH ESCROW ON LOANS RECORDING ON OR AFTER JANUARY 1ST OF EACH YEAR.

The first regular monthly loan payment is due according to the terms of the Note. If the loan closes with less than 30 days remaining until the first scheduled payment, a billing statement/coupon may not be received by the Borrowers prior to the payment due date. However, the Borrowers are still responsible for the timeliness of the first payment. The Borrowers may make a payment without a billing statement/coupon by noting the loan number on the payment check and mailing the check to: First Federal Bank of California, 401 Wilshire Boulevard, Santa Monica, CA 90401, Attn: Loan Service Department.

The net proceeds of the loan, after deduction and/or payment of the foregoing items set forth on page two, shall be paid to the title company for credit of Borrower in Old Republic Title Escrow No. 1114001775

Page 4 of 5

Loan No.: 49792970

Each of the undersigned, in executing these instructions and bank documents, hereby acknowledge that they have read and fully understand the conditions and instructions herein and approve, accept and agree to be bound thereby.

**BORROWERS**

_____
Deborah E. Johnson

If escrow is not closed on or before 06/27/2005 you will return all documents to this office. If the loan is cancelled, you will collect and forward to us cancellation fees for the following: credit report, appraisal, flood search, processing, documents, and underwriting as shown above. WE ARE TO BE AT NO EXPENSE IN CONNECTION WITH THIS TRANSACTION.

FIRST FEDERAL BANK IS TO BE INFORMED OF ANY DEMANDS RECEIVED IN ESCROW FOR ITEMS OTHER THAN LIENS AGAINST SUBJECT PROPERTY APPEARING IN THE PRELIMINARY TITLE REPORT.

WE WILL NOT ACCEPT ANY DEVIATION FROM THESE INSTRUCTIONS UNLESS WE HAVE INDICATED OUR CONSENT IN WRITING TO ANY SUCH CHANGE.

We ask that you acknowledge receipt of the enclosures herein and your complete understanding of all instructions and conditions by signing and returning these instructions.

Instructions and enclosures acknowledged and agreed upon:

Old Republic Title                                    FIRST FEDERAL BANK OF CALIFORNIA

By:_____        By:_____
   Theresa Nigro                                          Tom Kronlage

FUN 12005 (2004-02-17)

Page 5 of 5

# EXHIBIT "C"

# Debt Consolidation Worksheet

*Savings Plan For:*  **Gerald Johnson**                                    *Date:*    **09/02/2004**

*Provided By:*  **Eric Laschinger, NovaStar Home Mortgage, Inc.**
**908 Niagara Falls Blvd., Suite 210 North Tonawanda, NY 14120**
**(P) 716-692-7007/ (F) 716-692-7006**

| *Liabilities* | | | | | | | *Prequalification Proposal* | |
|---|---|---|---|---|---|---|---|---|
| Creditors | Mth Pmt | Balance | Mths left | Total Pmt | Paid off | | Cash Out | 81,533 |
| WORLD SAVINGS & LOAN | 2,924 | 503,000 | 171 | 500,004 | X | | Loan Program | 2/28 ARM |
| DEEP GREEN BANK | 646 | 200,500 | 0 | | X | | Proposed Loan Amt | 780,000 |
| CHASE NA | 494 | 24,724 | 0 | 0 | | | Proposed Monthly Pmt | 5,669 |
| AMEX | 1,060 | 21,218 | 0 | 0 | | | Term | 360 |
| HHLD BANK | 315 | 13,970 | 0 | 0 | | | Note Rate | 7.900 % |
| BANK OF AMERICA | 66 | 11,738 | 0 | 0 | | | APR | 8.103 % |
| UNION BANK | 246 | 11,652 | 47 | 11,562 | | | | |
| BANK OF AMERICA | 59 | 11,500 | 0 | 0 | | | | |
| FIRST USA BANK N A | 216 | 10,840 | 0 | 0 | | | | |
| PROVIDIAN FINANCIAL | 123 | 4,075 | 0 | 0 | | | | |
| WESCOM CREDIT UNION | 77 | 3,349 | 0 | 0 | | | | |
| CAPITAL ONE BANK | 70 | 2,339 | 0 | 0 | | | | |
| RNB-TGTVISA | 38 | 1,485 | 0 | 0 | | | | |
| NORDSTROM FSB | 45 | 791 | 0 | 0 | | | | |
| AMEX | 34 | 692 | 0 | 0 | | | | |
| CPU/CITI | 15 | 523 | 0 | 0 | | | | |
| CHEVRON CREDIT BANK | 32 | 506 | 0 | 0 | | | | |
| THD/CBUSA | 20 | 473 | 0 | 0 | | | | |
| FNANB/CIRCUIT CITY | 25 | 433 | 0 | 0 | | | | |
| MACYS/GECCCC | 11 | 413 | 0 | 0 | | | | |
| PIER 1 IMPORTS | 15 | 193 | 0 | 0 | | | | |
| HHLD BANK/SAKS FIFTH | 14 | 192 | 0 | 0 | | | | |
| FIRST USA BANK N A | 10 | 54 | 0 | 0 | | | | |
| AMEX | 10 | 44 | 0 | 0 | | | | |
| **Current Total** | 6,565 | 824,704 | | 511,566 | | | | |
| **Paid off Total** | 3,570 | 703,500 | | 500,004 | | | | |

Comments:

Based upon the points provided, and subject to our normal credit approval, we could be able to process your loan application in as little as 5 to 15 days from the time you apply.

Account Executive
This is not a loan commitment. All loans must meet current underwriting criteria including verification of credit, income, equity and title.
CALYX  Form  debtws.frm  10/98

**Resolution Of Any Discrepancy:**

_____

_____

_____

_____

_____

I/we acknowledge that I/we received a copy of this disclosure.

_____ 9-7-04        _____

Gerald Johnson          Date             Applicant                    Date

_____               _____

            Date                         Applicant                    Date

_____
Eric Laschinger          Date

# EXHIBIT "D"

# OLD REPUBLIC TITLE COMPANY

20 EAST ALISAL STREET  •  SALINAS, CA  •  93901  •  (831) 757-8051 • Fax: (831) 373-4863

## PRELIMINARY REPORT

Issued for the sole use of:

PMC WHOLESALE
2368 RESEARCH DRIVE
LIVERMORE, California 94550

Attention: BRIAN CURL

925 462 9060

Our Order No. 0707003629

Reference 1114001775

When Replying Please Contact:

OLD REPUBLIC TITLE COMPANY
2205 FOURTH STREET
LIVERMORE, CA 94550-4552
Attn: THERESA NIGRO
(925) 443-1400

Property Address: 2nd Avenue 2 NE of Dolores Street, Carmel, CA

In response to the above referenced application for a policy of title insurance, OLD REPUBLIC TITLE COMPANY hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said policy forms.

The printed Exceptions and Exclusions from the coverage of said Policy or Policies may be set forth in Exhibit A attached. Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**
**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of _____February 10th_____, 2005 , at 7:30 A.M.

OLD REPUBLIC TITLE COMPANY

**For Exceptions Shown or Referred to, See Attached**

Page___1___of___6___Pages

ORT 3157-A (Rev. 5/1/00)

**OLD REPUBLIC TITLE COMPANY**

ORDER NO.  0707003629

The form of policy of title insurance contemplated by this report is:

an ALTA Loan Policy.  A specific request should be made if another form or additional coverage is desired.

The estate or interest in the land hereinafter described or referred to covered by this Report is:

a FEE as to Parcel I and an EASEMENT as to Parcel II.

Title to said estate or interest at the date hereof is vested in:

GERALD D. JOHNSON and DEBORAH E. JOHNSON, husband and wife, as Joint Tenants

ORT 3157-A1 (Rev 1-1-95)

**OLD REPUBLIC TITLE COMPANY**

ORDER NO.  0707003629

The land referred to in this Report is situated in the County of  Monterey, City of Carmel,
State of California, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of
Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying
Southerly of and contiguous with the Northerly boundary of Parcel A as said
parcel is shown on the map above referred to.

ORT 3157-C

**OLD REPUBLIC TITLE COMPANY**
ORDER NO.  0707003629

At the date hereof exceptions to coverage in addition to the Exceptions and Exclusions in said policy form would be as follows:

1.  Taxes and assessments, general and special, for the fiscal year 2005-2006 a lien, but not yet due or payable.

Code No.              : 001-000
Assessor's Parcel No. : 010-126-022

2.  Taxes and assessments, general and special, for the fiscal year 2004-2005 as follows:

Assessor's Parcel No. : 010-126-022
Code No.              : 001-000
1st Installment     : $        1,898.41          Marked Paid
2nd Installment     : $        1,898.41          NOT Marked Paid
Land                : $      236,269.00
Imp. Value          : $      108,506.00
P.P. Value          : $            0.00
Exemption           : $        7,000.00          Homeowner

3.  The lien of supplemental taxes, if any, assessed pursuant to the provisions of Section 75, et seq., of the Revenue and Taxation Code of the State of California.

4.  Any facts, rights, interest or claims which an accurate survey would show of the easement(s) described or referred to in Schedule A, anything contained in the policy or endorsements thereto to the contrary notwithstanding.

5.  Covenants, Conditions and Restrictions, which do contain express provisions for forfeiture or reversion of title in the event of violation, but omitting any covenants or restrictions if any, based upon race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that said covenant (a) is exempt under Title 42, Section 3607 of the United States Code or (b) relates to handicap but does not discriminate against handicapped persons, as provided in an instrument

Entitled    : Deed
Executed by: Carmel Development Company, a corporation
Recorded    : October 18th, 1923 in Book 25 of Official Records, Page 363

The reversionary rights have been subordinated to all deeds of trust,
By document recorded : March 30, 1961 in Book 2135, Page 596, Official
                       Records

The reversionary rights imposed to enforce liquor restrictions have been released and relinquished,
By document recorded : May 21, 1980 in Reel 1409, Page 613, Official Records

ORT 3157-D

**OLD REPUBLIC TITLE COMPANY**

ORDER NO.  0707003629

6.   Consequences of the "Notice of Transfer of Title Without Completion of a Water Conservation Retrofit" recorded December 18, 1995 in Reel 3313, Official Records, Page 904.

And as a note:

NOTE:  This report does not include a report upon or an examination of matters relating to the Water Conservation Laws adopted by the Monterey Peninsula Water Management District, and the policy to be issued will not insure against any loss by reason thereof.

To obtain information on such matters please contact:

Monterey Peninsula Water Management District
Post Office Box 85
Monterey, CA 93942

Telephone:  (408) 649-2500

7.  Deed of Trust to secure an indebtedness of the amount stated below and any other amounts payable under the terms thereof.

| | | |
|---|---|---|
| Amount | : | $780,000.00 |
| Trustor/Borrower | : | Gerald D. Johnson and Deborah E. Johnson, husband and wife |
| Trustee | : | Epic Equity Services |
| Beneficiary/Lender | : | Mortgage Electronic Registration Systems, Inc. (MERS) and Novastar Home Mortgage, Inc. |
| Dated | : | September 22nd, 2004 |
| Recorded | : | October 22nd, 2004 in Official Records under Recorder's Series Number 2004113150 |
| Loan No. | : | 04-E15197 |
| "MIN" | : | 100080190034636936 |
| Returned to Address: | | 2925 Country Drive, Ste. 201, St. Paul, MN 55117 |

NOTE:  This loan appears to be registered with Mortgage Electronics Registration Systems, Inc. ("MERS").  Accordingly, the name, address and telephone number of the loan servicer should be obtained by calling the toll-free number, 1-888-679-MERS, and referring to the Mortgage Identification Number ("MIN") shown above.

ORT 3157-E

**OLD REPUBLIC TITLE COMPANY**

ORDER NO.   0707003629

-------------------- Informational Notes --------------------

1.  The above numbered report (including any supplements or amendments thereto is hereby modified and/or supplemented to reflect the following additional items relating to the issuance of an American Land Title Association Loan Form Policy:

NONE

NOTE:  Our investigation has been completed and said land is known as 2nd Avenue, 2 N.E. of Dolores Street, Carmel, CA.

The ALTA loan policy, when issued, will contain the CLTA 100 and 116 Endorsements.

2.  NOTE:  According to the public records, there have been no deeds conveying the property described in this report recorded within a period of two years prior to the date hereof except as follows:

NONE
****

3.  The applicable rate(s) for the policy(s) being offered by this report or commitment appears to be section(s) 3.1.

4.  Short Term Rate ("STR") does not apply.

RJS/ll      3/3/05           end
Examined By: Rebecca J. Smith

ORT 3157-E

Exhibit A

## AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (1-17-92)
## AMERICAN LAND TITLE ASSOCIATION LEASEHOLD LOAN POLICY (1-17-92)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a) created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7.  Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

    (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

    (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

    (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

    (a) to timely record the instrument of transfer, or
    (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

The above policy forms may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following General Exceptions:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the land or by making inquiry of persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

MAY 7, 2001

## OLD REPUBLIC TITLE COMPANY

### Privacy Policy Notice

### PURPOSE OF THIS NOTICE

Title V of the Gramm-Leach-Bliley Act (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed. In compliance with the GLBA, we are providing you with this document, which notifies you of the privacy policies and practices of Old Republic Title Company.

We may collect nonpublic personal information about you from the following sources:

   Information we receive from you such as on applications or other forms.
   Information about your transactions we secure from our files, or from [our affiliates or] others.
   Information we receive from a consumer reporting agency.
   Information that we receive from others involved in your transaction, such as the real estate agent or lender.

Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to nonaffiliated third parties as permitted by law.

We also may disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:

   Financial service providers such as companies engaged in banking, consumer finance, securities and insurance.
   Non-financial companies such as envelope stuffers and other fulfillment service providers.

WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.



*Notice: This is neither a survey, nor is it intended to be used as a survey. It is furnished merely as a convenience to aid you in locating the land indexed hereon with reference to streets and other land, but no liability is assumed by reason of any reliance hereon.

CARMEL BY THE SEA Blocks 33, 34 & 35

CARMEL BY THE SEA Add'n 4 Blocks 9, 10, 11, 28, 29 & 30

TAX CODE AREA 1-00

ASSESSOR'S MAP
BOOK 10 PAGE 12

# EXHIBIT "E"

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ FHA | ☑ Conventional  ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount $ 900,000 | Interest Rate 2.050 % | No. of Months 360/360 | Amortization Type: ☐ Fixed Rate  ☐ GPM  ☑ ARM (type): Fixed advantage 1 yr | Other (explain): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP)  2nd Avenue 2 NE of Dolores Street,    Carmel, CA 93921-4448    County: Monterey | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary)  Please See Prelim | Year Built 1910 |
|---|---|

| Purpose of Loan ☐ Purchase  ☐ Construction  ☑ Refinance  ☐ Construction-Permanent  ☐ Other (explain): | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1995 | Original Cost $ 285,000 | Amount Existing Liens $ 777,789 | Purpose of Refinance Cash-Out/Debt Consolidation | Describe Improvements ☐ made  ☐ to be made  Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)  Deborah E Johnson  Gerold D Johnson | Manner in which Title will be held  To be determined in escrow | Estate will be held in: ☑ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)  Equity from Subject Property |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable)  Deborah E Johnson | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 831-622-0132 | DOB (MM/DD/YYYY) 10/01/1950 | Yrs. School 2 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 1  ages 17 | ☐ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own  ☐ Rent  10  No. Yrs.  2nd Avenue 2 NE of Dolores Street  Carmel, CA 93921-4448 | Present Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Name & Address of Employer ☐ Self Employed  Yrs. on this job 3 yr(s)  The Care Financial Group  401 E. Hillcrest Blvd #1  Inglewood, CA 90301 | Name & Address of Employer ☐ Self Employed  Yrs. on this job |
| | Yrs. employed in this line of work/profession 3.5 | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business  Senior Account Manager | Business Phone (incl. area code) 310-412-2004 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp1.frm 01/04

Page 1 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003   01/04

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 27,500.00 | $ | $ 27,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 4,828.00 | 3,349.12 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 114.17 | 114.17 |
| Dividends/Interest | | | | Real Estate Taxes | 316.40 | 316.40 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 27,500.00 | $ | $ 27,500.00 | Total | $ 5,258.57 | $ 3,779.69 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed  ☐ Jointly  ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Cash deposit toward purchase held by | $ | | | | |
| List checking and savings accounts below | | LIABILITIES | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | | $ Payment/Months | |
| Bank of America | | AMERICAN EXPRESS PO BOX 297871 FORT LAUDERDALE, FL 33329 | | | |
| | | Acct. no. 017949217019362553 | | 1,045 /(R) | 20,919 |
| Acct. no. | $ 75,000 | Name and address of Company | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HSBC BANK NV FKA HHL | | | |
| | | Acct. no. 540707000712 | | 315 /(R) | 14,416 |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | CHASE BANK USA, NA | | | |
| | | Acct. no. 4325150215045595 | | 227 /(R) | 11,371 |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | AMERICAN EXPRESS PO BOX 297871 FORT LAUDERDALE, FL 33329 | | | |
| | | Acct. no. 050286428016316251 | | 517 /(R) | 10,352 |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | | UNION BK CA PO BOX 85643 SAN DIEGO, CA 92186 | | | |
| Ing | 137,000 | | | | |
| | | Acct. no. 1115344010 | | 246 /47 | 10,211 |
| Life insurance net cash value | $ | Name and address of Company | | $ Payment/Months | $ |
| Face amount: $ | | WESCOM CREDIT UNION 123 S MARENGO AVE PASADENA, CA 91101 | | | |
| Subtotal Liquid Assets | $ 212,000 | | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 1,200,000 | Acct. no. 3222060002 | | 201 /(R) | 9,937 |
| Vested interest in retirement fund | $ | Name and address of Company | | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | BANK OF AMERICA 1825 E BUCKEYE RD PHOENIX, AZ 85034 | | | |
| Automobiles owned (make and year) | $ | Acct. no. 488860700739 | | 42 /(R) | 6,859 |
| Jetta | 12,000 | Alimony/Child Support/Separate Maintenance Payments Owed to: | | | |
| BMW 745LI | 60,000 | | | | |
| Other Assets (itemize) | $ | | | | |
| Personal Property | 135,000 | Job Related Expense (child care, union dues, etc.) | $ | | |
| | | Total Monthly Payments | | $ 3,282 | |
| Total Assets a. | $ 1,619,000 | Net Worth (a minus b) ➤ $ | 731,688 | Total Liabilities b. | $ 887,312 |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp2.frm 01/04

Borrower _____
Co-Borrower _____

Page 2 of 4

Fannie Mae Form 1003   01/04

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2nd Ave. Carmel By The Sea, CA 93921-4448 | SFR | $ 1,200,000 | $ 783,763 | $ 0 | $ 4,828 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 1,200,000 | $ 783,763 | $ | $ 4,828 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (Incl. debts to be paid off) | 783,763.00 |
| e. Estimated prepaid items | 2,306.25 |
| f. Estimated closing costs | 4,447.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 790,516.25 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 900,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 900,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -109,483.75 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U.S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | ☐ | ☑ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander   ☑ White | | ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☑ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) J. Michael Galloway | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face Interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature                Date | Pacific Mortgage Consultants 2368 Research Drive Livermore, CA 94550 |
| | Interviewer's Phone Number (incl. area code) 925-294-8884 | (P) 925-294-8884 (F) 925-294-9630 |

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>Deborah E Johnson<br>Co-Borrower: | Agency Case Number:<br><br>Lender Case Number: |
|---|---|---|

### VI. ASSETS AND LIABILITIES

| ASSETS<br>Name and address of Bank, S&L, or Credit Union | Cash or Market Value | LIABILITIES<br>Name and address of Company | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| | | CITIBANK USA, NA<br>PO BOX 9714<br>GRAY, TN 37615 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 6035320033913144 | 20/(R) | 4,365 |
| Name and address of Bank, S&L, or Credit Union | | PROVIDIAN FINANCIAL<br>PO BOX 9180<br>PLEASANTON, CA 94566 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 3919900365 | 104/(R) | 3,452 |
| Name and address of Bank, S&L, or Credit Union | | AMERICAN EXPRESS<br>PO BOX 297871<br>FORT LAUDERDALE, FL 33329 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 050286428016333732 | 139/(R) | 2,791 |
| Name and address of Bank, S&L, or Credit Union | | TARGET NATIONAL BANK<br>PO BOX 9475<br>MINNEAPOLIS, MN 55440 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 4352373367468151 | 60/(R) | 2,368 |
| Name and address of Bank, S&L, or Credit Union | | NORDSTROM FSB<br>PO BOX 6555<br>ENGLEWOOD, CO 80155 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 3797 | 85/(R) | 1,960 |
| Name and address of Bank, S&L, or Credit Union | | CAPITAL 1 BK<br>PO BOX 85520<br>RICHMOND, VA 23285 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 529115202652 | 54/(R) | 1,830 |
| Name and address of Bank, S&L, or Credit Union | | CHEVRON CREDIT BANK NA | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 9260168746 | 87/(R) | 1,320 |
| Name and address of Bank, S&L, or Credit Union | | CPU/CITIBANKCBSDNA<br>PO BOX 6033<br>HAGERSTOWN, MD 21747 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 580588846 | 24/(R) | 606 |
| Name and address of Bank, S&L, or Credit Union | | MACYS/GEMB<br>9111 DUKE BLVD<br>MASON, OH 45040 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 500428009320 | 10/(R) | 378 |
| Name and address of Bank, S&L, or Credit Union | | GEMB/GAP<br>PO BOX 981400<br>EL PASO, TX 79998 | $ Payt./Mos. | |
| Acct. no. | $ | Acct. No. 6018595500859935 | 10/(R) | 185 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br><br>X | Date | Co-Borrower's Signature:<br><br>X | Date |
|---|---|---|---|

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Deborah E Johnson | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE BANK USA, NA 800 BROOKSEDGE BLVD WESTERVILLE, OH 43081 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 4417128878639366 | 10/(R) | 102 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CBUSASEARS PO BOX 6189 SIOUX FALLS, SD 57117 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 88681071 | 10/(R) | 51 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HSBC NV | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 5407070000044 | 76/(R) | 76 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Novastar Mortgage | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 3610001379791 | * (4,828)/355 | 789,763 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date | Co-Borrower's Signature: X | Date |
|---|---|---|---|

# EXHIBIT "F"



# ALAIN PINEL
### REALTORS

# FAX

DATE: | 5-2-05 |       ATTENTION: | BRIAN AND SANDY |

FROM: | GERALD JOHNSON |

FAX TO NUMBER: | 925-294-9630 |

NO. OF PAGES INCLUDING COVER PAGE: | 8 |

BRIAN AND SANDY
ATTACHED IS THE ADJ NOTE
AND MORTGAGE STATEMENT.

GERALD
831-915-8339

## Alain Pinel Realtors
**Purveyors of Distinctive Properties and Estates**
Junipero Between 5th & 6th
P.O. Box 7249
Carmel, CA 93921   Phone (831) 622-1040   West Wing Fax (831) 622-1559

Stephen L. Vagnini          CRLISA
Monterey County Recorder    10/22/2004
Recorded at the request of  12:00:12
**Bank**

DOCUMENT: **2004113150** Titles: 1/ Pages: 17

Fees... 56.00
Taxes...
Other...
AMT PAID    $56.00

Recordings Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

*21522574*

~~After Recording Return To:~~
~~NOVASTAR MORTGAGE, INC.~~
~~ATTN: COLLATERAL CONTROL~~
~~6200 OAK TREE BLVD. 3RD FLOOR~~
~~CLEVELAND, OH 44131~~

Title Order No.: JOHNSON
Escrow No.: JOHNSON
LOAN #: 04-E15197

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

MIN 100080190034636936

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  SEPTEMBER 22, 2004,          together with all Riders to this document.
(B) "Borrower" is  GERALD D. JOHNSON AND DEBORAH E. JOHNSON, HUSBAND AND WIFE.

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  NOVASTAR HOME MORTGAGE, INC.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01    Initials: 
© 1999-2004 Online Documents, Inc.          Page 1 of 12              CAEDEED          CAEDEDL 0402
                                                                     09-21-2004 15:06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

LOAN #: 04-E15197

_____ (Seal)
GERALD D JOHNSON

_____ (Seal)
DEBORAH E. JOHNSON

State of CALIFORNIA

County of: __Monterey__

On __9/23/04__, before me, __Alicia Meredith, Notary Public__, personally appeared __GERALD D. JOHNSON__,

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



ALICIA MEREDITH
Commission # 1313308
Notary Public - California
Monterey County
My Comm. Expires Jul 15, 2005

_Alicia Meredith_
Alicia Meredith

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.                           Page 12 of 12

CAEDEDL  0402
09-21-2004 15:06

LOAN #: 04-E15197

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this   22ND   day of SEPTEMBER, 2004 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to NOVASTAR HOME MORTGAGE, INC., A CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: 2ND AVENUE 2 NE OF DOLORES, CARMEL, CA 93921.

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of   6.300%.    The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may change on the    1ST    day of OCTOBER, 2006 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal**. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND SEVEN-TENTHS                                 percentage point(s) (   4.700%

Initials: _DCC_

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 3192 1/01
Modified for Novastar
©1999-2003 Online Documents, Inc.
09-21-2004 15:06                          **Page 1 of 3**                          N3192RLU  0303

LOAN #: 04-E15197

to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **9.300%** or less than **6.300%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) ( **1.000%** ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.300%** or less than 6.300%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the

Initials: _DEG_

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 3192 1/01
Modified for Novastar
© 1999-2003 Online Documents, Inc.                                    **Page 2 of 3**                          N3192RLU  0303
09-21-2004 15:06

LOAN #: 04-E15197

transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____     9-23-04
GERALD D. JOHNSON                        Date

_____     9/22/04
DEBORAH E. JOHNSON                       Date

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—**Freddie Mac UNIFORM INSTRUMENT**
Form 3192 1/01
Modified for Novastar
©1999-2003 Online Documents, Inc.               **Page 3 of 3**                    N3192RLU  0303
09-21-2004 15:06

# LEGAL ADDENDUM

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE CITY OF CARMEL, COUNTY OF MONTEREY, AND STATE OF CALIFORNIA, TO WIT:

PARCEL "B" AS SHOWN ON THAT CERTAIN MAP FILED AUGUST 27, 1980 IN VOLUME 14 OF PARCEL MAPS, AT PAGE 58.

TAX ID #: 010-126-022

BY FEE SIMPLE DEED FROM COAST FEDERAL BANK, FEDERAL SAVINGS BANK., A CALIFORNIA CORPORATION AS SET FORTH IN DEED BOOK 3209, PAGE 1317 AND RECORDED ON 3/17/1995, MONTEREY COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.



U21522574-010P17
REFINANCE DOT
LOAN# 04-E15197
US Recordings

END OF DOCUMENT

# NovaStar MORTGAGE, INC.

P.O. Box 2900
Shawnee Mission, KS  66201

www.novastarcustomer.com

LOAN NUMBER: 0001379791

| | |
|---|---|
| Customer Service | Loan Number |
| (888) 289-1231 | 0001379791 |
| Fax Number | Regular mail payments |
| (816) 237-7482 | PO Box 808911 |
| | Kansas City, MO  64184 |
| Collection Dept. | |
| (888) 289-1208 | Overnight mail payments |
| | 8140 Ward Parkway |
| Statement Date | Suite 200 |
| 02/11/05 | Kansas City, MO  64114 |

Home Loan Facts

2  D AVE 2 NE OF DOLORE
CARMEL        CA 93921

GERALD D JOHNSON
2ND AVE 2 NE OF DOLORES
CARMEL CA  93921

26825

| Principal balance as of 02/11/05 | | Interest Rate |
|---|---|---|
| $777,789.46 | | 6.30000% |
| This is your principal balance only. For your pay off balance, please call Customer Service. | | |

| Principal Paid Year to Date | Interest Paid Year to Date | Taxes Paid Year to Date | Escrow Balance Year to Date |
|---|---|---|---|
| $740.71 | $4,087.28 | | |

| | | |
|---|---|---|
| Payment due | 02/01/05 | |
| Current payment | 4,827.99 | |
| Overdue payments | 4,827.99 | |
| Unpaid late charges | | |
| Other charges | | |
| | | |
| Total Payment | 9,655.98 | |

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit bureau.

## Activity Since Last Statement

| DESCRIPTION | DATE DUE | DATE PAID | PRINCIPAL | INTEREST | ESCROW/IMPOUND | MISC. | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|

*Handwritten:* DATE PAID 3-12-05  Effective date 3-14-05  $4827.99  CONF.# 5554650

*Return the bottom portion with your payment*

GERALD D JOHNSON

2ND AVE 2 NE OF DOLORES
CARMEL CA  93921

# NovaStar MORTGAGE INC.

**Payment Coupon**

LOAN NUMBER: 0001379791

*DO NOT SEND WRITTEN CORRESPONDENCE WITH YOUR PAYMENT.*

☐ Please check this box if changes are indicated on the reverse side.

Customer Service: (888) 289-1231 / Make checks payable to:

Please specify additional funds below. Any additional funds not specified will be applied first to escrow advance and then to outstanding fees.

| | |
|---|---|
| Current payment | 4,827.99 |
| Overdue payment(s) | 4,827.99 |
| Unpaid late charges | |
| Other charges | |
| Total payment | 9,655.98 |
| If received after: | 02/16/05 |
| Pay this amount: | 9,945.66 |

| | |
|---|---|
| Additional Principal | |
| Additional Escrow | |
| Other | |
| Total Enclosed | |

NOVASTAR MORTGAGE, INC.
PO Box 808911
KANSAS CITY  MO  64184-8911

0001379791 00004827990005117675

ALAIN PINEL ANNEX       Fax:831-622-1559

```
        ** Transmit Conf.Report **
```

P.1                                           May  2 '05   15:27

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 19252949630 | NORMAL | 2,15:23 | 3'31" | 8 | * O K | |



# ALAIN PINEL
### REALTORS

# FAX

**DATE:** 5-2-05          **ATTENTION:** BRIAN AND SANDY

**FROM:** GERALD JOHNSON

**FAX TO NUMBER:** 925-294-9630

**NO. OF PAGES INCLUDING COVER PAGE:** 8

BRIAN AND SANDY

ATTACHED IS THE ADJ NOTE
AND MORTGAGE STATEMENT.

GERALD
831-915-8339

# EXHIBIT "G"



# ALAIN PINEL
### REALTORS

# FAX

OLD REPUBLIC TITLE CO.
THERESA NIGRO

DATE: **5-5-05**

ATTENTION: TOM KRONLAGE
FIRST FEDERAL BANK OF CA.
SUITE 400, 4TH FLOOR

FROM: GERALD JOHNSON

FAX TO NUMBER: 310-665-2329

NO. OF PAGES INCLUDING COVER PAGE: 2
310-260-4053
925-447-8247

---

TO WHOM IT MAY CONCERN,

ATTACHED YOU WILL HAVE THE SIGNED "NOTICE
OF RIGHT TO CANCEL" DATED 5-5-05 FOR
LOAN NUMBER 49792970. AFTER OUR
COMPLETE REVIEW OF THE LOAN CONDITIONS,
WE ARE SORRY TO SAY THAT THE CONDITIONS
FAIL TO MEET THE PRESENT FINANCIAL NEED
FOR MY DAUGHTER'S EDUCATION, WE WILL
CONTINUE TO REVIEW OTHER OPTIONS. IF YOU
HAVE ANY QUESTIONS PLEASE CALL ME.

## Alain Pinel Realtors

**Purveyors of Distinctive Properties and Estates**
Junipero Between 5th & 6th
P.O. Box 7249
Carmel, CA 93921   Phone (831) 622-1040   West Wing Fax (831) 622-1559

GERALD JOHNSON
831-915-8339

# NOTICE OF RIGHT TO CANCEL

LENDER: First Federal Bank of California

DATE  May 5, 2005
LOAN NO.  49792970
TYPE  CONVENTIONAL

BORROWERS/OWNERS Deborah E. Johnson

ADDRESS    2nd Ave 2 NE of Dolores Street
CITY/STATE/ZIP Carmel, CA 93921
PROPERTY   2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)     The date of the transaction, which is May 5, 2005
         or
(2)     The date you received your Truth in Lending disclosures;
         or
(3)     The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

First Federal Bank of California
6053 W. Century Blvd. St 400 4th Floor Los Angeles CA 90045

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
                    (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_Deborah E Johnson_, By _Gerald D John_ for her as attorney in fact  5-5-05
SIGNATURE                                                              DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_Deborah E Johnson_, By _Gerald D John_ for her as attorney in fact.
BORROWER/OWNER Deborah E Johnson          DATE  BORROWER/OWNER          DATE
                              5-5-05

BORROWER/OWNER          DATE  BORROWER/OWNER          DATE

2345937169

MP-64 (0305).01
®                              VMP Mortgage Solutions (800)521-7291

49792970

10/00

ALAIN PINEL ANNEX    Fax:831-622-1559

\*\* Transmit Conf. Report \*\*

P.1                                    May 6 '05  0:22

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 13102604053 | NORMAL | 6, 0:20 | 0'58" | 2 | \* O K | |



# ALAIN PINEL
### REALTORS

# FAX

**DATE:** 5-5-05        **ATTENTION:** Tom Kronlage
First Federal Bank of Ca.
Suite 400, 4th Floor

**FROM:** Gerald Johnson

**FAX TO NUMBER:** 310-665-2329

**NO. OF PAGES INCLUDING COVER PAGE:** 2    310-260-4053

To whom it may concern,

Attached you will have the signed "Notice

of Right To Cancel" dated 5-5-05 for

loan number 49792970. After our

complete review of the loan conditions,

we are sorry to say that the conditions

fail to meet the present financial need

... my daughter's education, we will



# ALAIN PINEL
## REALTORS

# FAX

DATE: 5-8-2005    ATTENTION: THERESA NIGRO  OLD REPUBLIC
TITLE CO.
Tom KRANLAGE, FIRST FED. BANK OF
CA.

FROM: GERALD JOHNSON

FAX TO NUMBER: 310 - 260 - 4053
925 - 447 - 8247

NO. OF PAGES INCLUDING COVER PAGE: 2

To WHOM IT MAY CONCERN,

ATTACHED YOU WILL HAVE MY SIGNED

RECISSION OF THE " NOTICE OF RIGHT TO

CANCEL" WHICH WAS FAXED TO YOU ON

5-6-2005, FOR LOAN NUMBER 49792970.

WE HAVE DECIDED TO PROCEED WITH THE CLOSING

OF THE LOAN AND ESCROW ON THE PREVIOUS

TERMS. IF YOU HAVE ANY QUESTONS PLEASE

CALL ME. I WILL DISCUSS SOME CORRECTIONS

TO THE CLOSING STATEMENT'S FIGURES ON

MONDAY 5-9-2005.

GERALD JOHNSON

## Alain Pinel Realtors

**Purveyors of Distinctive Properties and Estates** 831-915-8339
Junipero Between 5th & 6th
P.O. Box 7249
Carmel, CA 93921   Phone (831) 622-1040   West Wing Fax (831) 622-1559

## NOTICE OF RIGHT TO CANCEL

LENDER: First Federal Bank of California

DATE May 5, 2005
LOAN NO. 49792970
TYPE CONVENTIONAL

BORROWERS/OWNERS Deborah E. Johnson

ADDRESS        2nd Ave 2 NE of Dolores Street
CITY/STATE/ZIP Carmel, CA 93921
PROPERTY       2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)     The date of the transaction, which is May 5, 2005
        or
(2)     The date you received your Truth in Lending disclosures;
        or
(3)     The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

First Federal Bank of California
6053 W. Century Blvd. St 400 4th Floor Los Angeles CA 90045

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_Deborah E. Johnson_  / By Gerald D John for her as attorney in fact    5-5-05
SIGNATURE                                                        DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_Deborah E. Johnson_, By Gerald D John for her as attorney in fact.
BORROWER/OWNER Deborah E. Johnson        DATE        BORROWER/OWNER        DATE
                                        5-5-05

BORROWER/OWNER                    DATE        BORROWER/OWNER        DATE

2345937169

MP-64 (0305).01

VMP Mortgage Solutions (800)521-7291

49792970

10/00

*[Handwritten diagonal text across page: VOID as of 5-5-2005 by Gerald D John for her as attorney in fact 5-8-2005]*

*[Handwritten diagonal text: NOTICE OF RIGHT TO CANCEL Given by Gerald D John]*

```
**    Transmit  Conf. Report  **
```

P.1                                          May  8 '05   19:33

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 19252949630 | NORMAL | 8.19:31 | 0'58" | 2 | * O K | |



## ALAIN PINEL
### REALTORS

# FAX

DATE: **5-8-2005**    ATTENTION: THERESA NIGRO  OLD REPUBLIC
TITLE CO.
TOM KRUNLAGE, FIRST FED. BANK OF
CA.

FROM: GERALD JOHNSON

FAX TO NUMBER: 310-260-4053
925-447-8247

NO. OF PAGES INCLUDING COVER PAGE:    2

TO WHOM IT MAY CONCERN,

ATTACHED YOU WILL HAVE MY SIGNED

RECISSION OF THE " NOTICE OF RIGHT TO

CANCEL" WHICH WAS FAXED TO YOU ON

5-6-2005, FOR LOAN NUMBER 49792970.

WE HAVE DECIDED TO PROCEED WITH THE CLOSING

OF THE LOAN AND ESCROW ON THE PREVIOUS

TERMS. IF YOU HAVE ANY QUESTONS PLEASE

ALAIN PINEL ANNEX    Fax:831-622-1559

## **✳✳ Transmit Conf.Report ✳✳**

P.1

May 8 '05 19:07

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 19254478247 | NORMAL | 8,19:06 | 1'00" | 2 | ✳ O K | |



# ALAIN PINEL
### REALTORS

# FAX

**DATE:** 5-8-2005    **ATTENTION:** THERESA NIGRO OLD REPUBLIC TITLE CO.
TOM KRUNLAGE, FIRST FED. BANK OF CA.

**FROM:** GERALD JOHNSON

**FAX TO NUMBER:** 310-260-4053
925-447-8247

**NO. OF PAGES INCLUDING COVER PAGE:** 2

To WHOM IT MAY CONCERN,

ATTACHED YOU WILL HAVE MY SIGNED

RECISSION OF THE "NOTICE OF RIGHT TO

CANCEL" WHICH WAS FAXED TO YOU ON

5-6-2005, FOR LOAN NUMBER 49792970.

WE HAVE DECIDED TO PROCEED WITH THE CLOSING

OF THE LOAN AND ESCROW ON THE PREVIOUS

TERMS. IF YOU HAVE ANY QUESTIONS PLEASE

\*\* Transmit Conf.Report \*\*

P.1                                                    May  8 '05  19:06

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 13102604053 | NORMAL | 8,19:04 | 0'59" | 2 | * O K | |



# ALAIN PINEL
### REALTORS

# FAX

**DATE:** 5-8-2005    **ATTENTION:** THERESA NIGRO OLD REPUBLIC
TITLE CO.
TOM KRUMLAGE, FIRST FED. BANK OF
CA.

**FROM:** GERALD JOHNSON

**FAX TO NUMBER:** 310 - 260 - 4053
925 - 447 - 8247

**NO. OF PAGES INCLUDING COVER PAGE:** 2

TO WHOM IT MAY CONCERN,

ATTACHED YOU WILL HAVE MY SIGNED

RECISSION OF THE "NOTICE OF RIGHT TO

CANCEL" WHICH WAS FAXED TO YOU ON

5-6-2005, FOR LOAN NUMBER 49792970.

WE HAVE DECIDED TO PROCEED WITH THE CLOSING

OF THE LOAN AND ESCROW ON THE PREVIOUS

TERMS. IF YOU HAVE ANY QUESTONS PLEASE

**FIRST FEDERAL BANK OF CALIFORNIA**
6053 WEST CENTURY BLVD, SUITE 400
LOS ANGELES CA 90045
310-665-2345
FAX 310-260-4081

**Darlene Phung**
dphung@firstfedca.com

# FUNDING CONDITIONS!!!

DATE: 5/11/05

REGARDING: 2ND Ave. NE of Doloris          Loan#: 49792970

CLIENT: GERALD JOHNSON          FAX#: (831) 626-5960

BROKER: Sandy / Brian          FAX#: (925) 294-9630

THE FOLLOWING CONDITIONS ARE OUTSTANDING AND MUST BE
SATISFIED BY 3:30 THE DAY PRIOR TO FUNDING. WE DO NOT DO SAME
DAY FUNDING!!!

Dear Mr. Gerald Johnson,

Please overnight the last conditions needed prior to funding, which is the
voided Notice of Right to Cancel that was signed in error. Thank you
for your assistance.

Kind Regards,

Darlene Phung

FIRST FEDERAL BANK OF CALIFORNIA
6053 WEST CENTURY BLVD, SUITE 400
LOS ANGELES CA 90045
310-665-2345
FAX 310-260-4081

**Darlene Phung**
**dphung@firstfedca.com**

# FUNDING CONDITIONS!!!

DATE: 5/11/05

REGARDING: 2ND Ave, NE of Deloris          Loan#: 49792970

CLIENT: GERALD JOHNSON                  FAX#: (831) 626-5960

BROKER: Sandy / Brian                   FAX#: (925) 294-9630

**THE FOLLOWING CONDITIONS ARE OUTSTANDING AND MUST BE
SATISFIED BY 3:30 THE DAY PRIOR TO FUNDING. WE DO NOT DO SAME
DAY FUNDING!!!**

Dear Mr. Gerald Johnson,

Please overnight the last conditions needed prior to funding, **which is the
voided Notice of Right to Cancel that was signed in error.** Thank you
for your assistance.

Kind Regards,

Darlene Phung

MS. PHUNG,

THE FED EX TRACKING # IS 790019147408.

To CORRECT YOUR STATEMENT ABOVE, THE "NOTICE
OF RIGHT TO CANCEL" WAS NOT SIGNED IN ERROR,
IT WAS RESCINDED.

GERALD JOHNSON

**HP Officejet V Series V40**
**Personal Printer/Fax/Copier/Scanner**

Log for
DEBORAH E. JOHNSON
831-626-5960
May 12 2005 9:33AM

## Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| May 12 | 9:19AM | Fax Sent | 13102604081 | 0:38 | 1 | OK |

# EXHIBIT "H"

# FIRST FEDERAL BANK
### OF CALIFORNIA
401 WILSHIRE BLVD
SANTA MONICA CA 90401

## Late Notice

Account Number:          49792970

Notice Date:              04/23/07

Address Service Requested

*[handwritten: TRISH@ sweat Happens .com  2:30 - 3:00 THURS  663-66216  93F-320-5419]*

DEBORAH E JOHNSON
PO BOX 4448
CARMEL, CA 93921

346-21

For the property located at:

2ND AVE 2NE OF DOLORES STREET*
CARMEL         CA

## Important Reminder

We have not received your mortgage payment due 04/01/07.  As a result, a late fee has been assessed against your loan.  We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults may be reflected in your credit report.  To protect your credit and avoid adverse credit reporting, please remit your payment immediately.

Should you need to make arrangements to bring your loan current, please contact a customer service representative at 800-637-5540.  If you have already made the payment, please disregard this notice.



*[handwritten: Area  5 Attn: Suzie  0 310-319-5736  310-319-5717  3600.16  204 34  Martin]*

---

Please Detach and Return This Portion With Your Payment.  Do Not Send Cash.

# FIRST FEDERAL BANK
### OF CALIFORNIA

## Late Notice

Borrower:     DEBORAH E JOHNSON

| | |
|---|---|
| Account Number | 49792970 |
| Total Amount Due | $3,930.89 |
| Additional Principal Payment | $_____ |
| Additional Escrow Payment | $_____ |
| Other | $_____ |
| Total Amount Enclosed | $_____ |

Make payments to:

**FIRST FEDERAL BANK OF CA
401 WILSHIRE BLVD
SANTA MONICA CA 90401**



**FIRST FEDERAL BANK**
OF CALIFORNIA
401 WILSHIRE BLVD
SANTA MONICA CA 90401

# Late Notice

| | |
|---|---|
| **Account Number:** | 49792970 |
| **Notice Date:** | 05/21/07 |

**For the property located at:**

2ND AVE 2NE OF DOLORES STREET*
CARMEL        CA

Address Service Requested

DEBORAH E JOHNSON
PO BOX 4448
CARMEL, CA 93921

||l|l..ull|l|l.l...l|l.|l.l.l.l.|l.l.l.l.|l.l.l.l.l.|l.l.l|    383-21

## Important Reminder

We have not received your mortgage payment due 05/01/07.  As a result, a late fee has been assessed against your loan.  We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults may be reflected in your credit report.  To protect your credit and avoid adverse credit reporting, please remit your payment immediately.

Should you need to make arrangements to bring your loan current, please contact a customer service representative at 800-637-5540.  If you have already made the payment, please disregard this notice.

Please Detach and Return This Portion With Your Payment.  Do Not Send Cash.

**FIRST FEDERAL BANK**
OF CALIFORNIA

# Late Notice

Borrower:     DEBORAH E JOHNSON

| | |
|---|---|
| Account Number | 49792970 |
| Total Amount Due | $13,102.77 |
| Additional Principal Payment | $_____ |
| Additional Escrow Payment | $_____ |
| Other | $_____ |
| Total Amount Enclosed | $_____ |

Make payments to:

**FIRST FEDERAL BANK OF CA**
**401 WILSHIRE BLVD**
**SANTA MONICA CA 90401**



# FIRST FEDERAL BANK
## OF CALIFORNIA®

CORPORATE OFFICE: 401 WILSHIRE BLVD. • SANTA MONICA, CA 90401 • (310) 319-6000

05/23/07

DEBORAH E JOHNSON

PO BOX 4448

CARMEL CA 93921

RE: Mortgage Account Number: 0049792970
    Returned Check

Dear Borrower(s):

Your check number 5355   in the amount of $3610.16
has been returned by your Bank unpaid for the reason indicated
on your check.  A fee of $20.00  has been assessed
against your account for the returned check.

The amount due to bring your account current at this time is
$    16472.66. Please note that your remittance must
include any subsequent payments or fees that may become due.
Please send your check to:

                First Federal Bank of California
                401 Wilshire Blvd.
                Santa Monica, CA 90401
                Attention: Loan Service Department .

Please be advised, we report information about your account to
credit bureaus. Late payments, missed payments, or other
defaults on your account may be reflected in your credit
report.If you have any questions, please contact a customer
service representative at (310) 319-5700.

Sincerely

Loan Service Representative

**FIRST FEDERAL BANK** OF CALIFORNIA®
YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®

**MONTHLY STATEMENT**

| | |
|---|---|
| Loan Number: | 0049792970 |
| Statement Date: | 05/18/07 |
| Interest Paid To | 04/01/07 |
| Payment Due | 05/01/07 |
| Past Due Amount | $12,832.00 |
| Next Due Date | 06/01/07 |
| Next Interest Rate | 9.12400 |
| Next Note Amount P&I Payment** | $3,405.82 |
| Next Escrow Payment | $ .00 |
| Next Optional Insurance Payment | $ .00 |
| Next Fee Receivable Payment | $ .00 |
| Next Payment Due | $3,405.82 |
| | |
| Total Amount Due | $16,237.82 |

PROPERTY ADDRESS:    2ND AVE 2NE OF DOLORES STREET*
CARMEL CA 93921

15548

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

** May not include all accrued interest or principal. If negative amortization is occurring on your loan.

| | |
|---|---|
| Principal Balance | $888,519.12 |
| Fee Receivable Balance | $9,221.84 |
| Uncollected Late Charges* | $ .00 |
| Escrow Balance | $ .00 |
| Unapplied Funds Balance | $ .00 |
| Interest Paid YTD | $13,623.28 |
| Escrowed Taxes Paid YTD | $ .00 |

* Late Charges Due on Prior Payments Posted

If you pay the Principal Balance shown on this statement, or you are making your last regularly scheduled payment, you will still have a balance due of interest accrued from the date of your last payment to the date we receive your payment, plus any unpaid additional fees and/or charges that may have been incurred but are not yet paid.

Any Past Due Amount is immediately due and payable. Non-payment of amounts due constitutes a default and your loan is subject to collection remedies. If you pay the Next Payment Due, but do not pay the Past Due Amount, your payment will be insufficient to cure the default and your current payment may not be applied. If you send less than the Total Amount Due, it may delay the application of your payment.

Payment must be received by the close of business 06/16/07 or a late charge of $204.34 will be assessed. Amounts paid in excess of the Total Amount Due will be applied to your account according to the provisions of your loan documents.



See Reverse Side For Additional Important Information

---

**FIRST FEDERAL BANK** OF CALIFORNIA®
YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®

**PAYMENT COUPON**

LOAN NUMBER: 0049792970
STATEMENT DATE: 05/18/07

Please specify additional funds here. Any additional funds not specified will be applied according to the provisions of your loan documents.

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

| TOTAL AMOUNT DUE | $16,237.82 |
|---|---|
| DUE DATE | JUN 01, 07 |
| TOTAL AMOUNT DUE AFTER 06/16/07 | $16,442.16 |

FIRST FEDERAL BANK OF CALIFORNIA
PO BOX 80025
CITY OF INDUSTRY CA 91716-8025

TOTAL AMOUNT DUE $ $16,237.82

ADD'L PRINCIPAL: $_____

ADD'L ESCROW: $_____

OTHER: _____ $_____

TOTAL AMOUNT ENCLOSED:
$_____

2290049792970 001623782 001644216 2

**FIRST FEDERAL BANK**
OF CALIFORNIA®
*YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®*

PROPERTY ADDRESS:    2ND AVE 2NE OF DOLORES STREET*
                     CARMEL CA 93921

1295 RE

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

## MONTHLY STATEMENT

| Loan Number: | 0048792970 |
|---|---|
| Statement Date: | 06/18/07 |
| Interest Paid To | 03/01/07 |
| Payment Due | 04/01/07 |
| Past Due Amount | $10,974.68 |
| Next Due Date | 07/01/07 |
| Next Interest Rate | 9.13800 |
| Next Note Amount P&I Payment** | $3,661.26 |
| Next Escrow Payment | $ .00 |
| Next Optional Insurance Payment | $ .00 |
| Next Fee Receivable Payment | $ .00 |
| Next Payment Due | $3,661.26 |
| **Total Amount Due** | **$14,635.94** |

** May not include all accrued interest or principal,
if negative amortization is occurring on your loan.

| Principal Balance | $885,272.85 |
|---|---|
| Fee Receivable Balance | $144.20 |
| Uncollected Late Charges* | $ .00 |
| Escrow Balance | $ .00 |
| Unapplied Funds Balance | $ .00 |
| Interest Paid YTD | $10,217.46 |
| Escrowed Taxes Paid YTD | $ .00 |

* Late Charges Due on Prior Payments Posted

| 07/01/07 Alternative Payment Options: | |
|---|---|
| Projected Interest Only Payment | $6,806.38 |
| Projected Fully Amortizing Payment | $7,385.94 |

If you pay the Principal Balance shown on this statement, or you are making your last regularly scheduled payment, you will still have a balance due of interest accrued from the date of your last payment to the date we receive your payment, plus any unpaid additional fees and/or charges that may have been incurred but are not yet paid.

Any Past Due Amount is immediately due and payable. Non-payment of amounts due constitutes a default and your loan is subject to collection remedies. If you pay the Next Payment Due, but do not pay the Past Due Amount, your payment will be insufficient to cure the default and your current payment may not be applied. If you send less than the Total Amount Due, it may delay the application of your payment.

Payment must be received by the close of business 07/16/07 or a late charge of $219.67 will be assessed. Amounts paid in excess of the Total Amount Due will be applied to your account according to the provisions of your loan documents.



### See Reverse Side For Additional Important Information

**FIRST FEDERAL BANK**
OF CALIFORNIA®
*YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®*

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

FIRST FEDERAL BANK OF CALIFORNIA
PO BOX 80025
CITY OF INDUSTRY CA 91716-8025

LOAN NUMBER: 0049792970
STATEMENT DATE: 06/18/07

| | TOTAL AMOUNT DUE | $14,635.94 |
|---|---|---|
| | DUE DATE | JUL 01, 07 |
| | TOTAL AMOUNT DUE AFTER 07/16/07 | $14,855.61 |

## PAYMENT COUPON

Please specify additional funds here. Any additional funds not specified will be applied according to the provisions of your loan documents.

TOTAL AMOUNT DUE $    $14,635.94

ADD'L PRINCIPAL:    $_____

ADD'L ESCROW:    $_____

OTHER:    $_____

TOTAL AMOUNT ENCLOSED:

$_____

2290049792970 001463594 001485561 2

# EXHIBIT "I"

# DECLARATION OF CAROL A. BAXTER

## IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, CAROL A. BAXTER, hereby declare as follows:

1.    I am employed by First Federal Bank of California (hereinafter, "Movant") as its Senior Vice President, Loan Service Department.  I am a custodian of the books, records and files of Movant, as those records pertain to loans or extensions of credit by Movant to Deborah Elizabeth Johnson (hereinafter, "Respondent").  I have personally worked on said records, and as to the facts contained herein, I know them to be true of my own personal knowledge or I have gained knowledge of them from the records of Movant which are prepared and maintained in the ordinary course of its business, at or near the time of the acts or occurrences depicted or represented by such records.  If called upon as a witness, I could and would competently testify to the fact contained herein, as I have personal knowledge thereof.

2.    The records of Respondent are made in the ordinary course of Movant's business by persons with a business duty to Movant to make such records.  The records were made at or near the time of the occurrence of the event which they purport to memorialize.

3.    Movant's records are kept on a computer system and organized by account number, including records of all contacts made by entities or individuals involved in a particular loan transaction.  Similarly, a record of all payments received by Movant are input into Movant's computer system indicating the date on which the payment was received, its application to an outstanding loan, the balance remaining due and owing  after application of such proceeds, and whether a late charge is applicable based upon the date the payment was made.

4.    Movant's books and records for Respondent's accounts herein were kept in the manner described above.

5.    Among the assets which purportedly are part of the Respondent's estate is certain real property commonly known as 2nd Avenue 2NE of Dolores Street, Carmel, California 93921 (hereinafter, "Property").

6.    On May 5, 2005, Respondent made, executed and delivered to Movant a

8

1   promissory note (hereinafter, "Note") in the face amount of $840,000.00 which Note required

2   monthly payments beginning in the amount of $3,661.26. A true and correct copy of the Note is

3   attached hereto as Exhibit "1" and incorporated herein by this reference as though set forth in

4   full.

5           7.      Concurrently with the execution of the Note, and to secure payment of the

6   principal sum and interest as provided in the Note, Respondent executed and delivered to

7   Movant, as beneficiary, a certain Deed of Trust with Assignment of Rents dated May 5, 2005,

8   (hereinafter, "Deed of Trust"). The Deed of Trust was duly recorded on May 16, 2005 as

9   Instrument No. 2005-048551, Official Records of Monterey County, California. A true and

10  correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by

11  this reference as though set forth in full.

12          8.      Respondent has defaulted on her obligations under the Note and Deed of

13  Trust in failing to make payments due under the Note as and when due.

14          9.      My review of Movant's records reflects that unpaid principal under the

15  Note as of the petition date was $962,311.64.

16          10.     Respondent last made payment on May 23, 2007. At the time of the filing

17  of the bankruptcy petition on November 7, 2007, the Respondent was eight payments in arrears,

18  for April through November, 2007. The pre-petition arrearage including late charges is

19  $77,038.79. In addition, Respondents has failed to make any post-petition monthly payments

20  coming due. As of the date of this Motion, payments and late charges are in arrears in an amount

21  not less than $80,919.72 including payment for December, and this amount will have increased

22  by another $3,661.26 by the date of the hearing on this Motion, for total post-petition defaults of

23  not less than $80,919.72. Movant estimates attorneys' fees compensable under the Note of

24  $3,000. Therefore, by the date of the hearing on this Motion, Respondent's liability on account

25  of her obligations under the Note shall be not less than $962,311.64.

26          11.     Movant holds the first priority deed of trust on the property. I am

27  informed that the second mortgage is held by National City, with a balance of approximately

28  ///

9

1   $176,407.64.

2        12.    Movant's current appraisal shows the value of the Property to be no more

3   than $1,050,000.00. In foreclosing upon and reselling the Property, based on my experience in

4   connection with loans on residential real property, Movant would incur real estate commissions

5   totaling 6% of sales price and estimated costs of sale of 10% of the total sale price. It is my

6   opinion that sale of the Property would result in the following:

7          Sale:          $1,050,000.00

8          Cost of Sale (approx):$   105,000.00

9          Net:         $   945,000.00

10         **LESS:**

11         Movant's Liens    $  962,311.64

12         Lien of National City $  176,407.64

13         Equity to Estate:  $ (193,719.28)

14       13.    Considering the amount of the indebtedness secured by the Property and

15  the costs of sale which would be incurred in selling the Property, there is no equity which could

16  be realized from the Property for the benefit of the Respondents' estate.

17       I declare under penalty of perjury under the laws of the United States of

18  America that the foregoing is true and correct.

19       Executed on January  3 , 2008, at Santa Monica, California.

20

21

22

23                    CAROL A. BAXTER
                      Declarant

24

25

26

27

28

10

# EXHIBIT "J"

Bay Cities Appraisals (831)663-6626

File No. 07-GF8719| Page #1

**Summary Appraisal Report**

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address  2ND AVENUE & 2ND N DOLORES STREET | City CARMEL  State CA  Zip Code 93921 |
| Borrower  JOHNSON GERALD D/JOHNSON DEBORA  Owner of Public Record  JOHNSON GERALD D/JOHNSON [ County MONTEREY |
| Legal Description  VOL 14 PAR MAPS PG 58 PAR B | |
| Assessor's Parcel #  010-126-022 | Tax Year 06/07    R.E. Taxes $ 4,057.90 |
| Neighborhood Name  CARMEL BY THE SEA | Map Reference  1153E1    Census Tract 0117.00 |
| Occupant  ☒ Owner  ☐ Tenant  ☐ Vacant   Special Assessments $ | ☐ PUD  HOA $ ☐ per year  ☐ per month |
| Property Rights Appraised  ☒ Fee Simple  ☐ Leasehold  ☐ Other (describe) | |
| Assignment Type  ☐ Purchase Transaction  ☐ Refinance Transaction  ☒ Other (describe) | |
| Lender/Client  NOVASTAR MORTGAGE, INC.   Address  7070 SAMUEL MORSE DRIVE, SUITE 200, COLUMBIA, MD 21046 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes  ☒ No
Report data source(s) used, offering price(s), and date(s).  MLS/dataquick

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract  N/A    Is the property seller the owner of public record?  ☐ Yes  ☐ No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  ☐ Yes  ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | Present Land Use % |
|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE | AGE | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | $ (000) | (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | 795 Low | New | Multi-Family % |
| Neighborhood Boundaries  Carmel City limits to the north, Highway 1 to the east, Carmel River to the south | | | 4,000 High | 99 | Commercial 20 % |
| and the Pacific Ocean to the west. | | | 1,500 Pred. | 60 | Other % |

Neighborhood Description    The subject is located in popular Carmel By The Sea, a vacation destination; single family homes of average to excellent quality, design and appeal, many second or vacation homes, with hotels and motels interspersed, local and ocean views; within walking distance to the downtown area of shops and restaurants with world class golf courses to the north in Pebble Beach;many beach and park points of interest.
Market Conditions (including support for the above conclusions)    Market conditions in the area considered are average to slow; financing is predominately conventional with some buydowns and concessions of seller paid closing costs noted.Real estate values increased through summer 2005 per MLS/local agents and analysis of sales; marketing time has increased along with listing inventory, reductions in list and sales prices noted.

| | |
|---|---|
| Dimensions See Plat Map | Area 3,999 +-sq.ft.    Shape Rectangle    View Forest/Ocean Peek |
| Specific Zoning Classification R1 | Zoning Description single family residential |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes  ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Macadam | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area  ☐ Yes  ☒ No   FEMA Flood Zone X    FEMA Map # 0602000005B    FEMA Map Date 06/17/86
Are the utilities and off-site improvements typical for the market area?  ☒ Yes  ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes  ☒ No  If Yes, describe
No adverse easements/encroachments noted. A complete title report was not available for appraiser's review & no geotechnical/seismology data was provided to the appraiser(extraordinary assumptions made). Subject site is gently sloped up from street level. Ocean Peek views from the deck, dining and upstairs bedroom.No addresses are used in the city. Direction and cross streets only.

| General Description | | Foundation | | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☒ Crawl Space | Foundation Walls  Concrete/Avg. | Floors  Hrdwd/Vinyl/Crpt/G |
| # of Stories  2 | ☐ Full Basement ☒ Partial Basement | Exterior Walls  Wood/Avg.+ | Walls  Shtrk/Avg.+ |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area  121 sq.ft. | Roof Surface  Tile/Good | Trim/Finish  Wood/Avg.+ |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish  0 % | Gutters & Downspouts Adequate/G | Bath Floor  Vinyl/Avg.+ |
| Design (Style)  Cottage | ☒ Outside Entry/Exit ☐ Sump Pump | Window Type  DP/Wood/G-A+ | Bath Wainscot Tile/Leg tubs/A+ |
| Year Built  1940 | Evidence of ☐ Infestation | Storm Sash/Insulated  No | Car Storage ☐ None |
| Effective Age (Yrs)  25yrs. | ☐ Dampness ☐ Settlement | Screens  Yes/Good | ☒ Driveway  # of Cars  1 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface  Macadam |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel Gas | ☒ Fireplace(s) # 1 ☒ Fence wood | ☐ Garage  # of Cars |
| ☐ Floor ☐ Scuttle | Cooling ☐ Central Air Conditioning | ☒ Patio/Deck fbqstn ☒ Porch wood | ☐ Carport  # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains:  5 Rooms  2 Bedrooms  2 Bath(s)  1,249 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).  See attached addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject is in average plus overall condition with ongoing maintenance and updating. Modernization: all new hardwood flooring in living, dining and kitchen; kitchen completely remodeled with new drains, appliances, cabinets and flooring; new bath fixtures, sinks, refinished leg tubs and flooring in baths; new interior and exterior paint, new decking and patios, new 50 year composite tile roof, new FAU, all new dual paned windows and sliding doors except decorative wood, lighted windows in living room.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  ☒ No  If Yes, describe
This report is not a home inspection, the appraiser only performed a visual inspection of accessable areas

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes  ☐ No  If No, describe

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07-GF8719 Page #2

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

| There are | 27 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,000,000 to $ 1,600,000 |
| There are | 38 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,000,000 to $ 1,600,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE & 2ND N DOLORE CARMEL, CA 93921 | SE Corner Lincoln & 1st Carmel | | 2 SE Torres & 5th Street Carmel | | 2 SW Perry Newberry & Fifth Carmel | |
| Proximity to Subject | | 0.08 miles | | 0.36 miles | | 0.57 miles | |
| Sale Price | $ N/A | $ 1,475,000 | | $ 1,415,000 | | $ 1,233,500 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 1156.86 sq.ft. | | $ 975.86 sq.ft. | | $ 883.40 sq.ft. | |
| Data Source(s) | | Dataquick/MLS673127 | | Dataquick/MLS632713 | | Dataquick/MLS708383 | |
| Verification Source(s) | | Curb inspection | | Curb inspection | | Curb inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conv. Doc.#21275 | | Conv. Doc.#25901 | | Conv. Doc.#29704 | |
| Date of Sale/Time | | Rec. 03/15/07 | | Rec.03/30/07 | | Rec. 04/13/07 | |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 3,999 +-sq.ft. | 4000sq.ft. | | 4000sq.ft. | | 4875sq.ft. | |
| View | Forest/Ocean Pe | Forest/OceanPk | | Forest/local | +35,000 | Forest/Local | +35,000 |
| Design (Style) | Cottage | Bungalow | | Cottage | | Bungalow | |
| Quality of Construction | Average | Better | -50,000 | Better | -50,000 | Average | |
| Actual Age | 67yrs./Remodel | 88yrs./Remodel | | 68yrs./Remodel | | 53yrs./Update | +45,000 |
| Condition | Good | Lit.better | -25,000 | Superior | -50,000 | Average | +35,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5 2 2 | 5 2 2 | | 5 2 2.5 | -15,000 | 5 2 2 | |
| Gross Living Area | 1,249 sq.ft. | 1,275 sq.ft. | | 1,450 sq.ft. | -30,150 | 1,396 sq.ft. | -22,050 |
| Basement & Finished Rooms Below Grade | 121 Sq.Ft. APN#s | Similar 010-127-023 | | Similar 010-092-014 | | Similar 009-163-002 | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/no | FAU/None | | FAU/None | | FAU/None | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Built in | 2 Attached | -20,000 | None | +20,000 | 1 Detached | |
| Porch/Patio/Deck | Flagstn Patio/Dks | Patio,encl.deck | -10,000 | Decks | | Patios | |
| | 1 Fireplace | 1 Fireplace | | 2 Fireplaces | -10,000 | 1 Fireplace | |
| Net Adjustment (Total) | | + ☒ - $ | 105,000 | + ☒ - $ | 100,150 | ☒ + - $ | -92,950 |
| Adjusted Sale Price of Comparables | | Net Adj. 7.1 % Gross Adj. 7.1 % $ | 1,370,000 | Net Adj. 7.1 % Gross Adj. 14.9 % $ | 1,314,850 | Net Adj. 7.5 % Gross Adj. 11.1 % $ | 1,326,450 |

I ☒ did did not research the sale or transfer history of the subject property and comparable sales. If not, explai

My research did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MLS/dataquick
My research ☒ did did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Dataquick/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/17/1995 | 06/29/06 | 01/06/05 | 04/12/00 |
| Price of Prior Sale/Transfer | 285,000 | 1,495,000 | 1,575,000 | 795,000 |
| Data Source(s) | Dataquick | Dataquick | Dataquick | Dataquick |
| Effective Date of Data Source(s) | 05/21/07 | 05/21/07 | 05/21/07 | 05/21/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Comp#1 sold in 2006 as noted above.

Summary of Sales Comparison Approach   The subject property is compatible to the highly subjective neighborhood where values differ widely block to block and house to house. Home are varied in age and quality with design and appeal of great import. The comparables used are the most reasonable sales noted in the area considered close in size, age, land, location and quality. Comp#1 is a recent sale close in sq.footage, room count and amenities with adjustments for more updating and superior garages and patios.Comp#2 is a recent sale adjusted for inferior views, recent,complete remodel, superior bath count, sq.footage and fireplaces, inferior parking. Comp#3 is the most recent sale adjusted for inferior views, updating, remodeling and condition, larger sq.footage. Comp#4 is a current sale close in proximity with adjustments for superior remodeling, condition, room count and sq.footage. Adjustments are derived from paired sales analysis. The final estimated value is well bracketed with the pre and post adjusted sales comparables.

Indicated Value by Sales Comparison Approach $  1,350,000
Indicated Value by: Sales Comparison Approach $  1,350,000   Cost Approach (if developed) $  1,297,326   Income Approach (if developed) $  N/A
Scope of Work: As stated on page four; perusal of listings and pendings in the area due to the settling market. Determine level of upgrading in comparables.

This appraisal is made ☒ "as is", subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,350,000 , as of  05/17/07 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                    Page 2 of 6                    Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Land/improvement ratio is typical to the area where land value can exceed value of depreciated improvements due to high demand. Two old sales were noted at NW corner Junipero&8th - .04 lot size sold 02/03/06 at $900000., 5 NW Casanova/Ocean - .13 lot size sold 5/22/04 at $1450000 with an ocean view. No newer sales noted, some withdrawn and expired within this range.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | | OPINION OF SITE VALUE | =$ | 1,000,000 |
|---|---|---|---|---|
| Source of cost data  Marshall & Swift/ and/or local builders/contractors | | DWELLING      1,249  Sq.Ft. @ $    280.00 | =$ | 349,720 |
| Quality rating from cost service  Average  Effective date of cost data  05/21/07 | | 121  Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | Bsmnt./storage/laundry/patios,decks | =$ | 25,000 |
| At the request of the client,development of the cost approach has been | | Garage/Carport    250  Sq.Ft. @ $    75.00 | =$ | 18,750 |
| attempted by the appraiser as an analysis to support their opinion of the | | Total Estimate of Cost-New | =$ | 393,470 |
| property's market value.Because there is insufficient market evidence to | | Less    Physical    Functional    External | | |
| credibly support the site value/derivation of total appreciation, the cost | | Depreciation    131,144 | =$( | 131,144) |
| approach is not given any consideration in the appraiser's final | | Depreciated Cost of Improvements | =$ | 262,326 |
| analysis.Use of this data for other purposes is not intended by the | | "As-is" Value of Site Improvements | =$ | 35,000 |
| appraiser. | | | | |
| Estimated Remaining Economic Life (HUD and VA only)    40 Years | | INDICATED VALUE BY COST APPROACH | =$ | 1,297,326 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005                    Page 3 of 6                    Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home, or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Freddie Mac Form 70 March 2005                      Page 4 of 6                      Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    PATRICIA BIAGINI | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Patricia Biagini (Note, digital signature) | Name |
| Company Name  Bay Cities Appraisal | Company Name |
| Company Address  18238 Vierra Canyon Road | Company Address |
| Salinas, Calif. 93907 | |
| Telephone Number  831-663-6626 | Telephone Number |
| Email Address | Email Address |
| Date of Signature and Report  May 23, 2007 | Date of Signature |
| Effective Date of Appraisal  05/17/07 | State Certification # |
| State Certification #  AR004261 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # | Expiration Date of Certification or License |
| State  California | |
| Expiration Date of Certification or License  3/18/2009 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2ND AVENUE & 2ND N DOLORES STREET | Date of Inspection |
| CARMEL, CA 93921 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,350,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | **COMPARABLE SALES** |
| Company Name  NOVASTAR MORTGAGE, INC. | |
| Company Address  7070 SAMUEL MORSE DRIVE, SUITE 200, | ☐ Did not inspect exterior of comparable sales from street |
| COLUMBIA, MD 21046 | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Freddie Mac Form 70 March 2005                    Page 6 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

0017116NVS07
File # 07-GF8719

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE & 2ND N DOLORES CARMEL, CA 93921 | NE Corner Lincoln Street Carmel, | | | | | |
| Proximity to Subject | | 0.08 miles | | | | | |
| Sale Price | $ N/A | $ 1,660,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 1121.62 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Dataquick/MLS661914 | | | | | |
| Verification Source(s) | | Curb Inspection | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Conv. Doc.#7805 | | | | | |
| Date of Sale/Time | | Rec. 01/30/07 | | | | | |
| Location | Good | Good | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 3,999+-sq.ft. | 4000sq.ft. | | | | | |
| View | Forest/Ocean Pt | Forest/Sim | | | | | |
| Design (Style) | Cottage | Cottage | | | | | |
| Quality of Construction | Average | Better | -75,000 | | | | |
| Actual Age | 67yrs./Remodel | 50yrs./BtrRemdl | -75,000 | | | | |
| Condition | Good | Superior | -75,000 | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5 2 2 | 6 3 2 | -10,000 | | | | |
| Gross Living Area | 1,249 sq.ft. | 1,480 sq.ft. | -34,650 | sq.ft. | | sq.ft. | |
| Basement & Finished Rooms Below Grade | 121 Sq.Ft. APN#s | Similar 010-128-007 | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | FAU/no. | Radiant/No | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | |
| Garage/Carport | 1 Builtin | 1 Builtin | | | | | |
| Porch/Patio/Deck | FlgstnPatio/Dks | Patios | | | | | |
| | 1 Fireplace | 2 Fireplaces | -10,000 | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - % | 279,650 | ☐ + ☐ - $ | | ☐ + ☐ - $ | |
| Adjusted Sale Price of Comparables | | Net 16.8 % Gross 16.8 % $ | 1,380,350 | Net % Gross % $ | | Net % Gross % $ | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/17/1995 | 10/30/02 | | |
| Price of Prior Sale/Transfer | 285,000 | 1,450,000 | | |
| Data Source(s) | Dataquick | Dataquick | | |
| Effective Date of Data Source(s) | 05/21/07 | 05/21/07 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

File No. 07-GF8719  Page #8

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | |



### Comparable 4

NE Corner Lincoln Street

| | |
|---|---|
| Prox. to Subject | 0.08 miles |
| Sale Price | 1,660,000 |
| Gross Living Area | 1,480 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Sim |
| Site | 4000sq.ft. |
| Quality | Better |
| Age | 50yrs./BtrRemdl |

### Comparable 5

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

### Comparable 6

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

File No. 07-GF8719| Page #9

## Subject Interior Photo Page

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY  State CA  Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | |



### Subject Interior

2ND AVENUE & 2ND N DOLORES STRE
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |

DOWNSTAIRS BATH



### Subject Interior

UPSTAIRS
BEDROOM

### Subject Interior

File No. 07-GF8719 | Page #10

## Subject Interior Photo Page

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | |



**Subject Interior**

2ND AVENUE & 2ND N DOLORES STRE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |

LIVING ROOM

**Subject Interior**

KITCHEN

**Subject Interior**



DOWNSTAIRS
BEDROOM

File No. 07-GF6719 Page #11

## Subject Photo Page

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | |
|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | |
| City CARMEL | | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | | |



### Subject Front

2ND AVENUE & 2ND N DOLORES STRE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |



### Subject Rear



### Subject Street

Form PIC3x5.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07-GF6719I Page #12

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | |



### Comparable 1
SE Corner Lincoln & 1st
Prox. to Subject · 0.08 miles
Sale Price          1,475,000
Gross Living Area   1,275
Total Rooms         5
Total Bedrooms      2
Total Bathrooms     2
Location            Good
View ·              Forest/OceanPk
Site                4000sq.ft.
Quality             Better
Age                 88yrs./Remodel



### Comparable 2
2 SE Torres & 5th Street
Prox. to Subject    0.36 miles
Sale Price          1,415,000
Gross Living Area   1,450
Total Rooms         5
Total Bedrooms      2
Total Bathrooms     2.5
Location            Good
View                Forest/local
Site                4000sq.ft.
Quality             Better
Age                 68yrs./Remodel



### Comparable 3
2 SW Perry Newberry & Fifth
Prox. to Subject    0.57 miles
Sale Price          1,233,500
Gross Living Area   1,396
Total Rooms         5
Total Bedrooms      2·
Total Bathrooms     2
Location            Good
View                Forest/Local
Site                4875sq.ft.
Quality             Average
Age                 53yrs./Update

[File No. 07-GF8719] [Page #17]

## Supplemental Addendum

File No.    07-GF8719

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City  CARMEL | County  MONTEREY    State  CA    Zip Code  93921 |
| Lender   NOVASTAR MORTGAGE, INC. | |

### • URAR : Additional Features

Builtin, one car garage at street level; Upstairs from street level to treck decking; hardwood entry; vaulted bleached, pine ceiling,lighted windows, rock fireplace, hardwood floors in living room; hardwood floors in dining room; tile drains, birch cabinets, builtin appliances, hardwood floors in kitchen; pedestal sink, leg tub, vinyl floor in bath; one bedroom downstairs; office area and stair up to second floor in back porch; second floor bedroom and bath with pedestal sink, leg tub and vinyl floors; open flagstone patios in rear.

## Building Sketch (Page - 1)

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | |
|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | |
| City | CARMEL | County | MONTEREY | State | CA | Zip Code | 93921 |
| Lender | NOVASTAR MORTGAGE, INC. | | |



Comments:

### AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1096.0 | 1096.0 |
| GLA2 | Second Floor | 153.0 | 153.0 |
| BSMT | Basement | 121.0 | 121.0 |
| GAR | Garage | 250.0 | 250.0 |

Net LIVABLE Area    (Rounded)    1249

### LIVING AREA BREAKDOWN

| | Breakdown | | Subtotals |
|---|---|---|---|
| **First Floor** | | | |
| | 4.0 x | 7.0 | 28.0 |
| | 6.5 x | 6.5 | 35.8 |
| | 7.0 x | 7.5 | 52.5 |
| | 6.5 x | 24.0 | 156.0 |
| | 6.5 x | 27.5 | 178.8 |
| | 0.5 x | 24.5 | 12.3 |
| | 13.0 x | 20.5 | 266.5 |
| | 7.0 x | 17.0 | 127.5 |
| | 9.0 x | 26.5 | 239.5 |
| **Second Floor** | | | |
| | 11.0 x | 11.0 | 121.0 |
| | 4.0 x | 8.0 | 32.0 |

11 Items    (Rounded)    1249

Form SKT.BUSH — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07-GF6719I Page #20

## Plat Map

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
|---|---|
| Property Address | 2ND AVENUE & 2ND'N DOLORES STREET |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. |



File No. 07-GF8719 Page #21

## Location Map

| | | | |
|---|---|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | |



# EXHIBIT "K"

Complete Appraisal Analysis - Summary Appraisal Report

## Uniform Residential Appraisal Report

File # 2Av2neDz

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 2ND AVENUE, 2 NE DOLORES | City CARMEL State CA Zip Code 93921 |
| Borrower JOHNSON | Owner of Public Record SAME AS BORROWER County MONTEREY |
| Legal Description *** See Additional Comments *** | |
| Assessor's Parcel # 010 126 022 | Tax Year '08-'07 R.E. Taxes $ PROP. 13 |
| Neighborhood Name NORTH CARMEL-BY-THE-SEA | Map Reference T.B. 1153-E1 Census Tract 0117.00 |
| Occupant [X] Owner [ ] Tenant [ ] Vacant | Special Assessments $ Unknown [ ] PUD HOA $ NONE [ ] per year [ ] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) NA | |
| Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe) NA | |
| Lender/Client Premium Capital Funding LLC, dba Topdot Mortgage Address 18810 W 76TH ST STREET, LOS ANGELES, CA, 90047 | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No | |
| Report data source(s) used, offering price(s), and date(s). MLS, METROSCAN | |

**CONTRACT**

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. THE SUBJECT IS A REFINANCE, IT IS NOT A PURCHASE TRANSACTION - THERE IS NO PURCHASE CONTRACT.

| | |
|---|---|
| Contract Price $ REFI Date of Contract Refi. 4/06 Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s) REFINANCE | |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No | |
| If Yes, report the total dollar amount and describe the items to be paid. *** See Additional Comments *** | |

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 90+ % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | | | 2-4 Unit | % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | Low 850+ NEW* | | Multi-Family | % |
| Neighborhood Boundaries NORTH- SAN JUAN-TO-SAN PEDRO LANE; SOUTH- OCEAN | | | | | | High 4000+ | 75+ | Commercial | 9+- % |
| AVENUE; EAST-JUNIPERO AVENUE; WEST- CARMEL BAY/PEBBLE BEACH. | | | | | | Pred. 950-3000+ | 35+ | Other | 1+- % |
| Neighborhood Description NORTH- SAN JUAN-TO-SAN PEDRO LANE; SOUTH- OCEAN AVENUE; EAST-JUNIPERO AVENUE; WEST- CARMEL BAY/PEBBLE BEACH. | | | | | | | | | |
| Market Conditions (including support for the above conclusions) *** See Additional Comments *** | | | | | | | | | |

**SITE**

| | | |
|---|---|---|
| Dimensions 50' X 80' | Area 4,000 SF+- | Shape RECTANGULAR View FAR OCEAN /TYPICAL |
| Specific Zoning Classification R-1 | Zoning Description ALLOWS SFR, 4,000 ST SITE SIZE MINIMUM | |
| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | | |
| Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe | | |

| Utilities Public Other (describe) | | Public Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|
| Electricity [X] | Water [X] | | Street ASPHALT | [X] | |
| Gas [X] | Sanitary Sewer [X] | | Alley NONE/TYPICAL | | |
| FEMA Special Flood Hazard Area [ ] Yes [X] No FEMA Flood Zone * FEMA Map No. * FEMA Map Date * | | | | | |
| Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No. If No, describe | | | | | |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe | | | | | |

*CARMEL DOES NOT PARTICIPATE IN THE FEMA FLOOD PROGRAM. FLOOD DATA IS PROVIDED BY THE CITY. THE CITY IS NOT IN A SPECIAL FLOOD HAZARD AREA, PER THE CARMEL PLANNING DEPARTMENT. *** See Additional Comments ***

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [X] Crawl Space | | Foundation Walls CONCRETE/AVG | | Floors HARDWOOD/GD | |
| # of Stories Part 1 2-Story | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls PLYWOOD/AVG | | Walls DRYWALL/GOOD | |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | | Basement Area 100 sq. ft. | | Roof Surface CONC TILE/AVG | | Trim/Finish WOOD/GOOD | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish UNFINISHED % | | Gutters & Downspouts METAL/AVG | | Bath Floor VINYL/AVG | |
| Design (Style) COTTAGE | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type WOOD CSMT/AVG | | Bath Wainscot Tile Shwr Encl/GD | |
| Year Built 95 YEARS+- | | Evidence of [ ] Infestation | | Storm Sash/Insulated NONE/Unknown | | Car Storage [ ] None | |
| Effective Age (Yrs) 22-28 YRS+- | | [ ] Dampness [ ] Settlement | | Screens YES/AVG | | [ ] Driveway # of Cars YES | |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | | | Amenities | [ ] WoodStove(s)# | Driveway Surface ASPHALT/TYP | |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel GAS | | | [X] Fireplace(s) #1 [X] Fence Wood | | [ ] Garage # of Cars | |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | | | [X] Patio/Deck Wood [ ] Porch | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other NA | | | [ ] Pool [ ] Other | | [ ] Att. [ ] Det. [ ] Built-In | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | |
| Finished area above grade contains: 5 Rooms 2 Bedrooms 1.50 Bath(s) 1,252 Square Feet of Gross Living Area Above Grade | | | | | | | |
| Additional features (special energy efficient items, etc.) HARD WOOD FLOORS ON MAIN LEVEL; VAULTED CEILINGS IN LIVING ROOM, DINING AREA AND FOYER; STONE FIREPLACE IN LIVING ROOM; PEDESTAL SINKS IN BATHROOMS. | | | | | | | |
| Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). AT THE TIME OF THE APPRAISAL, NO NECESSARY REPAIRS WERE NOTED. | | | | | | | |
| Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe | | | | | | | |

DUE TO THE COMPLETE REMODELING OF THE DWELLING'S INTERIOR, AS WELL VIRTUALLY NO VISIBLE WEAR, THE EFFECTIVE AGE OF THE STRUCTURAL IMPROVEMENTS IS REDUCED BELOW IT'S ACTUAL AGE. NORMAL PHYSICAL DEPRECIATION IS APPLIED TO EFFECTIVE AGE IN THE COST APPROACH. NO FUNCTIONAL OR LOCATIONAL (EXTERNAL) OBSOLESCENCE WAS NOTED. *** See Additional Comments ***

| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe |
|---|
| NA |

Freddie Mac Form 70 March 2005     Page 1 of 6     Fannie Mae Form 1004 March 2005

Barnes & Havens Appraised

Complete Appraisal Analysis - Summary Appraisal Report

# Uniform Residential Appraisal Report

File # 2Av2neDz

| | | | | |
|---|---|---|---|---|
| There are | 33 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 839,000.00 to $ 8,950,000.00 | | |
| There are | 40 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 790,000.00 to $ 3,286,999.00 | | |

| FEATURE | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Address | 2ND AVENUE, 2 NE DOLORES | SE LINCOLN ST | NE COR LINCOLN ST | 2 SW Perry Newberry/Fifth Wy |
| APN- 010 126 022 | | APN- 010 127 023 | APN- 010 128 007 | APN- 009 163 002 |
| Proximity to Subject | | +-1-2 BLOCKS NW | +-1-2 BLOCKS SW | +-8-9 BLOCKS SE |
| Sale Price | $ REFI. | $ 1,475,000 | $ 1,660,000 | $ 1,233,500 |
| Sale Price/Gross Liv. Area | 838.66 sq. ft. | $ 1,156.86 sq. ft. | $ 1,121.62 sq. ft. | $ 883.60 sq. ft. |
| Data Source(s) | | MLS # 673127 | MLS # 661914 | MLS # 708383 |
| Verification Source(s) | | DOC # 21275 | DOC # 7805 | DOC # 29704 |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-)$ Adjustment | DESCRIPTION +(-)$ Adjustment | DESCRIPTION +(-)$ Adjustment |
| Sale or Financing | | CONV DOM 27 | CONV DOM 58 | CONV DOM 24 |
| Concessions | | NONE KNOWN | NONE KNOWN | NONE KNOWN |
| Date of Sale/Time | | 03/15/07 COE | 01/30/07 COE | 04/13/07 COE |
| Location | AVERAGE | AVERAGE | AVERAGE | SL INFERIOR +100,000 |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | FEE SIMPLE | FEE SIMPLE |
| Site | 4,000 SF+- | 4,000 SF+- | 4,000 SF+- | 4,875 SF+- |
| View | FAR OCEAN | FAR OCEAN | NEIGHBORHOOD +50,000 | NEIGHBORHOOD +50,000 |
| Design (Style) | AVERAGE | AVERAGE | AVERAGE | AVERAGE |
| Quality of Construction | AVERAGE | AVERAGE | SUPERIOR -100,000 | AVERAGE |
| Actual Age | A95+- E25+- | OLDER/UPDATED | 4 YEARS+- | 53 YEARS+- |
| Condition | GOOD | Remodeled -50,000 | SUPERIOR -50,000 | GOOD |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths -10,000 | Total Bdrms. Baths -10,000 | Total Bdrms. Baths -10,000 |
| Room Count | 5 2 1.50 | 5 2 2 -10,000 | 5 3 2 -10,000 | 6 3 2 -10,000 |
| Gross Living Area | 1,252 sq. ft. | 1,275 sq. ft. | 1,480 sq. ft. -27,360 | 1,396 sq. ft. -17,280 |
| Basement & Finished | Basement (Laundry) | NO BASEMENT | NO BASEMENT | NO BASEMENT |
| Rooms Below Grade | NONE | BASEMENT | BASEMENT | BASEMENT |
| Functional Utility | AVERAGE | AVERAGE | AVERAGE | AVERAGE |
| Heating/Cooling | FAU/NONE | FAU/NONE | FAU/NONE | FAU/NONE |
| Energy Efficient Items | AVERAGE | AVERAGE | AVERAGE | AVERAGE |
| Garage/Carport | 1 CAR GARAGE | 2/GARAGE -10,000 | 1 CAR GARAGE | 1 CAR GARAGE |
| Porch/Patio/Deck | DECK | PATIO/DECK | PATIO | PATIO |
| FIREPLACE(S) | 1 FIREPLACE | 1 FIREPLACE | 2 FIREPLACES -10,000 | 1 FIREPLACE |
| OTHER | NONE | NONE | NONE | NONE |
| | OLP:$Refinance | OLP:$1,495,000 | OLP:$1,695,000 | OLP:$1,295,000 |
| Net Adjustment (Total) | | + [X] - $ -70,000 | + [X] - $ -157,360 | [X] + - $ 112,720 |
| Adjusted Sale Price | | Net Adj. 4.75 % | Net Adj. 9.48 % | Net Adj. 9.14 % |
| of Comparables | | Gross Adj. 4.75 % $ 1,405,000 | Gross Adj. 15.50 % $ 1,502,640 | Gross Adj. 15.18 % $ 1,346,220 |

I [X] did did not research the sale or transfer history of the subject property and comparable sales. If not, explain NA

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) METROSCAN, AND/OR THE MLS

My research [X] did [ ] did not reveal any prior sales or transfers of the comparable sales for the prior year to the date of sale of the comparable sale.
Data Source(s) METROSCAN, AND/OR THE MLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE W/I 3 YEARS | 06/29/06 $1,495,000 | NONE IN PRIOR 1 YEAR | NONE IN PRIOR 1 YEAR |
| Price of Prior Sale/Transfer | P/S 3/17/1995 $285,000 | P/S PRECEDED 1999 | | P/S $795,000 |
| Data Source(s) | METROSCAN | METROSCAN | $ 1,450,000 | METROSCAN |
| Effective Date of Data Source(s) | 05/16/07 | 05/16/07 | METROSCAN 05/16/07 | 05/16/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales THE MOST RECENT PRIOR TRANSFER INFORMATION FOR THE SUBJECT PROPERTY AND THE COMPARABLES IS REPORTED ABOVE. COMPARABLE #4 IS THE ONLY PROPERTY TO HAVE SOLD 1-YEAR-PRIOR TO IT'S CURRENT SALE.

Summary of Sales Comparison Approach LISTING PRICE AND DAYS ON THE MARKET INFORMATION ARE IN THE SALES ANALYSIS GRID.
***See Additional Comments ***

Indicated Value by Sales Comparison Approach $ 1,400,000

Indicated Value by: Sales Comparison Approach $ 1,400,000 Cost Approach (If developed) $ 1,241,400 Income Approach (If developed) $ NA
*** See Additional Comments *** THE COST AND DIRECT SALES COMPARISON APPROACHES TO VALUE ARE USED IN THIS VALUATION ASSIGNMENT. *** See Additional Comments ***

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:
*** See Additional Comments ***

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,400,000 , as of 05/14/07 , which is the date of inspection and the effective date of this appraisal.

Barnes & Havens Appraised

File No.   2Av2neDz

## ADDITIONAL COMPARABLES

| Borrower | JOHNSON | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2ND AVENUE, 2 NE DOLORES | | | | | | |
| City  CARMEL | County  MONTEREY | | State  CA | | | Zip Code  93921 | |
| Lender/Client  NOLAN REALTY | | | | | | | |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE, 2 NE DOLORES  APN- 010 128 022 | 3 LINCOLN ST  APN- 010 127 008 | | 3 NW SAN CARLOS/FIRST ST  APN- 010 116 004 | | | |
| Proximity to Subject | | +-1-2 BLOCKS NW | | +-1-2 BLOCKS NE | | | |
| Sale Price | $          REFI. | $          1,500,000 | | $          1,132,000 | | $ | |
| Sale Price/Gross Liv. Area | $  838.66  sq. ft. | $  966.49  sq. ft. | | $  1,347.62  sq. ft. | | $          sq. ft. | |
| Data Source(s) | | MLS # 840986 | | MLS # 631304 | | | |
| Verification Source(s) | | DOC # 72926 | | DOC # 74492 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing  Concessions | | CONV  DOM 26  NONE KNOWN | | CONV  DOM 59  NONE KNOWN | | | |
| Date of Sale/Time | | 08/22/06  COE | | 08/24/06  COE | | | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 4,000  SF+- | 4,000  SF+- | | 4,000  SF+- | | | |
| View | FAR OCEAN | FAR OCEAN | - - - - - - | FAR OCEAN | - - - - - - | | |
| Design (Style) | AVERAGE | AVERAGE | | AVERAGE | | | |
| Quality of Construction | AVERAGE | AVERAGE | - - - - - - | INFERIOR | +100,000 | | |
| Actual Age | A95+- E25+- | OLDER/UPDATED | - - - - - - | 53 YEARS+- | - - - - - - | | |
| Condition | GOOD | GOOD | - - - - - - | INFERIOR | +100,000 | | |
| Above Grade  Room Count | Total 5 | Bdrms. 2 | Baths 1.50 |
| Gross Living Area | 1,252  sq. ft. | 1,552  sq. ft. | -36,000 | 840  sq. ft. | +49,440 | sq. ft. | |
| Basement & Finished  Rooms Below Grade | Basement (Laundry)  NONE | NO BASEMENT  BASEMENT | - - - - - - | NO BASEMENT  BASEMENT | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | FAU/NONE | FAU/NONE | | FAU/NONE | | | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | | |
| Garage/Carport | 1 CAR GARAGE | 1 CAR GARAGE | | 1/CARPORT | +5,000 | | |
| Porch/Patio/Deck | DECK | NONE | +5,000 | PATIO/DECK | | | |
| FIREPLACE(S) | 1 FIREPLACE | 1 FIREPLACE | | 1 FIREPLACE | | | |
| OTHER | NONE  OLP:$Refinance | NONE  OLP:$1,525,000 | | NONE  OLP:$1,325,000 | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $  -51,000 | ☒ + ☐ - | $  264,440 | ☐ + ☐ - | $ |
| Adjusted Sale Price  of Comparables | | Net Adj.  3.40  %  Gross Adj.  4.07  % | $  1,449,000 | Net Adj.  23.36  %  Gross Adj.  23.36  % | $  1,396,440 | Net Adj.  %  Gross Adj.  % | $ |

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE W/I 3 YEARS | NONE IN PRIOR 1 YEAR | NONE IN PRIOR 1 YEAR | |
| Price of Prior Sale/Transfer | P/S 3/17/1995 $285,000 | P/S 1998  $603,000 | P/S 1998  $310,000 | |
| Data Source(s) | METROSCAN | METROSCAN | METROSCAN | |
| Effective Date of Data Source(s) | 05/16/07 | 05/16/07 | 05/16/07 | |
| Comment on Sales Comparison | *** See Preceding Page *** | | | |

# Uniform Residential Appraisal Report
File #    2Av2neDz

*** See Additional Comments ***

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value).

DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.

| | | |
|---|---|---|
| ESTIMATED [X] REPRODUCTION OR [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ 1,100,000 |
| Source of cost data  MARSHALL & SWIFT | Dwelling   1,252  Sq. Ft. @ $ 100.27 | =$ 125,538 |
| Quality rating from cost service AVG+     Effective date of cost data  6/05 | Sq. Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | DECK AND BRICK PATIO | =$ 20,000 |
| *** See Additional Comments *** | Garage/Carport  324  Sq. Ft. @ $ 29.80 | =$ 9,655 |
| THE RCN UNIT COST FACTORS ARE BASED ON THE | Total Estimate of Cost-New | =$ 155,193 |
| MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK AND/OR | Less   Physical  Functional External | |
| THE BOECKH COST MANUAL AND/OR THE M&S HIGH VALUE | Depreciation  38,798 | =$( 38,798  ) |
| DWELLING GUIDE, NATIONALLY RECOGNIZED | Depreciated Cost of Improvements | =$ 116,395 |
| REPLACEMENTS COST PUBLICATIONS. | "As-is" Value of Site Improvements | =$ 25,000 |
| *** See Additional Comments *** | 1,139,435 | =$ |
| Estimated Remaining Economic Life (HUD and VA only)  40-45+   Years | Indicated Value By Cost Approach | =$ 1,241,395 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $  NA  X Gross Rent Multiplier  NA  = $   NA   Indicated Value by Income Approach | | |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   [ ] Yes  [ ] No   Unit type(s)  [ ] Detached  [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| | | | |
|---|---|---|---|
| Total number of phases | Total number of units  N/A | Total number of units sold | |
| Total number of units rented | Total number of units for sale  N/A | Data Source(s) | |

Was the project created by the conversion of existing building(s) into a PUD?  [ ] Yes  [ ] No  If Yes, date of conversion

Does the project contain any multi-dwelling units?  [ ] Yes  [ ] No  Data Source(s)

Are the units, common elements, and recreation facilities complete?  [ ] Yes  [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  [ ] Yes  [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities  N/A

Freddie Mac Form 70 March 2005          Page 3 of 6          Fannie Mae Form 1004 March 2005

## Uniform Residential Appraisal Report

File #     2Av2neDz

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Barnes & Havens Appraised

## Uniform Residential Appraisal Report
File #  2Av2neDz

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Barnes & Havens Appraisal

Complete Appraisal Analysis - Summary Appraisal Report

## Uniform Residential Appraisal Report

File # 2Av2neDz

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  *Shelley Sturm Barnes* | Signature |
| Name   Shelley S. Barnes | Name |
| Company Name   Barnes & Havens Appraised | Company Name |
| Company Address   P.O. Box 222733 | Company Address |
| Carmel, CA 93922 | |
| Telephone Number   831 626-3668 | Telephone Number |
| Email Address | Email Address |
| Date of Signature and Report   May 16, 2007 | Date of Signature |
| Effective Date of Appraisal   05/14/07 | State Certification # |
| State Certification #   AR 005766 | or State License # |
| or State License # | State |
| or Other | Expiration Date of Certification or License |
| State   CA | SUBJECT PROPERTY |
| Expiration Date of Certification or License   10-21-2007 | ☐ Did not inspect subject property |
| | ☐ Did inspect exterior of subject property from street |
| ADDRESS OF PROPERTY APPRAISED | Date of Inspection |
| 2ND AVENUE, 2 NE DOLORES | ☐ Did inspect interior and exterior of subject property |
| CARMEL, CA  93921 | Date of Inspection |
| APPRAISED   VALUE   OF   SUBJECT   PROPERTY   $ 1,400,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name   Ms. Debbie Inglewood | ☐ Did not inspect exterior of comparable sales from street |
| Company Name   NOLAN REALTY | ☐ Did inspect exterior of comparable sales from street |
| Company Address   8777 East Via de Ventura, Suite 285 | Date of Inspection |
| LOS ANGELES, CA  90047 | |
| Email Address   azappraisals@topdot.com | |

File No.    2Av2neDz

## ADDITIONAL COMMENTS

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender or Client | NOLAN REALTY |

### LEGAL DESCRIPTION

THE SUBJECT IS IDENTIFIED BY STREET ADDRESS, APN, A PLAT MAP, AND AN ABBREVIATED LEGAL DESCRIPTION THAT IS TAKEN FROM THE RECORDS OF THE COUNTY TAX ASSESSOR. THE FULL LEGAL DESCRIPTION CAN BE FOUND IN THE TITLE POLICY, WHICH IS A PART OF THE LOAN PACKAGE BUT WAS NOT MADE AVAILABLE TO THE APPRAISER PRIOR TO THE SUBMISSION OF THIS REPORT.

### LOAN CHARGES AND/OR SALE CONCESSIONS PAID ON BEHALF OF OWNER

NO FINANCIAL ASSISTANCE, LOAN CHARGES, AND/OR SALES CONCESSIONS, BEING PAID ON BEHALF OF THE BUYER(S), ARE DISCLOSED IN THE PURCHASE AGREEMENT.

THIS APPRAISAL IS PREDICATED UPON THE EXTRAORDINARY ASSUMPTION THAT NO UNDISCLOSED FINANCIAL ASSISTANCE, LOAN CHARGES, AND/OR SALES CONCESSIONS ARE BEING PAID ON BEHALF OF THE BORROWERS.

### NEIGHBORHOOD DESCRIPTION

CARMEL-BY-THE-SEA IS A COMMUNITY LOCATED ON THE HILLS THAT RISE ABOVE THE PACIFIC OCEAN, AT THE SOUTHWESTERLY BASE OF THE MONTEREY PENINSULA. MANY PROPERTIES HAVE VIEWS OF CARMEL BAY, THE PACIFIC OCEAN, AND/OR POINT LOBOS. BECAUSE OF THE TEMPERATE CLIMATE AND SCENIC BEAUTY, THE AREA HAS DEVELOPED AS A RESORT/SECOND HOME/ RETIREMENT COMMUNITY.

CARMEL-BY-THE-SEA IS SITUATED NEXT TO CARMEL BAY, WEST OF CALIFORNIA STATE HIGHWAY 1, ABOUT 120 MILES SOUTH OF SAN FRANCISCO. THE CITY OF CARMEL HAS A FULL TIME POPULATION OF APPROXIMATELY 5,000 AND A LAND AREA OF ABOUT ONE (1) SQUARE MILE. MANY OF THE HOUSES IN THIS CITY ARE WEEKEND OR SECOND HOMES. CARMEL IS DEVELOPED WITH BOTH AVERAGE TO VERY GOOD QUALITY, CUSTOM BUILT HOUSES OF VARYING SIZE, AGE, QUALITY AND ARCHITECTURE.

THE NEIGHBORHOOD IS NORTHWEST CARMEL; IT EXTENDS SOUTHERLY TO OCEAN AVENUE, AND NORTHERLY THROUGH CARMEL WOODS. DOWNTOWN CONVENIENCES AND A CITY BEACH ARE WITHIN WALKING DISTANCE. THE SUBJECT NEIGHBORHOOD IS DEVELOPED WITH DWELLINGS THAT ARE MIXED IN CHARACTER. THERE ARE MODEST, OLDER HOUSES; THERE ARE ALSO GOOD, EVEN VERY GOOD QUALITY, CUSTOM-BUILT HOUSES OF VARYING SIZE, AGE, STYLE, AND ARCHITECTURE. THE 'NEW' HOUSES IN THE AREA RESULT FROM OLDER DWELLINGS BEING RAZED-AND-REPLACED WITH NEW STRUCTURES.

SOME PROPERTIES HAVE NO OCEAN VIEWS; MANY HOMESITES HAVE ONLY VIEWS OF THE NEIGHBORHOOD, OTHERS HAVE VIEWS OF THE NEARBY WOODED HILLSIDES. SOME PROPERTIES HAVE TREE-FILTERED OCEAN VIEWS. OTHERS IN THE NEIGHBORHOOD ARE CLOSER TO THE WATER AND HAVE LESS-OBSTRUCTED VIEWS OF CARMEL BAY. A FEW PROPERTIES HAVE THE BEST VIEWS, WHICH INCLUDE CARMEL BAY, THE PACIFIC OCEAN, AND POINT LOBOS. AN OCEAN VIEW COMMANDS ADDITIONAL VALUE. THE LOCAL MARKET WILL PAY A PREMIUM FOR PROPERTIES WITH OCEAN/POINT LOBOS VIEWS. BUYERS PAY VERY SUBSTANTIAL PREMIUMS FOR THE PROPERTIES WITH OUTSTANDING VIEWS.

SHOPPING AND SERVICES ARE A SHORT DISTANCE SOUTH IN DOWNTOWN CARMEL. ADDITIONAL SHOPPING AND SERVICES ARE AVAILABLE A SHORT DRIVE EAST AT THE CROSSROADS, THE BARNYARD, AND THE CARMEL RANCHO SHOPPING CENTERS, WHICH ARE NEAR THE INTERSECTION OF HIGHWAY 1 AND RIO ROAD. A FEW DOCTORS OFFICES AND PROFESSIONAL OFFICES ARE ALSO LOCATED IN THIS AREA. ADDITIONAL SHOPPING AND SERVICES ARE AVAILABLE IN MONTEREY AND PACIFIC GROVE.

SEVERAL GOLF COURSES ARE NORTH OF CARMEL IN PEBBLE BEACH OR EAST IN CARMEL VALLEY. A SANDY OCEAN BEACH FORMS THE WESTERLY EDGE OF THE CITY OF CARMEL. NUMEROUS RESTAURANTS AND OTHER RECREATIONAL ACTIVITIES ARE LOCATED IN CARMEL. ADDITIONAL RECREATIONAL ACTIVITIES ARE LOCATED IN MONTEREY, PACIFIC GROVE AND CARMEL VALLEY.

TO PRESERVE THE 'UNIQUE' NATURE OF CARMEL-BY-THE-SEA, NEON SIGNS ARE NOT ALLOWED, FAST FOOD RESTAURANT ARE PROHIBITED, NEW AND USED CAR LOTS ARE PRECLUDED, ELECTRIC TRAFFIC SIGNALS HAVE NOT BEEN ERECTED, LIVE MUSIC IS NOT ALLOWED IN THE BARS OR RESTAURANTS, AND, OTHER THAN HOSPITALITY PROPERTIES, NO COMMERCIAL ENTERPRISES ARE ALLOWED TO LOCATE WITHIN 1/2 MILE OF THE BEACH.

CARMEL RIVER ELEMENTARY SCHOOL IS LOCATED NEAR THE INTERSECTION OF RIO ROAD AND STATE HIGHWAY 1. CARMEL HIGH SCHOOL IS NORTHEAST AT THE INTERSECTION OF STATE HIGHWAY 1 AND OCEAN AVENUE.

### MARKET CONDITIONS

COMPETITIVE INTEREST RATES PRECLUDE MOST LOAN DISCOUNTS. PRIOR TO JUNE, 2000, AN UPWARD

File No.    2Av2neDz

## ADDITIONAL COMMENTS
Page 2

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City | CARMEL | County | MONTEREY | State | CA | Zip Code | 93921 |
| Lender or Client | NOLAN REALTY |

TREND IN PROPERTY VALUES CONTINUED FOR MORE THAN 24 MONTHS. APPRECIATION WAS RAPID TO ABOUT JUNE 2000, THEN APPEARED TO STABILIZED BRIEFLY DUE TO STOCK MARKET ADJUSTMENTS EARLIER IN THE YEAR AND THE INCREASE IN THE INTEREST RATE BY THE FEDERAL RESERVE NEAR THE END OF MAY 2000. HOWEVER, APPRECIATION WAS A FACTOR THROUGHOUT THE YEAR AND DURING THE FIRST 1-2 MONTHS OF 2001. AFTER THAT, PROPERTY VALUES BEGAN TO STABILIZE. THE FEDERAL RESERVE REDUCED THE INTEREST RATE TWO TIMES IN JANUARY 2001, ON MARCH 20, 2001 (1/2%), ON APRIL 18, 2001 (1/2%), ON MAY 14, 2001 (1/2%), ON AUGUST 20, 2001 (1/4%), ON SEPTEMBER 17, 2001 (1/2%), ON NOVEMBER 6, 2001, (1/2%), ON NOVEMBER 6, 2002, (1/2%), AND ON JUNE 25, 2003, (1/4%). THE PRIME LENDING RATE, (BANK-TO-BANK), AND MORTGAGE RATES ARE NEAR 45-YEAR LOWS. SINCE EARLY 2003, SALES ACTIVITY HAS BEEN SPURRED BY RECORD LOW INTEREST RATES. MARKETING TIMES AND PROPERTY INVENTORIES HAVE DIMINISHED. AT PRESENT, DEMAND HAS OUTPACED SUPPLY, AND THE LOCAL MARKET IS EXPERIENCING SIGNIFICANT APPRECIATION. DISCOUNTS, BUYDOWNS, AND/OR OTHER SALES CONCESSIONS ARE VIRTUALLY NON-EXISTENT AS THEY ARE NOT NECESSARY TO FACILITATE SALES TRANSACTIONS AT THIS TIME. VERY COMPETITIVE INTEREST RATE CONFORMING AND JUMBO LOANS ARE READILY AVAILABLE AND MAY BE OBTAINED FROM NUMEROUS BANKS, CREDIT UNIONS, MORTGAGE BANKERS, MORTGAGE BROKERS, AND OTHER LENDERS. COMPETITIVE INTEREST RATES PRECLUDE MOST LOAN DISCOUNTS.

PRIOR TO JUNE, 2000, AN UPWARD TREND IN PROPERTY VALUES CONTINUED FOR MORE THAN 24 MONTHS. APPRECIATION WAS RAPID TO ABOUT FEBRUARY, 2001. THEN APPEARED TO STABILIZED BRIEFLY DUE TO STOCK MARKET ADJUSTMENTS EARLIER IN THE YEAR AND THE INCREASE IN THE INTEREST RATE BY THE FEDERAL RESERVE NEAR THE END OF MAY 2000. HOWEVER, APPRECIATION WAS A FACTOR THROUGHOUT THE YEAR AND DURING THE FIRST 1-2 MONTHS OF 2001. AFTER THAT, PROPERTY VALUES BEGAN TO STABILIZE. THE FEDERAL RESERVE REDUCED THE INTEREST RATE TWO TIMES IN JANUARY 2001, ON MARCH 20, 2001 (1/2%), ON APRIL 18, 2001 (1/2%), ON MAY 14, 2001 (1/2%), ON AUGUST 20, 2001 (1/4%), ON SEPTEMBER 17, 2001 (1/2%), ON NOVEMBER 6, 2002, (1/2%), AND ON JUNE 25, 2003, (1/4%). THE PRIME LENDING RATE, (BANK-TO-BANK), AND MORTGAGE RATES ARE NEAR 45-YEAR LOWS.

FROM EARLY 2003, SALES ACTIVITY HAS BEEN SPURRED BY RECORD LOW INTEREST RATES. MARKETING TIMES AND PROPERTY INVENTORIES WERE DIMINISHED; DEMAND OUTPACED SUPPLY AND THE MARKET EXPERIENCED SIGNIFICANT APPRECIATION.

HOWEVER, SINCE THE SUMMER OF 2005, INVENTORIES HAVE BEGUN TO INCREASE, AS FEWER BUYERS ARE IN THE MARKET FOR HOUSES. IT APPEARS THAT APPRECIATION HAS ENDED, AND PROPERTY VALUES HAVE STABILIZED.

DISCOUNTS, BUYDOWNS, AND/OR OTHER SALES CONCESSIONS ARE VIRTUALLY NON-EXISTENT AS THEY ARE NOT NECESSARY TO FACILITATE SALES TRANSACTIONS AT THIS TIME.

### ADVERSE SITE CONDITIONS AND/OR EXTERNAL FACTORS
THE SITE HAS A TREE-FILTERED, FAR-OCEAN VIEW TO THE WEST, TYPICAL FOR THE AREA.

THE SUBJECT SITE IS OF TYPICAL SIZE, SHAPE, AND USE, WITH NORMAL STREET ACCESS. NO ADVERSE CONDITIONS WERE NOTED.

### PHYSICAL DEFICIENCIES AND / OR ADVERSE CONDITIONS
ALTHOUGH A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS DID NOT REVEAL ANY HAZARDOUS SUBSTANCES IT IS POSSIBLE THAT TESTS AND INSPECTIONS BY A QUALIFIED EXPERT COULD REVEAL SUCH SUBSTANCES OR CONDITIONS. THE APPRAISER AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY OR LIABILITY OR ANY HIDDEN OR NON-APPARENT ADVERSE ENVIRONMENTAL CONDITIONS. NO ADVERSE ENVIRONMENTAL CONDITIONS WERE NOTED DURING THE INSPECTION.

THE VALUE ESTIMATE IN THIS REPORT IS PREDICATED ON THE EXTRAORDINARY ASSUMPTION THAT THE SUBJECT PROPERTY IS NOT NEGATIVELY IMPACTED BY HAZARDOUS SUBSTANCES OR ADVERSE ENVIRONMENTAL CONDITIONS. ALTHOUGH A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS DID NOT REVEAL ANY HAZARDOUS SUBSTANCES IT IS POSSIBLE THAT TESTS AND INSPECTIONS BY A QUALIFIED EXPERT COULD REVEAL SUCH SUBSTANCES OR CONDITIONS. THE APPRAISER AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY OR LIABILITY OR ANY HIDDEN OR NON-APPARENT ADVERSE ENVIRONMENTAL CONDITIONS.

### SALES COMPARISON APPROACH
AFTER EXTENSIVELY RESEARCHING THE M.L.S. AND METROSCAN, THE PROPERTIES CITED IN THIS REPORT ARE CONSIDERED TO BE THE MOST PERTINENT COMPARABLES CURRENTLY AVAILABLE. SITE SIZE AND VIEW ADJUSTMENTS ARE BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES.

THE QUALITY OF CONSTRUCTION ADJUSTMENTS ARE BASED ON MLS DATA, REALTOR'S COMMENTS, VISUAL OBSERVATIONS, THE MARSHALL AND SWIFT RESIDENTIAL COST HANDBOOK, ABSTRACTION, AND THE BUILDING RESIDUAL TECHNIQUE.

File No.    2Av2neDz

## ADDITIONAL COMMENTS
Page 3

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender or Client | NOLAN REALTY |

THE LOCATION ADJUSTMENT IS BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES. SALE #3 IS INCLUDED AS A COMPARABEL BECAUSE IT IS A DWELLING OF VERY SIMILAR SIZE, WHICH HAS A VERY RECENT CLOSE-OF-ESCROW DATE. HOWEVER THIS SALE IS LOCATED FARTHER FROM THE OCEAN, CLOSE TO HIGHWAY 1, AN INFERIOR LOCATION.

AGE ADJUSTMENTS ARE NOT MADE BECAUSE, IN THE LOCAL MARKET, THE AGE OF A PROPERTY DOES NOT NECESSARILY PRODUCE A MEASURABLE SCALE OF PHYSICAL DEPRECIATION. THE PRICE BUYERS WILL PAY FOR A PROPERTY IS FAR MORE INFLUENCED BY IT'S CONDITION THAN IT'S AGE.

CONDITION ADJUSTMENTS ARE BASED ON THE M.L.S., REALTOR'S COMMENTS, AND VISUAL OBSERVATIONS.

VIEW ADJUSTMENTS ARE BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES.

THERE ARE NOT THREE KNOWN SALES AVAILABLE WHICH FULLY CONFORM TO FNMA GUIDELINES; THUS, IT WAS NECESSARY TO USE COMPARABLES WHICH:
   * HAVE GROSS LIVING AREAS THAT VARY IN SIZE BY MORE THAN 15% OF THE SUBJECT'S
   * REQUIRED LARGE GROSS AND/OR NET ADJUSTMENTS
   * HAVE SALES DATES WHICH LCOSED ESCROW MORE THAN SIX MONTHSAGO

THIS IS NOT UNUSUAL WHEN APPRAISING IN AREAS WHERE DWELLINGS HAVE BEEN INDIVIDUALLY-BUILT OVER MANY YEARS, AND PROPERTIES HAVE MANY VARYING PHYSICAL CHARACTERISTICS.

ALL SALES ARE GIVEN SOME CONSIDERATION AS THEY ARE ALL THOUGHT TO BE MEANINGFUL INDICATORS OF THE SUBJECT'S CURRENT MARKET VALUE.

## RECONCILIATION
THE INCOME APPROACH WAS CONSIDERED BUT IS NOT UTILIZED BECAUSE THE BODY OF RENTAL DATA IN THIS PREDOMINANTLY OWNER OCCUPIED NEIGHBORHOOD IS INSUFFICIENT TO DEVELOP A HIGHLY MEANINGFUL MARKET RENT OR GROSS RENT MULTIPLIER (GRM).SPECIAL CONSIDERATION IS GIVEN TO THE SALES COMPARISON ANALYSIS IN THE FINAL RECONCILIATION PROCESS AS THIS APPROACH UTILIZES PERTINENT SALES OF SIMILAR AND COMPETITIVE PROPERTIES IN THE SUBJECT MARKET AREA. THESE SALES REFLECT THE CURRENT ATTITUDES, PERCEPTIONS, THINKING AND ACTIONS OF BUYERS AS THEY INTERACT WITH SELLERS IN THE OPEN MARKETPLACE AND APPLY THE PRINCIPLE OF SUBSTITUTION. THE COST APPROACH IS SUPPORTIVE OF THE MARKET SALES BUT IS GIVEN LESS WEIGHT DUE TO THE PAUCITY OR PERTINENT LAND SALES. THE INCOME APPROACH WAS CONSIDERED BUT IS NOT UTILIZED BECAUSE THE BODY OF RENTAL DATA IN THIS PREDOMINANTLY OWNER OCCUPIED NEIGHBORHOOD IS INSUFFICIENT TO DEVELOP A HIGHLY MEANINGFUL MARKET RENT OR GROSS RENT MULTIPLIER (GRM).SPECIAL CONSIDERATION IS GIVEN TO THE SALES COMPARISON ANALYSIS IN THE FINAL RECONCILIATION PROCESS AS THIS APPROACH UTILIZES PERTINENT SALES OF SIMILAR AND COMPETITIVE PROPERTIES IN THE SUBJECT MARKET AREA. THESE SALES REFLECT THE CURRENT ATTITUDES, PERCEPTIONS, THINKING AND ACTIONS OF BUYERS AS THEY INTERACT WITH SELLERS IN THE OPEN MARKETPLACE AND APPLY THE PRINCIPLE OF SUBSTITUTION. THE COST APPROACH IS SUPPORTIVE OF THE MARKET SALES BUT IS GIVEN LESS WEIGHT DUE TO THE PAUCITY OR PERTINENT LAND SALES.

## CONDITIONS OF APPRAISAL
*** *** THE APPRAISER(S) AND THE APPRAISAL FIRM DO NOT HAVE THE BENEFIT OF THE TITLE POLICY, CC&R'S, SURVEY, HAZARDOUS MATERIALS ANALYSIS, SEISMIC REPORT, TERMITE REPORT, SOILS REPORT, WELL REPORT, SEPTIC SYSTEM REPORT, HOME INSPECTION REPORT, BUILDING PERMITS OR ANY OTHER REPORTS/DOCUMENTS UNLESS SPECIFICALLY STATED OTHERWISE IN THIS APPRAISAL. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY AND/OR LIABILITY FOR ANY INFORMATION THAT MAY BE REVEALED BY ANY OR THESE REPORTS. THE APPRAISER(S) HAS NOT TESTED ANY COMPONENT OF THE SUBJECT INCLUDING BUT NOT LIMITED TO THE ROOF, GUTTERS & DOWN SPOUTS, WINDOWS, DOORS, PLUMBING - HEATING - WIRING SYSTEMS, APPLIANCES, FLOOR, FOUNDATION OR ANY OTHER MECHANICAL OR SEMI-MECHANICAL COMPONENT OF THE SUBJECT. THESE AND ALL OTHER COMPONENTS ARE REASONABLY ASSUMED TO BE IN THE SAME CONDITION AS THE BALANCE OF THE STRUCTURE, UNLESS SPECIFICALLY STATED OTHERWISE IN THIS REPORT. IF ANY PARTY ASSOCIATED WITH THE SUBJECT IS AWARE OF ANY ADVERSE CONDITIONS THEY HAVE NOT DISCLOSED THEM TO THE APPRAISER. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY FOR ANY HIDDEN OR NON-APPARENT CONDITIONS. THE APPRAISER(S) AND THE APPRAISAL FIRM DO NOT HAVE THE BENEFIT OF THE TITLE POLICY, CC&R'S, SURVEY, HAZARDOUS MATERIALS ANALYSIS, SEISMIC REPORT, TERMITE REPORT, SOILS REPORT, WELL REPORT, SEPTIC SYSTEM REPORT, HOME INSPECTION REPORT, BUILDING PERMITS OR ANY OTHER REPORTS/DOCUMENTS UNLESS SPECIFICALLY STATED OTHERWISE IN THIS APPRAISAL. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY AND/OR LIABILITY FOR ANY INFORMATION THAT MAY BE REVEALED BY ANY OR THESE REPORTS. THE APPRAISER(S) HAS NOT TESTED ANY COMPONENT OF THE SUBJECT INCLUDING BUT NOT LIMITED TO THE ROOF, GUTTERS &

File No.    2Av2neDz

## ADDITIONAL COMMENTS
Page 4

| | |
|---|---|
| Borrower or Owner  JOHNSON | |
| Property Address  2ND AVENUE, 2 NE DOLORES | |
| City  CARMEL    County  MONTEREY    State  CA    Zip Code  93921 | |
| Lender or Client  NOLAN REALTY | |

DOWN SPOUTS, WINDOWS, DOORS, PLUMBING - HEATING - WIRING SYSTEMS, APPLIANCES, FLOOR, FOUNDATION OR ANY OTHER MECHANICAL OR SEMI-MECHANICAL COMPONENT OF THE SUBJECT. THESE AND ALL OTHER COMPONENTS ARE REASONABLY ASSUMED TO BE IN THE SAME CONDITION AS THE BALANCE OF THE STRUCTURE, UNLESS SPECIFICALLY STATED OTHERWISE IN THIS REPORT. IF ANY PARTY ASSOCIATED WITH THE SUBJECT IS AWARE OF ANY ADVERSE CONDITIONS THEY HAVE NOT DISCLOSED THEM TO THE APPRAISER. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY FOR ANY HIDDEN OR NON APPARENT CONDITIONS.

## ADDITIONAL COMMENTS

### SCOPE OF THE APPRAISAL
THE SCOPE OF THIS APPRAISAL INCLUDES A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS OF THE SUBJECT; ANALYSIS OF THE HIGHEST AND BEST USE; ASSEMBLY AND ANALYSIS OF MARKET DATA; AND USE OF THE THREE APPROACHES TO VALUE, WHEN APPLICABLE. THE SUBJECT IS VALUED WITH CONSIDERATION GIVEN TO THE PHYSICAL CONDITION OF THE IMPROVEMENTS AND THE SITE; THE CURRENT STATUS OF THE LOCAL AND REGIONAL ECONOMY; THE DEMAND FOR THE SUBJECT PROPERTY IN IT'S SPECIFIC LOCATION; THE PHYSICAL AND LEGAL LIMITATIONS ON THE USE OF THE SITE; AND THE CONTRIBUTION OF THE IMPROVEMENTS TO THE SITE AS-IF VACANT AND READY FOR DEVELOPMENT IN A HIGHEST AND BEST USE SCENARIO. THE THREE APPROACHES TO VALUE, WHEN APPLICABLE, ARE RECONCILED INTO A FINAL OPINION OF VALUE. THE SCOPE OF THIS APPRAISAL DOES NOT INCLUDE A PROFESSIONAL HOME INSPECTION, AN ENVIRONMENTAL SURVEY OR A REVIEW OF THE BUILDING PERMITS.

THOUGH CARE IS TAKEN IN THE PERPARATION OF THIS APPRAISL ASSIGNMENT, APPRASRS ARE HUMAN, AND APPRAISERS MAKE MISTAKES.  EVERY CHARACTER IN THIS APPRAISAL REPORT IS MARGIN FOR ERROR.  THE APPRAISER RESERVES THE RIGHT TO CORRECT ANY ERRORS IN THIS APPRAISAL REPORT.

### EXPOSURE TIME
USPAP STANDARDS RULE 1-2 (c) STATES:

"WHEN THE PURPOSE OF AN ASSIGNMENT IS TO DEVELOP AN OPINION OF MARKET VALUE, THE APPRAISER MUST ALSO DEVELOP AN OPINION OF REASONABLE EXPOSURE TIME LINKED TO THE VALUE OPINION."

REASONABLE EXPOSURE TIME IS ONE OF A SERIES OF CONDITIONS IN MOST MARKET VALUE DEFINITIONS.  EXPOSURE TIME IS ALWAYS PRESUMED TO PRECEDE THE EFFECTIVE DATE OF THE APPRAISAL.  EXPOSURE TIME MAY BE DEFINED AS FOLLOWS:

"THE ESTIMATED LENGTH OF TIME THE PROPERTY INTEREST BEING APPRAISED WOULD HAVE BEEN OFFERED ON THE MARKET PRIOR TO THE HYPOTHETICAL CONSUMMATION OF A SALE AT MARKET VALUE ON THE EFFECTIVE DATE OF THE APPRAISAL.  A RETROSPECTIVE OPINION BASED UPON AN ANALYSIS  OF PAST EVENTS ASSUMING A COMPETITIVE AND OPEN MARKET."

BASED UPON SUPPLY/DEMAND CONDITIONS, AND, STATISTICAL INFORMATION ABOUT DAYS ON THE MARKET, IT IS ESTIMATED THAT A REASONABLE EXPOSURE TIME FOR THE SUBJECT PROPERTY WOULD BE CONSISTENT WITH THE NEIGHBORHOOD MARKETING TIME INDICATED ON PAGE 1 OF THE URAR APPRAISAL FORM.

### COMPETENCY OF THE APPRAISER
IN ACCORDANCE WITH THE COMPETENCY PROVISION OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, I VERIFY THAT MY KNOWLEDGE AND EXPERIENCE ARE SUFFICIENT TO ALLOW ME TO COMPETENTLY COMPLETE THIS APPRAISAL ASSIGNMENT.

### DIGITAL SIGNATURE(S)
THE SIGNATURE(S) AFFIXED TO THIS REPORT AND CERTIFICATION, WERE APPLIED BY THE ORIGINAL APPRAISER(S) OR SUPERVISORY APPRAISER, AND, REPRESENT THEIR ACKNOWLEDGEMENTS OF THE FACTS, OPINIONS, AND CONCLUSIONS FOUND IN THE APPRAISAL REPORT.  EACH APPRAISER(S) APPLIED HIS OR HER SIGNATURE ELECTRONICALLY USING A PASSWORD ENCRYPTED METHOD.  HENCE, THESE SIGNATURES HAVE MORE SAFEGUARDS AND CARRY THE SAME VALIDITY AS THE INDIVIDUAL'S HAND-APPLIED SIGNATURE.  IF THE REPORT HAS A HAND-APPLIED SIGNATURE, THIS COMMENT DOES NOT APPLY.

### USE OF THE SUBJECT PROPERTY
THE SUBJECT PROPERTY IS RESIDENTIAL AND IS USED FOR SHELTER.

## COMMENTS ON COST APPROACH
THE BASE RCN COST FIGURES ARE AUGMENTED BY DISCUSSIONS LOCAL BUILDERS AND ARCHITECTS, REVIEW OF PROPOSED CONSTRUCTION BIDS AND/OR REFERENCE TO THE MARSHALL & SWIFT REPAIR &

File No.     2Av2neDz

ADDITIONAL COMMENTS
Page 5

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender or Client | NOLAN REALTY |

REMODEL GUIDE. THE PHYSICAL DEPRECIATION FACTOR REFLECTS NORMAL AGE/LIFE ACCRUED DEPRECIATION MODIFIED BY THE ACTUAL CONDITION AND OBSERVED EFFECTIVE AGE OF THE SUBJECT. DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.   THE BASE RCN COST FIGURES ARE AUGMENTED BY DISCUSSIONS LOCAL BUILDERS AND ARCHITECTS, REVIEW OF PROPOSED CONSTRUCTION BIDS AND/OR REFERENCE TO THE MARSHALL & SWIFT REPAIR & REMODEL GUIDE. THE PHYSICAL DEPRECIATION FACTOR REFLECTS NORMAL AGE/LIFE ACCRUED DEPRECIATION MODIFIED BY THE ACTUAL CONDITION AND OBSERVED EFFECTIVE AGE OF THE SUBJECT. DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.

DIFFERENCE BETWEEN MARSHALL & SWIFT COSTS AND LOCAL COSTS
EFFECTIVE NOVEMBER, 2005, FNMA BEGAN REQUIRING APPRAISERS TO USE 'REPLICABLE' COST FIGURES FROM NATIONALLY KNOWN AVAILABLE COST SOURCES.   APPRAISERS ARE NO LONGER ALLOWED THE DISCRETION TO USE 'LOCAL' BUILDING COSTS FROM LOCAL BUILDERS.

MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK INDICATES IT 'SHOULD' COST +-$100 PER SQUARE FOOT TO  BUILD THE SUBJECT DWELLING,  AND +-$29 TO BUILD THE GARAGE.

MARSHALL AND SWIFT INDICATES IT SHOULD BE POSSIBLE TO REBUILD THE SUBJECT PROPERTY FOR THESE COSTS.    HOWEVER, IN THE LOCAL MARKET, IT IS HIGHLY UNLIKELY THAT THE SUBJECT COULD BE REBUILT SO INEXPENSIVELY.

IF THE SUBJECT PROPERTY WERE  INLAND, IN SOUTH MONTEREY COUNTY - THE SALINAS VALLEY, COMMUNITIES LIKE GONZALES, GREENFIELD, OR KING CITY, IT IS POSSIBLE THE DWELLING MIGHT BE REBUILT AS INEXPENSIVELY AS MARSHALL & SWIFT  INDICATES.

HOWEVER,  IN 'COASTAL' MONTEREY COUNTY,  BUILDERS ARE KNOWLEDGEABLE OF THE 'VALUE' CREATED BY THEIR WORK, AND, THEY CHARGE ACCORDINGLY.  THE BUILDERS ARE THE 'ENTREPRENEURIAL' PROFIT CREATED BY THEIR WORK ENDS UP IN THE BUILDER'S POCKET, AND NOT THE POCKET OF THE OWNER.  IN ALL PROBABILITY, THE ACTUAL COSTS TO REBUILD THE DWELLING WOULD LIKELY BE SIGNIFICANTLY HIGHER THAN THE COSTS INDICATED BY MARSHALL & SWIFT.  IT LIKELY WOULD BE VIRTUALLY IMPOSSIBLE TO LOCATE A BUILDER WHO WOULD REBUILD THE SUBJECT FOR COSTS AS INEXPENSIVE AS THOSE INDICATED BY MARSHALL AND SWIFT.

IN REALITY, IT WOULD COST APPROXIMATELY DOUBLE TO TRIPLE THE MARSHALL & SWIFT COSTS, TO REPLACE THE SUBJECT DWELLING, IN CARMEL.

FNMA REQUIRES APPRAISERS ARE TO USE MARSHALL AND SWIFT COSTS, NOT LOCAL COSTS. HOWEVER,  THE USPAP REQUIRES APPRAISERS TO NOT PRODUCE APPRAISALS THAT ARE MISLEADING. MARSHALL & SWIFT 'COSTS' ARE SUBSTANTIALLY BELOW LOCAL BUILDING COSTS; THEREFORE, USE OF MARSHALL & SWIFT BUILDING COSTS  IS MISLEADING.

THIS PRESENTS A DILEMMA FOR APPRAISERS  -  FNMA REQUIRES APPRAISERS TO DO SOMETHING THAT THE USPAP PROHIBITS.

WHAT SHOULD APPRAISERS  DO UNTIL THE GOVERNMENTAL AGENCIES REGULATING APPRAISERS AND APPRAISALS, RESOLVE THIS CONFLICT THEY HAVE CREATED?

UNTIL THE GOVERNMENTAL AGENCIES RESOLVE THE CONFLICT THEY HAVE CREATED, A COST APPROACH HAS  NOT BEEN ATTEMPTED, AS A FNMA-COMPLIANT COST APPROACH WOULD NOT BE USPAP COMPLIANT, AND WOULD RESULT IN AN EFFECTIVELY MEANINGLESS APPROACH TO VALUE. THEREFORE, THE COST APPROACH HAS NOT BEEN INCLUDED.


INSURABLE VALUE
THE MARSHALL & SWIFT COST APPROACH LIKELY DOES NOT REPRESENT THE 'TRUE' COST TO REBUILD THE SUBJECT PROPERTY. IN ACCORDANCE WITH ADVICE RECEIVED FROM OREA AND AN ERRORS AND OMISSIONS INSURANCE COMPANY, THE MARSHALL & SWIFT COST APPROACH SHOULD NOT BE USED FOR INSURABLE VALUE, AS, IT WILL LIKELY COST SIGNIFICANTLY MORE TO REBUILD THE SUBJECT THAN MARSHALL & SWIFT COSTS INDICATE.

File No.    2Av2neDz

PHOTOGRAPH ADDENDUM

Borrower or Owner  JOHNSON
Property Address  2ND AVENUE, 2 NE DOLORES
City  CARMEL                County  MONTEREY            State  CA            Zip Code  93921
Lender or Client  NOLAN REALTY



FRONT VIEW OF
SUBJECT PROPERTY

REAR VIEW OF
SUBJECT PROPERTY

STREET SCENE OF
SUBJECT PROPERTY

Barnes & Havens Appraisal

File No.    2Av2neDz

## PHOTOGRAPH ADDENDUM

Borrower or Owner   JOHNSON
Property Address   2ND AVENUE, 2 NE DOLORES
City   CARMEL          County   MONTEREY          State   CA          Zip Code   93921
Lender or Client   NOLAN REALTY



2ND AVENUE, 2 NE DOLORES
KITCHEN



2ND AVENUE, 2 NE DOLORES
LIVING ROOM



2ND AVENUE, 2 NE DOLORES
BEDROOM

Barnes & Havens Appraised

File No.    2Av2neDz

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender or Client | NOLAN REALTY |



2ND AVENUE, 2 NE DOLORES
VIEW 1

Barnes & Havens Appraised

File No.    2Av2neDz

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City | CARMEL   County   MONTEREY   State   CA   Zip Code   93921 |
| Lender or Client | NOLAN REALTY |



**COMPARABLE #1**

SE LINCOLN ST
APN- 010 127 023

| | |
|---|---|
| Price | $1,475,000 |
| Price/SF | 1,156.86 |
| Date | 03/15/07 COE |
| Age | OLDER/UPDATED |
| Room Count | 5-2-2 |
| Living Area | 1,275 |
| Value Indication | $1,405,000 |



**COMPARABLE #2**

NE COR LINCOLN ST
APN- 010 128 007

| | |
|---|---|
| Price | $1,660,000 |
| Price/SF | 1,121.62 |
| Date | 01/30/07 COE |
| Age | 4 YEARS+- |
| Room Count | 5-3-2 |
| Living Area | 1,480 |
| Value Indication | $1,502,640 |



**COMPARABLE #3**

2 SW Perry Newberry/Fifth Wy
APN- 009 163 002

| | |
|---|---|
| Price | $1,233,500 |
| Price/SF | 883.60 |
| Date | 04/13/07 COE |
| Age | 53 YEARS+- |
| Room Count | 6-3-2 |
| Living Area | 1,396 |
| Value Indication | $1,346,220 |

Barnes & Havens Appraised

File No. 2Av2neDz



PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City CARMEL | County MONTEREY State CA Zip Code 93921 |
| Lender or Client | NOLAN REALTY |

**COMPARABLE #4**

3 LINCOLN ST
APN- 010 127 008

| | |
|---|---|
| Price | $1,500,000 |
| Price/SF | 966.49 |
| Date | 08/22/06 COE |
| Age | OLDER/UPDATED |
| Room Count | 6-3-2 |
| Living Area | 1,552 |
| Value Indication | $1,449,000 |

**COMPARABLE #5**

3 NW SAN CARLOS/FIRST ST
APN- 010 116 004

| | |
|---|---|
| Price | $1,132,000 |
| Price/SF | 1,347.62 |
| Date | 08/24/06 COE |
| Age | 53 YEARS+- |
| Room Count | 4-2-1 |
| Living Area | 840 |
| Value Indication | $1,396,440 |

**COMPARABLE #6**

| | |
|---|---|
| Price | $ |
| Price/SF | |
| Date | |
| Age | |
| Room Count | - |
| Living Area | |
| Value Indication | $ |

Barnes & Havens Appraised



File No.    2Av2neDz

## SITE PLAN

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |

| City | CARMEL | County | MONTEREY | State | CA | Zip Code | 93921 |
|---|---|---|---|---|---|---|---|

| Lender or Client | NOLAN REALTY |
|---|---|



Barnes & Havens Appraised



LOCATION MAP

| | | File No. | 2Av2neDz |
|---|---|---|---|
| Borrower or Owner | JOHNSON | | |
| Property Address | 2ND AVENUE, 2 NE DOLORES | | |
| City | CARMEL | County MONTEREY | State CA |
| Lender or Client | NOLAN REALTY | | Zip Code 93921 |

Barnes & Havens Appraisal