PAMELA L. COX (State Bar No. 191883)
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
(818) 501-3800; (818) 501-2985 (Fax)
e-mail: pcox@hemar-rousso.com
Refer to File Number: 3968-20080200-PLC

Attorneys for Defendant
FIRST FEDERAL BANK OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH E. JOHNSON and GERALD D. JOHNSON, | CASE NO. C08-00264PVT |
| | [Ordered Related to Case No. 08-01796PVT] |
| Plaintiffs, | |
| | DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND COMPLAINT IN RELATED CASE |
| v. | |
| FIRST FEDERAL BANK OF CALIFORNIA, | |
| | Hearing: |
| | Date : June 3, 2008 |
| Defendant. | Time: 10:00 a.m. |
| | Courtroom: 5 |
| | Patricia V. Trumbell, Magistrate |

**TO THE HONORABLE PATRICIA V. TRUMBELL, MAGISTRATE AND ALL**

**INTERESTED PARTIES:**

Defendant FIRST FEDERAL BANK OF CALIFORNIA (hereinafter "Defendant" or

"First Federal") hereby respectfully requests that the Court take Judicial Notice of the

following documents. This request is made pursuant to Rule 201 of the Federal Rules of

Evidence in connection with Defendant's Motion to Dismiss Plaintiffs' Amended

Complaint, and identical Complaint in related action pending as Case Number 08-01796

PVT, for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which

1 Relief can be Granted.

2 ## BASIS FOR JUDICIAL NOTICE

3 The Court may take Judicial Notice of a fact that is "not subject to reasonable dispute in

4 that it is . . . capable of accurate and ready determination by resort to sources whose

5 accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). That is true of each

6 of the following:

7 1. Alain Pinel Realtors website, wherein Plaintiff Gerald Johnson holds himself out as a

8 realtor: www.apr-carmel.com/agents/index.cfm/Gerald_Johnson_25.htm.

9 2. Note and Deed of Trust executed by Deborah Johnson on May 5, 2005, and recorded

10 on May 16, 2005. (The Court has already taken Judicial Notice of these documents in

11 connection with Defendant's first Motion to Dismiss Complaint. Copies of these

12 documents are attached hereto as Exhibit "1" for the court's reference and convenience).

13 3. Notice of Default and Election to Sell Under Deed of Trust, recorded on July 11,

14 2007 with the Monterey County Recorder. A true and correct copy of this document is

15 attached hereto as Exhibit "2" and incorporated herein by reference.

16 4. Notice of Trustee's Sale recorded on October 15, 2007 with the Monterey County

17 Recorder. A true and correct copy of this document is attached hereto as Exhibit "3" and

18 incorporated herein by reference.

19 5. Deborah Johnson's Chapter 13 Bankruptcy, Case Number 07-53614 and documents

20 filed therein. The Court has already taken Judicial Notice of this case and the pertinent

21 documents.

22 6. Gerald Johnson's Chapter 7 Bankruptcy, Case Number 007-53751 and documents

23 filed therein. Attached hereto as Exhibit "4" and incorporated herein by reference is a true

24 and correct copy of the Voluntary Petition, list of creditors, and Order of Dismissal.

25 7. Trustee's Deed Upon Sale, recorded on February 12, 2008 with the Monterey County

26 Recorder. Attached hereto as Exhibit "5" and incorporated herein by reference is a true

27 and correct copy of this document.

28 8. Transcript of Proceedings on Defendant's Motion to Dismiss Complaint, heard in

1    the above-captioned matter on March 4, 2008. Attached hereto as Exhibit "6" and

2    incorporated herein by reference is a true and correct copy of this document.

3     9.   Order Granting Defendant First Federal Bank of California's Motion to Dismiss

4    with Leave to Amend, entered on March 10, 2008 in the above-captioned case. Attached

5    hereto as Exhibit "7" and incorporated herein by reference is a true and correct copy of

6    this Order.

7

8    DATED: April 15, 2008            HEMAR, ROUSSO & HEALD, LLP

9

10                           By:   *Pamela L Cox*
                                 PAMELA L. COX

11                                  Attorneys for Defendant
                                 FIRST FEDERAL BANK OF

12                                  CALIFORNIA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1            PROOF OF SERVICE

2    STATE OF CALIFORNIA      )

3    COUNTY OF LOS ANGELES )

4      I am employed in the County of Los Angeles, State of California.  I am over the age of
     eighteen and not a party to the within action.  My business address is Hemar, Rousso &
5    Heald, LLP. ("the business") 15910 Ventura Boulevard, 12th Floor, Encino, CA  91436.

6      I am readily familiar with the business's practice for collection and processing of
     correspondence for mailing with the United States Postal Service; such correspondence
7    would be deposited with the United States Postal Service the same day of deposit in the
     ordinary course of business.

8
       On April 17, 2008, I served the foregoing document described as **DEFENDANT'S**
9    **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO**
     **DISMISS PLAINTIFFS' AMENDED COMPLAINT AND COMPLAINT IN**
10   **RELATED CASE** on the interested parties in this action by placing a true and correct
     copy thereof in a sealed envelope addressed as follows:

11
     **DEBORAH E. JOHNSON**
12   **PO Box 4448**
     **Carmel, CA 93921-4448**

13
     **GERALD D. JOHNSON (Pro Se, Filing Party)**
14   **PO Box 4448**
     **Carmel, CA 93921-4448**

15

16   XX      At my business address, I placed such envelope for deposit with the__Federal
     Express or XX__  U.S. Postal Office  by placing them for collection and mailing on that
17   date following ordinary business practices.

18   ___    I delivered such envelope(s) by hand to the offices of the addressees.

19   ___    I caused such copies to be facsimiled to the persons set forth.

20   XX     (State)  I declare under penalty of perjury under the laws of the State of
            California that the foregoing is true and correct.

21
     ___    (Federal) I declare under penalty of perjury under the laws of the United States
22          of America that I am employed in the office of a member of the bar of this court
            at whose direction the service was made.

23

24   Executed on April 17, 2008 at Encino, California.

25

26                           *Lisa Fields*

27                      LISA FIELDS

28

                                4

# EXHIBIT 1

AML WITH PAYRATE
NOTE SECURED BY DEED OF TRUST
(Adjustable Interest Rate Loan - CODI Index)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

U.S. $ 840,000.00

Loan No.: 49792970

Santa Monica, California

May 5, 2005

2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

(Property Address)

1.   In return for a loan that I have received, I promise to pay
     EIGHT HUNDRED FORTY THOUSAND AND 00/100

Dollars (U.S. $ 840,000.00 ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.   INTEREST
     (a)   Interest Rate
           Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of 5.796% .  This is my initial interest rate. The interest I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.
     (b)   Interest Change Dates
           The interest rate I will pay may change on the 1st day of July, 2005 and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

     (c)   Interest Rate Limit
           So long as I own the property securing this Note, my interest rate will never be greater than 10.150% , or lower than 3.800% . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be 4.354% percentage points above the greater of:

                (i) my initial interest rate, or
                (ii) my interest rate at the time of sale or transfer.
     (d)   The Index
           Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index). The Index is determined by the Lender based upon the average of the last twelve calendar months' most recently published monthly yields on dealer offering rates on nationally traded three-month certificates of deposit.  The Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve, rounded to the nearest one-thousandth of one percentage point (0.001%).  Information on such monthly yields on three-month certificate of deposit dealer rates is published by the Federal Reserve Board.  The most recent Index figure available as of the date 15 days before each Interest Change Date is the "Current Index."
           If the Index or any Index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted Index as of the last preceding Interest Change Date on which the prior index was available or the date of this Note, whichever occurs later, such that the sum of the substituted Index and the adjusted Margin will be similar to the sum of the prior Index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted Index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.
     (e)   Calculation of Interest Rate Changes
           Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding 3.800% percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will by my new interest rate until the next Interest Change Date.

3.   PAYMENTS
     (a)   Time and Place of Payments
           I will pay principal and interest by making payments every month.

           I will make my monthly payments on the first day of each month beginning on July 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
           I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER

L◯No.: 49792970

**(b)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of THREE THOUSAND ONE HUNDRED SIXTY-EIGHT AND 20/100

Dollars (U.S. $ 3,168.20). This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on an interest rate of 2.150%. This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

**(c)  Payment Change Dates**

My monthly payment may change as required by Section 3(d) below beginning on the 1st day of July, 2006, and on that day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

**(d)  Calculation of Monthly Payment Changes**

At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075 in the event the Full Payment is greater than such monthly payment. The result of this calculation is called the "Limited Payment." Unless Sections 3(f) or 3(g) below requires me to pay a different amount, I will pay the Limited Payment.

**(e)  Additions / Reductions to My Unpaid Principal**

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

**(f)  Limit on My Unpaid Principal; Increased Monthly Payment.**

My unpaid principal can never exceed a maximum amount equal to ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%) of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

**(g)  Required Full Payment**

On July 1, 2010, and on the same day every five years thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. At this time I will not have the option of paying the Limited Payment. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

4.  **NOTICES OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5.  **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6.  **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Grfne;!120270!119!!!!!!!!Qbhf !25!pd63

FUN 11002

Lo◯o.: 49792970

7. LEGISLATION AFFECTING LENDER'S RIGHT

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

8. BORROWER'S FAILURE TO PAY AS REQUIRED

(a) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(b) Accrual of Interest on Unpaid Balance

In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

(c) Default

If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

(d) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(e) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(f) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12. SECURITY

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: "Assumptions. During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!12027Ū3119!!!!!!!!Qbhf !26!pg63

FUN 11003 (2003-10-29)

Loan No.: 49792970

### 13. CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

BORROWER(S):

_Deborah E. Johnson_ , By _[signature]_,

Deborah E. Johnson

as her attorney in fact

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

Dbt f ;!18.64725!!!!!!!Epd!$;!2: !!!!!!Gjme;!120276&'delPur!!!!!Qbhf !27!pg63

FUN 11004

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

Loan No.: 49792970

### PREPAYMENT CHARGE RIDER TO
### NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated May 5, 2005 by and between

Deborah E. Johnson, a married woman as her sole and separate property

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict with any provision contained in the Note, the provisions hereof shall control.

1.  Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

    "5. BORROWER'S RIGHT TO REPAY

    I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments.

    Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ 168,000.00    (20 percent of the original loan amount; the "Permitted Prepayment") without penalty.  During the first three Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a prepayment charge pursuant to the following schedule:

    FIRST LOAN YEAR:       $ 25,200.00

    SECOND LOAN YEAR:      $ 16,800.00

    THIRD LOAN YEAR:       $ 8,400.00

    After completion of the third Loan Year, there will be no prepayment charges for any full or partial prepayments.  As used in this Note, "Loan Year" means each year during the term of this Note commencing thirty days before the first payment due date.

    The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty, accrued but unpaid interest that has been added to principal.

    The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of one or more monthly payments which would be applied towards principal. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not relieve me of the obligation to make the installments each and every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase."

2.  Partial Reduction and Deferral of Prepayment Charge

    a.  Upon Borrower's written request at time of prepayment, Lender will provide Borrower with a credit in the amount of $500.00 if an eligible new first trust deed loan that replaces this Loan ("New Loan") is obtained from Lender.  If this Loan is submitted by a mortgage broker, Lender shall waive an additional amount of $500.00 in prepayment charges provided that the New Loan is submitted by the same mortgage broker that originally submitted this Loan to Lender. Any credits hereunder shall be in the form either of a reduction in the prepayment charge applicable to the New Loan or, at Borrower's option, a reduction in the amount of the prepayment charge payable by Borrower upon payoff of this Loan.

    b.  For purposes of this paragraph, eligible New Loans are as follows:

        i.  Borrower either (a) obtains a new first trust deed loan from Lender secured by the same property as this Loan (a refinance loan); or (b) obtains a new first trust deed loan from Lender secured by a different property and pays off this Loan at the same time as the New Loan closes; and

        ii. The new loan must be subject to a prepayment charge for the first three years of the loan term; and

Loan No.: 49792970

iii. The prepayment charge on the New Loan will include the remaining dollar amount of the outstanding prepayment charge computed on this Loan, less the reduction referred to in Subsection a. above; and

iv. The New Loan terms will include an adjustment to the rate (if the new loan is a 3 year fixed rate interest-only product) or margin (if the new loan is a monthly ARM product) in an amount necessary to compensate the Lender on the new loan that is equivalent, in Lender's sole judgment, to the yield on this Loan.

c.   In the event that Borrower pays off this Loan in full, including payment of the prepayment charge, and within sixty days thereafter Borrower obtains a New Loan on another property from Lender, Borrower will be given a credit toward fees on the new loan in the amount referred to in Subsection a. above.

3.   Reduction of Prepayment Charge Upon Extension of New Loan to Buyer of Subject Property

At Borrower's and the buyer's written request, Lender will reduce the prepayment charge on this Loan by $500.00 ($1,000 if the same mortgage broker as Borrower used submits the loan from the buyer) if Borrower sells the property securing this Loan and the buyer finances the purchase with a new loan from Lender on the following terms and conditions:

a.   The new loan may NOT include a payment by Lender to Borrower, the buyer of the property secured by the deed of trust on this Loan, a mortgage broker or any other third parties; and

b.   The new loan must be subject to a prepayment charge on Lender's then current terms.

This provision does not constitute a commitment to make a new loan to Borrower or to any buyer of the subject property. Any new loan shall be subject to Lender's normal underwriting, credit review, appraisal, and other lending evaluation processes. This waiver applies only to the existing Loan, and not to any new loan.

4.   Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

_Deborah E. Johnson_ , _By Gerald Johnson_ , as her attorney in fact

Deborah E. Johnson

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

Loan No. 49792970
Title Order No. 0707003629

Recorded at the Request of
Old Republic Title Company
Livermore

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Old Republic Title**

CRROBERTA
5/16/2005
8:00:00



DOCUMENT: **2005048551**   Titles: 1/ Pages: 10

Fees.... 32.00
Taxes...
Other...
AMT PAID    $32.00

Space above this line for recorder's use

☐ CONSTRUCTION  ☒ NON-CONSTRUCTION
Deed of Trust and Assignment of Rents
**ADJUSTABLE INTEREST RATE LOAN**

**THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.**

THIS DEED OF TRUST IS MADE ON     May 5, 2005
The trustor is

**Deborah E. Johnson, a married woman as her sole and separate property**

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or "Beneficiary").

Borrower owes Lender the principal sum of
EIGHT HUNDRED FORTY THOUSAND AND 00/100

Dollars (U.S. $ 840,000.00).

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 06/01/2035. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance, if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust. For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in Monterey County, California:

AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 1 PAGE

010-126-022

Which has the address of   **2nd Ave 2 NE of Dolores Street, Carmel, CA 93921**

("Property Address")

FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE

FUN 20101 (2004-02-18) (OS 016)

Loan No. 49792970

TOGETHER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, rights of way, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter made a part of the property. The following items are added to the Property description, and shall also constitute the Property covered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property. All replacements and additions are also covered by this Deed of Trust. Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the lien of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

**(1) Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

**(2) Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

**(3) Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**(4) Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

Loan No. 49792970

**(5) Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

**(6) Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

**(7) Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called 'Impounds'. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future Impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**(8) Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property: or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

**(9) Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

**(10) Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

**(11) Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

**(12) Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

**(13) Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

Loan No. 49792970

**(14) Acceleration Clause: Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

**(15) Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**(16) Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

**(17) Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

**(18) Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**(19) Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

**(20) Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

**(21) Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

**(22) Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

**(23) Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

Loan No. 49792970

**(32) Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**(33) Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

**(34) Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

**(35) Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

**(36) Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures; or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

**(37) Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq, ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99.499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**(38) Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**(39) Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**(40) Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**(41) Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

**(42) Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (I) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!120270B119!!!!!!!Qbhf !36!pg63

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owner Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation, By-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term 'extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or any part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or creation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further agrees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or may in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by landowners.

Loan: 49792970

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

**BORROWER(S):**

_Deborah E. Ja_____, _by Gerald D. Ja_____,

Deborah E. Johnson

_as her attorney in fact_

FUN 20108

# ACKNOWLEDGMENT

STATE OF _California_
)
) SS.
COUNTY OF _Monterey_
)

On _May 5, 2005_, before me, _Theresa Tiliaia Castro_

personally appeared _Gerald D. Johnson_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

_Theresa Tiliaia Castro_ (Seal)

THERESA TILIAIA CASTRO
Comm. # 1452741
NOTARY PUBLIC - CALIFORNIA
Monterey County
My Comm. Expires Nov. 23, 2007

This Certificate must be attached to:

Title or type of Document: _Deed of Trust & Assignment of Rates._

Number of pages: _8_

Date of document: _May 5, 2005_

Signer(s) other than named above: _Deborah E. Johnson_

**Loan # 49792970**

Order No. : 0707003629

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Monterey, City of Carmel, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying Southerly of and contiguous with the Northerly boundary of Parcel A as said parcel is shown on the map above referred to.

# END OF DOCUMENT

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Grhe;!120270?3119!!!!!!!!Qbhf !3: !pg63

# EXHIBIT 2

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA  92711-1988

The following copy of "Notice": the original of
which was filed for record on July 11, 2007
in the office of the County Recorder of said
County, is sent to you inasmuch as an
examination of the title to said trust property
shows you may have an interest in the Trustee's
Sale proceedings.

_____ SPACE ABOVE THIS LINE FOR RECORDERS USE _____

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## "IMPORTANT NOTICE"

T.S. No: A343546 CA      Unit Code: A      Loan No: 49792970/JOHNSON
Property Address: 2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA  93921

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses within the
time permitted by law for reinstatement of your account, which is normally five business days
prior to the date set for the sale of your property.  No sale date may be set until three months
from the date this notice of default may be recorded (which date of recordation appears on this
notice).

This amount is $23,466.15, As of July 9, 2007

and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance
and taxes) required by your note and deed of trust or mortgage.  If you fail to make future
payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing.  In
addition, the beneficiary or mortgagee may require as a condition to reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of
the entire amount you must pay.  You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default at
the time payment is made.  However, you and your beneficiary or mortgagee may mutually
agree in writing prior to the time the notice of sale is posted (which may not be earlier than the
end of the three-month period stated above) to, among other things, (1) provide additional time
in which to cure the default by transfer of the property or otherwise; or (2) establish a
schedule of payments in order to cure your default; or both (1) and (2).

)                                    )

Page 2
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No: A343546 CA    Unit Code: A    Loan No: 49792970/JOHNSON

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
Foreclosure Department
First Federal Bank of
California
401 Wilshire Blvd.
Santa Monica, CA 90401
(310) 319-6089

If you have any questions, you should contact a lawyer or the government agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION**

NOTICE IS HEREBY GIVEN THAT: SEASIDE FINANCIAL CORPORATION is duly appointed Trustee under the following described Deed of Trust:

Trustor: DEBORAH E. JOHNSON

Recorded May 16, 2005 as Instr. No. 2005048551 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA

Said Deed of Trust secures certain obligations including one Note for the sum of **$840,000.00**

That the Beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE APRIL 1, 2007 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST. PLUS LATE CHARGE(S). FEE RECEIVABLES IN THE AMOUNT OF $4,878.75.**

That by reason thereof, the present Beneficiary under such Deed of Trust has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby. **DATED 07/09/07**

SEASIDE FINANCIAL CORPORATION, BY T.D. SERVICE COMPANY AS AGENT FOR THE TRUSTEE, BY SERVICELINK, AS AGENT FOR T.D. SERVICE COMPANY

BY _____    BY _____

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

 **TD Service Company**  &  **MELMET DEFAULT SERVICES, INC.**

*"The Alliance"*

### DEBT VALIDATION NOTICE

Date: July 12, 2007
T.S. No: A343546 CA
Unit Code: A
Loan No: 49792970/JOHNSON

1. The enclosed document relates to a debt owed to:
   FIRST FEDERAL BANK OF CALIFORNIA
   c/o First Federal Bank of California

2. Your mortgage Loan with the above-referenced creditor has been referred to our office for foreclosure based upon a default under the terms of the subject Note and Deed of Trust. Pursuant to and in compliance with the Fair Debt Collection Practices Act (Federal(15USC 1601, as amended) our company on behalf of the above- named creditor hereby provides the following notification:

   * We are attempting to collect a debt and any information we obtain will be used for that purpose.

   * The amount required to reinstate or pay off the Debtor's account will be provided to the Debtor upon request. The Debtor should telephone our company or the creditor for a quotation of such amount.

   * Written request or claims of dispute may be sent to the Creditor or to our company.

   * You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information within thirty (30) days after we receive your written request.

3. As of July 9, 2007 the total delinquency owed was $23,466.15, but this amount will increase daily after such date until the delinquency has been fully paid.

4. As of the date in item Number 3, the amount owed is $885,272.85 for unpaid Principal, plus Accrued Interest and any Accrued NSF Fees, Escrow Advances, Late Charges, or Suspense Credits and Attorney and/or Trustee Fee and Costs that have been incurred. Because these charges may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after your check is received, in which event you will be informed before the check is deposited for collection. For further information you may contact T.D. SERVICE COMPANY by mail at 1820 E. FIRST ST., SUITE 210, P.O. BOX 11988, SANTA ANA, CA 92711-1988 or call (800) 843-0260 or call your lender directly.

5. You may dispute the validity of this debt, or any portion thereof, by contacting our office within thirty (30) days after receiving this notice. In that event, we will obtain and mail to you written verification of the debt. Otherwise, we will assume that the debt is valid.The foreclosure action can be withdrawn if it is determined by the Creditor that there has been no default or the default has been cured or corrected.

6. You have various rights and duties under state law, which may include the right to reinstate the loan or redeem the property from the foreclosure sale. This letter is not a notification or intent to notify you of your rights. You should seek independent advice with respect to your rights and obligations under this debt.

DEBTVLD

P.O. Box 11988, Santa Ana, CA 92711-1988 . 1820 E. First Street, Suite 210, Santa Ana, CA 92705
(714) 543-TDSC (8372) . (800) 843-0260 . FAX (714) 541-4130 . www.tdsf.com

# EXHIBIT 3

) )

10

**SERVICELINK, IRVINE**
RECORDING REQUESTED BY

T.D. SERVICE COMPANY

And when recorded mail to
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA , CA 92711-1988

Stephen L. vagnini          CRLUCY
Monterey County Recorder    10/15/2007
Recorded at the request of  11:32:37
Filer

DOCUMENT: 2007078352  Titles: 1/ Pages: 2

Fees....    11.00
Texes...
Other ...
AMT PAID   $11.00

RECEIVED
MAR 1 9 2008
RECEIVED

143911          Space above this line for recorder's use

**NOTICE OF TRUSTEE'S SALE**

T.S. No: A343546 CA    Unit Code: A    Loan No: 49792970/JOHNSON/JOHNSON
AP #1: 010-126-022

SEASIDE FINANCIAL CORPORATION, as duly appointed Trustee under the following described Deed of Trust WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (in the forms which are lawful tender in the United States) and/or the cashier's, certified or other checks specified in Civil Code Section 2924h (payable in full at the time of sale to T.D. Service Company) all right, title and interest conveyed to and now held by it under said Deed of Trust in the property hereinafter described:

Trustor: DEBORAH E. JOHNSON

Recorded May 16, 2005 as Instr. No. 2005048551 in Book — Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA , pursuant to the Notice of Default and Election to Sell thereunder recorded July 11, 2007 as Instr. No. 2007-54656 in Book --- Page — of Official Records in the office of the Recorder of  MONTEREY  County CALIFORNIA.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED MAY 5, 2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA 93921
"(If a street address or common designation of property is shown above, no warranty is given as to its completeness or correctness)."

Said Sale of property will be made in "as is" condition without covenant or warranty, express or implied, regarding title possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest as in said note provided, advances, if any, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Said sale will be held on:
NOVEMBER 8, 2007, AT 10:00 A.M. *ON THE MAIN STEPS (AT THE DOUBLE DOOR ENTRANCE, INSIDE THE COURTYARD) OF THE COUNTY COURTHOUSE, 240 CHURCH STREET, SALINAS, CA

At the time of the initial publication of this notice, the total amount of the unpaid balance of the obligation secured by the above described Deed of Trust and estimated costs, expenses, and advances is $943,523.95. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

Page 2
T.S. No: A343546 CA     Unit Code: A     Loan No: 49792970/JOHNSON/JOHNSON

Date: October 12, 2007

SEASIDE FINANCIAL CORPORATION as said Trustee,
by T.D. Service Company, as agent

BY _____
FRANCES DEPALMA, ASSISTANT SECRETARY
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210, P.O. BOX 11988
SANTA ANA, CA 92711-1988
(714) 543-8372

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose
whether received orally or in writing.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be
the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If available, the expected opening bid and/or postponement information may be obtained by calling the
following telephone number(s) on the day before the sale: (714) 480-5690 or you may access sales information
at www.ascentex.com/websales.

END OF DOCUMENT

# EXHIBIT 4

Official Form 1 (04/07)

| United States Bankruptcy Court | |
|---|---|
| *NORTHERN* DISTRICT OF *CALIFORNIA* | *Voluntary Petition* |

| Name of Debtor (if individual, enter Last, First, Middle): *JOHNSON, GERALD DEAN* | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): *JOHNSON, GERALD D.* | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax I.D. No. (if more than one, state all): *XXX-XX-4237* | Last four digits of Soc. Sec./Complete EIN or other Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): *2ND AVE. 2 NE OF DOLORES ST. CARMEL-BY-THE-SEA, CA* ZIP CODE *93921* | Street Address of Joint Debtor (No. and Street, City, and State): ZIP CODE |
| County of Residence or of the Principal Place of Business: *MONTEREY* | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): *P.O. BOX 4448 CARMEL-BY-THE-SEA, CA* ZIP CODE *93921* | Mailing Address of Joint Debtor (if different from street address): ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): | ZIP CODE |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ■ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | ■ Chapter 7   ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12   ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 13 |
| | Tax-Exempt Entity (Check box, if applicable.) | Nature of Debts (Check one box.) |
| | ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."   ☐ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☐ Full Filing Fee attached.<br><br>■ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Check one box:**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>--------------------------------------<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ☐ $0 to $10,000 | ☐ $10,000 to $100,000 | ☐ $100,000 to $1 million | ■ $1 million to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to $50,000 | ☐ $50,000 to $100,000 | ☐ $100,000 to $1 million | ■ $1 million to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

Official Form 1 (04/07)                                                                                    Form B1, Page 2

| **Voluntary Petition** *(This page must be completed and filed in every case.)* | **Name of Debtor(s):** JOHNSON, GERALD DEAN |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location Where Filed: NONE | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: DEBORAH ELIZABETH JOHNSON | Case Number: 07-53614-MM13 | Date Filed: NOV. 07, 2007 |
| District: NORTHERN DISTRICT OF CALIFORNIA | Relationship: SPOUSE/WIFE | Judge: MARILYN MORGAN |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>Signature of Attorney for Debtor(s)        (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

■  No.

---

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

---

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

■  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

---

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

| Official Form 1 (04/07) | Form B1, Page 3 |
|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): JOHNSON, GERALD DEAN |

| Signatures | |
|---|---|
| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _Gerald D. Johnson_
Signature of Debtor

X _____
Signature of Joint Debtor    831- 622- 0132

Telephone Number (if not represented by attorney)

Date _____

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

**Signature of Attorney**

X _____
Signature of Attorney for Debtor(s)

Printed Name of Attorney for Debtor(s)

Firm Name

Address

Telephone Number

Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

Printed Name and title, if any, of Bankruptcy Petition Preparer

Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

Address

X _____

Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

Official Form 1, Exhibit D (10/06)

## UNITED STATES BANKRUPTCY COURT

_NORTHERN_ District of _CALIFORNIA_

In re _GERALD DEAN JOHNSON_
Debtor(s)

Case No._____
(if known)

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

_Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed._

■ 1. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. _Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency._

☐ 2. Within the 180 days **before the filing of my bankruptcy case,** I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. _You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 15 days after your bankruptcy case is filed._

Official Form 1, Exh. D (10/06) – Cont.

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the five days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Must be accompanied by a motion for determination by the court.][Summarize exigent circumstances here.]* _____

_____

**If the court is satisfied with the reasons stated in your motion, it will send you an order approving your request. You must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy case and promptly file a certificate from the agency that provided the briefing, together with a copy of any debt management plan developed through the agency. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. A motion for extension must be filed within the 30-day period. Failure to fulfill these requirements may result in dismissal of your case. If the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing, your case may be dismissed.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]  [Must be accompanied by a motion for determination by the court.]*
　　　☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
　　　☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
　　　☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _____

Date: _11- 14 - 2007_

2

B 201 (04/09/06)

## UNITED STATES BANKRUPTCY COURT

# NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
# OF THE BANKRUPTCY CODE

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

## 1.  Services Available from Credit Counseling Agencies

**With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

**In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses.

## 2.  The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors

### Chapter 7:  Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total fee $299)

1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.

2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

### Chapter 13:  Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)

1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.

B 201                                                                                   Page 2

2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)

Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)

Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

## 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

_____
Printed name and title, if any, of Bankruptcy Petition Preparer

Address:

_____

X_____
Signature of Bankruptcy Petition Preparer or officer,
principal, responsible person, or partner whose Social
Security number is provided above.

_____
Social Security number (If the bankruptcy petition
preparer is not an individual, state the Social Security
number of the officer, principal, responsible person, or
partner of the bankruptcy petition preparer.) (Required
by 11 U.S.C. § 110.)

### Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

GERALD DEAN JOHNSON
_____
Printed Name(s) of Debtor(s)

Case No. (if known) _____

X _____  11-14-2007
Signature of Debtor          Date

X_____
Signature of Joint Debtor (if any)   Date

**United States Bankruptcy Court**
Northern District of California

In re _GERALD DEAN JOHNSON_ _____    Case No. _____
                                    Debtor(s)    Chapter _____7_____

## CREDITOR MATRIX COVER SHEET

I declare that the attached Creditor Mailing Matrix, consisting of **2** sheets, contains the correct, complete and current names and addresses of all priority, secured and unsecured creditors listed in debtor's filing and that this matrix conforms with the Clerk's promulgated requirements.

Date: _11-15-2007_ _____    _____

Johnson, Gerald Dean


American Express Optima
P.O. Box 0001
Los Angeles, CA 90096-0001


Bank of America
P.O. Box 15726
Wilmington, DE 19886


Capital One
P.O. Box 60024
City of Industry, CA 91716-0024


Chase Card Member Services
P.O. Box 94014
Palatine, IL 60094-4014


Wescom Credit Union
P.O. Box 7058
Pasadena, CA 91109-7058


Union Plus Credit
P.O. Box 60102
Los Angeles, CA 90096


Target National Bank
P.O. Box 59317
Minneapolis, MN 55459-0317


NCO Financial Systems, Inc.
P.O. Box 61247
Virginia Beach, VA 23466

Johnson, Gerald Dean


Chase Bank USA, N.A.
P.O. Box 100043
Kennesaw, GA 30156-9243


HSBC Retail Services
P.O. Box 4144
Carol Stream, IL 60197-4144


Washington Mutual Card Services
P.O. Box 660487
Dallas, TX 75266-0487


Citi Cards
P.O. Box 9140
Des Moines, IA 50368


Home Depot Credit Services
P.O. Box 6028
The Lakes. NV 88901-6028


Chase Student Loan Servicing LLC
P.O. Box 522
Madison, MS 39130-0522


U.S. Department of Education
P.O. Box 530260
Atlanta, GA 30353-0260

Form SJODM

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| | |
|---|---|
| In Re: Gerald Dean Johnson | Case No.: 07–53751 ASW 7 |
| aka   Gerald D. Johnson | Chapter:  7 |
| Debtor(s) | |

## ORDER AND NOTICE OF DISMISSAL
## FOR FAILURE TO COMPLY

**Notice is given** the debtor(s) having failed to comply with this court's order filed on November 21, 2007 , this case is DISMISSED.

If the debtor(s) failed to comply with 11 U.S.C. §521(a)(1) and no extension of time was obtained under 11 U.S.C. §521(i)(3), this Order of Dismissal is effective the 46th day after the filing of the petition.

It is so Ordered.

Dated: 1/7/08                    By the Court:

                                Arthur S. Weissbrodt
                                United States Bankruptcy Judge

**B'AE SYSTEMS**

Bankruptcy Noticing Center
2525 Network Place, 3rd Floor
Herndon, Virginia 20171-3514

# CERTIFICATE OF SERVICE

```
District/off: 0971-5          User: awong2              Page 1 of 2              Date Rcvd: Jan 07, 2008
Case: 07-53751               Form ID: SJODM            Total Served: 29
```

The following entities were served by first class mail on Jan 09, 2008.
```
db        +Gerald Dean Johnson,   PO Box 4448,   Carmel By The Sea, CA 93921-4448
tr        +John W. Richardson,   5161 Soquel Dr. #F,   Soquel, CA 95073-2560
smg        CA Employment Development Dept.,   Bankruptcy Group MIC 92E,   P.O. Box 826880,
           Sacramento, CA  94280-0001
smg        Secretary of The Treasury,   15th and Pennsylvania Ave. NW,   Washington, DC  20220-0001
smg       +State Board of Equalization,   Attn: Special Procedures Section, MIC:55,   P.O. Box 942879,
           Sacramento, CA 94279-0001
cr        +Recovery Management Systems Corporation,   25 SE 2nd Ave Ste 1120,   Attn: Ramesh Singh,
           Miami, Fl 33131-1605
8960703   +Bank of America,   PO Box 15726,   Wilmington, DE 19886-5726
8960715   +Chase Student Loan Servicing LLC,   PO Box 522,   Madison, MS 39130-0522
8960713   +Citi Cards,   PO Box 9140,   Des Moines, IA 50368-0001
8985151   +FIA Card Services, N.A.,   1000 Samoset Dr.,   DE5-023-03-03,   Newark, DE 19713
8985745   +HOUSEHOLD BANK (SB), N.A.,   Bass & Associates, P.C.,   3936 E. Ft. Lowell Road, Suite #200,
           Tucson, AZ 85712-1083
8960714   +Home Depot Credit Services,   PO Box 6028,   The Lakes, NV 88901-6028
9009970   +Household Bank (SB), N.A.,   eCAST Settlement Corporation,   c/o Bass & Associates, P.C.,
           3936 E. Ft. Lowell Rd., Suite 200,   Tucson, AZ 85712-1083
8960709   +NCO Financial Systems, Inc.,   PO Box 61247,   Virginia Beach, VA 23466-1247
8999957    Recovery Management Systems Corporation,   25 S.E. 2nd Avenue, Suite 1120,   Miami, FL 33131-1605
9002308    Recovery Management Systems, Corp.,   25 SE 2nd Ave. # 1120,   Miami, FL 33131-1605,
           Attn: Ramesh Singh
8993693    U.S. Dept. of Education,   c/o Direct Loan Servicing Center,   PO Box 5609,
           Greenville, TX 75403-5609
8960716   +US Dept. of Education,   PO Box 530260,   Atlanta, GA 30353-0260
8960707   +Union Plus Credit,   PO Box 60102,   Los Angeles, CA 90096-0001
8960712   +Washington Mutual Card Services,   PO Box 660487,   Dallas, TX 75266-0487
8960706   +Wesco Credit Union,   PO Box 7058,   Pasadena, CA 91109-7058
```
The following entities were served by electronic transmission on Jan 08, 2008.
```
tr        +EDI: QJWRICHARDSON.COM Jan 08 2008 03:37:00   John W. Richardson,   5161 Soquel Dr. #F,
           Soquel, CA 95073-2560
smg       ·EDI: CALTAX.COM Jan 08 2008 03:36:00   CA Franchise Tax Board,   Attn: Special Procedures,
           P.O. Box 2952,   Sacramento, CA 95812-2952
cr        +EDI: RECOVERYCORP.COM Jan 08 2008 03:36:00   Recovery Management Systems Corporation,
           25 SE 2nd Ave Ste 1120,   Attn: Ramesh Singh,   Miami, Fl 33131-1605
8960703   +EDI: AMEREXPR.COM Jan 08 2008 03:36:00   American Express Optima,   PO Box 0001,
           Los Angeles, CA 90096-8000
8960703   +EDI: BANKAMER2.COM Jan 08 2008 03:36:00   Bank of America,   PO Box 15726,
           Wilmington, DE 19886-5726
8960704   +EDI: CAPITALONE.COM Jan 08 2008 03:36:00   Capital One,   PO Box 60024,
           City of Industry, CA 91716-0024
8983189   +EDI: CAPITALONE.COM Jan 08 2008 03:36:00   Capital One Bank,   C/O TSYS DEBT MANAGEMENT,
           PO BOX 5155,   NORCROSS, GA 30091-5155
8960710   +EDI: CHASE.COM Jan 08 2008 03:36:00   Chase Bank USA, NA,   PO Box 100043,
           Kennesaw, GA 30156-9243
8960705   +EDI: CHASE.COM Jan 08 2008 03:36:00   Chase Card Member Services,   PO Box 94014,
           Palatine, IL 60094-4014
8960711   +EDI: HFC.COM Jan 08 2008 03:36:00   HSBC Retail Services,   PO Box 4144,
           Carol Stream, IL 60197-4144
8999957    EDI: RECOVERYCORP.COM Jan 08 2008 03:36:00   Recovery Management Systems Corporation,
           25 S.E. 2nd Avenue, Suite 1120,   Miami, FL 33131-1605
8960708   +EDI: WTRRNBANK.COM Jan 08 2008 03:36:00   Target National Bank,   PO Box 59317,
           Minneapolis, MN 55459-0317
                                                                              TOTAL: 12

          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr*       +Household Bank (SB) N.A.,   Bass & Associates, P.C.,   3936 E. Ft. Lowell Rd. Ste. #200,
           Tucson, AZ 85712-1083
                                                                              TOTALS: 0, * 1
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

```
District/off: 0971-5          User: awong2           Page 2 of 2           Date Rcvd: Jan 07, 2008
Case: 07-53751                Form ID: SJODM         Total Served: 29
```

```
             ***** BYPASSED RECIPIENTS (continued) *****
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jan 09, 2008                    Signature:

Form FIND

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| In Re: Gerald Dean Johnson<br>  aka  Gerald D. Johnson<br>       Debtor(s) | Case No.: 07–53751 ASW 7<br>Chapter: 7 |
|---|---|

## FINAL DECREE

The estate of the above named debtor has been fully administered.

☐ The deposit required by the plan has been distributed.

**IT IS ORDERED THAT:**

☑ John W. Richardson is discharged as trustee of the estate of the above–named debtor and the bond is canceled.

☑ the chapter 7 case of the above–named debtor is closed;

and

☐ Other


Dated: 1/8/08                          By the Court:


                                    Arthur S. Weissbrodt<br>                                    United States Bankruptcy Judge

# EXHIBIT 5

Recording Requested By
**ServiceLink**

RECORDING REQUESTED BY
T.D. SERVICE COMPANY

And when recorded mail to
First Federal Bank of
California
RE: Loan # 49792970/JOHNSON/JOHNSON
401 Wilshire Blvd.
Santa Monica, CA 90401

Stephen L. Vagnin.                    RANJELIQUE
Monterey County Recorder              2/12/2008
Recorded at the request of.           12:01:24
**Filer**

DOCUMENT: .2008008306    Titles: 1/ Pages: 2

Fees....      12.00
Taxes...
Other...
AMT PAID    $12.00

_____ Space above this line for recorder's use _____

*1739911*

## TRUSTEE'S DEED UPON SALE

The undersigned declares under penalty of perjury that the following declaration is true and correct:

1) The Grantee herein was the foreclosing Beneficiary.
2) The amount of the unpaid debt together with costs was - - - - - - - - - - - - - - - - - -      $983,776.34
3) The amount paid by the Grantee at the Trustee's Sale was - - - - - - - - - - - - - - - -      $969,700.00
4) The documentary transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -      $.00
5) The city transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -      $.00
6) The monument preservation tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -      $.00
7) Said property is in unincorporated area, County of Monterey

T.D. SERVICE COMPANY

Dated: 02/08/08           By_____
                          Frances DePalma, Trustee's Sale Officer

T.S. No: A343546 CA      Unit Code: A      Loan No: 49792970/JOHNSON/JOHNSON
AP #1: 010-126-022
Property Address: 2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA 93921

SEASIDE FINANCIAL CORPORATION               **Accommodation**
(herein called Trustee)

does hereby GRANT AND CONVEY, without any covenant or warranty, express or implied to

FIRST FEDERAL BANK OF CALIFORNIA
(herein called Grantee), such interest as Trustee has in that certain property described as follows:

PARCEL I: PARCEL "B" AS SHOWN ON THAT CERTAIN MAP FILED AUGUST 27, 1980 IN VOLUME
14 OF PARCEL MAPS, AT PAGE 58, PARCE II: A NON-EXCLUSIVE EASEMENT FOR PUBLIC UTILITY
PURPOSES THREE FEET WIDE, LYING SOUTHERLY OF AND CONTIGUOUS WITH THE
NORTHERLY BOUNDARY OF PARCEL A AS SAID PARCEL IS SHOWN ON THE MAP ABOVE
REFERRED TO.

This conveyance is made pursuant to the authority vested in said Trustee, as Trustee or as duly appointed Trustee
by the Deed of Trust described as follows:

Trustor: DEBORAH E. JOHNSON

MAIL TAX STATEMENTS TO ADDRESS SHOWN ABOVE

Page 2
T.S. No: A343546 CA     Unit Code: A     Loan No: 49792970/JOHNSON/JOHNSON

Recorded May 16, 2005 as Instr. No. 2005048551 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA , Whereas, the holder of the note secured by said Deed of Trust delivered to Trustee a written Declaration of Default and, pursuant thereto, a Notice of Default was recorded July 11, 2007 as Instr. No. 2007-54666 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA .

Whereas, Trustee complied with all applicable statutory provisions of California Civil Code Sections 2924 et seq. and of the described Deed of Trust including the mailing, publication, personal delivery, and posting of the Notice of Default and Notice of Sale, as respectively appropriate.

Said Notice of Trustee's Sale stated the time and place that Trustee would sell its interest in the described property at public auction. On February 8, 2008, the date set forth in the Notice of Trustee's Sale or the properly postponed sale date, Trustee sold the described property to Grantee, the highest qualified bidder present, for the sum of $969,700.00 Pro-tanto.

In Witness Whereof, the undersigned caused its corporate name and seal (if applicable) to be hereunto affixed.

Dated February 9, 2008

SEASIDE FINANCIAL CORPORATION
By T.D. Service Company, As Agent for the Trustee

BY _____          BY _____
     Frances Depalma, Assistant Secretary            Patricia A. Randall, Vice President


STATE OF CALIFORNIA       )
COUNTY OF ORANGE        )SS

On 02/09/08 before me, KAY HENDRICKS, a Notary Public, personally appeared FRANCES DEPALMA, ASSISTANT SECRETARY, PATRICIA A. RANDALL, VICE PRESIDENT who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the Laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KAY HENDRICKS
Commission # 1630718
Notary Public - California
Orange County
My Comm. Expires Dec 27, 2008

**END OF DOCUMENT**

# EXHIBIT 6

1STFED-T

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | NORTHERN DISTRICT OF CALIFORNIA |
| 3 | SAN JOSE DIVISION |
| 4 | |
| 5 | |

```
 6   DEBORAH E. JOHNSON AND          )
     GERALD D. JOHNSON,             )   CASE NO. C08-00264-PVT
 7                                  )
                                    )
                     PLAINTIFFS,    )
 8                                  )
     V.                             )
 9                                  )
     FIRST FEDERAL BANK OF          )   SAN JOSE, CA
10   CALIFORNIA,                    )   MARCH 4, 2008
                                    )
11                   DEFENDANT.     )
     _____)
12
13
14              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PATRICIA V. TRUMBULL
15         UNITED STATES DISTRICT MAGISTRATE JUDGE

16   A P P E A R A N C E S:

17
     FOR THE PLAINTIFFS:      DEBORAH E. JOHNSON
18                            P.O. BOX 4448
                              CARMEL, CA  93921-4448
19                            TEL:  831-622-0132

20                            GERALD D. JOHNSON
                              (PRO SE, FILING PARTY)
21                            P.O. BOX 4448
                              CARMEL, CA  93921-4448
22                            TEL:  831-622-0132
                              APRGDJ@CS.COM
23

24          (APPEARANCES CONTINUED ON THE NEXT PAGE)

25   COURT REPORTER:               JANA L. RIDENOUR, CSR
                                   LICENSE NO. 9302
```

1

                                        1STFED-T
1  A P P E A R A N C E S:   (CONTINUED)

2  FOR THE DEFENDANT:           PAMELA LORRAINE COX, ESQ.
                                HEMAR, ROUSSO & HEALD, LLP
3                               15910 VENTURA BLVD.
                                12TH FLOOR
4                               ENCINO, CA  91436
                                TEL:  818-501-3800
5                               FAX:  818-501-2985
                                PCOX@HEMAR-ROUSSO.COM
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


                                                          2

1  SAN JOSE, CALIFORNIA                  MARCH 4, 2008

2            P R O C E E D I N G S

3       THE COURT:  JOHNSON VERSUS FIRST FEDERAL BANK,

1STFED-T
4   MOTION TO DISMISS.

5           THE CLERK:  SHE IS GOING TO BE BY PHONE;
6   MS. COX IS BY TELEPHONE.

7           (CLERK ESTABLISHES PHONE CONNECTION FOR
8           COUNSEL APPEARING TELEPHONICALLY.)

9           THE COURT:  GOOD MORNING.

10          MS. COX:  PAMELA COX, REPRESENTING FIRST
11  FEDERAL BANK OF CALIFORNIA.

12          THE COURT:  MAKE YOUR APPEARANCE AGAIN BECAUSE
13  I WAS HAVING A HARD TIME HEARING YOU.

14          MR. JOHNSON:  I'M SORRY.  I'LL TRY TO SPEAK
15  LOUDER.

16          PAMELA COX, C-O-X, ON BEHALF OF THE DEFENDANT,
17  FIRST FEDERAL BANK OF CALIFORNIA, IN THE MATTER OF
18  JOHNSON VERSUS FIRST FEDERAL BANK OF CALIFORNIA.

19          THE COURT:  OKAY.  THANK YOU.

20          MR. AND MRS. JOHNSON, CAN YOU HEAR HER?

21          MR. JOHNSON:  YES, I CAN.

22          MRS. JOHNSON:  (NO AUDIBLE RESPONSE.)

23          THE COURT:  OKAY.  IT'S EASIER FOR YOU TO HEAR
24  HER BECAUSE ACTUALLY HER VOICE COMES OUT OVER YOUR HEAD.
25  IT'S A LITTLE HARDER UP HERE.

D                                                       3


1           THIS IS FIRST FEDERAL BANK OF CALIFORNIA'S
2   MOTION TO DISMISS.

3           SO THE WAY WE DO THIS IS BECAUSE THEY BROUGHT
4   THE MOTION, I WILL ASK THEM TO MAKE THEIR PRESENTATION
5   ON THE MOTION AND THEN I WILL ASK YOU TO RESPOND TO
6   THAT, IF YOU WANT TO DO THAT.  OKAY?

1STFED-T
7       (NO AUDIBLE RESPONSE.)

8            THE COURT:   SO MS. COX, WHY DON'T YOU GO AHEAD

9    AND ADDRESS THE MOTION.

10           MS. COX:   THANK YOU, YOUR HONOR.

11           DEFENDANT FIRST FEDERAL BANK OF CALIFORNIA

12   BRINGS THIS MOTION TO DISMISS THE COMPLAINT FILED BY THE

13   PLAINTIFFS DEBORAH JOHNSON AND GERALD JOHNSON ON A

14   NUMBER OF GROUNDS.

15           IN CONNECTION WITH GERALD JOHNSON, THE

16   PLAINTIFF LACKS STANDING TO ASSERT THIS CLAIM BECAUSE HE

17   IS NOT A BORROWER OR CONSUMER ON THIS TRANSACTION

18   INVOLVING THE REAL PROPERTY.   AND THERE WAS CASE LAW AND

19   STATUTES CITED IN CONNECTION WITH THAT ARGUMENT IN THE

20   MOTION AND ALSO IN THE REPLY BRIEF.

21           IN THE OPPOSITION FILED BY MR. JOHNSON, HE

22   ESSENTIALLY ADMITS THAT HE WAS REMOVED FROM THE LOAN

23   SIMPLY BECAUSE HIS CREDIT WAS NOT AS GOOD AS DEBORAH

24   JOHNSON'S CREDIT, AND SO IT DOES NOT MEAN THAT THERE'S

25   ANY DISPUTE AS TO THE FACT THAT GERALD JOHNSON IS NOT A

4

▯

1    BORROWER ON THIS LOAN.

2            BASED ON THAT, THE MOTION TO DISMISS TO GERALD

3    JOHNSON SHOULD BE GRANTED WITHOUT LEAVE TO AMEND.

4            THE COURT:   OKAY.   WHY DON'T YOU WAIT A

5    MINUTE.

6            MR. JOHNSON, DO YOU UNDERSTAND WHAT HER

7    ARGUMENT IS?

8            MR. JOHNSON:   YES, I DO.

9            THE COURT:   AND IS THERE ANYTHING YOU WANT TO

1STFED-T

10  SAY ABOUT THAT?

11         MR. JOHNSON:  YES, I DO.

12         THE COURT:  I MEAN, SHE IS BASICALLY SAYING

13  THAT YOU AREN'T INVOLVED IN THIS.

14         MR. JOHNSON:  CORRECT.  AND I WAS UNDER THE

15  DIRECTION OF THE DEFENDANT THAT THEY REMOVED ME FROM THE

16  LOAN WITH THE INSTRUCTIONS FROM OLD REPUBLIC TITLE --

17  THAT'S DATED EXHIBIT A IN MY OPPOSITION.  AS YOU CAN

18  SEE, THE OLD REPUBLIC TITLE INSTRUCTIONS ARE DATED

19  MAY 5TH, 2005; THAT WAS THE DATE OF CLOSING, AND THAT'S

20  WHEN THEY REMOVED ME FROM TITLE ON THE HOME.

21         I -- EVEN ON THEIR PRELIMINARY TITLE REPORT

22  FROM OLD REPUBLIC TITLE, THEY STILL HAVE ME ON TITLE.

23  AND THAT'S EXHIBIT -- THAT IS EXHIBIT NUMBER -- I'M

24  SORRY -- NO. B.  THAT'S EXHIBIT B.

25         IF YOU TURN TO THE PRELIMINARY TITLE REPORT,

5

0

1  YOU WILL SEE THAT I AM ON THE TITLE WITH MY WIFE AS

2  JOINT TENANTS, AND THAT'S IN THE CLOSING INSTRUCTIONS.

3         AND THEN IF YOU TURN TO THE PAGE OF THE

4  BORROWER'S CLOSING CONDITIONS IN ORDER TO CLOSE, THEY

5  STATE FIVE CONDITIONS THAT THEY WOULD LIKE TO HAVE MET

6  PRIOR TO CLOSING.  AND THE LAST ITEM ON THAT -- THIS IS

7  EXHIBIT -- I THINK I'M ON EXHIBIT B.  YES, EXHIBIT B.

8  THE CONDITIONS TO BE MET PRIOR TO CLOSING, THE CERTIFIED

9  COPY OF THE QUITCLAIM DEED, WHICH THEY HAD INSTRUCTED TO

10  HAVE ME REMOVED.  AND THEN IT DIDN'T MAKE ANY SENSE TO

11  ME AT THE TIME, BUT AFTER GOING OVER ALL THE DOCUMENTS

12  AND GOING THROUGH THIS ENTIRE FINANCIAL SITUATION, I

1STFED-T
13  REALIZED -- BECAUSE I READ FOUR LINES ABOVE THAT AND IT
14  SAYS OUR "LOAN PRICE UP 10 BB POINTS FOR LTV 70
15  PERCENT," BECAUSE OUR INCOME RATIO TO THE DEBT THAT WE
16  HAD WAS JUST TOO GREAT SO THEY HAD TO TAKE MY UNSECURED
17  DEBT OFF THE LOAN IN ORDER TO -- I MEAN, TO QUALIFY US,
18  AND THAT'S ONE REASON WHY THEY DID IT.

19              AND THE OTHER THING IS --

20              THE COURT:  THEY THOUGHT THAT HAVING YOU OFF
21  WOULD MAKE HER MORE ELIGIBLE?

22              MR. JOHNSON:  WELL, IT WOULD JUST -- OUR
23  UNSECURED DEBT WAS TOO MUCH AND THEY HAD TO TAKE MY
24  UNSECURED DEBT OFF.  THEY HAD TO CONVERT HER UNSECURED
25  DEBT, FORTY-EIGHT THOUSAND, AND THEN THEY COULD PUT

0                                                          6


1  IT -- BECAUSE -- THIS IS FROM THE UNDERWRITER NOW -- AND
2  THE UNDERWRITER THEN COULD PUT THE LOAN THROUGH --
3  BECAUSE I'M SURE THEY HAVE SOME TYPE OF REGULATORS ABOVE
4  THAT UNDERWRITER THAT HE WOULD PROBABLY OVERSEE IT AND
5  SAY, "OKAY, WE CAN MAKE THIS LOAN"; BUT THEY LEFT MY
6  INCOME ON.

7              AND INITIALLY WHEN WE SAW THAT, BECAUSE THAT
8  WAS ON -- IF YOU LOOK AT THE OLD REPUBLIC TITLE, WHEN
9  THEY PREPARED THAT DOCUMENT, IT'S MAY 5TH, THAT'S THE
10  DAY THAT WE SIGNED AND CLOSED ESCROW.  AND THEY HAD
11  ALREADY SAID THAT THEY WANTED ME TO SIGN FOR HER --
12  BECAUSE SHE WAS IN TEXAS WITH MY DAUGHTER -- AND SO,
13  THEREFORE, I WAS GOING TO SIGN THIS POWER OF ATTORNEY
14  FOR HER.  AND THEN ONCE WE SAW THAT -- AND I SIGNED THAT
15  DAY.

1STFED-T

16          AND THEN IF YOU LOOK AT MY -- THE DOCUMENTS

17  THEY ADDED, AND I DO HAVE ALL THE RESCISSION DOCUMENTS,

18  WE IMMEDIATELY RESCINDED THE LOAN BECAUSE I SAID,

19  "THAT'S NOT RIGHT.  YOU REMOVED ME FROM THE LOAN."

20          THEY SAID "NO, NO," AND THEN THEY CALLED ME A

21  FEW DAYS LATER.

22          THE COURT:  YOU MEAN THEY REMOVED HALF OF

23  YOU; THEY REMOVED YOUR DEBT AND LEFT YOUR INCOME?

24          MR. JOHNSON:  RIGHT.  CORRECT, THEY REMOVED MY

25  DEBT AND LEFT THE INCOME.

7

1          BUT THEN WHEN I SIGNED THE CLOSING

2  DOCUMENTS -- AND I CALLED MY WIFE AND SAID, "I DON'T

3  THINK THIS IS RIGHT."  AND SO I RESCINDED THE LOAN AS

4  HER POWER OF ATTORNEY.  I RESCINDED THE LOAN.

5          THEY SUBMITTED A DOCUMENT IN THEIR RESPONSE TO

6  MY RESPONSE SHOWING THE RESCISSION.  THEY ARE NOT

7  SHOWING ALL OF THE COMMUNICATIONS.

8          IF I MAY?  I DON'T KNOW IF IT'S PROPER, BUT

9  I CREATED AN EXHIBIT H THAT SHOWS ALL OF THE

10  COMMUNICATIONS AFTER I RESCINDED THE LOAN FOR DEBORAH

11  JOHNSON AS HER POWER OF ATTORNEY, ALL OF THE

12  COMMUNICATION WITH ME AND THE UNDERWRITER WITH FIRST

13  FEDERAL.

14          AND THEN, LIKE I SAID, THEY CALLED ME AND

15  SAID, "LISTEN, NO, THIS IS SOMETHING THAT WE ALWAYS DO.

16  WE TAKE -- WE WILL USE A HOUSEHOLD INCOME.  WE WILL JUST

17  TAKE THE HOUSEHOLD INCOME AND THEN THE BETTER -- PERSON

18  WITH THE BETTER CREDIT, WE WILL GO WITH THAT."

1STFED-T
19      AND THAT'S THE WAY THEY EXPLAINED IT TO ME
20 THEN, SO THEN I VOIDED THE RESCISSION.

21      AND LIKE I SAID, I HAVE EXHIBIT H IF YOU WOULD
22 LIKE COPIES OF THAT.  I DON'T KNOW IF IT'S PROPER TO --
23 SINCE THEY ARE NOT HERE -- THEY HAVEN'T HAD A CHANCE TO
24 REVIEW ALL OF MY COMMUNICATIONS CONCERNING THAT.

25      BUT ANYWAY, THE BOTTOM LINE IS WE RESCINDED

8

0

1 THE LOAN, AND THEN IT WENT THROUGH.  THE LOAN CLOSED.
2      NOW -- BUT GOING BACK TO THE PRELIMINARY TITLE
3 REPORT, IT'S A CLEAR VIOLATION THAT EVEN IF THEY WERE
4 GOING TO PUT ME IN A POSITION OF JUST BEING PUT ON
5 TITLE, THEIR APPLICATION SHOWS FOR THE CLOSING DOCUMENT
6 THAT I AM -- I HAVE INTEREST ON THE PROPERTY.  AND
7 OBVIOUSLY, THE PRELIMINARY TITLE REPORT DEFINITELY SHOWS
8 IT.  SO THEY SHOULD HAVE AT LEAST GIVEN ME ALL OF THE
9 DISCLOSURES AND THE RIGHT TO RESCIND PER 12 CFR 226.23.
10 I THINK I AM SAYING THAT RIGHT, BUT I WILL LOOK THROUGH
11 MY NOTES TO MAKE SURE I AM RIGHT ABOUT THAT.

12      BUT IF YOU GO TO THE APPLICATION THAT'S
13 INCLUDED ON THE CLOSING -- LET'S SEE, WHERE ARE WE?
14 I'M SORRY.  I HAVE THAT AS EXHIBIT NUMBER -- I'M SORRY.
15 I HAVE THAT UNDER EXHIBIT -- I'M SORRY ABOUT THAT.
16 EXHIBIT D.  EXHIBIT D, IT SHOWS TITLE WILL BE HELD IN
17 WHAT NAMES, AND THEN IT HAS "DEBORAH E. JOHNSON" AND
18 "GERALD D. JOHNSON."  SO THEY SHOW ME ON TITLE.

19      SO THEY SHOULD HAVE GIVEN ME THE RIGHT TO
20 RESCIND, AND THEY DIDN'T PROVIDE ME WITH THAT.  THEY DID
21 NOT PROVIDE ME WITH THE OTHER MATERIAL DISCLOSURES THAT

Page 8

1STFED-T
22   I SHOULD HAVE SIGNED; SO THAT'S A VIOLATION IN ITSELF.

23        BUT NOW GOING BACK TO THE OTHER, THAT'S

24   MORTGAGE FRAUD.   IT'S CLEAR MORTGAGE FRAUD.   AND IT'S

25   COMING FROM THE LENDER, IT'S NOT COMING FROM -- NOT

9

1   COMING FROM ME AND NOT COMING FROM THE MORTGAGE BROKER.

2   AND THAT'S MY ANSWER TO THAT, ME NOT BEING ON TITLE.   I

3   MEAN, I'M CLEARLY ON THE PRELIMINARY TITLE REPORT OF THE

4   CLOSING DOCUMENTS, THE APPLICATION, SO THEREFORE I AM A

5   PART OF THE CONTRACT.   AND THEY DID NOT PROVIDE ME WITH

6   ANY MATERIAL DISCLOSURES.

7        NOW, THAT WOULD GO TO THE FACT THAT AT THIS

8   TIME WE STILL ARE UNDER THE THREE-YEAR STATUTE OF

9   LIMITATIONS FOR THAT, AND I STILL SHOULD HAVE A RIGHT TO

10  RESCIND AT THIS TIME.

11        THE COURT:   OKAY.   HANG ON.

12        DO YOU WANT TO RESPOND TO HIM?   HOPEFULLY, YOU

13  HEARD HIM.

14        MS. COX:   I DID, YOUR HONOR.   I WOULD LIKE TO

15  RESPOND.

16        THE COURT:   HE FEELS LIKE HE IS HALF IN AND

17  HALF OUT, THE WAY YOU HANDLED IT.

18        MS. COX:   AT THE END OF THE DAY, YOUR HONOR,

19  WHETHER HE IS ON TITLE OR NOT IS NOT RELEVANT TO THE

20  ISSUE BECAUSE THE LOAN WAS NOT MADE TO MR. JOHNSON; THE

21  LOAN WAS MADE TO MRS. JOHNSON.

22        THE FACT OF THE MATTER IS, IS THAT HE THE

23  TITLE OF THE PROPERTY TO MRS. JOHNSON.   SHE IS THE SOLE

24  PERSON ON THE LOAN AND ON THE CONTRACT.   SHE IS THE SOLE

1STFED-T
25  PERSON ON TITLE UP UNTIL THE TIME OF THE FORECLOSURE

10

1  SALE -- HAPPENED ON FEBRUARY 8, 2008 -- AT WHICH POINT

2  THE BANK IS NOW ON TITLE.

3          AND SO I BELIEVE THAT THE STATUTE -- BECAUSE

4  THE PROPERTY HAS BEEN SOLD -- THE THREE-YEAR STATUTE OF

5  LIMITATIONS WITH THE RIGHT TO RESCIND HAS EXPIRED,

6  BECAUSE UNDER SECTION -- I BELIEVE IT'S -- IT'S 1535(F),

7  THE RIGHT TO RESCIND IS THREE YEARS FROM THE CLOSING OF

8  THE TRANSACTION, WHICH WAS MAY 5TH, 2005, OR ON THE SALE

9  OF THE PROPERTY, WHICHEVER OCCURS FIRST.  AND THE

10  PROPERTY WAS SOLD IN THE NON-JUDICIAL FORECLOSURE ON

11  FEBRUARY 8, 2008.

12          MR. JOHNSON:  NO, IT WAS NOT.

13          MS. COX:  WERE YOU ABLE TO HEAR THAT, YOUR

14  HONOR?

15          THE COURT:  YES.  AND HE -- GO AHEAD.

16          HE SAYS THAT'S NOT TRUE.  DID YOU HEAR HIM?

17          MR. JOHNSON:  I DID HEAR HIM, YOUR HONOR.

18          THE COURT:  OKAY.  SO MR. JOHNSON, WHY DON'T

19  YOU THINK THAT'S TRUE?

20          MR. JOHNSON:  THAT WASN'T TRUE THAT THEY HAD

21  SOLD -- BECAUSE I DID FAX EVEN THEIR TDS, THE COMPANY

22  THAT WAS HANDLING IT, THAT IT WAS IN LITIGATION.  SO

23  THEY SOLD IT EVEN KNOWING THAT THE PROPERTY IS IN

24  LITIGATION.

25          HOW DO YOU SELL A PROPERTY THAT IS IN

11

1STFED-T

1  LITIGATION?

2        IF TDS SOLD, THEN THEY HAVE OBVIOUSLY IGNORED
3  THE COURT BECAUSE THEY KNEW THE PROPERTY WAS IN
4  LITIGATION BECAUSE I FAXED THEM; THEY HAD CONFIRMATION
5  TO THAT.

6        THE COURT:  THE STATUS OF THE RESIDENCE IS
7  THAT IT'S BEEN FORECLOSED ON?  WHAT'S THE STATUS?

8        MR. JOHNSON:  THE STATUS RIGHT NOW IS IT
9  SHOULD BE MY NAME UNLESS THEY SOLD IT, LIKE SHE IS
10 SAYING.

11        THE COURT:  WHAT'S THE STATUS OF IT, COUNSEL?

12        MS. COX:  YOUR HONOR, IT'S MY UNDERSTANDING
13 THAT THERE WAS A MOTION FOR RELIEF FROM AUTOMATIC
14 STAY -- THAT WAS HEARD IN THE BANKRUPTCY COURT FEBRUARY
15 5TH, 2008.  MR. AND MRS. JOHNSON APPEARED AT THAT
16 HEARING.

17        THE AUTOMATIC STAY WAS HELD NOT TO BE IN
18 EFFECT BECAUSE THE BANKRUPTCY HAD BEEN DISMISSED ON
19 JANUARY 4TH, I BELIEVE, 2008, AND SO THE BANK PROCEEDED
20 WITH THE NON-JUDICIAL FORECLOSURE, AND THE TRUST DEED
21 SALE WAS COMPLETED ON FEBRUARY 8, 2008.

22        THE COURT:  SO IT WAS FORECLOSED UPON AND HAS
23 SINCE BEEN SOLD?

24        MS. COX:  IT'S IN -- THE TITLE IS NOW IN THE
25 NAME OF THE BANK, BANK-OWNED.

                                                        12

1        THE COURT:  OKAY.  SO THE TITLE IS IN THE NAME
2  OF THE BANK.

1STFED-T

3          THAT'S HOW YOU UNDERSTAND IT; RIGHT,

4    MR. JOHNSON?

5          MR. JOHNSON:  NO, THAT'S NOT HOW I UNDERSTAND.

6    BUT IF SHE IS SAYING THEY HAVE DONE SOMETHING LIKE THAT

7    NOW, WHO BOUGHT IT?  DID SHE PUT IT UP FOR AUCTION?  HOW

8    DID SHE SELL IT?  OR DID SHE JUST QUITCLAIM IT TO

9    HERSELF?

10         YOUR HONOR, THERE WAS A TRUST DEED SALE.

11   NOBODY BID AT THE TRUST DEED SALE, SO THE BANK OWNS THE

12   PROPERTY.

13         THE COURT:  SO THE BANK OWNS THE PROPERTY.

14   BANKS ARE OWNING A LOT OF PROPERTY THESE DAYS.

15         MR. JOHNSON:  THAT'S WHY I'M TRYING TO GET

16   SOME HELP FROM THE STATE ON THIS.  SO I FILED A

17   COMPLAINT WITH THE OFFICE OF THRIFT SUPERVISION AND

18   WITH THE STATE ATTORNEY GENERAL ABOUT THIS BECAUSE I

19   FILED BOTH COMPLAINTS.  I HAVE COPIES TO THAT EFFECT IF

20   YOU WOULD LIKE TO SEE IT, BECAUSE THERE IS CLEAR

21   FINANCIAL -- FINANCIAL INSTITUTION FRAUD AND MORTGAGE

22   FRAUD IN THIS DOCUMENTATION.

23         SO IF THEY HAVE DONE THAT -- I MEAN, I AM GLAD

24   THEY ARE STILL HOLDING IT BECAUSE YOU CAN PROBABLY

25   REVERSE THAT.  IF I CAN -- NOT YOU.  NOT "YOU."

13

0

1          THE COURT:  I DON'T NEED ANOTHER HOME,

2    ACTUALLY.

3          SO IS THERE ANYTHING ELSE?

4          MR. JOHNSON:  AND THE THING IS -- AND THE

5    THING IS HOW CAN SHE TAKE POSSESSION OF -- AND SHE KNOWS

1STFED-T

6  IT.  THE BANK KNEW WE WERE DEALING WITH THIS.  YOU WOULD

7  THINK THEY WOULD SAY, "OKAY, THE PROPERTY IS IN

8  LITIGATION."  AND ANYBODY THEY ARE GOING TO TRANSFER IT

9  TO, THEY WOULD HAVE TO NOTIFY THEM THAT THE PROPERTY IS

10  IN LITIGATION.  MOST PEOPLE ARE NOT GOING TO BUY A

11  PROPERTY THAT'S IN LITIGATION.

12        THE COURT:  I GET THE IMPRESSION FROM THE

13  PAPERS THAT MS. JOHNSON IS SEEKING DAMAGES, AND IT SEEMS

14  TO ME THAT THERE'S A PROBLEM WITH THAT.

15        COUNSEL, YOU WANT TO TALK ABOUT THAT?

16        MS. COX:  YES, YOUR HONOR.

17        IN CONNECTION WITH MS. JOHNSON, ORIGINALLY WE

18  HAD BROUGHT AN ARGUMENT THAT HER DAMAGES CLAIM WAS THE

19  PROPERTY OF THE BANKRUPTCY TRUSTEE, AND WE WILL WITHDRAW

20  THAT CLAIM BECAUSE THE BANKRUPTCY HAS BEEN DISMISSED AND

21  CLOSED.

22        HOWEVER, BECAUSE SHE IS SEEKING DAMAGES, THE

23  STATUTE OF LIMITATIONS THAT ARE IN SECTION 1640(E) WHICH

24  PROVIDES THAT THE STATUTE OF LIMITATIONS RUN FROM THE

25  DATE A LOAN CLOSES FOR ONE YEAR BARS MS. JOHNSON'S CLAIM

14

□

1  BECAUSE THE LOAN CLOSED IN MAY OF 2005, AND THE CLAIM

2  FOR DAMAGES WOULD HAVE TO HAVE BEEN BROUGHT BEFORE MAY

3  5TH OF 2006.

4        IN ADDITION, YOUR HONOR --

5        MR. JOHNSON:  UNLESS IT'S --

6        THE COURT:  WAIT A MINUTE.

7        MS. COX:  BECAUSE THE PLAINTIFF RAISED A

8  NUMBER OF ADDITIONAL STATUTES, CRIMINAL STATUTES, RICO

1STFED-T

9   VIOLATIONS IN THEIR OPPOSITION, WE PROVIDED THE TRUTH IN

10  LENDING DISCLOSURE STATEMENTS THAT WERE PROVIDED AT

11  CLOSING TO THE COURT IN CONNECTION WITH OUR REPLY BRIEF.

12  AND, HOPEFULLY, THE COURT CAN SEE THAT THERE WERE NO

13  TRUTH IN LENDING VIOLATIONS.  AND SO THE MOTION TO

14  DISMISS SHOULD BE GRANTED ON THAT BASIS AS WELL.

15          THE COURT:  IT'S HARD FOR ME TO TELL WHAT

16  MS. JOHNSON IS SEEKING.  WHAT IS SHE SEEKING?

17          YOU APPARENTLY ARE HER SPOKESPERSON.  YOU

18  REALLY CAN'T DO THAT.

19          MR. JOHNSON:  WE ARE MARRIED.  WE ARE MARRIED.

20          THE COURT:  NO, I KNOW.  BUT THAT DOESN'T MEAN

21  YOU ARE EACH OTHER'S SPOKESPERSON.

22          SO WHAT ARE YOU LOOKING FOR AT THIS POINT,

23  MS. JOHNSON?

24          MRS. JOHNSON:  I DON'T EVEN KNOW.

25          MR. JOHNSON:  TO BE RESTORED.  TO BE RESTORED

1   BECAUSE WE KNEW WE WERE VICTIMS OF FRAUD.

2           THE COURT:  BEING "RESTORED" MEANS YOU WANT

3   YOUR HOUSE BACK?

4           MR. JOHNSON:  I WANT MY HOUSE BACK, AND I

5   WOULD LIKE DAMAGES BECAUSE WE HAVE HAD TO FILE

6   BANKRUPTCY.  WE HAVE EXHAUSTED ALL OF OUR RESERVES.

7           I SHOULD HAVE AN ATTORNEY HERE INSTEAD OF ME

8   BEING HERE REPRESENTING MYSELF.  AND THE ONLY REASON WE

9   WERE PUT IN THIS, WE WERE PUT IN THIS BECAUSE OF THE

10  PREDATORY LENDING, WHICH LED TO MORTGAGE FRAUD.  BECAUSE

11  THEY COULDN'T EVEN GET IT ACCOMPLISHED WITH THE

1STFED-T

12    PREDATORY LENDING, THEY HAD TO GO INTO FRAUD.

13          I MEAN, WHEN YOU TAKE SOMEBODY OFF A LOAN

14    BECAUSE YOU WANT TO REMOVE THEIR DEBT, AND -- IF YOU

15    LOOK AT THE DEFINITION OF "MORTGAGE FRAUD" FROM THE

16    MORTGAGE BANKERS ASSOCIATION, IT'S CLEAR:  WHEN YOU

17    MISREPRESENT OR OMIT SOMETHING, THAT'S MORTGAGE FRAUD.

18    I MEAN, AND THERE ARE CLEAR -- CRIMINAL PUNISHMENTS FOR

19    THAT.  YOU JUST CAN'T DO THAT AND EXPECT, "OKAY.  WELL,

20    WE CAN JUST TAKE YOUR PROPERTY BECAUSE OF THAT."  AND

21    THAT'S WHAT THEY HAVE JUST DONE.

22          NOW, IF SHE IS SAYING NOW, "WE HAVE TAKEN YOUR

23    PROPERTY AND TRANSFERRED IT TO OURSELVES NOW, AND WE ARE

24    GETTING READY TO SELL IT --"

25          THE COURT:  OR "TRYING," I GUESS.

16

1          MR. JOHNSON:  WELL, YEAH.  BECAUSE THEY

2    COULDN'T -- THEY KNOW THEY COULDN'T SELL IT AT AN

3    AUCTION BECAUSE ANYBODY, YOU KNOW, WITH ANY SENSE, THEY

4    HAVE TO KNOW IT'S STILL IN LITIGATION.  THEY ARE NOT

5    GOING TO WANT TO JUMP INTO THAT MIX.

6          THE COURT:  COUNSEL, THERE'S SOME ROOM FOR A

7    QUESTION IN MY MIND AS TO WHETHER MS. JOHNSON IS SEEKING

8    RESCISSION.  CAN SHE SEEK RESCISSION?  WHAT'S THE

9    SITUATION WITH THAT?  I MEAN, IT'S HARD WITH A PRO PER

10    COMPLAINANT TO SORT OF PLOW THROUGH IT.  BUT IT SEEMS

11    TO ME THERE IS SOME POSSIBILITY THAT WHAT SHE IS SEEKING

12    IS RESCISSION.

13          CAN YOU ADDRESS THAT?

14          MS. COX:  YOUR HONOR, I CAN.

Page 15

1STFED-T

15       I BELIEVE THAT, YOU KNOW, ANY RIGHTS THAT SHE
16  MIGHT HAVE HAD TO RESCISSION, WHATEVER, RUN THREE YEARS
17  FROM THE DATE OF CLOSING, WHICH WOULD HAVE BEEN MAY OF
18  2008; HOWEVER, BECAUSE OF THE TRUSTEE'S SALE, I BELIEVE
19  THAT HER RIGHT OF RESCISSION HAS BEEN EXTINGUISHED BY
20  1635(F) -- BECAUSE THE PROPERTY HAS ALREADY BEEN SOLD,
21  AND IT'S IN THE NAME OF THE BANK.
22       MR. JOHNSON:  COULD I ANSWER THAT?
23       THE COURT:  GO AHEAD.
24       MR. JOHNSON:  1635(F), IT ALSO STATES THAT
25  IF YOU ARE USING THE FORECLOSURE AS YOUR REMEDY, YOU

17

1  CAN'T -- I MEAN, HOW CAN YOU TRANSFER IT?  YOU ARE
2  TRANSFERRING IT -- AND WE EXPLAINED TO YOU THAT'S WHAT
3  ONE OF THE VIOLATIONS WERE; AND YOU TRANSFERRED THE
4  PROPERTY ANYWAY.  SO THE TRANSFER IS IMPROPER, AND
5  THAT'S A VIOLATION BECAUSE YOU ARE TAKING THE PROPERTY.
6  YOU ARE ILLEGALLY TAKING PROPERTY.
7       MS. COX:  YOUR HONOR, IF I MAY?
8       IF MS. JOHNSON DOES OCCUPY THE RIGHT TO
9  RESCISSION, SHE WOULD HAVE TO UNDO THE LOAN TRANSACTION
10  AND WOULD HAVE TO PAY BACK THE BALANCE THAT THEY
11  RECEIVED ON THE LOAN.  AND, YOU KNOW, I'M NOT SURE THAT
12  THAT'S WHAT THEY ARE LOOKING TO DO.
13       THE COURT:  "RESCISSION" MEANS THAT YOU UNDO
14  THE WHOLE DEAL.
15       MR. JOHNSON:  RIGHT.  I UNDERSTAND.  AND
16  THAT'S WHY I WOULD BE THE ONE THAT WOULD HAVE THE
17  RESCISSION BECAUSE YOU DIDN'T -- IF THEY ILLEGALLY
                          Page 16

1STFED-T

18   TRANSFERRED THE PROPERTY AS OF FEBRUARY 8, WHICH IS WHAT

19   SHE IS SAYING; SHE IS SAYING SHE WENT IMMEDIATELY FROM

20   THE COURT AND SHE TRANSFERRED IT TO HERSELF --

21           MS. COX:  WELL, NOT "MYSELF."

22           MR. JOHNSON:  WELL, THE BANK, FIRST FEDERAL;

23   YOUR CLIENT.

24           MS. COX:  RIGHT.

25           MR. JOHNSON:  YOUR CLIENT TRANSFERRED IT TO

                                                            18

☐

1   THEMSELVES IMMEDIATELY AFTER, KNOWING THAT WE HAD FILED

2   THIS SUIT.  THAT WAS ILLEGAL.  THAT -- YOU ARE IGNORING

3   THE COURT COMPLETELY.

4           MS. COX:  AND I DISAGREE WITH THAT.

5           MR. JOHNSON:  I MEAN, LIKE I SAID, I'M NOT A

6   LEGAL -- OBVIOUSLY, I'M NOT A LEGAL EXPERT, BUT THEY ARE

7   IGNORING THE COURT COMPLETELY BECAUSE IT WAS FILED.

8   THEY WERE SERVED PRIOR TO THAT TRANSFER AND THEY HAD A

9   CHANCE TO LOOK AT IT.  AND THEY SHOULD HAVE SAID, "WELL,

10   LISTEN, AT LEAST WAIT UNTIL THIS PANS OUT AND THEN LET'S

11   TRANSFER IT."

12           BECAUSE IF YOU ARE GOING TO DISMISS, I MEAN,

13   IF YOU ARE GOING TO -- BUT YOU ARE DISMISSING IT NOW

14   BECAUSE YOU ARE THINKING THAT IT HAS BEEN TRANSFERRED.

15   AND IT'S NOT LIKE THEY WERE UNAWARE OF THE LAWSUIT.

16           THE COURT:  YOU WANT TO RESPOND TO THAT?

17           MS. COX:  YOUR HONOR, I AM LOOKING AT THE

18   COMPLAINT RIGHT NOW.  I'M LOOKING AT THE PRAYER FOR

19   RELIEF THAT WHAT THEY ARE LOOKING FOR IS IN THE FORM OF

20   MONETARY COMPENSATION FOR DAMAGES SUFFERED:  ALLOW

                          Page 17

1STFED-T

21  PLAINTIFFS TO SELL OR REFINANCE THEIR PRIMARY RESIDENCE

22  WITHOUT FORECLOSURE, AND FURTHER DAMAGES, AND DEMAND

23  CREDIT RELIEF.

24          MY UNDERSTANDING OF THE COMPLAINT, WHEN IT WAS

25  BROUGHT, WAS THAT THEY WERE LOOKING FOR DAMAGES.

19

1          MR. JOHNSON:  I THINK WE DO MENTION STOPPING

2  THE FORECLOSURE OR REFINANCING.

3          MS. COX:  AND, YOUR HONOR, IF THEY WERE GOING

4  TO TRY TO STOP THE FORECLOSURE, PREVENT THE FORECLOSURE,

5  THEY WOULD HAVE HAD TO HAVE -- BRING SOME KIND OF

6  INJUNCTION OR REQUEST FOR A RESTRAINING ORDER.  BECAUSE

7  THEY WERE WELL AWARE BECAUSE OF THE BANKRUPTCY HEARING

8  AND WHAT HAPPENED ON FEBRUARY 5TH, THAT THE BANK WAS

9  SEEKING RELIEF FROM STAYING TO COMMENCE THAT

10  FORECLOSURE.

11          THE COURT:  AND THAT'S COMPLETED AT THIS

12  POINT?

13          MS. COX:  AND IT HAS BEEN COMPLETED, YES.

14          MR. JOHNSON:  AND WE HAD FILED PRIOR TO THAT.

15          THE COURT:  SO, RIGHT NOW, IT'S IN THE -- IT'S

16  THE BANK THAT OWNS THE PROPERTY?

17          MR. JOHNSON:  THAT'S NOT THE WAY I SEE IT.

18          MRS. JOHNSON:  YOU FILED THE (INAUDIBLE) --

19          MR. JOHNSON:  I FILED THE LAWSUIT HERE STATING

20  THAT WE HAD BEEN VIOLATED.

21          WELL, LET ME AS YOU THIS:  IF I FILE A SUIT

22  HERE -- IF I FILE A SUIT HERE --

23          THE COURT:  I'M NOT GOING TO ANSWER YOUR

Page 18

1STFED-T

24  QUESTIONS.

25              MR. JOHNSON:  OKAY.  YOU ARE NOT GOING TO

20

☐

1  ANSWER MY QUESTIONS.

2              THE COURT:  NO.

3              MR. JOHNSON:  WELL, THE THING IS I FILED A

4  SUIT HERE PRIOR TO THAT TRANSFER THAT SHE IS

5  MENTIONING -- OKAY? -- AND THEY TRANSFERRED IT TO

6  THEMSELVES.  IF YOU CREATED A FRAUDULENT CONTRACT AND

7  YOU TRANSFER IT TO YOURSELF -- I MEAN, IT'S BASED ON

8  FRAUD.  I MEAN, THE WHOLE THING IS BASED ON FRAUD.

9              I MEAN, HOW DO YOU TRANSFER SOMETHING THAT YOU

10  ILLEGALLY OBTAINED?  I MEAN, THE BEGINNING OF IT IS

11  ILLEGAL.  AND TECHNICALLY IT'S NULL AND VOID, REALLY,

12  WITH THE WAY THEY DID IT BECAUSE THEIR BANK WOULD NOT

13  HAVE LOANED -- HAD THEY KNOWN THE AMOUNT OF DEBT I HAD,

14  THEY WOULD NOT HAVE LOANED ON THAT.

15              THE COURT:  SO THEY SPLIT THE INFORMATION.

16  THEY DIDN'T WANT TO KNOW HOW MUCH YOU OWED; THEY ONLY

17  WANT TO KNOW HOW MUCH YOU EARNED.

18              MR. JOHNSON:  THAT'S RIGHT.  THEY DIRECTED OLD

19  REPUBLIC TITLE TO TAKE ME OFF, AND THAT'S WHAT THAT

20  LETTER CLEARLY SHOWS THEY WERE DIRECTED TO DO.

21              MS. COX:  YOUR HONOR -- YOU KNOW, THERE HAVE

22  BEEN A LOT OF ACCUSATIONS MADE BY MR. JOHNSON THAT THE

23  BANK HAD COMMITTED FRAUD IN CONNECTION WITH THE

24  TRANSACTION.  FOR THE RECORD, I JUST WANT TO SAY THAT WE

25  COMPLETELY DISAGREE WITH THAT ALLEGATION.  AND, YOU

Page 19

1STFED-T

□

1  KNOW, IT WAS MR. JOHNSON AS MRS. JOHNSON'S ATTORNEY IN

2  FACT THAT SIGNED THAT APPLICATION AND HAD UNDER PENALTY

3  OF PERJURY THE AMOUNT OF INCOME THAT MRS. JOHNSON WAS

4  REPORTING; IT WAS $27,500.

5         AND IN THE OPPOSITION, MR. JOHNSON SAYS THAT

6  HIS INCOME FOR THAT YEAR WAS A $155,000.  AND, YOU KNOW,

7  DOING THE MATH, THAT DOESN'T EXACTLY COME TO $27,500 A

8  MONTH [SIC].  SO, YOU KNOW, I AM CONCERNED ABOUT THE

9  ALLEGATIONS OF FRAUD, BUT I WOULD RESPECTFULLY SUBMIT

10 THAT, YOU KNOW, THAT IT WAS THE BORROWERS THAT PURCHASED

11 AND CREATED FRAUD BY MISREPRESENTING THE AMOUNT OF

12 INCOME, WHICH IS IN FACT WHAT THEY DID.

13         MR. JOHNSON:  CAN I ANSWER THAT?

14         THE COURT:  I'M NOT SURE YOU WANT TO ANSWER

15 THAT.

16         MR. JOHNSON:  I DO.  I DO.  I DO.

17         I DID NOT MISSTATE MY INCOME.  I DID NOT

18 MISSTATE IT.  THEY FILLED OUT THAT APPLICATION; I DID

19 NOT DO IT.  THEY WANTED TO MAKE IT WORK.

20         THE COURT:  DID YOU SIGN THE APPLICATION?

21         MR. JOHNSON:  NOT THE ONE THAT I AM HOLDING

22 HERE.  THE DOCUMENT I'M HOLDING HERE THAT YOU HAVE, THAT

23 EXHIBIT, IT'S NOT INITIALED.  IT MIGHT BE INITIALED ON

24 THE DOCUMENTS BECAUSE WHEN I SIGNED THOSE ESCROW

25 INSTRUCTIONS, WE DID IT AT A RESTAURANT -- I DID IT AT A

□                                                22

1STFED-T

1  RESTAURANT -- AND THEY TOOK THE COPIES THAT WERE SIGNED;

2  AND THAT'S WHERE IT COMES IN -- OLD REPUBLIC TITLE COMES

3  INTO PLAY HERE.

4          UNTIL YOU PULLED AN IMPARTIAL THIRD PARTY --

5  WHICH IS THE OLD REPUBLIC TITLE'S RECORDS ON THIS

6  TRANSACTION -- I KNOW YOU ARE GOING TO FIND

7  IRREGULARITIES THERE, AND IT'S GOING TO COME FROM THE

8  UNDERWRITER AT FIRST FEDERAL BANK OF CALIFORNIA.

9          AND IF A PERSON COMMITS FRAUD, THERE'S NO WAY

10 YOU CAN TAKE A PROPERTY IF THE CONTRACT IS FRAUD.  AND

11 IF THEY CAN PROVE THAT I -- I SHOULD BE IN HERE WITH AN

12 ORANGE SUIT JUST LIKE THE GUY THAT WALKED OUT; THEN I

13 SHOULD HAVE A PUBLIC DEFENDER.

14         I DID NOT COMMIT FRAUD.  I DID NOT LIE ABOUT

15 MY INCOME TO ANYONE.

16         MS. COX:  YOUR HONOR, IF I MAY?

17         IF WE LOOK AT THE COMPLAINT -- IN GETTING BACK

18 TO THE ALLEGATIONS OF THE COMPLAINT, THE ALLEGATIONS OF

19 THE COMPLAINT WAS THAT THERE WERE VIOLATIONS OF THE

20 TRUTH IN LENDING ACT AND THE HOME OWNERSHIP EQUITY

21 PROTECTION ACT.  WE DEMONSTRATED THROUGH OUR PAPERS THAT

22 THERE WERE NO SUCH VIOLATIONS; THAT MR. JOHNSON LACKED

23 STANDING; AND THAT IN CONNECTION WITH MRS. JOHNSON'S

24 CLAIM, THE CLAIMS ARE BARRED BY THE STATUTE OF

25 LIMITATIONS.

23

1          WE ARE GETTING INTO A LOT OF SPITE ISSUES AND

2  ACCUSATIONS AND ALLEGATIONS THAT SIMPLY WERE NOT MADE IN

3  THE COMPLAINT.

1STFED-T

4            AND ON THAT BASIS, I WOULD REQUEST AGAIN THAT
5   THE COURT DISMISS THE ACTION BECAUSE IT IS NOT AN ACTION
6   OR A MORTGAGE FRAUD.  IT'S NOT ANYTHING OF THAT SORT.
7   IT'S AN ACTION FOR VIOLATIONS OF THE TRUTH IN LENDING
8   ACT AND THE HOME OWNERSHIP EQUITY PROTECTION ACT, AND
9   THOSE VIOLATIONS ARE COMPLETELY WITHOUT MERIT, AS WE
10  HAVE DEMONSTRATED.

11            THE COURT:  YOU WANT TO SUM UP?

12            MR. JOHNSON:  YES, I WOULD LIKE TO SUM UP.

13            YOU KNOW, SHE KEEPS SAYING "ACCUSATIONS."  I'M
14  GIVING YOU DOCUMENTATION THAT I DID NOT PREPARE.  I DID
15  NOT -- I DO NOT WORK FOR OLD REPUBLIC TITLE.  I DON'T
16  WORK FOR THEIR BANK.  THOSE DOCUMENTS ARE NOT PREPARED
17  BY ME.  I DIDN'T DO THE APPLICATION; THE MORTGAGE BROKER
18  DID THAT.

19            SO HOW ARE -- HOW ARE THEY ACCUSATIONS WHEN
20  YOU CAN CLEARLY SEE IT ON THE CONDITIONS TO CLOSE ONE OF
21  THE THINGS WAS TO TAKE ME OFF TITLE?  THAT DID NOT COME
22  FROM ME.  I RESCINDED THE CONTRACT WHEN I SAW THAT
23  BECAUSE I KNEW THAT WAS WRONG.  AND THEN THEY TALKED ME
24  INTO GOING FORWARD WITH THAT TO VOID OUT OR CANCEL THE
25  RESCISSION.  NOW, I HAVE DOCUMENTATION TO THAT.

24

1            I MEAN, WE ARE NOT TALKING ABOUT SOMETHING
2   THAT'S FABRICATED.  I'M NOT ACCUSING ANYONE; I'M JUST
3   SHOWING YOU THE PAPERWORK.  AND ONCE YOU LOOK AT THE
4   PAPERWORK, YOU ARE GOING TO SAY, "THERE'S IRREGULARITIES
5   HERE."

6            THE COURT:  AND I AM GOING TO SIT DOWN AND

                                1STFED-T
7   LOOK; I HAVEN'T SAT DOWN AND LOOKED AT THE PAPERWORK.

8   AND SO WHAT I AM GOING TO DO IS SUBMIT THIS MATTER.

9           IS THERE ANYTHING FURTHER?

10          MS. COX:  NO, YOUR HONOR.

11          THE COURT:  THE MATTER IS SUBMITTED.

12          THANK YOU.

13          MR. JOHNSON:  THANK YOU.

14          MRS. JOHNSON:  THANK YOU.

15          THE COURT:  AND YOU WILL GET A WRITTEN ORDER.

16          MS. COX:  THANK YOU, YOUR HONOR.

17          THE COURT:  YOU'RE WELCOME.

18          (WHEREUPON, THE PROCEEDINGS WERE ADJOURNED.)

19                  ---000---

20

21

22

23

24

25

                                                    25

□

1

2                   CERTIFICATE OF REPORTER

3

4

5           I, JANA L. RIDENOUR, OFFICIAL REPORTER PRO TEM

6   IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

7   DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN

8   JOSE, CALIFORNIA, DO HEREBY CERTIFY:

9           THAT THE FOREGOING TRANSCRIPT IS A FULL, TRUE

                        Page 23

1STFED-T

10 AND CORRECT TRANSCRIPT OF THE PROCEEDINGS HAD IN DEBORAH

11 E. JOHNSON AND GERALD D. JOHNSON V. FIRST FEDERAL BANK

12 OF CALIFORNIA, CASE NO. C 08-00264-PVT, HELD ON MARCH 4,

13 2008; THAT I REPORTED THE SAME IN STENOTYPE AND

14 TRANSCRIBED THE SAME BY COMPUTER-AIDED TRANSCRIPTION TO

15 THE BEST OF MY ABILITY AS HEREIN APPEARS.

16          DATED THIS   24TH   DAY OF MARCH, 2008.

17

18

19

20

21                    JANA L. RIDENOUR, CSR
                      OFFICIAL REPORTER PRO TEM
22                    LICENSE NUMBER C-9302

23

24

25

□                                                        26

Page 24

# EXHIBIT 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DEBORAH E.  JOHNSON AND GERALD D.  JOHNSON, | ) ) ) | Case No.: C 08-00264 PVT |
| Plaintiffs, | ) ) | **ORDER GRANTING DEFENDANT FIRST FEDERAL BANK OF CALIFORNIA'S MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | ) ) | |
| FIRST FEDERAL BANK OF CALIFORNIA, | ) ) ) | |
| Defendant. | ) ) | |

**INTRODUCTION**

Defendant First Federal Bank of California moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Plaintiffs Deborah E.  Johnson and Gerald D.  Johnson oppose the motion.  (collectively "plaintiffs").  On March 4, 2008, the parties appeared for hearing.  Having reviewed the papers and considered the arguments of plaintiffs and defendant's counsel and for the reasons set forth below, defendant's motion to dismiss is granted with leave to amend.[1]

---

[1]    The holding of this court is limited to the facts and particular circumstances underlying the present motion.

ORDER, *page 1*

Dbt f !6;19.dw.113ı5.QWU!!!!!Epdvn f ou27!!!!!!Gjrhe!14Œ21Œ119!!!!!Qbhf !3!pg9

**BACKGROUND**

Plaintiffs Deborah E. Johnson and Gerald D. Johnson are married and have resided at 2nd Avenue 2NE of Dolores Street in Carmel By the Sea, California ("residence"). Plaintiffs estimate the residence has a current market value of approximately $1.3 million.

In or around March 2005, an agent on behalf of defendant First Federal Bank of California ("Bank") contacted plaintiffs and encouraged them to refinance the first mortgage on their residence. Only plaintiff Deborah Johnson qualified for the loan. The loan for an amount totaling $840,000 apparently included onerous terms such as a high pre-payment penalty and high monthly payments (without any payment toward the principal). Plaintiffs believed that the interest rate for the mortgage would remain fixed at 5.7 percent for three years. Escrow closed on May 5, 2005. Based on the actual loan and other accompanying documents, plaintiffs allege that defendant Bank engaged in predatory lending practices knowing that plaintiffs could never meet their obligations under the loan. Plaintiffs have been unable to re-finance the loan and now face foreclosure of their residence.

Plaintiff Deborah Johnson filed an individual chapter 13 bankruptcy petition on November 7, 2007. In the various schedules, the residence was identified as an asset of the estate and the loan from the bank was identified as a liability. Gerald Johnson was not identified as a co-debtor on the loan whatsoever. On January 11, 2008, Deborah Johnson sought to convert her chapter 13 case to a chapter 7 case. On January 16, 2008, defendant Bank filed a motion for relief from the automatic stay to allow the bank to proceed with foreclosure of the residence. The bankruptcy case has since been dismissed as a result of plaintiff Deborah Johnson's failure to provide proper documentation of her current monthly income. As of the petition date, the unpaid principal owed to defendant Bank totals $962,311.64. A second mortgage on the residence held by National City totals $176,407.64. Defendant Bank estimates that encumbrances on the residence exceed its current market value of $1,050,000.

On January 15, 2008, plaintiffs filed a complaint alleging predatory lending violations, including the Truth in Lending Act ("TILA"), 15 USC section 1601 *et seq.* and the Home Ownership and Equity Protection Act ("HOEPA"). Plaintiffs seek an award of damages and/or the opportunity to sell or to re-finance their home to avoid foreclosure and further impact on their credit

Dbt f !6;19.dw 113ⁱ5.QWU!!!!!Epdvn f ou27!!!!!!Gⁱⁱhe!14⌀2103119!!!!!Qbhf !4!pg9

1  ratings.

2       On January 28, 2008, defendant Bank filed a motion to dismiss.  On February 19, 2008,

3  plaintiffs filed their opposition and on February 25, 2008, defendant filed its reply.[2]

4                                    **LEGAL STANDARD**

5       A complaint may be dismissed for failure to state a claim upon which relief can be

6  granted.  Fed. R. Civ. P. 12(b)(6).  The dismissal may be based on either the lack of a cognizable

7  legal theory or the absence of sufficient facts under a cognizable legal theory.  *Balistreri v.*

8  *Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) and *Robertson v. Dean Witter Reynolds,*

9  *Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the

10  allegations in a complaint are taken as true and construed in the light most favorable to the

11  nonmoving party.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

12  1995).  "A complaint should not be dismissed unless a plaintiff could prove no set of facts in

13  support of his claim that would entitle him to relief."  *Id.*  Generally, a motion to dismiss for

14  failure to state a claim is viewed with disfavor and rarely granted.  *Gilligan v. Jamco Develop.*

15  *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

16       However, mere conclusions couched in factual allegations are not sufficient to state a

17  cause of action.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  *See also, McGlinchy v. Shell*

18  *Chem Co.*, 845 F.2d 802, 810 (9th Cir, 1988).  The complaint must aver "[f]actual allegations []

19  enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,*

20  500 U.S. -, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41

21  (1957)).  "[L]eave [to amend] shall be freely given when justice so requires."  Fed. R. Civ. P.

22  15(a).  Additionally, a federal court may liberally construe the "inartful pleading" of parties

23  appearing *pro se. Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980).

24

25

26

27

---

28    [2]       Defendant Bank complains that plaintiffs' opposition was untimely and should
not be considered by the court.  In part, because the plaintiffs are proceeding *pro se* in the action,
the court has considered their opposition to the motion to dismiss.

**DISCUSSION**

**I.    Plaintiff Gerald D. Johnson Lacks Standing to Prosecute the Complaint[3]**

As an initial matter, defendant Bank alleges that Gerald Johnson does not have standing to prosecute the complaint as he was not a party to the loan and is not considered a "consumer" as defined by the applicable statutes.[4]

"'To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Citizens for Better Forestry v. U.S. Dept. of Agriculture,* 341 F.3d 961, 969 (9th Cir. 2003).

In the complaint, plaintiffs allege that only Deborah Johnson qualified for the loan. Additionally, the loan documents state that the only borrower is Deborah E. Johnson.[5] Gerald Johnson only signed certain documents in his capacity "as her attorney in fact." Therefore, the complaint on its face reveals that plaintiff Gerald Johnson lacks the capacity to sue. See, *e.g., De*

---

[3]    In the moving papers, defendant Bank had argued that plaintiff Deborah Johnson too, lacked standing because she had had a pending bankruptcy case. Though the bankruptcy case had been dismissed, the bankruptcy case had not been closed. Therefore, defendant Bank had argued that the bankruptcy court had jurisdiction as the residence was listed as an asset in plaintiff Deborah Johnson's schedules accompanying her petition. In the reply, defendant Bank conceded that the bankruptcy case had closed since the initial filing of its moving papers. Accordingly, this argument was moot.

[4]    Pursuant to Rules 12(b)(1) and 12(b)(6), defendant Bank moved to dismiss on the grounds that plaintiff Gerald Johnson lacked standing. In the Ninth Circuit, where a complaint on its face reveals that the plaintiff lacks standing, a motion to dismiss for failure to state a claim under Rule 12(b)(6) is proper. *See, e.g., Sacks v. Office of Foreign Assets Control,* 466 F.3d 764, 771 (9th Cir. 2006).

[5]    Defendant Bank has requested that the court take judicial notice of the loan documents. Previously, the loan documents were attached to defendant Bank's motion for relief from automatic stay which was filed in bankruptcy court.

Under Rule 201 of the Federal Rules of Evidence, the court is authorized to take judicial notice of adjudicative facts that are either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Accordingly, defendant Bank's request for judicial notice is granted.

Dbt f !6;19.dw113r,5.QWU!!!!!Epdvn f ou27!!!!!!Gjfne!14Q2108119!!!!!Qbhf !6!pg9

1    *Saracho v. Custom Food Machinery, Inc.,* 206 F.3d 874, 878 (9th Cir. 2000). Moreover, under

2    15 U.S.C.A. § 1602(h), a "consumer" is defined as a natural person to whom credit is offered or

3    extended.

4         At the hearing, Gerald Johnson alleged that originally he was a party to the loan and at

5    closing, defendant Bank had directed the title company to remove him from the loan as a result

6    of his existing debt. He further alleged that despite his removal from the loan documents and his

7    quitclaim to the residence, his income was included in the various loan documents to gain final

8    approval for the loan. None of these facts have been alleged in the complaint. Therefore, as

9    presently plead, Gerald Johnson has no standing to purse the claims alleged in the complaint.

10   Accordingly, his claims against defendant Bank are dismissed with leave to amend.

11        **II.    Plaintiff Deborah Johnson's Claims are Time-Barred**

12        Defendant Bank further alleges that plaintiffs claims are time-barred by the one year

13   statute of limitations. In the complaint, plaintiff Deborah Johnson alleges violations of the

14   Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act of 1994

15   ("HOEPA") and seeks the opportunity to sell or refinance the residence and damages.

16        Notwithstanding the date of the close of escrow, which occurred on May 5, 2005,

17   plaintiffs argue that defendant Bank committed a second violation when it commenced the

18   foreclosure process on July 7, 2007. Additionally, plaintiffs argue in their opposition that

19   defendant Bank committed certain RICO violations.

20        A motion to dismiss for failure to state a claim is proper where the facts and dates alleged

21   in the complaint indicate the claim is barred by the statute of limitations. *Jablon v. Dean Witter*

22   *& Co.,* 614 F.2d 677, 682 (9th Cir. 1980). "Civil penalties under TILA and HOEPA are subject

23   to a one-year statute of limitations." *Barbera v. WMC Mortgage Corp., et al.,* Not Reported in

24   F. Supp.2d, 2006 WL 167632 (N.D. Cal.). "'[T]he limitations period in Section 1640(e) runs

25   from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in

26   the appropriate circumstances, suspend the limitations period until the borrower discovers or had

27   reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA

28   action.'" *Walker v. Washinton Mutual Bank FA,* 63 Fed. Appx. 316, 317 (9th Cir. 2003)(citing

*King v. California,* 784 F.2d 910, 915 (9th Cir. 1986)).

1

2      Plaintiff Deborah Johnson's loan closed on May 5, 2005. Plaintiffs filed this action on

3 January 15, 2008, over two and a one-half years later. At the hearing, Mr. Johnson argued that

4 defendant Bank directed the title company to engage in certain irregularities with respect to the

5 paperwork. Based on his arguments however, it also appears that he was aware of the

6 irregularities related to the paperwork at the close of escrow. Indeed, Mr. Johnson admitted that

7 upon learning of the irregularities in the paperwork, he sought to rescind the loan but later

8 voided the rescission. On May 5, 2005, plaintiff Deborah Johnson signed and acknowledged the

9 truth in lending disclosure statement which states that the loan has a variable rate feature and

10 may be subject to a pre-payment penalty. As such, no circumstances have been shown here to

11 warrant a suspension of the limitations period.

12      Plaintiffs' contention that the alleged second violation, which occurred when defendant

13 Bank commenced the foreclosure process, tolls other violations separately is without merit.

14 Those facts and any reference to a RICO claim were not plead in the complaint.

15      Because the Federal Rules require "leave to amend when justice so requires" and

16 plaintiffs are proceeding *pro se*, it is appropriate to allow them leave to amend the complaint to

17 incorporate facts and assert claims which may have been alleged at the hearing. Accordingly,

18 plaintiffs' present claims for damages are time-barred and the complaint is dismissed with leave

19 to amend.

20                **CONCLUSION**

21      For the foregoing reasons, defendant Bank's motion to dismiss is granted with leave to

22 amend. Plaintiffs shall file their amended complaint no later than April 4, 2008.

23      IT IS SO ORDERED.

24 Dated: *March 10, 2008*

25

26                       PATRICIA V. TRUMBULL

United States Magistrate Judge

27

28

ORDER, *page 6*

Dbt f !6;19.dw.113,5.QWU!!!!!Epdvn f ou27!!!!!!Gjrhe!1402108119!!!!!Qbhf !8!pg9

<table>
<tr><td>1</td><td></td></tr>
<tr><td></td><td><u>A copy of the order was mailed on March 10, 2008 to the following:</u></td></tr>
<tr><td>2</td><td></td></tr>
<tr><td>3</td><td>Gerald Johnson<br>PO Box 4448</td></tr>
<tr><td>4</td><td>Carmel, CA 93921-4448</td></tr>
<tr><td>5</td><td></td></tr>
<tr><td>6</td><td>Deborah Johnson<br>PO Box 4448</td></tr>
<tr><td>7</td><td>Carmel, CA 93921-4448</td></tr>
</table>

1

A copy of the order was mailed on March 10, 2008 to the following:

2

3    Gerald Johnson
     PO Box 4448
4    Carmel, CA 93921-4448

5

6    Deborah Johnson
     PO Box 4448
7    Carmel, CA 93921-4448

8

9                                        EunHae Park for
                                         Corinne Lew
10                                       Courtroom Deputy

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER, *page 7*

Dbt f !6;19.dw 115/5.QWU!!!!!Epdvn f ou27!!!!!!Gjme!140210119!!!!!Qbhf !9!pg9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28