Deborah E. Johnson
P.O.Box 4448
Carmel, California 93921-4448
Telephone: 831-622-0132

Gerald D. Johnson (Pro Se, filing party)
P.O.Box 4448
Carmel, California 93921-4448
Telephone: 831-622-0132
E-mail: aprgdj@cs.com

Plaintiffs

**United States District Court**

**North District Of California**

**San Jose Division**

Deborah E. Johnson and Gerald D. Johnson,

Plaintiffs,

First Federal Bank Of California

Defendant.

Case No. <u>C08 00264 PVT</u>

**SECOND AMENDED COMPLAINT FOR MORTGAGE & BANK FRAUD FRAUDULENT TRANSFER & RICO ACT VIOLATIONS, FOR RELIEF & DAMAGES**

**JURY TRIAL DEMAND**

1.    Jurisdiction.  This Court has jurisdiction because the Defendant has violated the Federal Rackteer Influenced and Corrupt Organization statutes, bank, wire and mail fraud laws, California State contract fraud and property transfer and recording laws, right of rescission laws among other Federal and State laws in regard to the Plaintiffs primary residence, 2nd Avenue 2NE of Dolores Street, which is located in the City of Carmel in Monterey County.

2.    Venue.  Venue is appropriate in this Court because subject property is located within this district, Plaintiffs were contacted by an agent working on behalf of Defendant while residing in this district, documents presented to Plaintiffs were presented or delivered to Plaintiffs within

this venue.

3.    Intradistrict Assignment.  This lawsuit should be assigned to the San Jose Division of this Court because a substantial part of the events, actions and damages which give rise to this lawsuit occurred in Monterey County.

## CAUSES OF ACTION

4.    Plaintiffs, Deborah E. Johnson and Gerald D. Johnson, will prove with documents produced by Defendant, First Federal Bank of California, and other entities working for or under the direct supervision of the Defendant, put into action a scheme, willfully and with intent to deceive, omitted, misrepresented and made material misstatements to commit mortgage fraud, bank fraud and fraudulently transfered the subject property into Defendant's name in the completion of the Defendant's scheme to take the Plaintiffs' property.  The Defendant was aware, through its fraud, predatory lending tactics and equity stripping, the Plaintiffs would be unable to fullfill the fraudulent contract, which is a violation of California State law, and that contract became the instrument used by the Defendant to take the Plaintiffs' property. The fraudulent transfer is currently on appeal in an unlawful detainer action filed by the Defendant in California State Superior Court.  The racketeering has continued even after the judgment in the unlawful detainer case, with the Defendant directing a another entity to charge the Plaintiffs storage fees for removing their personal possessions from the property, in addition to the award for rental fees after the judgment that covered the 15 day period for removal of the Plaintiffs personal property.

5.    Plaintiff, Deborah E. Johnson's right to rescind the contract is based on the fraud created at inception with the security instrument, the fraudulent application and forged signature, dated February 27, 2008 and the fraudulent recording of documents related to the foreclosure sale per Federal and California State law.

6.    The Defendant, in directing other entities to create an enterprise, has committed at least 4 related acts of fraud with misrepresentations, misstatements and omissions in creating and funding a fraudulent contract and foreclosure transfer while using the mail and wire networks in commiting those acts.  Defendant's actions come under the RICO Act for organized fraud and California State laws for deceit, actual and constructive fraud.  The Defendant has used bank funds in a scheme to defraud Plaintiffs and a financial institution for money and property on two counts, funding the loan at inception and in the foreclosure process and transfer.  The Defendant's actions have occurred over a 30 month period and resulted in the taking of money, real and personal property by fraud.

7.    Defendant has misrepresented and  made material misstatements in relation to financial information to the Plaintiffs and the U.S Federal Bankruptcy Court as to the amount owed on the subject property or what was owed to bring the debt current.  The misrepresentation to the U.S. Bankruptcy Court was made to prevent the property from a liquidation sale by the bankruptcy trustee.

8.    Defendant has violated Federal law and California State Common Law as it relates to contracts obtained through fraud.  Conclusive evidence of fraud was discovered by Plaintiffs after reviewing  the account history, mortgage documents and efforts by the Defendant to prevent the Plaintiffs from bringing the account current and the false statements made under the penalty of perjury during the bankruptcy proceedings given by the Defendant.  The Plaintiffs initially thought the Defendant's actions were a Predatory Lending case but has since realized it to be fraud with this amended complaint and the prior amended complaint as additional discovery information is uncovered.

9.    Plaintiff, Deborah Johnson, retains her right to challenge the foreclosure and/or rescind the

contract based on Federal and California State law as it relates to mortgage or contract fraud at

inception and the fraudulent transfer.

## STATEMENT OF FACTUAL ALLEGATIONS

1.       Defendant qualified Plaintiffs for the loan on their primary residence located at 2nd

Avenue 2NE of Dolores Street in Carmel, California, based on the income of Plaintiff, Gerald D.

Johnson, which was $155,000.00 for year 2005, Plaintiff, Deborah E. Johnson, was residing out

of state from January thru June 2005 and did not earn any income during that period.  **Exhibit "A"**

is the escrow documents from Old Republic Title addressed to Plaintiff, Gerald D. Johnson,

prepared on May 5, 2005 with instructions to remove Gerald D. Johnson from title of their primary

residence.  Old Republic Title Company acting as the escrow holder will require written instructions

from the Plaintiffs or Defendant to prepare any instructions.  The Plaintiffs did not provide Old

Republic Title Company with any order written or wire communications to prepare the quit claim

deed.  As these documents indicate, the instructions came from the Defendant's underwriter or

employee, also indicating full knowledge of both Plaintiffs financial background.   **Exhibit "B"** is the

"Borrower/Escrow Instructions" from Old Republic Title of which page 4 of 5 list the conditions to

be met prior to funding, one item notes "the level of debt too high (cards are maxed out)" and the

other item, "Certified Copy of Quit Claim Deed".  As noted at the top of page 4 of 5, these are

conditions from Defendant to Plaintiffs and must be met prior to funding.  These conditions and the

removal of Plaintiff, Gerald D. Johnson, from title were first presented to Plaintiffs at signing on May

5, 2005.  **Exhibit "C"** is the list of credit accounts under Plaintiff, Gerald D. Johnson, 9 months prior

to the May 5, 2005 closing date with Defendant, the total unsecured debt is $109,552.00  Plaintiff,

Gerald D. Johnson's, unsecured debts listed in **Exhibit "C"** were removed from the loan application,

while his income was included on the application.  Defendant's employee, Tom Kronlage, is listed on

all escrow documents at the inception of the contract to defraud Plaintiffs while utilizing bank funds.

2.    **Exhibit "F"** is the previous mortgage note and statement from Novastar Home Mortgage that was faxed to the agent working on behalf of the Defendant at the request of the Defendant. This fax transmittal sets the date on or about the Defendant made the decision to remove Plaintiff, Gerald Johnson, from the loan, that date is May 2, 2005.

3.    On May 5, 2005 after Plaintiff, Gerald D. Johnson, was removed from the loan documents at signing.  Plaintiffs, decided to rescind the loan but were called by Defendant and agent working on behalf of the Defendant, PMC Mortgage, and convinced that the removal of Plaintiff, Gerald D. Johnson, was necessary to receive a "favorable loan with his credit score" and is a "common business practice".   Plaintiffs in reasonable reliance on the Defendant's statement, cancelled the rescission. Defendant's employee, Darlene Phung, was in communication with Plaintiffs during this period. When in fact the Defendant wanted to remove Plaintiff, Gerald Johnson's unsecured debt of $109,000.00 while retaining his income as "the household income".

4.    Plaintiffs' **Exhibit "H"** contains 5 written correspondences from Defendant that covers a time period from April 23, 2007 to June 18,2007 with 5 different payment amounts required  to bring the account current after being late for one payment in April.  The payments were in the amounts of $3,930.89, $16,237.82, $13,102.77, $16,472.66 and $14,635.94.  These different payment amounts were given to Plaintiffs by phone and in writing from Defendant in response to phone calls from Plaintiffs to get an accurate amount to bring the account current.  Plaintiffs listed their property for sale in July 2007 after failing to establish an accurate amount to bring the account current or refinance.  The Plaintiffs monthly payment amount was $3,661.26 at that time as indicated in the Defendant's  bankruptcy court declaration in **Exhibit "I"**.

**5.**    Exhibit **"I"** contains the written statement by Defendant's employee in Plaintiffs' Bankruptcy

Court case.  Defendant's employee states that Plaintiff, Deborah E. Johnson, is in arrearage in

payments for 8 months for $77,038.79 as of November 2007 or $80,919.72 as of the filing of

the Bankruptcy case motion in January 2008 and Plaintiff, Deborah E. Johnson's, payments are

$3,661.26 per month ( 8 months x $3,661.26 = $29,290.08), late fees would amount to over

$50,000.00 to bring the account current, minus the $3,000.00 for attorney fees.  These figures

are from the Declaration under penalty of perjury by Carol A. Baxter, Defendant's employee

located on page 9, item 10 of **Exhibit "I"**.  This is a clear misrepresentation of the amount

owed and we are confused that this court cannot recognize this clear misrepresentation.

This misrepresentation was done to prevent a liquidation sale by the Chapter 13 bankruptcy

trustee, the amount misstated, raised the the total just above the threshold.  **Exhibit "N"** is the

Chapter 13 bankruptcy trustee's letter to that effect.

**6.**    Plaintiffs were made aware of the fraudulent transfer on March 4, 2008 at the federal

hearing in San Jose U.S. Federal Court for the civil suit related to this action.

**7.**    Exhibit **"D"** are the 4 documents, 3 of which were recorded, used at transfer by the

Defendant and during the foreclosure, were handled by, T.D. Service Company, an entity working

under the direct supervision of the Defendant.  The first of the 4 documents, "Notice Of Default",

which was mailed to the Plaintiffs, references the loan as **"49792970/JOHNSON"** in the body

of the document or below the recorder's line and there is no signature from a T.D. Service Company

employee.  The next or 2nd document is the recorded "Notice Of Default" which also references the

the loan as **"49792970/JOHNSON"** but signed by T.D. Service Company employee, Cathy

Griffith.  The next or 3rd document is the "Notice Of Trustee Sale which references the loan as

**"49792970/JOHNSON/JOHNSON"** and signed at recording by Frances Depalma.  The last

or 4th document is the "Trustee's Deed Upon Sale" which references the loan in three places as **"49792970/JOHNSON/JOHNSON"**, 2 places in the body of the document and one place above the recorder's line, mailed to the Defendant's business address and signed by Frances Depalma of T.D. Service Company. All documents reference only one trustor, Plaintiff, Deborah E. Johnson. At the very least 2 of the three documents are invalid or false on their face in referencing a 2 party loan with only one trustor and the recording of a false document is a violation of California State recording law. The Plaintiffs believe if further discovery is allowed, the answers to or determining the dates of when this became a single party loan will confirm the forged or false application submitted by PMC Mortgage, dated February 27, 2008 and the Defendant's knowledge of it. This recording of the false documents invalidates the foreclosure and transfer.

8.      **Exhibit "G"** contains the e-mail communications with a company working for the Defendant, that accessed additional charges above the rental fees awarded to the Defendant for the 15 day period to remove personal property from the residence. This is in violation of the eviction order that allowed a 15 day period for the removal. These communications and the delay for entry will allow the Defendant to confiscate and/or sell the personal property of the Plaintiffs

9.      **Exhibit "J" & "K"** are full appraisals on Plaintiffs property completed in May 2007, with appraised values of $1,350,000 and $1,400,000. The potential of continued property value appreciation was the main incentive for the fraud.

10.     **Exhibit "E"** is the first documented communications with an agent for PMC Mortgage, dated January 19, 2005, this fax was addressed to both Plaintiffs. These documents were never filled out by the Plaintiffs and establish the first documented contact with PMC Mortgage.

11.    For correction of Court records, the only document signed by Plaintiff Deborah E. Johnson, of all the loan documents signed in this transaction, is the recorded "Power of Attorney", giving Plaintiff, Gerald D. Johnson, that authority.  This was done on recommendation by the Defendant because Plaintiff, Deborah E. Johnson, was residing out of state at the time of the transaction. **Exhibit "L"** is the hand written application, dated February 27, 2008, this document is a fraud and forgery of Plaintiff's Deborah Johnson's signature.  **Exhibit "M"** is a letter from Old Republic Title requesting personal information for the escrow, this letter is dated March 9, 2005 and is addressed to both Plaintiffs, Gerald Johnson and Deborah Johnson.  This date of March 9, 2005, confirms that the February 27, 2005 application is a fraud.  **Exhibit "O"** is the related documents to the fraud with a fax date stamp of May 4, 2005. This fraudulent application was first viewed by the Plaintiffs after receiving and reviewing the Defendant's opposition and request for dissmissal of the Plaintiffs' first amended complaint in April 2008.  This application was produced after the Defendant made the decision to remove Plaintiff, Gerald Johnson, from the loan, which occurred on or about May 2, 2005.  There is no documented evidence to support the false job information on this application, the income, job title or employer.  PMC Mortgage Company was paid over $16,800.00 to complete this loan for the Defendant and further discovery and cross examination will determine if the Defendant, PMC Mortgage, T.D. Service Company, Old Republic Title and Allstates Auctions have collaborated on any other loans and or foreclosures.  This information on collaboration will answer the question of who PMC Mortgage is working for.

12.    The property was listed as an asset on the Chapter 7 bankruptcy filing of Plaintiff, Gerald D. Johnson.  The property was listed as an asset and loan debt of the Chapter 13 filing of Deborah E. Johnson.  Both bankruptcy filings were filed pro se.

## LEGAL ARGUMENT

**A.**    California contract law states;

**Fraud is the intentional misrepresentation of an important issue of the contract. The presence of fraud in a contractual proceeding makes the contract voidable by the party upon whom the fraud was perpetrated.**

The Mortgage Bankers Association's definitions of mortgage fraud are;

**(1)    "Material misstatement, misrepresentation or omission relating to the property or potential mortgage relied on by an underwriter or lender to fund."**

**(2)    "The intentional enticement of a financial entity to make, buy or insure a mortgage loan when it would not otherwise have done so, had it possessed correct information".**

California civil definition for "Deceit":

**One who willfully deceives another with intent to induce the other to alter his or her position to his or her injury or risk...........**

Two categories of deceit:

**(1)    the suggestion, as a fact, of that which is not true, by one who does not believe it to be true, commonly referred to as intentional misrepresentation;**

**(2)    the suppression of a fact, by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact, commonly referred to as concealment**

The additional violations fall under 18 USC 1962, 18 USC 1344, 18 USC 1341, 18 USC 1343, 18 USC 1957, 18 USC 1345, Ca.Civ.Code 1709, 1710, 1596 & 1598.

**B.    California Civil Code Section 1689(b)(5)  A party to a contract may rescind the**

contract....If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

## C.     RICO ACT VIOLATIONS

The Defendant has used 4 entities to implement the scheme of taking the Plaintiffs' real property, money and personal property over a 3 year period with fraud.  The Defendant has utilized bank funds in funding a loan to the Plaintiffs that the Plaintiffs did not qualify for.  The Defendant did this with the intent to take the property through foreclosure.  The fraudulent property transfer was completed by utilizing bank funds in the foreclosure process and purchase.  The Defendant made material misstatements and misrepresentations to the Plaintiffs and the bankruptcy court system in the monetary amounts owed.  The fraudulently property transfer was completed while under a financial institutions control.

The additional violations fall under 18 USC 1962, 18 USC 1344, 18 USC 1341, 18 USC 1343, 18 USC 1957, 18 USC 1345.

## D.     California transfer or recording laws violated:

**(1)     Ca. Civ. Code 115. (a)        Any person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony.**

**(2)     Ca. Civ. Code 115. 5.          (a)       Every person who files any false or forged document or instrument with the county recorder which affects title to, places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, real property consisting of a single-family residence containing not more than four dwelling units, with knowledge that the document is false or forged, is punishable, in addition to any other punishment, by fine**

**not exceeding seventy-five thousand dollars ($75,000).**

## **CONCLUSION**

Based on the foregoing Statement Of Facts and Legal Argument, Plaintiffs plea to this Court is that you set aside the fraudulent transfer that is based on mortgage and bank fraud. Allow this civil suit to continue to discovery and trial, Plaintiffs would like to subpoena all escrow documents and communications related to this transaction from the Defendant, Old Republic Title Company and PMC Mortgage Company. The cross reference will prove the points and statements in this complaint. Plaintiffs ask this Court to restore the right to rescission based on the fraud at inception of the contract.

Plaintiffs are proceeding "pro se" in this matter and in the current federal case and in the bankruptcy court filing that proceeded each, due to the financial damage caused by these actions.

Plaintiffs seek relief in the form of punitive damages, returned to the status quo in regards to Plaintiffs' primary residence prior to the fraudulent acts and any further relief which this Court deems appropriate for the damages suffered by the actions of Defendant. Plaintiffs demand a jury trial on all issues.

We declare under penalty of perjury that the foregoing statement of facts and documents are true and correct.

Dated: August ___7___ , 2008

_Deborah E Johnson_
Deborah E. Johnson, Plaintiff

_Gerald D Johnson_
Gerald D. Johnson, Plaintiff (pro se)

Case No. C08 00264 PVT

**Proof Of Service**

I, _Patty Rosales_, the undersigned hereby declare:

I am over eighteen years of age and not a party to the above action. My address is

_2160 California Ave. Ste B, Sand City, Ca. 93955_.

On _August 7, 2008_, I personally served a true copy of:

_Second Amended Complaint For Mortgage_
_And Bank Fraud, Fraudulent Transfer And_
_Rico Act Violations, For Relief And Damages_

On the interested party named below, addressed as follows:

_Pamela L. Cox_
_Henar, Rousso And Heald, LLP_
_15910 Ventura Boulevard, 12th Floor_
_Encino, California 91436_

(X)    By U.S. First Class Mail, at _Sand City, CA._, I placed such envelope

for deposit with the United States Postal Service by placing for collection and mailing on

that date following ordinary business practices.

(_)    Via Hand Delivery, I delivered such envelope(s) by hand to the offices of the

addressees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _August 7, 2008_, at _Sand City, CA._

_Patty Rosales_
Sign Name

_Patty Rosales_
Print Name

1

EXHIBIT "A"

 **OLD REPUBLIC TITLE COMPANY**

2205 Fourth Street • Livermore CA • 94550 • (925) 443-1400 • FAX (925) 447-8247

May 5, 2005

To:   OLD REPUBLIC TITLE COMPANY
      2205 Fourth Street
      Livermore, CA 94550

Re:   Escrow No.: 1114001775-TN
      Property: 2nd Avenue 2 NE of Dolores Street, Carmel, CA 93921

Old Republic Title Company, as Escrow Holder, is authorized and instructed to prepare a Grant Deed from Gerald D. Johnson, husband of Grantee to Deborah E. Johnson, a married woman as her sole and separate property, pertaining to real property described as 2nd Avenue 2 NE of Dolores Street, Carmel, CA 93921.

Said Grant Deed is to include the following clause:

"It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate property."

You are hereby authorized and instructed to record said Deed through this escrow as an accommodation only and WITH NO DEMAND FOR PAYMENT OF MONIES OR DELIVERY OF ANY DOCUMENTS TO THE UNDERSIGNED.  Affix no transfer tax to said Deed.

In connection therewith, the undersigned further declares and instructs Escrow Holder that any funds that may be deposited in this escrow, which are drawn from an account in which the undersigned is named as the account holder or co-holder, are to be treated as the sole and separate funds of the grantee named in the above referenced deed and used UNCONDITIONALLY according to said grantees instructions to escrow.

The undersigned understands and acknowledges that Escrow Holder will require written instructions from said grantee as to the disbursement of any funds deposited by the grantee or that are deposited on the grantees behalf, should this escrow cancel. Therefore, the undersigned hereby releases Escrow Holder of any responsibility to the undersigned for the disbursement of said funds in the event of the cancellation of this escrow.

Any fees incurred shall be paid by Grantee in the above referenced escrow.

Gerald D. Johnson
_____          _____

You have been handed the above referenced document to be recorded as an accommodation only and you are further instructed not to issue any Owner's Policy of Title Insurance.

The undersigned grantee(s) hereby agree(s) to save and hold Old Republic Title Company harmless against any and all loss or damage, including attorney's fees and costs, sustained by the undersigned occasioned by its failure to purchase title insurance in connection with this transaction.

Deborah E. Johnson
_____          _____

Accepted by: Old Republic Title Company
TN/tn

Date: _____ By: _____ _____

RECORDING REQUESTED
Old Republic Title Co....y

ORDER #  1114001775-TN
APN  010-126-022

WHEN RECORDED MAIL TO

Name  Deborah E. Johnson
Street
Address  2nd Avenue 2 NE of Dolores Street
City
State  Carmel, CA 93921
Zip

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is _____ "Interspousal Deed"
(X) computed on full value of property conveyed, or
( ) computed on full value less of liens and encumbrances remaining at time of sale.
( ) Unincorporated area:    (X)  City of  Carmel
( ) Realty not sold.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Gerald D. Johnson and Deborah E. Johnson, husband and wife as Joint Tenants

**hereby GRANT(S) to**
Deborah E. Johnson, a married woman, as her sole and separate property

that property in City of Carmel, Monterey County, State of California, described as:
See "Exhibit A" attached hereto and made a part hereof.

It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate property.

Mail Tax Statements to    Grantee at address above

Date    May 05, 2005

STATE OF CALIFORNIA
COUNTY OF _____

Gerald D. Johnson

On _____ before me, the
undersigned, a Notary Public in and for said State, personally appeared

Deborah E. Johnson

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are described to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Name _____
(typed or printed)

FTGIS-140 8/94

(This area for official notarial seal)

MAIL TAX STATEMENT AS DIRECTED ABOVE

RECORDING REQUESTED BY
Old Republic Title Company
ORDER #    1114001775-TN
APN    010-126-022

WHEN RECORDED MAIL TO

Name    Deborah E. Johnson
Street
Address    2nd Avenue 2 NE of Dolores Street
City
State    Carmel, CA 93921
Zip

Stephen L. Vagnini          CRROBERTA
Monterey County Recorder    5/16/2005
Recorded at the request of     8:00:00
**Old Republic Title**

DOCUMENT: **2005048550**    Titles: 1/ Pages: 2



Fees....    11.00
Taxes...
Other...
AMT PAID    $11.00

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

# Grant Deed

The undersigned grantor(s) declare(s):
Documentary transfer tax is _____ "Interspousal Deed"
(X) computed on full value of property conveyed, or
( ) computed on full value less of liens and encumbrances remaining at time of sale.
( ) Unincorporated area:    (X)    City of  Carmel
( ) Realty not sold.
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Gerald D. Johnson and Deborah E. Johnson, husband and wife as Joint Tenants

**hereby GRANT(S) to**
Deborah E. Johnson, a married woman, as her sole and separate property

that property in City of Carmel, Monterey County, State of California, described as:
See "Exhibit A" attached hereto and made a part hereof.

It is the express intent of the grantor, being the spouse of the grantee, to convey all right, title and interest of the grantor, community or otherwise, in and to the herein described property, to the grantee as his/her sole and separate property.

Mail Tax Statements to    Grantee at address above

Date    May 05, 2005

STATE OF CALIFORNIA
COUNTY OF  Monterey
On  May 5, 2005 _____ before me, the
undersigned, a Notary Public in and for said State, personally appeared
 Gerald D. Johnson

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are described to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature  Theresa Tiliaia Castro
Name   Theresa Tiliaia Castro
(typed or printed)

FTGIS-140 8/94

_(signature)_ Gerald D. Johnson

_(signature)_ Deborah E. Johnson , By

_(signature)_ Gerald D. G. , as her
attorney in fact.

THERESA TILIAIA CASTRO
Comm. # 1452741
NOTARY PUBLIC - CALIFORNIA
Monterey County
My Comm. Expires Nov. 23, 2007

(This area for official notarial seal)

**MAIL TAX STATEMENT AS DIRECTED ABOVE**

Order No. : 0707003629

# EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Monterey, City of Carmel, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying Southerly of and contiguous with the Northerly boundary of Parcel A as said parcel is shown on the map above referred to.

END OF DOCUMENT

# EXHIBIT "B"

First Federal Bank of California
6053 W. Century Boulevard, St         Floor                          Lr       : 49792970
Los Angeles, CA 90045

PLEASE RETURN DOCUMENTS TO THE ATTENTION OF: Tom Kronlage

## BORROWER/ESCROW INSTRUCTIONS

Old Republic Title                          Date:  May 5, 2005
2205 Fourth St.                             Your Escrow No.:  1114001775
                                            Our Loan No.:  49792970
Livermore, CA 94550                         Application No.:  12345937169
                                            Reply To:  Tom Kronlage
ATTN: Theresa Nigro                         Telephone:  (310) 665-2341
       (925)443-1400                        Fax:  (310) 260-4053

We enclose loan documents as indicated below to be signed by the Borrowers therein designated, in the exact manner as the names are set forth.  DO NOT allow the loan documents to leave your possession, except to be recorded or to be returned to us (and even then only with proper safeguards).  DO NOT make or accept any changes, alterations and/or additions to our loan documents.  Should there be errors of any nature, contact First Federal immediately and we will forward corrected documents. Client copies of all documentation are enclosed.

   1. BORROWER - ESCROW INSTRUCTION - R           11. RESPA SERVICING DISCLOSURE
   2. NOTE - CODI W PAY RATE (110% OR 125%)        12. CUSTOMER IDENTIFICATION PROGRAM CIP
   3. PREPAY RIDER - CLASSIC 3 YEAR REBATE
   4. DEED OF TRUST (PORTFOLIO)
   5. TRUTH IN LENDING
   6. NOTICE OF RIGHT TO CANCEL- VMP D064
   7. REQUEST FOR TAX PAYER ID
   8. ERROR AND OMMISSION
   9. SIGNATURE / NAME AFFIDAVIT
   10. BORROWER'S CERT & AUTHORIZATION

All documents are subject to recall from our office prior to recordation of the deed of trust. All fully executed loan documents, original conditions and insurance requirements must be received by our Loan office located at 6053 W. Century Blvd.,St 400, 4th Floor, Los Angeles, CA, for review and approval, no later than 10:00 a.m. local time the day prior to funding.  Our proceeds will be in the form of a wire transfer.  Any request for a wire transfer must be made by 10:00 a.m. local time the day prior to funding.
Our offer to fund this loan expires on 06/27/2005 .

*************************************************************************************************

YOU ARE REQUIRED TO FORWARD THE FOLLOWING ITEMS TO THIS BANK PRIOR TO FUNDING FOR OUR APPROVAL:

1.    All loan documents, properly signed, except the Deed of Trust, Riders to the Deed of Trust, and Absolute Assignment of Rents & Leases which you may hold for recording, and RETURN A CERTIFIED COPY only to us. Certified copies of all notes and deeds of trust to record or to remain of record along with any subordination thereof.  Secondary financing is not to exceed None and must be subordinate to the deed of trust in our favor.

2.    A preliminary title report, plotted plat map, ALTA report and documentary evidence from title insurer showing any transfer of the real estate security by deed recorded within six (6) months prior to the preliminary report. All supplemental and updated reports are also to be forwarded.

3.    Certified copy of your signed escrow instructions, including all supplements or amendments (including those regarding sales and/or loan commissions covering this property).  If you are handling or have any knowledge of any other transaction on or related to the subject property which will record concurrently, is contingent on this escrow, will open or close immediately upon completion of this escrow, or which will transfer the same property, YOU MAY NOT close this escrow without our written consent. DO NOT request funds or authorize recording of our documents without receiving our written approval if you have information, or receive instructions, verbal or written, which will in any way alter the reported sales price or cash down payment.

4.    This loan is subject to receipt of a Flood Certification issued by our designated flood service company and may require flood insurance. If the property lies within a designated flood zone, we require minimum coverage of the loan amount or amount available, whichever is lower. If Flood Insurance is necessary we will require a copy of the completed Flood Insurance application and the receipt showing the premium PAID IN FULL/PREPAID (premium cannot be paid through escrow). Impounds will be required for flood insurance if the Bank is impounding for any other item.

5.    Evidence of hazard insurance, signed and completed by Agent. On Condominiums and PUDs we require a copy of the declaration page of the master policy issued to the Homeowners Association as well as a certification of insurance for the individual unit. On all loans we require an original policy, binder or evidence of insurance prior to funding. All policies to contain Lenders Loss Payable, 438BFU and Cancellation Clause. The minimum amount of hazard insurance required is equal to the lesser of the replacement value of the improvements or the loan amount.

Lenders Loss Payable Endorsement to read as follows:
FIRST FEDERAL BANK OF CALIFORNIA, IT SUCCESSORS & ASSIGNS
P.O. Box 2130
Santa Monica, CA 90407-2130

The insurer must have a minimum of: A Class 5 or B+ Class 9 or better in the latest Best's Key Rating Guide. Policy term must be for a minimum of one (1) year with no less than 30 days remaining to expiration. New premiums must be prepaid in escrow. On properties with 5 or more units and all commercial buildings, we require Fire & Extended Coverage with Vandalism & Malicious Mischief, and $1,000,000 General Liability coverage. On all rental properties we require Loss of Rents coverage equal to 6 months rents.

If insurance is to be issued by CALIFORNIA FAIR PLAN, we require the original Fair Plan policy or Fair Plan's Binder Letter signed by a Fair Plan representative prior to funding. Applications are not acceptable.

YOU MAY REQUEST FUNDS WHEN YOU ARE IN A POSITION TO PROVIDE THIS BANK WITH THE FOLLOWING:

1.    Water Stock, if any, assigned to this Bank as First Pledgee for the Borrower.

2.    1970 or 1970/rev. '84 (without Arbitration Provision) ALTA Lenders policy of Title Insurance (issued by a company acceptable to First Federal) with Endorsement No. 100 (without deletion), 110.8/110.9 and 116, 111.8,100.12/#5

with a liability of $ 1,050,000.00 (NOTE: This amount may be greater than the loan amount if the loan documents allow negative amortization), showing title vested in the names of:

Deborah E. Johnson, a married woman as her sole and separate property

subject only to General and Special taxes for the fiscal year
and exceptions 1, 3-6 as set forth in preliminary title report from
Old Republic Title dated 02/10/2005, Order No. 0707003629 covering property known as

2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

3.    Deed of Trust in favor of First Federal Bank of California in the amount of $ 840,000.00 to record as a first lien of record. The first payment of $ 3,168.20 including interest at 5.796% per annum, plus impounds for taxes, insurance, and private mortgage insurance premium if any will be due on July 1, 2005. Payment information will be mailed to Borrowers at close of escrow.
Monthly Impound Payment: $ 0.00
Total Monthly Payment: $ 3,168.20

X____ This payment may not constitute a fully amortized payment since it is based upon an initial pay rate which is less than the interest rate. The principal and interest amount necessary to make a fully amortized first payment at the interest rate stated in the Note is $4,926.59 .

4.    Certified copy of your closing statem        orrowers, or RESPA/HUD 1 Statement when a,        , is to be forwarded to us immediately upon closing c. your escrow. Use of our loan proceeds is contingen. upon our receipt of a certified copy of the buyer's and seller's closing statement or RESPA/HUD 1 at the close of escrow, containing all required information, including the specific settlement service providers as shown below.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CALCULATION OF LOAN PROCEEDS TO BE DISBURSED ON BEHALF OF OUR BORROWER:
WE WILL WITHHOLD from the total loan amount

| | |
|---|---|
| 811  FFB Underwriting Fee | $300.00 |
| 812  Tax Certification Fee (LandAmerica*) | $60.00 |
| 815  Flood Determination Fee (LandAmerica*) | $14.00 |
| 816  Wire Transfer Fee | $35.00 |
| 817  FFB Document Preparation | $250.00 |

\* In accordance with 24 CFR 3500.9 and these instructions, the HUD-1 settlement statement must be on the proper OMB form (#2502-265) and must include the above specific provider information.

Interest from and including date of disbursement of our funds TO 06/01/2005 at a rate of $133.39 per day will be deducted from our loan funds.

WE WILL INCLUDE in the net proceeds the Broker Rebate paid by First Federal in the amount of $16,800.00 which you are authorized to release to the Broker listed below upon verification of the recordation of the deed of trust in our favor. For disclosure purposes, you must add this Broker Rebate to the RESPA/HUD 1 Settlement Statement. Broker payments and/or concessions, such as fee reductions, to Borrower are not acceptable without written approval from First Federal and the loan may not be funded without such approval. Any such payment or concession without Bank approval may violate loan terms and conditions. The Broker name, address and telephone number are as follows:

Pacific Mortgage Consultants Inc
700 Larkspur Landing Cir
Suite 275
Larkspur, CA 94939
Phone #:  (925)583-1772

YOU WILL COLLECT from the Borrower the following loan related fees which you are then authorized to release to the above referenced Broker upon verification of the recordation of the deed of trust in our favor:

| | |
|---|---|
| 809  Mortgage Broker Appraisal Fee | $50.00 |
| 813  Mortgage Broker Processing Fee | $690.00 |
| 814  Mortgage Broker Misc. Fees | $495.00 |

*loan proceeds*

When you can comply with these instructions, and when all other terms and conditions of our loan have been met, the net proceeds will be forwarded to: Old Republic Title

Loan No.: 49792970

BORROWER(S) UNDERSTAND AND AGREE FURTHER THAT IN ADDITION TO THE ABOVE REQUIREMENTS, THE FUNDING OF THIS LOAN IS FURTHER CONDITIONED UPON OUR RECEIPT AND APPROVAL OF THE FOLLOWING:

If loan does not fund by May 10, 2005, an updated Title Report will be required.

Signed and certified copies of all escrow instructions and any amendments thereto.

Escrow Amendment re: Property Address to show same as on preliminary title report

Escrow Amendment re: Loan Amount, Lender, Rate and Terms

Satisfactory Evidence of Insurance must be in our office prior to funding

Updated Preliminary Title Report needed if not within 90 days prior to Funding.

Copies of all demands for payoff of existing liens showing no delinquencies

Level of debt too high (cards are maxed out). Payoff a must: American Express $20919 & $10352 & $2791; HSBC Bank $14416

Loan priced up 10bp for LTV >70%

Escrow certified copy of Grant Deed

Estimated Closing Statement to reflect all Broker Fees including Rebate

Certified Copy of Quit Claim Deed.

WE REQUIRE FIRST INSTALLMENT TAXES BE PAID THROUGH ESCROW ON LOANS RECORDING ON OR AFTER OCTOBER 1ST OF EACH YEAR; SECOND INSTALLMENT TAXES MUST BE PAID THROUGH ESCROW ON LOANS RECORDING ON OR AFTER JANUARY 1ST OF EACH YEAR:

The first regular monthly loan payment is due according to the terms of the Note. If the loan closes with less than 30 days remaining until the first scheduled payment, a billing statement/coupon may not be received by the Borrowers prior to the payment due date. However, the Borrowers are still responsible for the timeliness of the first payment. The Borrowers may make a payment without a billing statement/coupon by noting the loan number on the payment check and mailing the check to: First Federal Bank of California, 401 Wilshire Boulevard, Santa Monica, CA 90401, Attn: Loan Service Department.

The net proceeds of the loan, after deduction and/or payment of the foregoing items set forth on page two, shall be paid to the title company for credit of Borrower in Old Republic Title Escrow No. 1114001775

Each of the undersigned, in executing t'        instructions and Bank's documents, hereby acknow    that they
have read and fully understand the con             and instructions herein and approve, accept and         o be
bound thereby.

BORROWERS


_____
Deborah E. Johnson


If escrow is not closed on or before 06/27/2005 you will return all documents to this office. If the loan is
cancelled, you will collect and forward to us cancellation fees for the following: credit report, appraisal, flood
search, processing, documents, and underwriting as shown above. WE ARE TO BE AT NO EXPENSE IN
CONNECTION WITH THIS TRANSACTION.

FIRST FEDERAL BANK IS TO BE INFORMED OF ANY DEMANDS RECEIVED IN ESCROW FOR ITEMS
OTHER THAN LIENS AGAINST SUBJECT PROPERTY APPEARING IN THE PRELIMINARY TITLE REPORT.

WE WILL NOT ACCEPT ANY DEVIATION FROM THESE INSTRUCTIONS UNLESS WE HAVE INDICATED
OUR CONSENT IN WRITING TO ANY SUCH CHANGE.

We ask that you acknowledge receipt of the enclosures herein and your complete understanding of all
instructions and conditions by signing and returning these instructions.

Instructions and enclosures acknowledged and agreed upon:

Old Republic Title                                    FIRST FEDERAL BANK OF CALIFORNIA


By:_____        By:_____
     Theresa Nigro                                        Tom Kronlage

# EXHIBIT "C"

## Debt Consolidation Worksheet

*Savings Plan For:* **Gerald Johnson**

*Provided By:* Eric Laschinger, NovaStar Home Mortgage, Inc.
908 Niagara Falls Blvd., Suite 210 North Tonawanda, NY 14120
(P) 716-692-7007/ (F) 716-692-7006

*Date:* 09/02/2004

### Liabilities

| Creditors | Mth Pmt | Balance | Mths left | Total Pmt | Paid off |
|---|---|---|---|---|---|
| WORLD SAVINGS & LOAN | 2,924 | 503,000 | 171 | 500,004 | X |
| DEEP GREEN BANK | 646 | 200,500 | 0 | 0 | X |
| CHASE NA | 494 | 24,724 | 0 | 0 | |
| AMEX | 1,060 | 21,218 | 0 | 0 | |
| HHLD BANK | 315 | 13,970 | 0 | 0 | |
| BANK OF AMERICA | 66 | 11,738 | 0 | 0 | |
| UNION BANK | 246 | 11,652 | 47 | 11,562 | |
| BANK OF AMERICA | 59 | 11,500 | 0 | 0 | |
| FIRST USA BANK N A | 216 | 10,840 | 0 | 0 | |
| PROVIDIAN FINANCIAL | 123 | 4,075 | 0 | 0 | |
| WESCOM CREDIT UNION | 77 | 3,349 | 0 | 0 | |
| CAPITAL ONE BANK | 70 | 2,339 | 0 | 0 | |
| RNB-TGTVISA | 38 | 1,485 | 0 | 0 | |
| NORDSTROM FSB | 45 | 791 | 0 | 0 | |
| AMEX | 34 | 692 | 0 | 0 | |
| CPU/CITI | 15 | 523 | 0 | 0 | |
| CHEVRON CREDIT BANK | 32 | 506 | 0 | 0 | |
| THD/CBUSA | 20 | 473 | 0 | 0 | |
| FNANB/CIRCUIT CITY | 25 | 433 | 0 | 0 | |
| MACYS/GECCCC | 11 | 413 | 0 | 0 | |
| PIER 1 IMPORTS | 15 | 193 | 0 | 0 | |
| HHLD BANK/SAKS FIFTH | 14 | 192 | 0 | 0 | |
| FIRST USA BANK N A | 10 | 54 | 0 | 0 | |
| AMEX | 10 | 44 | 0 | 0 | |
| **Current Total** | 6,565 | 824,704 | | 511,566 | |
| **Paid off Total** | 3,570 | 703,500 | | 500,004 | |

### Prequalification Proposal

| | |
|---|---|
| Cash Out | 61,533 |
| Loan Program | 2/28 ARM |
| Proposed Loan Amt | 780,000 |
| Proposed Monthly Pmt | 5,669 |
| Term | 360 |
| Note Rate | 7.900 % |
| APR | 8.103 % |

Comments:

Based upon the points provided, and subject to our normal credit approval, we could be able to process your loan application in as little as 5 to 15 days from the time you apply.

Account Executive

This is not a loan commitment. All loans must meet current underwriting criteria including verification of credit, income, equity and title.

CALYX Form debtws.frm 10/98

Resolution Of Any Discrepancy:

_____

_____

_____

_____

_____

I/we acknowledge that I/we received a copy of this disclosure.

_____    9-7-04    _____
Gerald   Johnson        Date              Applicant                    Date

_____              _____
              Date                         Applicant                    Date

_____
Eric Laschinger          Date

Patriot Act Form 10/03

EXHIBIT "D"

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA  92711-1988

The following copy of "Notice": the original of which was filed for record on July 11, 2007 in the office of the County Recorder of said County, is sent to you inasmuch as an examination of the title to said trust property shows you may have an interest in the Trustee's Sale proceedings.

_____ SPACE ABOVE THIS LINE FOR RECORDERS USE _____

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## "IMPORTANT NOTICE"

T.S. No: A343546 CA     Unit Code: A     Loan No: 49792970/JOHNSON
Property Address: 2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA  93921

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $23,466.15, As of July 9, 2007

and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Page 2

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No: A343546 CA      Unit Code: A      Loan No: 49792970/JOHNSON

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Foreclosure Department
First Federal Bank of
California
401 Wilshire Blvd.
Santa Monica, CA 90401
(310) 319-6089

If you have any questions, you should contact a lawyer or the government agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION**

NOTICE IS HEREBY GIVEN THAT: SEASIDE FINANCIAL CORPORATION is duly appointed Trustee under the following described Deed of Trust:

**Trustor:** DEBORAH E. JOHNSON

Recorded May 16, 2005  as Instr. No. 2005048551  in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA

Said Deed of Trust secures certain obligations including one Note for the sum of **$840,000.00**

That the Beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE APRIL 1, 2007 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST. PLUS LATE CHARGE(S). FEE RECEIVABLES IN THE AMOUNT OF $4,878.75.**

That by reason thereof, the present Beneficiary under such Deed of Trust has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby. **DATED  07/09/07**

SEASIDE FINANCIAL CORPORATION, BY T.D. SERVICE COMPANY AS AGENT FOR THE TRUSTEE, BY SERVICELINK, AS AGENT FOR T.D. SERVICE COMPANY

BY _____  BY _____

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

5

**SERVICELINK, IRVINE**

RECORDING REQUESTED BY

T.D. SERVICE COMPANY

and when recorded mail to

T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA, CA 92711-1988

Stephen L. Vagnini          RANJELIQUE
Monterey County Recorder    7/11/2007
Recorded at the request of  11:00:47
**Filer**

DOCUMENT: **2007054666**

| | |
|---|---|
| Titles: 1/ Pages: 2 | |
| Fees... | 11.00 |
| Taxes.. | |
| Other... | |
| AMT PAID | $11.00 |

___ 1439911 ___ SPACE ABOVE THIS LINE FOR RECORDERS USE _____

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### "IMPORTANT NOTICE"

T.S. No: A343546 CA    Unit Code: A    Loan No: 49792970/JOHNSON
Property Address: 2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA 93921

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $23,466.15, As of July 9, 2007

and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Page 2
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

T.S. No: A343546 CA      Unit Code: A      Loan No: 49792970/JOHNSON

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Foreclosure Department
First Federal Bank of
California
401 Wilshire Blvd.
Santa Monica, CA 90401
(310) 319-6089

If you have any questions, you should contact a lawyer or the government agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION**

NOTICE IS HEREBY GIVEN THAT: SEASIDE FINANCIAL CORPORATION is duly appointed Trustee under the following described Deed of Trust:

**Trustor:** DEBORAH E. JOHNSON

Recorded May 16, 2005  as Instr. No. 2005048551  in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA

Said Deed of Trust secures certain obligations including one Note for the sum of **$840,000.00**

That the Beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE APRIL 1, 2007 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST. PLUS LATE CHARGE(S). FEE RECEIVABLES IN THE AMOUNT OF $4,878.75.**

That by reason thereof, the present Beneficiary under such Deed of Trust has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.
**DATED  07/09/07**

SEASIDE FINANCIAL CORPORATION, BY T.D. SERVICE COMPANY AS AGENT FOR THE TRUSTEE, BY SERVICELINK, AS AGENT FOR T.D. SERVICE COMPANY

BY _Cathy Griffith_ _____ BY _____

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.


# END OF DOCUMENT

APR 2 9 2008

When embossed this is certified to be a true copy of the
records of the Monterey County Recorder's Office.
Stephen L. Vagnini, Recorder

Deputy

10



SERVICELINK, IRVINE
RECORDING REQUESTED BY

T.D. SERVICE COMPANY

And when recorded mail to
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210
P.O. BOX 11988
SANTA ANA , CA 92711-1988

Stephen L. Vagnini            CRLUCY
Monterey County Recorder      10/15/2007
Recorded at the request of    11:32:37
**Filer**

DOCUMENT: **2007078352**   Titles: 1/ Pages: 2

| Fees.... | 11.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $11.00 |

_____143991_____  Space above this line for recorder's use _____

## NOTICE OF TRUSTEE'S SALE

T.S. No: A343546 CA     Unit Code: A     Loan No: 49792970/JOHNSON/JOHNSON
AP #1: 010-126-022

SEASIDE FINANCIAL CORPORATION, as duly appointed Trustee under the following described Deed of Trust WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (in the forms which are lawful tender in the United States) and/or the cashier's, certified or other checks specified in Civil Code Section 2924h (payable in full at the time of sale to T.D. Service Company) all right, title and interest conveyed to and now held by it under said Deed of Trust in the property hereinafter described:

Trustor: DEBORAH E. JOHNSON

Recorded May 16, 2005 as Instr. No. 2005048551 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA , pursuant to the Notice of Default and Election to Sell thereunder recorded July 11, 2007 as Instr. No. 2007-54666 in Book --- Page --- of Official Records in the office of the Recorder of   MONTEREY   County CALIFORNIA.

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED MAY 5, 2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA  93921
"(If a street address or common designation of property is shown above, no warranty is given as to its completeness or correctness)."

Said Sale of property will be made in "as is" condition without covenant or warranty, express or implied, regarding title possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest as in said note provided, advances, if any, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Said sale will be held on:
**NOVEMBER 8, 2007, AT 10:00 A.M. \*ON THE MAIN STEPS (AT THE DOUBLE DOOR ENTRANCE, INSIDE THE COURTYARD) OF THE COUNTY COURTHOUSE, 240 CHURCH STREET, SALINAS, CA**

At the time of the initial publication of this notice, the total amount of the unpaid balance of the obligation secured by the above described Deed of Trust and estimated costs, expenses, and advances is $943,523.95. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

Page 2
T.S. No: A343546 CA     Unit Code: A     Loan No: 49792970/JOHNSON/JOHNSON

Date:  October 12, 2007

SEASIDE FINANCIAL CORPORATION as said Trustee,
by T.D. Service Company, as agent

BY _____
FRANCES DEPALMA, ASSISTANT SECRETARY
T.D. SERVICE COMPANY
1820 E. FIRST ST., SUITE 210, P.O. BOX 11988
SANTA ANA, CA 92711-1988
(714) 543-8372

We are assisting the Beneficiary to collect a debt and any information we obtain will be used for that purpose whether received orally or in writing.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

If available, the expected opening bid and/or postponement information may be obtained by calling the following telephone number(s) on the day before the sale: (714) 480-5690 or you may access sales information at www.ascentex.com/websales.

**END OF DOCUMENT**

MAY 0 2 2008

When embossed this is certified to be a true copy of the
records of the Monterey County Recorder's Office.
Stephen L. Vagnini, Recorder

By _____ Deputy

Recording Requested By
**ServiceLink**

RECORDING REQUESTED BY
T.D. SERVICE COMPANY

And when recorded mail to
First Federal Bank of
California
RE: Loan # 49792970/JOHNSON/JOHNSON
401 Wilshire Blvd.
Santa Monica, CA 90401

| | |
|---|---|
| Stephen L. Vagnini<br>Monterey County Recorder<br>Recorded at the request of<br>**Filer** | RANJELIQUE<br>2/12/2008<br>12:01:24 |

DOCUMENT: **2008008306**



| Titles: 1/ Pages: 2 | |
|---|---|
| Fees... | 12.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $12.00 |

_____ Space above this line for recorder's use _____

*143991*

## TRUSTEE'S DEED UPON SALE

The undersigned declares under penalty of perjury that the following declaration is true and correct:

1) The Grantee herein **was** the foreclosing Beneficiary.
2) The amount of the unpaid debt together with costs was - - - - - - - - - - - - - - -  $983,776.34
3) The amount paid by the Grantee at the Trustee's Sale was - - - - - - - - - - - - -  $969,700.00
4) The documentary transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $.00
5) The city transfer tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $.00
6) The monument preservation tax is - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  $.00
7) Said property is in **unincorporated area**, County of **Monterey**

T.D. SERVICE COMPANY

Dated: 02/08/08

By _____
Frances DePalma, Trustee's Sale Officer

T.S. No: A343546 CA    Unit Code: A    Loan No: 49792970/JOHNSON/JOHNSON
AP #1: 010-126-022
Property Address: 2ND AVENUE 2 NE OF DOLORES STREET, CARMEL, CA 93921

SEASIDE FINANCIAL CORPORATION
(herein called Trustee)                          **Accommodation**

does hereby GRANT AND CONVEY, without any covenant or warranty, express or implied to

FIRST FEDERAL BANK OF CALIFORNIA
(herein called Grantee), such interest as Trustee has in that certain property described as follows:

PARCEL I: PARCEL "B" AS SHOWN ON THAT CERTAIN MAP FILED AUGUST 27, 1980 IN VOLUME 14 OF PARCEL MAPS, AT PAGE 58. PARCE II: A NON-EXCLUSIVE EASEMENT FOR PUBLIC UTILITY PURPOSES THREE FEET WIDE, LYING SOUTHERLY OF AND CONTIGUOUS WITH THE NORTHERLY BOUNDARY OF PARCEL A AS SAID PARCEL IS SHOWN ON THE MAP ABOVE REFERRED TO.

This conveyance is made pursuant to the authority vested in said Trustee, as Trustee or as duly appointed Trustee by the Deed of Trust described as follows:

Trustor: DEBORAH E. JOHNSON

MAIL TAX STATEMENTS TO ADDRESS SHOWN ABOVE

Page 2
T.S. No: A343546 CA    Unit Code: A    Loan No: 49792970/JOHNSON/JOHNSON

Recorded May 16, 2005 as Instr. No. 2005048551 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA , Whereas, the holder of the note secured by said Deed of Trust delivered to Trustee a written Declaration of Default and, pursuant thereto, a Notice of Default was recorded July 11, 2007 as Instr. No. 2007-54666 in Book --- Page --- of Official Records in the office of the Recorder of MONTEREY County; CALIFORNIA .

Whereas, Trustee complied with all applicable statutory provisions of California Civil Code Sections 2924 et seq. and of the described Deed of Trust including the mailing, publication, personal delivery, and posting of the Notice of Default and Notice of Sale, as respectively appropriate.

Said Notice of Trustee's Sale stated the time and place that Trustee would sell its interest in the described property at public auction. On February 8, 2008, the date set forth in the Notice of Trustee's Sale or the properly postponed sale date, Trustee sold the described property to Grantee, the highest qualified bidder present, for the sum of $969,700.00 **Pro-tanto.**

In Witness Whereof, the undersigned caused its corporate name and seal (if applicable) to be hereunto affixed.

Dated February 9, 2008

SEASIDE FINANCIAL CORPORATION
By T.D. Service Company, As Agent for the Trustee

BY _____
Frances Depalma, Assistant Secretary

BY _____
Patricia A. Randall, Vice President

STATE OF CALIFORNIA        )
COUNTY OF ORANGE           )SS

On 02/09/08 before me, KAY HENDRICKS, a Notary Public, personally appeared FRANCES DEPALMA, ASSISTANT SECRETARY, PATRICIA A. RANDALL, VICE PRESIDENT who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the Laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

KAY HENDRICKS
Commission # 1530718
Notary Public - California
Orange County
My Comm. Expires Dec 27, 2008

END OF DOCUMENT

APR 1 7 2008

When embossed this is certified to be a true copy of the
records of the Monterey County Recorder's Office.

Stephen L. Vagnini, Recorder

Deputy

# EXHIBIT "E"

01/15/2005  07:43        949630        PACIFIC MORTGAGE                    PAGE  01/13

X # 4543             FRIDAY
    HOLLY              4:00pm
Attn: Gerald D. Johnson
        Deborah E. Johnson


From: Brian Curl -- Account Manager
        (866) 365-6180   Ext. #140


Return Fax # (925) 294-9630

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ FHA | ☐ Conventional  ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate  ☐ GPM | ☐ Other (explain):  ☐ ARM (type) |
|---|---|---|---|---|---|
| $ | % | | | | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Refinance  ☐ Construction-Permanent  ☐ Other (explain): | Property will be: ☐ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| | $ | $ | | | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: ☐ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|
| | Cost $ | |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) | |
|---|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  ☐ Self Employed | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

01/19/2005  07:43    19630    PACIFIC MORTGAGE    PAGE  03/13

## VII. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VIII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ |
| b. | Alterations, improvements, repairs | |
| c. | Land (if acquired separately) | |
| d. | Refinance (incl. debts to be paid off) | |
| e. | Estimated prepaid items | |
| f. | Estimated closing costs | |
| g. | PMI, MIP, Funding Fee | |
| h. | Discount (if Borrower will pay) | |
| i. | Total costs (add items a through h) | |
| j. | Subordinate financing | |
| k. | Borrower's closing costs paid by Seller | |
| l. | Other Credits (explain) | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. | PMI, MIP, Funding Fee financed | |
| o. | Loan amount (add m & n) | |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | |

## IX. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | | | |
| b. Have you been declared bankrupt within the past 7 years? | | | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | | |
| d. Are you a party to a lawsuit? | | | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | | | |
| h. Is any part of the down payment borrowed? | | | | |
| i. Are you a co-maker or endorser on a note? | | | | |
| j. Are you a U.S. citizen? | | | | |
| k. Are you a permanent resident alien? | | | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | | | |
| m. Have you had an ownership interest in a property in the last three years? | | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## X. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander   ☐ White | | ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☐ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | | |
| ☐ Face-to-face interview | Interviewer's Signature | Date |
| ☐ Mail | | |
| ☐ Telephone | Interviewer's Phone Number (incl. Area Code) | |
| ☐ Internet | | |

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## *Authorization to Disclose*

*I/we, the undersigned, have applied for a real estate loan through Pacific Mortgage Consultants, Loan Broker.  I/we hereby authorize the release of any and all information required or requested by Loan Broker, their assignees, or their credit reporting agencies in their attempts to complete the processing and/or approval of our loan request.*

*Necessary information may include, but would not be limited to; employment and/or related compensation information, savings and checking account verifications, loan status, payment histories, credit union and mortgage balances, etc.*

*Loan Broker is hereby authorized to utilize copies of this form in its efforts to receive the above listed information.*

*Thank you for your cooperation in expediting the return of the requested information attached hereto.*

| | |
|---|---|
| *Printed Name* | *Social Security #* |
| *Applicant Signature*        *Date* | *Birthdate* |
| *Printed Name* | *Social Security #* |
| *Applicant Signature*        *Date* | *Birthdate* |

*AGENT NAME*              *DATE*                        *PHONE NUMBER*

**#6**

**Pacific Mortgage Consultants, Inc** —
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## *Equal Credit Opportunity Act (ECOA)*

*APPLICATION NO:*        _____

*PROPERTY ADDRESS:*     _____

*The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, martial status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this Mortgage Company is the Federal Trade Commission, 55 East Monroe Street, Suite 1437, Chicago, Illinois  60803.*

*We are required to disclose to you that you need not disclose income from alimony, child support or separate maintenance payment if you choose not to do so.*

*Having made this disclosure to you, we are permitted to inquire if any of the income shown on your application is derived from such a source and to consider the likelihood of consistent payment as we do with any income on which you are relying to qualify for the loan for which you are applying.*

_____   _____        _____   _____
*Printed Name*              *Date*          *Applicant Signature*       *Date*


_____   _____        _____   _____
*Printed Name*              *Date*          *Applicant Signature*       *Date*


_____
*AGENT NAME*                 *DATE*                *PHONE NUMBER*

**#7**

01/19/2005  07:43    9252949630          PACIFIC MORTGAGE CON          PAGE  06/13

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275 Larkspur, CA 94939
DRE License # 01378482 Expires 4/16/07

## Notice to the Home Loan Applicant
## Credit Score Information Disclosure

| APPLICANT(S) NAME AND ADDRESS | LENDER NAME AND ADDRESS |
|---|---|
| | |

*In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.*

*The credit score is a computer-generated summary calculated at the time of the request based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether or not you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns, and how credit-scoring technologies change.*

*Because the score is based on information in your credit history, it is very important that you review the credit related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.*

*If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.*

*If you have questions concerning the terms of the loans, contact the lender.*

*The credit bureau(s) listed below provided a credit score that was used in connection with your home loan application.*

| CREDIT BUREAU #1 | CREDIT BUREAU #2 | CREDIT BUREAU #3 |
|---|---|---|
| Experian | Equifax | Trans Union |

*I/We have received a copy of this disclosure.*

| | |
|---|---|
| *Printed Name*          *Date* | *Applicant Signature*          *Date* |

| | |
|---|---|
| *Printed Name*          *Date* | *Applicant Signature*          *Date* |

*AGENT NAME*                    *DATE*                    *PHONE NUMBER*

**#8**

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275 Larkspur, CA 94939
DRE License # 01378482 Expires 4/16/07

## *Notice Regarding Appraisal and Credit Report Fees*

*I/We hereby acknowledge that those fees collected at the time of application by Pacific Mortgage Consultants, Inc. are neither application nor loan fees.*

*I/We further understand those fees requested are for the express purpose of Pacific Mortgage Consultants ordering an appraisal and credit report on this specific transaction. Such fees are merely disbursed to organizations providing these services to Pacific Mortgage Consultants, Inc.*

*In the event this transaction is canceled, the loan package is subsequently declined by a lending institution , or any other series of events leading to termination of the relationship between Pacific Mortgage Consultants and the below signed individual(s), these monies will be retained and disbursed to those organizations having provided the appraisal and credit reporting services to Pacific Mortgage Consultants.*

*Once completed, the original appraisal shall be the property of Pacific Mortgage Consultants and the ensuing lending entity. At no time shall the client receive the original appraisal unless all fees including special rush fees, etc., have been received and cleared the Company's account. The Company will, however, supply the below signed individual(s) with a copy of the appraisal at or after close of escrow when written request has been received. In the event client cancels prior to closing of a transaction, the client shall be liable for any and all expenses relating to these items or the updating thereof – whether or not an up front fee has been collected.*

*Appraisal and credit monies are subject to a partial or total refund if the transaction is terminated at such point in time that said monies have not been completely expended.*

*In the event any legal action is necessary to enforce any provision hereon, the prevailing party shall be entitled to all costs as they pertain to such action, including but not limited to attorneys fees.*
*I/We acknowledge receipt of a copy hereof.*

| | | | |
|---|---|---|---|
| *Printed Name* | *Date* | *Applicant Signature* | *Date* |
| *Printed Name* | *Date* | *Applicant Signature* | *Date* |

*AGENT NAME*                    *DATE*                    *PHONE NUMBER*

**#9**

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## Occupancy Statement

*I/we hereby state our intention to occupy that property listed in the "Subject Property Address" section of the uniform residential loan application as our personal and primary residence.  I/we understand that such occupancy is a condition of the granting of the ensuing loan.*

*I/we acknowledge this requirement of owner occupancy is understood.  Its is further acknowledged that I/we are not relying upon any verbal statements made by Loan Broker, its independent contractors, or its employees regarding any non-occupancy of the subject property.  Furthermore this statement is not being made to induce Loan Broker or any ensuing lender to process or approve the applied for loan.*

*In the event occupancy of the subject property does not occur, I/we understand that the loan received may become immediately due and payable and agree to indemnify Loan Broker, its representatives, or assignees from any action (s) as they may pertain to non-occupancy of the property.  I/we further acknowledge full liability for any attorneys fees associated with Loan Broker's need to enforce this agreement or defend itself in any action brought by any entity due to non-occupancy of the subject property.  It is further agreed that any and all cost as they may pertain to loan acceleration, including but not limited to attorney's fees, court costs, etc., shall be wholly my/our responsibility.*

| | | | |
|---|---|---|---|
| *Printed Name* | *Date* | *Applicant Signature* | *Date* |
| *Printed Name* | *Date* | *Applicant Signature* | *Date* |

*AGENT NAME*                     *DATE*                     *PHONE NUMBER*

**#10**

**Pacific Mortgage Consultants, Inc** —
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## *The Housing Financial Discrimination Act Of 1977*
## *Fair Lending Notice*

*APPLICATION NO:*  _____

*PROPERTY ADDRESS:*  _____

*It is illegal to discriminate in the provisions of or in the availability of financial assistance because of the consideration of:*

*1.  Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe and unsound business practice; or*

*2.  Race, color, religion, sex, marital status, national origin or ancestry.*

*It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.*

*These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of one-to-four unit family residence occupied by the owner and for the purpose of the home improvement of any one-to-four unit family residence.*

*If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution or:*

*DEPARTMENT OF REAL ESTATE*
*2300 X STREET*
*SACRAMENTO, CA  95818*

_____     _____     _____     _____
*Printed Name*              *Date*        *Applicant Signature*        *Date*

_____     _____     _____     _____
*Printed Name*              *Date*        *Applicant Signature*        *Date*

_____
*AGENT NAME*                    *DATE*                     *PHONE NUMBER*

# #11

01/19/2005  07:43    9252949630    PACIFIC MORTGAGE CON    PAGE  10/13

**Pacific Mortgage Consultants, Inc  --**
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## Broker and Borrower Document Certification

*The undersigned Broker and Borrower(s) hereby certify that all copies of documents provided to _____, ("Lender"), for the purpose of underwriting and closing Broker and Borrower(s) loan are true and exact copies of the original documents provided by the borrower(s) and further certify that the original documents do not contain any alterations, revisions, erasures or whiteouts.*

*For purposes of this Broker and Borrower Document Certification, Broker and borrower(s) acknowledge that such certifications pertains to any and all documents provided by Borrower(s) to Broker for purposes of loan processing, underwriting and closing, and may include but are not limited to the following:*

- *Paystubs/Earning Statements*
- *W-2 forms*
- *Individual Income Tax Returns (IRS Form 1040)*
- *Partnership Tax Returns (IRS Form 1065)*
- *Corporate Tax Returns (IRS Form 1120)*
- *Bank/Savings/Credit Union Account Statements*
- *Canceled Checks*
- *Business Balance Sheet and Income Statement*
- *Rental Agreements*
- *Purchase Contracts/Agreements*

*Note: In order to comply with investor requirements for sale of loans, the Lender may require the borrower(s) to provide original signatures on the first two pages of any tax returns.*

*Acknowledged by:*

_____

*Authorized Employee and Title*                                        *Date*

_____        _____

*Borrower Name*                                                    *Signature*                *Date*

_____        _____

*Borrower Name*                                                    *Signature*                *Date*

_____

*AGENT NAME*                    *DATE*                    *PHONE NUMBER*

**#12**

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275  Larkspur, CA 94939
DRE License # 01378482  Expires 4/16/07

## *Mortgage Loan Origination Agreement*

*You (_____) agree to enter into this Mortgage Loan Origination Agreement with Pacific Mortgage Consultants/Broker as an independent contractor to apply for a residential mortgage loan from a participating lender with which we from time to time contract upon such terms and conditions as you may request or a lender may require.  You inquired into mortgage financing with Pacific Mortgage Consultants on _____, 2004.  We are licensed as a "Mortgage Broker" under the state laws of California.*

*Section 1.  Nature of Relationship.*
*In connection with this mortgage loan:*
- *We are acting as an independent contractor and not as your agent.*
- *We will enter into separate independent contractor agreements with various lenders.*
- *While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or the best terms available in the market.*

*Section 2.  Our Compensation.*
*The lenders whose loan products we distribute generally provide their loan products to us at a wholesale rate.*
- *The retail price we offer you, your interest rate, total points and fees will include our compensation.*
- *In some cases, we may be paid all of our compensation by either you or the lender.*
- *Alternately, we may be paid a portion of our compensation by both you and the lender.  For example, in some cases, if you rather pay a lower interest rate, you may pay higher up-front points and fees.*
- *Also in some cases, if you would rather pay less up-front, you may be able to pay some or all of our compensation indirectly through a higher interest rate in which case we will be paid directly by the lender.*

*We also may be paid by the lender based on (1) the value of the Mortgage Loan or related servicing rights in the market place or (2) other services, goods or facilities performed or provided by us to the lender.*

*By signing below, applicant(s) acknowledge receipt of a copy of this signed Agreement.*

*MORTGAGE LOAN ORIGINATOR:*                    *APPLICANTS:*

_____                _____
*By Agent*                    *Date*                         *Phone Number*

_____                _____
*Applicant Printed Name*                       *Signature*                    *Date*

_____                _____
*Applicant Printed Name*                       *Signature*                    *Date*

_____                _____
*Address*                                      *City, State, Zip*

**#13**

01/19/2005  07:43     9252949638                PACIFIC MORTGAGE CON                    PAGE  12/13

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## *Tax and Insurance Impound Request*

*I hereby request the following to be impounded and paid monthly with my payment:*

        1.)  *Property Taxes*        _____

        2.)  *Fire/Hazard Insurance*    _____

*I do not want Tax or Insurance Impounds*    _____

### *Fire/Hazard Insurance Agent Information*

*Insurance Co.* _____

*Agents Name* _____ *Phone No.* _____

*Address* _____

*City* _____ *State* _____ *Zip* _____

_____          _____
*Applicant Printed Name*     *Date*           *Applicant Signature*      *Date*

_____          _____
*Applicant Printed Name*     *Date*           *Applicant Signature*      *Date*

_____          _____
**AGENT NAME**                            **PHONE NUMBER**

**#14**

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle Suite 275  Larkspur, CA  94939
DRE License # 01378482  Expires 4/16/07

## Consumer Caution and Home Ownership Counseling Notice

*If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.*

*Mortgage loan rates and closing costs and fees vary based on many factors, including your particular credit and financial circumstances, your earnings history, the loan-to-value requested, and the type of property that will secure your loan. Higher rates and fees may be justified depending on the individual circumstances of a particular consumer's application. You should shop around and compare loan rates and fees.*

*This particular loan may have a higher rate and total points and fees than other mortgage loans, and is or may be subject to the additional disclosure and substantive protections under Division 1.6 (commencing with Section 4970) of the Financial Code. You should consider consulting a qualified independent credit counselor or other experienced financial advisor regarding the rate, fees and provisions of this mortgage loan before you proceed. For information on contacting a qualified credit counselor, ask your lender or call the United States Department of Housing and Urban Development's counseling hotline at 1-888-466-3487 or go to www.hud.gov/fha/sfh/hcc for a list of counselors.*

*You are not required to complete any loan agreement merely because you have received these disclosures or have signed a loan application.*

*If you proceed with this mortgage loan, you should also remember that you may face serious financial risks if you use this loan to pay off credit card debts and other debts in connection with this transaction, and then subsequently incur significant new credit card charges or other debts. If you continue to accumulate debt after this loan is closed and then experience financial difficulties, you could lose your home and any equity you have in it if you do not meet your mortgage loan obligations.*

*Property taxes and homeowner's insurance are your responsibility. Not all lenders provide escrow services for these payments. You should ask your lender about these services.*

*Your payments on existing debts contribute to your credit ratings. You should not accept any advice to ignore your regular payments to your existing creditors.*

| *Applicant Printed Name* | *(Date)* | | *Applicant Signature* | *(Date)* |
|---|---|---|---|---|
| *Applicant Printed Name* | *(Date)* | | *Applicant Signature* | *(Date)* |

*AGENT NAME*                       *PHONE NUMBER*

**#15**

# EXHIBIT "F"



# ALAIN PINEL
## REALTORS

# FAX

DATE: **5-2-05**

ATTENTION: _BRIAN AND SANDY_

FROM: _GERALD JOHNSON_

FAX TO NUMBER: _925-294-9630_

NO. OF PAGES INCLUDING COVER PAGE: _8_

_BRIAN AND SANDY_

_ATTACHED IS THE ADJ NOTE
AND MORTGAGE STATEMENT._

_GERALD_

_831-915-8339_

## Alain Pinel Realtors
**Purveyors of Distinctive Properties and Estates**
Junipero Between 5th & 6th
P.O. Box 7249
Carmel, CA 93921    Phone (831) 622-1040    West Wing Fax (831) 622-1559

Recordings Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

21522574

Stephen L. Vagnini
Monterey County Recorder
Recorded at the request of
**Bank**

CRLISA
10/22/2004
12:00:12

DOCUMENT: **2004113150** | Titles: 1/ Pages: 17

| Fees.... | 56.00 |
| Taxes... | |
| Other... | |
| AMT PAID | $56.00 |

After Recording Return To:
NOVASTAR MORTGAGE, INC.
ATTN: COLLATERAL CONTROL
6200 OAK TREE BLVD, 3RD FLOOR
CLEVELAND, OH 44131

Title Order No.: JOHNSON
Escrow No.: JOHNSON
LOAN #: 04-E15197

------------------------------- [Space Above This Line For Recording Data] -------------------------------

# DEED OF TRUST

MIN 100080190034636936

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated  SEPTEMBER 22, 2004,          together with all Riders to this document.
(B) "Borrower" is  GERALD D. JOHNSON AND DEBORAH E. JOHNSON, HUSBAND AND WIFE.

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  NOVASTAR HOME MORTGAGE, INC.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 1999-2004 Online Documents, Inc.
**Page 1 of 12**

Form 3005 1/01
CAEDEED

Initials: DEQ

CAEDEDL 0402
09-21-2004 15:06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

LOAN #: 04-E15197

_____ (Seal)
GERALD D JOHNSON

_____ (Seal)
DEBORAH E. JOHNSON

State of CALIFORNIA

County of: _Monterey_

On _9/23/04_ , before me, _Alicia Meredith, Notary Public_ , personally appeared _GERALD D. JOHNSON_

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ALICIA MEREDITH
Commission # 1313308
Notary Public - California
Monterey County
My Comm. Expires Jul 15, 2005

_Alicia Meredith_
Alicia Meredith

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.
Page 12 of 12

CAEDEDL  0402
09-21-2004  15:06

LOAN #: 04-E15197

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **22ND** day of **SEPTEMBER, 2004** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to **NOVASTAR HOME MORTGAGE, INC., A CORPORATION**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **2ND AVENUE 2 NE OF DOLORES, CARMEL, CA 93921.**

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **6.300%.** The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may change on the **1ST** day of **OCTOBER, 2006** and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal**. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR AND SEVEN-TENTHS** percentage point(s) ( **4.700%**

Initials: _[signature]_

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac UNIFORM INSTRUMENT
Form 3192 1/01
Modified for Novastar
©1999-2003 Online Documents, Inc.
09-21-2004 15:06              Page 1 of 3

N3192RLU  0303

LOAN #: 04-E15197

to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.300% or less than 6.300%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.300% or less than 6.300%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 3192 1/01
Modified for Novastar
©1999-2003 Online Documents, Inc.
09-21-2004 15:06

Initials: _____

Page 2 of 3

N3192RLU  0303

LOAN #: 04-E15197

transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____      9-23-04
GERALD D JOHNSON                                  Date

_____      9/22/04
DEBORAH E. JOHNSON                                Date

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)—Single Family—**Freddie Mac** UNIFORM INSTRUMENT
Form 3192 1/01
Modified for Novastar
©1999-2003 Online Documents, Inc.
09-21-2004 15:06                    **Page 3 of 3**                    N3192RLU  0303

# LEGAL ADDENDUM

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE CITY OF CARMEL, COUNTY OF MONTEREY, AND STATE OF CALIFORNIA, TO WIT:

PARCEL "B" AS SHOWN ON THAT CERTAIN MAP FILED AUGUST 27, 1980 IN VOLUME 14 OF PARCEL MAPS, AT PAGE 58.

TAX ID #: 010-126-022

BY FEE SIMPLE DEED FROM COAST FEDERAL BANK, FEDERAL SAVINGS BANK., A CALIFORNIA CORPORATION AS SET FORTH IN DEED BOOK 3209, PAGE 1317 AND RECORDED ON 3/17/1995, MONTEREY COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.



U21522574-010P17
REFINANCE DOT
LOAN# 04-E15197
US Recordings

**END OF DOCUMENT**

# NOVASTAR

P.O. Box 2900
Shawnee Mission, KS 66201

www.novastarcustomer.com

**LOAN NUMBER: 0001379791**

Customer Service
(888) 289-1231

Fax Number
(816) 237-7482

Collection Dept.
(888) 289-1208

Statement Date
**02/11/05**

Home Loan Facts

Loan Number
0001379791

Regular mail payments
PO Box 808911
Kansas City, MO 64184

Overnight mail payments
8140 Ward Parkway
Suite 200
Kansas City, MO 64114

2  D AVE 2 NE OF DOLORE
CARMEL              CA 93921

GERALD D JOHNSON
2ND AVE 2 NE OF DOLORES
CARMEL CA  93921

26805

| | | | |
|---|---|---|---|
| Principal balance as of 02/11/05 | | Interest Rate | |
| $777,789.46 | | 6.30000% | |
| *This is your principal balance only. For your pay off balance, please call Customer Service.* | | | |

| Principal Paid Year to Date | Interest Paid Year to Date | Taxes Paid Year to Date | Escrow Balance Year to Date |
|---|---|---|---|
| $740.71 | $4,087.28 | | |

| | | |
|---|---|---|
| Payment due | 02/01/05 | |
| Current payment | 4,827.99 | |
| Overdue payments | 4,827.99 | |
| Unpaid late charges | | |
| Other charges | | |
| **Total Payment** | 9,655.98 | |

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit bureau.

## Activity Since Last Statement

| DESCRIPTION | DATE DUE | DATE PAID | PRINCIPAL | INTEREST | ESCROW/IMPOUND | MISC. | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|

*handwritten:*
DATE PAID
3-12-05
Effective Date 3-14-05
$ 4827.99
CONF.# 555450

*Return the bottom portion with your payment.*

GERALD D JOHNSON

2ND AVE 2 NE OF DOLORES
CARMEL CA  93921

# NOVASTAR
NOVASTAR MORTGAGE, INC.

**Payment Coupon**

**LOAN NUMBER: 0001379791**

*DO NOT SEND WRITTEN CORRESPONDENCE WITH YOUR PAYMENT*

☐ Please check this box if changes are indicated on the reverse side.

Customer Service: (888) 289-1231 / Make checks payable to:

Please specify additional funds below. Any additional funds not specified will be applied first to escrow advance and then to outstanding fees.

| | |
|---|---|
| Current payment | 4,827.99 |
| Overdue payment(s) | 4,827.99 |
| Unpaid late charges | |
| Other charges | |
| Total payment | 9,655.98 |
| If received after: | 02/16/05 |
| Pay this amount: | 9,945.66 |

| | |
|---|---|
| Additional Principal | |
| Additional Escrow | |
| Other | |
| Total Enclosed | |

NOVASTAR MORTGAGE, INC.
PO Box 808911
KANSAS CITY  MO  64184-8911

0001379791 000048279900005117675

** Transmit Conf.Report **

P.1                                         May 2 '05  15:27

| Telephone Number | Mode | Start | Time | Pages | Result | Note |
|---|---|---|---|---|---|---|
| 19252949630 | NORMAL | 2,15:23 | 3'31" | 8 | * O K | |



## ALAIN PINEL
### REALTORS

# FAX

DATE: 5-2-05    ATTENTION: BRIAN AND SANDY

FROM: GERALD JOHNSON

FAX TO NUMBER: 925-294-9630

NO. OF PAGES INCLUDING COVER PAGE: 8

BRIAN AND SANDY

ATTACHED IS THE ADJ NOTE
AND MORTGAGE STATEMENT.

GERALD
831-915-8339

# EXHIBIT "G"

**Gerald  Johnson**

| | | | |
|---|---|---|---|
| **From:** | allstates [allstates@earthlink.net] | | |
| **To:** | Aprgdj@cs.com | **Sent:** | Sun 7/13/2008 11:40 PM |
| **Cc:** | allstates@earthlink.net | | |
| **Subject:** | RE: 2nd Ave. 2NE of Dolores In Carmel Ca., Request to Enter Property | | |
| **Attachments:** | | | |

**Hi Gerald,**

As you know, our company has been retained to handle the matter of "abandoned personal property" at your former premises.  As I have explained to our client - you have the right to recover your things, and as you know, the landlord has a right to storage fees.  The Landlord not only has an obligation to make your things available for removal, but we would very much encourage you to make the appropriate arrangements.  This would be a far better resolution than selling your personal property at auction.  So... let's work towards this common goal.

I am confused about your "request to enter" the property.  I assume what you mean is you are ready, willing and able to move your things from the premises.  We would be happy to help facilitate this effort -- if you have any other interest in entering the property, please be kind enough to explain this request.  Otherwise, I would like to hear from you regarding a day and time when you will start the "move out" and an idea as to how long you think it will take. When I get a target date, I will be happy to supply you with the storage fees.

Regarding the "move out", we will retain the right to direct the order of removal of items from the premises and/or charge a refundable deposit that will be refunded upon a "broom clean" condition.  Storage fees will continue to accrue until you have cleared out the premises.

I look forward to hearing from.

Sincerely,

Brad

**Gerald Johnson**

| | |
|---|---|
| **From:** | allstates [allstates@earthlink.net] |
| **To:** | Aprgdj@cs.com |
| **Cc:** | allstates@earthlink.net |
| **Subject:** | RE: 2nd Ave. 2NE of Dolores In Carmel Ca., Request to Enter Property |
| **Attachments:** | |

**Sent:** Wed 7/16/2008 12:02 AM

Hi Gerald,

Good to speak with you on Monday and I am glad we are moving (no pun intended) in the direction of clearing out the premises at 2nd Avenue 2NE of Dolores.

As you know, we are not attorneys and cannot give you legal advice. However, please feel free to have your attorney contact me at his/her convenience and I would be happy to discuss not only the matter generally, but any legal issue specifically. If we cannot come to a mutual understanding and agreement I would be happy to put your attorney in touch with my attorneys (I keep three on retainer so I need to keep them busy) and I am sure we can resolve any confusion you have about the law or how we can implement the law.

When we spoke on Monday - you stated that you did not yet have a place to move your things -- and you were still working on getting a truck. So it was my understanding that you could not have completed a move on the 11th, 12th or 13th. Also, storage fees, as you know, are an issue and we cannot make the place available to you until we receive storage fees. It was my understanding that you were not prepared to make payment on the 11th, 12th or 13th. In addition to the above, it was also my understanding that you only wanted to pick up a few select items without paying any storage fees. As you know, we can't do that and since you are familiar with the code, you know that the code doesn't require us to do that.

If you have a problem with us directing the order of removal of your personal property, then there are other ways to handle this situation. For instance, we can hold a deposit that is refundable upon the "broom clean" condition of the premises. There are even more ways to handle this, but the point is, we need to make sure that the former tenants do not move back in to the property and that no further damages to the landlord's interests are caused. We are sure you understand that it is both in your and the landlord's interests that the landlord will not have to continue on with a lengthy and expensive process if you do not remove everything.

We assume that you want your things and all we are saying is, "please take *everything*."

If you have legal authority about what "the state requires" regarding "moving and/or storage," please feel free to provide that information to me. Also, your personal property is already "in storage" on site. If we pack and move your home, the costs will attach to any other lien the landlord may have against you for reasonable storage costs and associated costs of sale, and you would have to pay this amount in order to recover your property. So, as you can see, it is better for you to pack and move your own things and it would be in your best interests to do it sooner than later. At this point, through July 20, 2008, the storage fees are $910.00 payable in cash on the 17th at the start of removal.

Thank you, Gerald. I look forward to hearing from you.


```
-----Original Message-----
From: Aprgdj@cs.com [mailto:Aprgdj@cs.com]
Sent: Tuesday, July 15, 2008 2:34 PM
To: allstates@earthlink.net
Subject: RE: 2nd Ave. 2NE of Dolores In Carmel Ca., Request to Enter Property

Brad,per our conversation yesterday and your e-mail, "entry to the property" or
"access to the property" will be in regard to entry for personal property removal
only, if your people prefer to remove the personal items from the property or
home, that is OK with me. The time we wanted to start the move was last Friday
through Saturday, July 11th thru 13th. We are now looking at this Thursday,noon,
July 17th thru 20th. We will have a problem with your company dictating what we
can or cannot take. I've reviewed the civil code concerning personal property and
did not see anything that covered that. Please forward that information to me for
my review if you have it. Our time frame will be what the state requires, we are
```

not able to remove everything in one day.  If this is unacceptable please let us
know ASAP.  The best situation might entail your company moving everything to
storage prior to or after the state required 15 day period.  I look forward to
your response.

Gerald Johnson, 831-915-8339


"allstates" <allstates@earthlink.net> wrote:

>Hi Gerald,

>

>

>

>As you know, our company has been retained to handle the matter of

>"abandoned personal property" at your former premises.  As I have explained

>to our client - you have the right to recover your things, and as you know,

>the landlord has a right to storage fees.  The Landlord not only has an

>obligation to make your things available for removal, but we would very much

>encourage you to make the appropriate arrangements.  This would be a far

>better resolution than selling your personal property at auction.  So...

>let's work towards this common goal.

>

>

>

>I am confused about your "request to enter" the property.  I assume what you

>mean is you are ready, willing and able to move your things from the

>premises.  We would be happy to help facilitate this effort -- if you have

>any other interest in entering the property, please be kind enough to

>explain this request.  Otherwise, I would like to hear from you regarding a

>day and time when you will start the "move out" and an idea as to how long

>you think it will take.  When I get a target date, I will be happy to supply

>you with the storage fees.

>

>

>

>Regarding the "move out", we will retain the right to direct the order of

>removal of items from the premises and/or charge a refundable deposit that

>will be refunded upon a "broom clean" condition.  Storage fees will continue

>to accrue until you have cleared out the premises.

>

>

>

>I look forward to hearing from.

>

>

>

>Sincerely,

>

>

>

>Brad

>

>

>

>

>

>    _____

>

>From: Aprgdj@cs.com [mailto:Aprgdj@cs.com]

>Sent: Saturday, July 12, 2008 1:11 PM

>To: allstates@earthlink.net; info@allstateauctions.com

>Subject: 2nd Ave. 2NE of Dolores In Carmel Ca., Request to Enter Property

>

>

>

>Brad,

>My name is Gerald Johnson and this is a request to enter the above

>referenced property.  I spoke with Carol Crandall on Friday, July 11th, for

>entry.  She returned my call today and said I should make the request with

>you.  If you would like to set up a time that is convenient please call me

>at any time at 831-915-8339 or e-mail me at aprgdj@cs.com.

>

>Gerald & Deborah Johnson, 831-915-8339

>

>

**Gerald  Johnson**

| | |
|---|---|
| **From:** | allstates [allstates@earthlink.net] |
| **To:** | Aprgdj@cs.com |
| **Cc:** | allstates@earthlink.net |
| **Subject:** | Personal Property at 2nd Ave 2 NE of Dolores |
| **Attachments:** | |

**Sent:**  Thu 7/17/2008 8:58 PM

Hi Gerald:


We haven't heard from you about removal of your personal property and the payment of storage fees.  Please contact us.


Marci/Allstates

Gerald  Johnson

| | |
|---|---|
| **From:** | allstates [allstates@earthlink.net] |
| **To:** | Aprgdj@cs.com |
| **Cc:** | allstates@earthlink.net |
| **Subject:** | Re: Personal Property at 2nd Ave 2 NE of Dolores |
| **Attachments:** | |

**Sent:** Sun 7/20/2008 11:49 PM

Hi Gerald-

I am not sure what you mean by the following phrase in your last email: "We made a request that was unacceptable to Brad . . .". If you mean that we could not permit you to remove any personal property without full payment of accrued storage charges, then you are correct. That "offer" was not acceptable.

However, if you are willing to pay the entire amount of accrued storage charges, then please inform me as to exactly what you want to pick up. Please let me know if there are any other "requests" that I am not addressing or that I am not aware of.

Once again, the best resolution which will involve the least expense to you would be for you to set a date and time, pay the storage fees and show up with a truck, help, dollies, boxes and anything else you may need to move. We really would prefer that you recover all your things.

If it should become necessary to process and remove your personal property to a storage facility, and concurrently continue the legal process, the amount which will be required to reclaim your personal property will be substantially increased. As I explained on the phone, once that legal "process" has run its course, we will have no option but to conduct a public sale of your personal belongings.

Brad

**Brad**

**From:** Aprgdj@cs.com [mailto:Aprgdj@cs.com]
**Sent:** Monday, July 21, 2008 11:12 AM
**To:** allstates@earthlink.net
**Subject:** Re: Personal Property at 2nd Ave 2 NE of Dolores

Brad,
We will be unable to meet your requirements of, help, dollies, truck or trucks and the ability to remove everything in one day.  It will be my wife, my daughter and myself with a Volvo station wagon, Nissan Sentra and boxes only.  By your company's expectations, this will not get it done in one day.  My last e-mail suggested that your best option might be to inventory the personal property and move it to storage.

Gerald Johnson, 831-915-8339

**Gerald  Johnson**

| | |
|---|---|
| **From:** | allstates [allstates@earthlink.net] |
| **To:** | Aprgdj@cs.com |
| **Cc:** | allstates@earthlink.net |
| **Subject:** | RE: Personal Property at 2nd Ave 2 NE of Dolores |
| **Attachments:** | |

**Sent:** Mon 7/21/2008 1:19 PM

**Gerald:**

You seem confused about our past communications. It is important to maintain a clear record so that there are no misunderstandings. I have never said you need to move in one day. However, storage charges will continue to accrue until your personal property is removed. All that is necessary is for you to pay the requisite storage fees up to and including your projected "finish moving" date. I will provide you with the amount of storage fees once I receive this finish date. If you complete your move sooner than your projected date, you would be entitled to a refund for the unused storage days.

Regarding how you choose to move, you are free to use whatever tools, vehicles and help you choose. I was only making suggestions of the coordination necessary for a move of this size. When people do not move often, they tend to forget what they may need. I have seen people use a basket on their bicycle. If it will be your wife, your daughter and yourself with a Volvo station wagon, Nissan Sentra and boxes only – then so be it.

This is a relatively simple procedure. If you want to recover your things, please let me know if you are ready, willing and able to pay the storage fees. Upon payment, we will make the premises available to you, you will have as long as you need on a daily basis, and your storage fees will end when you finish your move.

I appreciate your suggestion regarding "options", but I think the best option is for you and your family to pack and move your own things. Among other reasons, it will eliminate additional charges which must be paid to enable you to regain your personal property at a later time.

If there are other reasons prohibiting your ability to move your things, such as money or resources issues, please feel free to discuss them with me. Otherwise I look forward to meeting with you to collect storage fees and to arrange to accommodate your moving plans.

**Gerald Johnson**

| | | | |
|---|---|---|---|
| **From:** | allstates [allstates@earthlink.net] | | |
| **To:** | Aprgdj@cs.com | **Sent:** | Tue 7/22/2008 9:37 AM |
| **Cc:** | | | |
| **Subject:** | RE: Personal Property at 2nd Ave 2 NE of Dolores | | |
| **Attachments:** | | | |

**Hi Gerald!**

Although I have not received a response from you to my latest email, I sense that finances are at the root of your difficulties relating to your plans to retrieve your personal property.

I want to make this as easy as possible. We have billed your former landlord $1,000.00 to undertake the processing (which includes inventorying and packing the personal property you left upon the premises) in preparation for its removal from the premises to an appropriate commercial storage location. Additional costs for actually hiring moving and storage professionals to remove the personal property to a commercial storage location would be in addition to those charges.

I believe that you are serious about recovering your property, which probably includes many things of little or no commercial value, but which mean much to you and your family. I have contacted your former landlord to let him know that we are willing to reduce our fees to the value of the time we have actually spent in processing this case so far, and in negotiating with you regarding the recovery of your property. Although the "fair rental value" of storing the property on site so far is the sum we have set forth in previous emails as a cap to our itemized charges, we are willing, as an accommodation to you, to reduce our charges to your former landlord to the sum of $500.00, if that will assist you in reclaiming your property. We have found that many people in your situation endure much heartache, and a former landlord endures much expense, unless every effort is made to accommodate the interests of both parties.

Please let me know if you are willing to pay this amount to recover your property, and if not, what we can do to help you. An auction rarely recovers more than a landlord has expended, and we do not wish you to lose things which may be priceless to you, but which have no commercial value to anyone else. We can talk later about reasonable arrangements for removing the property (by means of your Volvo and family members, or whatever) if you can pay even this reduced sum which your former landlord will have incurred if, by your acceptance of this arrangement, we reduce our charges to your former landlord.

**Brad**

**Gerald  Johnson**

| | | | |
|---|---|---|---|
| **From:** | allstates [allstates@earthlink.net] | **Sent:** | Fri 7/25/2008 12:05 PM |
| **To:** | Aprgdj@cs.com | | |
| **Cc:** | allstates@earthlink.net | | |
| **Subject:** | Personal Property at 2nd Ave 2 NE of Dolores | | |
| **Attachments:** | | | |

**Hi Gerald:**

**I have had conversations with "the bank" and they have agreed to forego all storage fees in exchange for the immediate removal of your personal property.**

**The bank has agreed to give you through next weekend (August 3rd, 2008).  If your personal property is not picked up by then, I have been instructed to proceed with the "Abandoned Personal Property" process.  If you want your things without paying storage costs, I strongly urge you to make the necessary arrangements to move out before the 3rd.   Please contact us with a date and time that you want to move.**

**Thanks, Brad/Allstates**

# EXHIBIT "H"

# FIRST FEDERAL BANK
## OF CALIFORNIA
401 WILSHIRE BLVD
SANTA MONICA CA 90401

## Late Notice

Account Number:                49792970

Notice Date:                   04/23/07

Address Service Requested

*TRISH@ SWEAT HAPPENS.Com*
*230 - 3:00  THURS-*
*663-16626*
*93F-320-5419*

DEBORAH E JOHNSON
PO BOX 4448
CARMEL, CA 93921

For the property located at:
2ND AVE 2NE OF DOLORES STREET*
CARMEL         CA

346-21

## Important Reminder

We have not received your mortgage payment due 04/01/07. As a result, a late fee has been assessed against your loan. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults may be reflected in your credit report. To protect your credit and avoid adverse credit reporting, please remit your payment immediately.

Should you need to make arrangements to bring your loan current, please contact a customer service representative at 800-637-5540. If you have already made the payment, please disregard this notice.

*5 Attn: SUZIE*

*310-319-5736*
*310-319-5717*
*3610.16*
*204 34*

---

Please Detach and Return This Portion With Your Payment. Do Not Send Cash.

# FIRST FEDERAL BANK
## OF CALIFORNIA

## Late Notice

| | |
|---|---|
| Account Number | 49792970 |
| Total Amount Due | $3,930.89 |
| Additional Principal Payment | $_____ |
| Additional Escrow Payment | $_____ |
| Other | $_____ |
| Total Amount Enclosed | $_____ |

Borrower:      DEBORAH E JOHNSON

Make payments to:

FIRST FEDERAL BANK OF CA
401 WILSHIRE BLVD
SANTA MONICA CA 90401

**FIRST FEDERAL BANK**
OF CALIFORNIA
401 WILSHIRE BLVD
SANTA MONICA CA 90401

# Late Notice

| Account Number: | 49792970 |
|---|---|
| Notice Date: | 05/21/07 |

Address Service Requested

For the property located at:

2ND AVE 2NE OF DOLORES STREET*
CARMEL          CA

DEBORAH E JOHNSON
PO BOX 4448
CARMEL, CA 93921

383-21

## Important Reminder

We have not received your mortgage payment due 05/01/07. As a result, a late fee has been assessed against your loan. We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults may be reflected in your credit report. To protect your credit and avoid adverse credit reporting, please remit your payment immediately.

Should you need to make arrangements to bring your loan current, please contact a customer service representative at 800-637-5540. If you have already made the payment, please disregard this notice.

Please Detach and Return This Portion With Your Payment. Do Not Send Cash.



**FIRST FEDERAL BANK**
OF CALIFORNIA

Late Notice

Borrower:    DEBORAH E JOHNSON

| Account Number | 49792970 |
|---|---|
| Total Amount Due | $13,102.77 |
| Additional Principal Payment | $ |
| Additional Escrow Payment | $ |
| Other | $ |
| Total Amount Enclosed | $ |

Make payments to:

**FIRST FEDERAL BANK OF CA**
**401 WILSHIRE BLVD**
**SANTA MONICA CA 90401**

# FIRST FEDERAL BANK
### OF CALIFORNIA®

CORPORATE OFFICE: 401 WILSHIRE BLVD. • SANTA MONICA, CA 90401 • (310) 319-6000

05/23/07

DEBORAH E JOHNSON

PO BOX 4448

CARMEL CA 93921

RE: Mortgage Account Number: 0049792970
    Returned Check

Dear Borrower(s):

Your check number 5355   in the amount of $3610.16
has been returned by your Bank unpaid for the reason indicated
on your check.  A fee of $20.00  has been assessed
against your account for the returned check.

The amount due to bring your account current at this time is
$    16472.66. Please note that your remittance must
include any subsequent payments or fees that may become due.
Please send your check to:

             First Federal Bank of California
             401 Wilshire Blvd.
             Santa Monica, CA 90401
             Attention: Loan Service Department .

Please be advised, we report information about your account to
credit bureaus. Late payments, missed payments, or other
defualts on your account may be reflected in your credit
report.If you have any questions, please contact a customer
service representative at (310) 319-5700.

Sincerely,

Loan Service Representative

**FIRST FEDERAL BANK** OF CALIFORNIA®
*YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®*

## MONTHLY STATEMENT

PROPERTY ADDRESS:  2ND AVE 2NE OF DOLORES STREET*
CARMEL CA 93921

15548

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

| | |
|---|---|
| Loan Number: | 0048792970 |
| Statement Date: | |
| Interest Paid To | 05/18/07 |
| Payment Due | 04/01/07 |
| Past Due Amount | 05/01/07 |
| Next Due Date | $12,832.00 |
| Next Interest Rate | 06/01/07 |
| Next Note Amount P&I Payment** | 9.12400 |
| Next Escrow Payment | $3,405.82 |
| Next Optional Insurance Payment | $ .00 |
| Next Fee Receivable Payment | $ .00 |
| Next Payment Due | $3,405.82 |
| **Total Amount Due** | **$16,237.82** |

** May not include all accrued interest or principal,
if negative amortization is occurring on your loan.

| | |
|---|---|
| Principal Balance | $888,519.12 |
| Fee Receivable Balance | $9,221.84 |
| Uncollected Late Charges* | $ .00 |
| Escrow Balance | $ .00 |
| Unapplied Funds Balance | $ .00 |
| Interest Paid YTD | $13,623.28 |
| Escrowed Taxes Paid YTD | $ .00 |

* Late Charges Due on Prior Payments Posted

06/01/07 Alternative Payment Options:
Projected Interest Only Payment                    $6,763.76
Projected Fully Amortizing Payment                 $7,338.96

If you pay the Principal Balance shown on this statement, or you are making your last regularly scheduled payment, you will still have a balance due of interest accrued from the date of your last payment to the date we receive your payment, plus any unpaid additional fees and/or charges that may have been incurred but are not yet paid.

Any Past Due Amount is immediately due and payable. Non-payment of amounts due constitutes a default and your loan is subject to collection remedies. If you pay the Next Payment Due, but do not pay the Past Due Amount, your payment will be insufficient to cure the default and your current payment may not be applied. If you send less than the Total Amount Due, it may delay the application of your payment.

Payment must be received by the close of business 06/16/07 or a late charge of $204.34 will be assessed. Amounts paid in excess of the Total Amount Due will be applied to your account according to the provisions of your loan documents.



See Reverse Side For Additional Important Information

---

**FIRST FEDERAL BANK** OF CALIFORNIA®
*YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®*

## PAYMENT COUPON

LOAN NUMBER: 0048792970
STATEMENT DATE: 05/18/07

DEBORAH E JOHNSON
PO BOX 4448
CARMEL CA 93921-4448

FIRST FEDERAL BANK OF CALIFORNIA
PO BOX 80025
CITY OF INDUSTRY CA 91716-8025

| | |
|---|---|
| TOTAL AMOUNT DUE | $16,237.82 |
| DUE DATE | JUN 01, 07 |
| TOTAL AMOUNT DUE AFTER 06/16/07 | $16,442.16 |

Please specify additional funds here.
Any additional funds not specified will be applied according to the provisions of your loan documents.

TOTAL AMOUNT DUE $ 16,237.82

ADD'L PRINCIPAL: $ _____

ADD'L ESCROW: $ _____

OTHER: _____ $ _____

TOTAL AMOUNT ENCLOSED:

$ _____

2290049792970 001623782 001644216 2

**FIRST FEDERAL BANK** OF CALIFORNIA®
YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®

PROPERTY ADDRESS:     2ND AVE 2NE OF DOLORES STREET*
                      CARMEL CA 93921

## MONTHLY STATEMENT

| | |
|---|---|
| Loan Number: | 0049792970 |
| Statement Date: | 06/18/07 |
| Interest Paid To | 03/01/07 |
| Payment Due | 04/01/07 |
| Past Due Amount | $10,974.68 |
| Next Due Date | 07/01/07 |
| Next Interest Rate | 9.13800 |
| Next Note Amount P&I Payment** | $3,661.26 |
| Next Escrow Payment | $ .00 |
| Next Optional Insurance Payment | $ .00 |
| Next Fee Receivable Payment | $ .00 |
| Next Payment Due | $3,661.26 |
| Total Amount Due | $14,635.94 |

1285  RE

DEBORAH E JOHNSON
PO BOX 4448
CARMEL  CA  93921-4448

** May not include all accrued interest or principal, if negative amortization is occurring on your loan.

| | |
|---|---|
| Principal Balance | $885,272.85 |
| Fee Receivable Balance | $144.20 |
| Uncollected Late Charges* | $ .00 |
| Escrow Balance | $ .00 |
| Unapplied Funds Balance | $ .00 |
| Interest Paid YTD | $10,217.46 |
| Escrowed Taxes Paid YTD | $ .00 |

* Late Charges Due on Prior Payments Posted

07/01/07 Alternative Payment Options:
Projected Interest Only Payment        $6,806.38
Projected Fully Amortizing Payment     $7,385.94

If you pay the Principal Balance shown on this statement, or you are making your last regularly scheduled payment, you will still have a balance due of interest accrued from the date of your last payment to the date we receive your payment, plus any unpaid additional fees and/or charges that may have been incurred but are not yet paid.

Any Past Due Amount is immediately due and payable. Non-payment of amounts due constitutes a default and your loan is subject to collection remedies. If you pay the Next Payment Due, but do not pay the Past Due Amount, your payment will be insufficient to cure the default and your current payment may not be applied. If you send less than the Total Amount Due, it may delay the application of your payment.

Payment must be received by the close of business 07/16/07 or a late charge of $219.67 will be assessed. Amounts paid in excess of the Total Amount Due will be applied to your account according to the provisions of your loan documents.



### See Reverse Side For Additional Important Information

**FIRST FEDERAL BANK** OF CALIFORNIA®
YOU'RE MORE THAN A CUSTOMER, YOU'RE A CLIENT®

LOAN NUMBER: 0049792970
STATEMENT DATE: 06/18/07

DEBORAH E JOHNSON
PO BOX 4448
CARMEL  CA  93921-4448

FIRST FEDERAL BANK OF CALIFORNIA
PO BOX 80025
CITY OF INDUSTRY CA 91716-8025

## PAYMENT COUPON

Please specify additional funds here. Any additional funds not specified will be applied according to the provisions of your loan documents.

| | |
|---|---|
| TOTAL AMOUNT DUE | $14,635.94 |
| DUE DATE | JUL 01, 07 |
| TOTAL AMOUNT DUE AFTER 07/16/07 | $14,855.61 |

TOTAL AMOUNT DUE $     $14,635.94

ADD'L PRINCIPAL:     $

ADD'L ESCROW:     $

OTHER:     $

TOTAL AMOUNT ENCLOSED:
$

# EXHIBIT "I"

## DECLARATION OF CAROL A. BAXTER
## IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, CAROL A. BAXTER, hereby declare as follows:

1.    I am employed by First Federal Bank of California (hereinafter, "Movant") as its Senior Vice President, Loan Service Department. I am a custodian of the books, records and files of Movant, as those records pertain to loans or extensions of credit by Movant to Deborah Elizabeth Johnson (hereinafter, "Respondent"). I have personally worked on said records, and as to the facts contained herein, I know them to be true of my own personal knowledge or I have gained knowledge of them from the records of Movant which are prepared and maintained in the ordinary course of its business, at or near the time of the acts or occurrences depicted or represented by such records. If called upon as a witness, I could and would competently testify to the fact contained herein, as I have personal knowledge thereof.

2.    The records of Respondent are made in the ordinary course of Movant's business by persons with a business duty to Movant to make such records. The records were made at or near the time of the occurrence of the event which they purport to memorialize.

3.    Movant's records are kept on a computer system and organized by account number, including records of all contacts made by entities or individuals involved in a particular loan transaction. Similarly, a record of all payments received by Movant are input into Movant's computer system indicating the date on which the payment was received, its application to an outstanding loan, the balance remaining due and owing after application of such proceeds, and whether a late charge is applicable based upon the date the payment was made.

4.    Movant's books and records for Respondent's accounts herein were kept in the manner described above.

5.    Among the assets which purportedly are part of the Respondent's estate is certain real property commonly known as 2nd Avenue 2NE of Dolores Street, Carmel, California 93921 (hereinafter, "Property").

6.    On May 5, 2005, Respondent made, executed and delivered to Movant a

8

promissory note (hereinafter, "Note") in the face amount of $840,000.00 which Note required

monthly payments beginning in the amount of $3,661.26. A true and correct copy of the Note is

attached hereto as Exhibit "1" and incorporated herein by this reference as though set forth in

full.

       7.   Concurrently with the execution of the Note, and to secure payment of the

principal sum and interest as provided in the Note, Respondent executed and delivered to

Movant, as beneficiary, a certain Deed of Trust with Assignment of Rents dated May 5, 2005,

(hereinafter, "Deed of Trust"). The Deed of Trust was duly recorded on May 16, 2005 as

Instrument No. 2005-048551, Official Records of Monterey County, California. A true and

correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by

this reference as though set forth in full.

       8.   Respondent has defaulted on her obligations under the Note and Deed of

Trust in failing to make payments due under the Note as and when due.

       9.   My review of Movant's records reflects that unpaid principal under the

Note as of the petition date was $962,311.64.

       10.   Respondent last made payment on May 23, 2007. At the time of the filing

of the bankruptcy petition on November 7, 2007, the Respondent was eight payments in arrears,

for April through November, 2007. The pre-petition arrearage including late charges is

$77,038.79. In addition, Respondents has failed to make any post-petition monthly payments

coming due. As of the date of this Motion, payments and late charges are in arrears in an amount

not less than $80,919.72 including payment for December, and this amount will have increased

by another $3,661.26 by the date of the hearing on this Motion, for total post-petition defaults of

not less than $80,919.72. Movant estimates attorneys' fees compensable under the Note of

$3,000. Therefore, by the date of the hearing on this Motion, Respondent's liability on account

of her obligations under the Note shall be not less than $962,311.64.

       11.   Movant holds the first priority deed of trust on the property. I am

informed that the second mortgage is held by National City, with a balance of approximately

///

9

1 | $176,407.64.

2    12.    Movant's current appraisal shows the value of the Property to be no more

3 | than $1,050,000.00. In foreclosing upon and reselling the Property, based on my experience in

4 | connection with loans on residential real property, Movant would incur real estate commissions

5 | totaling 6% of sales price and estimated costs of sale of 10% of the total sale price. It is my

6 | opinion that sale of the Property would result in the following:

7 |         Sale:              $1,050,000.00

8 |         Cost of Sale (approx):$  105,000.00

9 |         Net:             $  945,000.00

10 |        **LESS:**

11 |        Movant's Liens    $ 962,311.64

12 |        Lien of National City $ 176,407.64

13 |        Equity to Estate:  $ (193,719.28)

14 |    13.    Considering the amount of the indebtedness secured by the Property and

15 | the costs of sale which would be incurred in selling the Property, there is no equity which could

16 | be realized from the Property for the benefit of the Respondents' estate.

17 |         I declare under penalty of perjury under the laws of the United States of

18 | America that the foregoing is true and correct.

19 |         Executed on January $3$, 2008, at Santa Monica, California.

20

21

22

23 |         CAROL A. BAXTER
          Declarant

24

25

26

27

28

10

EXHIBIT "J"

Bay Cities Appraisals (831)663-6626

Summary Appraisal Report                                                    File No. 07-GF8719 Page 1 of 6
0017116NVS07

# Uniform Residential Appraisal Report
File # 07-GF8719

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | City CARMEL | State CA | Zip Code 93921 |
|---|---|---|---|---|

| Borrower JOHNSON GERALD D/JOHNSON DEBORA | Owner of Public Record JOHNSON GERALD D/JOHNSON [ | County MONTEREY |
|---|---|---|

Legal Description  VOL 14 PAR MAPS PG 58 PAR B

| Assessor's Parcel # 010-126-022 | Tax Year 06/07 | R.E. Taxes $ 4,057.90 |
|---|---|---|
| Neighborhood Name CARMEL BY THE SEA | Map Reference 1153E1 | Census Tract 0117.00 |

| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ | ☐ PUD | HOA $ | ☐ per year | ☐ per month |
|---|---|---|---|---|---|

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe)

Lender/Client NOVASTAR MORTGAGE, INC.    Address 7070 SAMUEL MORSE DRIVE, SUITE 200, COLUMBIA, MD 21046

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).  MLS/dataquick

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

## Neighborhood Characteristics

| Location ☐ Urban ☒ Suburban ☐ Rural | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE  AGE | One-Unit 80 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)  (yrs) | 2-4 Unit  % |
| | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 795 Low New | Multi-Family  % |
| | | 4,000 High 99 | Commercial 20 % |
| | | 1,500 Pred. 60 | Other  % |

Neighborhood Boundaries  Carmel City limits to the north, Highway 1 to the east, Carmel River to the south and the Pacific Ocean to the west.

Neighborhood Description  The subject is located in popular Carmel By The Sea, a vacation destination; single family homes of average to excellent quality, design and appeal, many second or vacation homes, with hotels and motels interspersed, local and ocean views; within walking distance to the downtown area of shops and restaurants with world class golf courses to the north in Pebble Beach,many beach and park points of interest.

Market Conditions (including support for the above conclusions)  Market conditions in the area considered are average to slow; financing is predominately conventional with some buydowns and concessions of seller paid closing costs noted.Real estate values increased through summer 2005 per MLS/local agents and analysis of sales; marketing time has increased along with listing inventory, reductions in list and sales prices noted.

| Dimensions See Plat Map | Area 3,999 +-sq.ft. | Shape Rectangle | View Forest/Ocean Peek |
|---|---|---|---|

Specific Zoning Classification R1    Zoning Description single family residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements — Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Macadam | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 0602000005B  FEMA Map Date 06/17/86

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

No adverse easements/encroachments noted. A complete title report was not available for appraiser's review & no geotechnical/seismology data was provided to the appraiser(extraordinary assumptions made). Subject site is gently sloped up from street level. Ocean Peek views from the deck, dining and upstairs bedroom.No addresses are used in the city. Direction and cross streets only.

## General Description

| Units ☒ One ☐ One with Accessory Unit | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| # of Stories 2 | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls Concrete/Avg. | Floors Hrdwd/Vinyl/Crpt/G |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☒ Full Basement ☐ Partial Basement | Exterior Walls Wood/Avg.+ | Walls Shtrk/Avg.+ |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Area 121 sq.ft. | Roof Surface Tile/Good | Trim/Finish Wood/Avg.+ |
| Design (Style) Cottage | Basement Finish 0 % | Gutters & Downspouts Adequate/G | Bath Floor Vinyl/Avg.+ |
| Year Built 1940 | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type DP/Wood/G-A+ | Bath Wainscot Tile/Leg tubs/A+ |
| Effective Age 25yrs. | Evidence of ☐ Infestation | Storm Sash/Insulated No | Car Storage ☐ None |
| Attic ☐ None | ☐ Dampness ☐ Settlement | Screens Yes/Good | ☒ Driveway  # of Cars 1 |
| ☐ Drop Stair ☐ Stairs | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface Macadam |
| ☐ Floor ☒ Scuttle | ☐ Other  Fuel Gas | ☐ Woodstove(s) # | ☐ Garage  # of Cars |
| ☐ Finished ☐ Heated | Cooling ☐ Central Air Conditioning | ☒ Fireplace(s) # 1 ☒ Fence wood | ☐ Carport  # of Cars |
| | ☐ Individual ☐ Other | ☒ Patio/Deck fig/stn ☒ Porch wood | ☐ Att. ☐ Det. ☒ Built-in |
| Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☐ Microwave | | ☐ Pool ☐ Other | ☐ Washer/Dryer ☐ Other (describe) |

Finished area above grade contains:  5 Rooms  2 Bedrooms  2 Bath(s)  1,249 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  See attached addenda.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The subject is in average plus overall condition with ongoing maintenance and updating. Modernization: all new hardwood flooring in living, dining and kitchen; kitchen completely remodeled with new drains, appliances, cabinets and flooring; new bath fixtures, sinks, refinished leg tubs and flooring in baths; new interior and exterior paint, new decking and patios, new 50 year composite tile roof, new FAU, all new dual paned windows and sliding doors except decorative wood, lighted windows in living room.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe
This report is not a home inspection, the appraiser only performed a visual inspection of accessable areas

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Freddie Mac Form 70 March 2005                    Page 1 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07-GF6719 Page #2
0017116NVS07
File # 07-GF8719

## Uniform Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| There are 27 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 1,000,000 to $ 1,600,000 | | | | | | | |
| There are 38 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,000,000 to $ 1,600,000 | | | | | | | |
| Address | 2ND AVENUE & 2ND N DOLORE CARMEL, CA 93921 | SE Corner Lincoln & 1st Carmel | | 2 SE Torres & 5th Street Carmel | | 2 SW Perry Newberry & Fifth Carmel | |
| Proximity to Subject | | 0.08 miles | | 0.36 miles | | 0.57 miles | |
| Sale Price | $ N/A | $ 1,475,000 | | $ 1,415,000 | | $ 1,233,500 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 1156.86 sq.ft. | | $ 975.86 sq.ft. | | $ 883.60 sq.ft. | |
| Data Source(s) | | Dataquick/MLS673127 | | Dataquick/MLS632713 | | Dataquick/MLS708383 | |
| Verification Source(s) | | Curb inspection | | Curb inspection | | Curb inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conv. | | Conv. | | Conv. | |
| Concessions | | Doc.#21275 | | Doc.#25901 | | Doc.#29704 | |
| Date of Sale/Time | | Rec. 03/15/07 | | Rec.03/30/07 | | Rec. 04/13/07 | |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 3,999 +-sq.ft. | 4000sq.ft. | | 4000sq.ft. | | 4875sq.ft. | |
| View | Forest/Ocean Pe | Forest/OceanPk | | Forest/local | +35,000 | Forest/Local | +35,000 |
| Design (Style) | Cottage | Bungalow | | Cottage | | Bungalow | |
| Quality of Construction | Average | Better | -50,000 | Average | | Average | |
| Actual Age | 67yrs./Remodel | 88yrs./Remodel | | 68yrs./Remodel | -50,000 | 53yrs./Update | +45,000 |
| Condition | Good | Lit.better | -25,000 | Superior | -50,000 | Average | +35,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5    2    2 | 5    2    2 | | 5    2    2.5 | -15,000 | 5    2    2 | |
| Gross Living Area | 1,249 sq.ft. | 1,275 sq.ft. | | 1,450 sq.ft. | -30,150 | 1,396 sq.ft. | -22,050 |
| Basement & Finished | 121 Sq.Ft. | Similar | | Similar | | Similar | |
| Rooms Below Grade | APN#s | 010-127-023 | | 010-092-014 | | 009-163-002 | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | FAU/no | FAU/None | | FAU/None | | FAU/None | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 1 Builtin | 2 Attached | | None | +20,000 | 1 Detached | |
| Porch/Patio/Deck | FlagsmPatio/Dks | Patio,encl.deck | -20,000 | Decks | | Patios | |
| | 1 Fireplace | 1 Fireplace | -10,000 | 2 Fireplaces | -10,000 | 1 Fireplace | |
| Net Adjustment (Total) | | ☐ + ☒ - $ 105,000 | | ☐ + ☒ - $ 100,150 | | ☒ + ☐ - $ 92,950 | |
| Adjusted Sale Price of Comparables | | Net Adj.     7.1 % Gross Adj.   7.1 % | $ 1,370,000 | Net Adj.     -7.1 % Gross Adj.  14.9 % | $ 1,314,850 | Net Adj.     7.5 % Gross Adj.  11.1 % | $ 1,326,450 |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS/dataquick
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Dataquick/MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/17/1995 | 06/29/06 | 01/06/05 | 04/12/00 |
| Price of Prior Sale/Transfer | 285,000 | 1,495,000 | 1,575,000 | 795,000 |
| Data Source(s) | Dataquick | Dataquick | Dataquick | Dataquick |
| Effective Date of Data Source(s) | 05/21/07 | 05/21/07 | 05/21/07 | 05/21/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales       Comp#1 sold in 2006 as noted above.

Summary of Sales Comparison Approach    The subject property is compatible with the highly subjective neighborhood where values differ widely block to block and house to house. Home are varied in age and quality with design and appeal of great import. The comparables used are the most reasonable sales noted in the area considered close in size, age, land, location and quality. Comp#1 is a recent sale close in sq.footage, room count and amenities with adjustments for more updating and superior garages and patios.Comp#2 is a recent sale adjusted for inferior views, recent,complete remodel, superior bath count, sq.footage and fireplaces, inferior parking. Comp#3 is the most recent sale adjusted for inferior views, updating, remodeling and condition, larger sq.footage. Comp#4 is a current sale close in proximity with adjustments for superior remodeling, condition, room count and sq.footage. Adjustments are derived from paired sales analysis.  The final estimated value is well bracketed with the pre and post adjusted sales comparables.

Indicated Value by Sales Comparison Approach $   1,350,000
Indicated Value by: Sales Comparison Approach $ 1,350,000    Cost Approach (if developed) $ 1,297,326    Income Approach (if developed) $ N/A
Scope of Work: As stated on page four; perusal of listings and pendings in the area due to the settling market. Determine level of upgrading in comparables.

This appraisal is made ☒ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,350,000 , as of  05/17/07 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                      Page 2 of 6                      Fannie Mae Form 1004 March 2005

File No. 07-GF8719 Page #31
0017116NVS07

# Uniform Residential Appraisal Report
File # 07-GF8719

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Land/improvement ratio is typical to the area
where land value can exceed value of depreciated improvements due to high demand. Two old sales were noted at NW corner Junipero&8th - .04
lot size sold 02/03/06 at $900000., 5 NW Casanova/Ocean - .13 lot size sold 5/22/04 at $1450000 with an ocean view. No newer sales noted,
some withdrawn and expired within this range.

ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW

| | | | | |
|---|---|---|---|---|
| Source of cost data  Marshall & Swift and/or local builders/contractors | OPINION OF SITE VALUE | | =$ | 1,000,000 |
| Quality rating from cost service  Average   Effective date of cost data  05/21/07 | DWELLING | 1,249  Sq.Ft. @ $   280.00 | =$ | 349,720 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | 121  Sq.Ft. @ $ | =$ | |
| At the request of the client,development of the cost approach has been | Bsmnt./storage/laundry/patios,decks | | =$ | 25,000 |
| attempted by the appraiser as an analysis to support their opinion of the | Garage/Carport | 250  Sq.Ft. @ $   75.00 | =$ | 18,750 |
| property's market value.Because there is insufficient market evidence to | Total Estimate of Cost-New | | =$ | 393,470 |
| credibly support the site value/derivation of total appreciation,the cost | Less      Physical       Functional      External | | | |
| approach is not given any consideration in the appraiser's final | Depreciation      131,144 | | =$( | 131,144) |
| analysis.Use of this data for other purposes is not intended by the | Depreciated Cost of Improvements | | =$ | 262,326 |
| appraiser. | "As-is" Value of Site Improvements | | =$ | 35,000 |
| Estimated Remaining Economic Life (HUD and VA only)          40 Years | INDICATED VALUE BY COST APPROACH | | =$ | 1,297,326 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | |
|---|---|---|
| Estimated Monthly Market Rent $ | X Gross Rent Multiplier          = $ | Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM) | | |

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes  ☐ No    Unit type(s) ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases                          Total number of units                          Total number of units sold
Total number of units rented                Total number of units for sale                Data source(s)
Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes  ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units? ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete? ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 07-GF8719

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 07-GF8719  Page #5
0017116NVS07
File # 07-GF8719

## Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No. 07-GF8719   Page #6
0017116NVS07
File # 07-GF8719

# Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| PATRICIA BIAGINI | |
| Signature | Signature |
| Name  Patricia Biagini (Note: digital signature) | Name |
| Company Name  Bay Cities Appraisal | Company Name |
| Company Address  16238 Vierra Canyon Road | Company Address |
| Salinas, Calif. 93907 | |
| Telephone Number  831-663-6626 | Telephone Number |
| Email Address | Email Address |
| Date of Signature and Report  May 23, 2007 | Date of Signature |
| Effective Date of Appraisal  05/17/07 | State Certification # |
| State Certification #  AR004261 | or State License # |
| or State License # | State |
| or Other (describe)                   State # | Expiration Date of Certification or License |
| State  California | |
| Expiration Date of Certification or License  3/18/2009 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 2ND AVENUE & 2ND N DOLORES STREET | Date of Inspection |
| CARMEL, CA 93921 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,350,000 | Date of Inspection |
| LENDER/CLIENT | |
| Name | COMPARABLE SALES |
| Company Name  NOVASTAR MORTGAGE, INC. | |
| Company Address  7070 SAMUEL MORSE DRIVE, SUITE 200, | ☐ Did not inspect exterior of comparable sales from street |
| COLUMBIA, MD 21046 | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File No. 07-GF8719  Page #2
0017116NVS07
File # 07-GF8719

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | | COMPARABLE SALE #5 | | | COMPARABLE SALE #6 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE & 2ND N DOLORE CARMEL, CA 93921 | NE Corner Lincoln Street Carmel | | | | | | | | |
| Proximity to Subject | | 0.08 miles | | | | | | | | |
| Sale Price | $ N/A | | $ 1,660,000 | | | $ | | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 1121.62 sq.ft. | | | $ sq.ft. | | | $ sq.ft. | | |
| Data Source(s) | | Dataquick/MLS661914 | | | | | | | | |
| Verification Source(s) | | Curb inspection | | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | | DESCRIPTION | +(-) $ Adjustment | | DESCRIPTION | +(-) $ Adjustment | |
| Sales or Financing | | Conv. | | | | | | | | |
| Concessions | | Doc.#7805 | | | | | | | | |
| Date of Sale/Time | | Rec. 01/30/07 | | | | | | | | |
| Location | Good | Good | | | | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | | | | |
| Site | 3,999 +-sq.ft. | 4000sq.ft. | | | | | | | | |
| View | Forest/Ocean Pe | Forest/Sim | | | | | | | | |
| Design (Style) | Cottage | Cottage | | | | | | | | |
| Quality of Construction | Average | Better | -75,000 | | | | | | | |
| Actual Age | 67yrs./Remodel | 50yrs./BtrRemdl | -75,000 | | | | | | | |
| Condition | Good | Superior | -75,000 | | | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | | Total Bdrms. Baths | | | Total Bdrms. Baths | | |
| Room Count | 5 2 2 | 6 3 2 | -10,000 | | | | | | | |
| Gross Living Area | 1,249 sq.ft. | 1,480 sq.ft. | -34,650 | | sq.ft. | | | sq.ft. | | |
| Basement & Finished | 121 Sq.Ft. | Similar | | | | | | | | |
| Rooms Below Grade | APN#s | 010-128-007 | | | | | | | | |
| Functional Utility | Average | Average | | | | | | | | |
| Heating/Cooling | FAU/no | Radiant/No | | | | | | | | |
| Energy Efficient Items | Standard | Standard | | | | | | | | |
| Garage/Carport | 1 Builtin | 1 Builtin | | | | | | | | |
| Porch/Patio/Deck | FlastnPatio/Dks | Patios | | | | | | | | |
| | 1 Fireplace | 2 Fireplaces | -10,000 | | | | | | | |
| Net Adjustment (Total) | | □ + ☒ - $ | 279,650 | | □ + □ - $ | | | □ + □ - $ | | |
| Adjusted Sale Price | | Net 16.8 % | | | Net % | | | Net % | | |
| of Comparables | | Gross 16.8 % $ | 1,380,350 | | Gross % $ | | | Gross % $ | | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 03/17/1995 | 10/30/02 | | |
| Price of Prior Sale/Transfer | 285,000 | 1,450,000 | | |
| Data Source(s) | Dataquick | Dataquick | | |
| Effective Date of Data Source(s) | 05/21/07 | 05/21/07 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

Form 1004 (AC) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

**Comparable Photo Page**

File No. 07-GF68739L Page #

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | |
|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND.N DOLORES STREET | | | |
| City CARMEL | | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | | |



### Comparable 4

NE Corner Lincoln Street

| | |
|---|---|
| Prox. to Subject | 0.08 miles |
| Sale Price | 1,660,000 |
| Gross Living Area | 1,460 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Sim |
| Site | 4000sq.ft. |
| Quality | Better |
| Age | 50yrs./BtrRemdl |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Subject Interior Photo Page

File No. 07-GF8719| Page #9|

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | |



**Subject Interior**

2ND AVENUE & 2ND N DOLORES STRE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |

DOWNSTAIRS BATH

**Subject Interior**

UPSTAIRS
BEDROOM

**Subject Interior**

Subject Interior Photo Page

File No. 07-GF8719 Page #10

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | |
|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | |
| City | CARMEL | County | MONTEREY | State CA |
| Lender | NOVASTAR MORTGAGE, INC. | | | Zip Code 93921 |



### Subject Interior

2ND AVENUE & 2ND N DOLORES STRE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |

LIVING ROOM



### Subject Interior

KITCHEN



### Subject Interior

DOWNSTAIRS
BEDROOM

Form PIC3x5.SI — "TOTAL for Windows" appraisal software by a la mode, inc — 1-800-ALAMODE

Subject Photo Page

File No. 07-GF8719 Page #11

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | |
|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | |
| City CARMEL | | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | | |



**Subject Front**

2ND AVENUE & 2ND N DOLORES STRE

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,249 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | Good |
| View | Forest/Ocean Peek |
| Site | 3,999 +-sq.ft. |
| Quality | Average |
| Age | 67yrs./Remodel |



**Subject Rear**



**Subject Street**

File No. 07-GF6719  Page #12

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | |



**Comparable 1**
SE Corner Lincoln & 1st
Prox. to Subject    0.08 miles
Sale Price          1,475,000
Gross Living Area   1,275
Total Rooms         5
Total Bedrooms      2
Total Bathrooms     2
Location            Good
View                Forest/OceanPk
Site                4000sq.ft.
Quality             Better
Age                 88yrs./Remodel



**Comparable 2**
2 SE Torres & 5th Street
Prox. to Subject    0.36 miles
Sale Price          1,415,000
Gross Living Area   1,450
Total Rooms         5
Total Bedrooms      2
Total Bathrooms     2.5
Location            Good
View                Forest/local
Site                4000sq.ft.
Quality             Better
Age                 68yrs./Remodel



**Comparable 3**
2 SW Perry Newberry & Fifth
Prox. to Subject    0.57 miles
Sale Price          1,233,500
Gross Living Area   1,396
Total Rooms         5
Total Bedrooms      2
Total Bathrooms     2
Location            Good
View                Forest/Local
Site                4875sq.ft.
Quality             Average
Age                 53yrs./Update

**Supplemental Addendum**

File No. 07-GF8719 Page #17
File No.   07-GF8719

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | | |
|---|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | | |
| City | CARMEL | County | MONTEREY | State CA | Zip Code 93921 |
| Lender | NOVASTAR MORTGAGE, INC. | | | | |

**• URAR : Additional Features**

Builtin, one car garage at street level; Upstairs from street level to treck decking; hardwood entry; vaulted bleached, pine ceiling,lighted windows, rock fireplace, hardwood floors in living room; hardwood floors in dining room; tile drains, birch cabinets, builtin appliances, hardwood floors in kitchen; pedestal sink, leg tub, vinyl floor in bath; one bedroom downstairs; office area and stair up to second floor in back porch; second floor bedroom and bath with pedestal sink, leg tub and vinyl floors; open flagstone patios in rear.

## Building Sketch (Page - 1)

File No. 07-GFB7191 Page #19

| | |
|---|---|
| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E |
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET |
| City CARMEL | County MONTEREY    State CA    Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLR1 | First Floor | 1098.0 | 1098.0 |
| GLR2 | Second Floor | 153.0 | 153.0 |
| BSMT | Basement | 121.0 | 121.0 |
| GAR | Garage | 250.0 | 250.0 |
| | | | |
| | Net LIVABLE Area | (Rounded) | 1249 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 4.0 x 7.0 | | 28.0 |
| 5.5 x 6.5 | | 35.8 |
| 7.0 x 7.5 | | 52.5 |
| 6.5 x 24.0 | | 156.0 |
| 6.5 x 27.5 | | 178.8 |
| 0.5 x 24.5 | | 12.3 |
| 13.0 x 20.5 | | 266.5 |
| 7.0 x 17.0 | | 137.5 |
| 9.0 x 26.5 | | 238.5 |
| Second Floor | | |
| 11.0 x 11.0 | | 121.0 |
| 4.0 x 8.0 | | 32.0 |
| | | |
| 11 Items | (Rounded) | 1249 |

## Plat Map

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | | |
|---|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | | |
| City | CARMEL | County | MONTEREY | State | CA |
| Lender | NOVASTAR MORTGAGE, INC. | | | Zip Code | 93921 |



## Location Map

| Borrower/Client | JOHNSON GERALD D/JOHNSON DEBORAH E | | | |
|---|---|---|---|---|
| Property Address | 2ND AVENUE & 2ND N DOLORES STREET | | | |
| City CARMEL | County MONTEREY | | State CA | Zip Code 93921 |
| Lender NOVASTAR MORTGAGE, INC. | | | | |



# EXHIBIT "K"

Complete Appraisal Analysis - Summary Appraisal Repo.

## Uniform Residential Appraisal Report

File # 2Av2neDz

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address | 2ND AVENUE, 2 NE DOLORES    City CARMEL    State CA    Zip Code 93921 |
| Borrower JOHNSON | Owner of Public Record SAME AS BORROWER    County MONTEREY |
| Legal Description | *** See Additional Comments *** |

Assessor's Parcel # 010 126 022    Tax Year '06-'07    R.E. Taxes $ PROP. 13

Neighborhood Name NORTH CARMEL-BY-THE-SEA    Map Reference T.B. 1153-E1    Census Tract 0117.00

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ Unknown    [ ] PUD    HOA $ NONE    [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) NA

Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe) NA

Lender/Client Premium Capital Funding LLC, dba Topdot Mortgage    Address 18810 W 76TH ST STREET, LOS ANGELES, CA, 90047

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of the appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). MLS, METROSCAN

**CONTRACT**

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. THE SUBJECT IS A REFINANCE, IT IS NOT A PURCHASE TRANSACTION - THERE IS NO PURCHASE CONTRACT.

Contract Price $ REFI.    Date of Contract Refi. 4/06    Is the property seller the owner of public record? [ ] Yes [ ] No    Data Source(s) REFINANCE

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid. *** See Additional Comments ***

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit 90+- % | |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 850+- Low | NEW* | 2-4 Unit % | |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 4000+- High | 75+ | Commercial 9+- % | |
| | | | | | | 900-3000+- Pred. | 35+- | Multi-Family % | |
| | | | | | | | | Other 1+- % | |

Neighborhood Boundaries NORTH- SAN JUAN-TO-SAN PEDRO LANE; SOUTH- OCEAN AVENUE; EAST-JUNIPERO AVENUE; WEST- CARMEL BAY/PEBBLE BEACH.

Neighborhood Description NORTH- SAN JUAN-TO-SAN PEDRO LANE; SOUTH- OCEAN AVENUE; EAST-JUNIPERO AVENUE; WEST- CARMEL BAY/PEBBLE BEACH.

Market Conditions (including support for the above conclusions)    *** See Additional Comments ***

**SITE**

Dimensions 50' X 80'    Area 4,000 SF+-    Shape RECTANGULAR    View FAR OCEAN /TYPICAL

Specific Zoning Classification R-1    Zoning Description ALLOWS SFR, 4,000 ST SITE SIZE MINIMUM

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street | ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley | NONE/TYPICAL | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone    FEMA Map No.    FEMA Map Date

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No. If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe

*CARMEL DOES NOT PARTICIPATE IN THE FEMA FLOOD PROGRAM. FLOOD DATA IS PROVIDED BY THE CITY. THE CITY IS NOT IN A SPECIAL FLOOD HAZARD AREA, PER THE CARMEL PLANNING DEPARTMENT. *** See Additional Comments ***

**IMPROVEMENTS**

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [ ] Concrete Slab [X] Crawl Space | | Foundation Walls CONCRETE/AVG | | Floors HARDWOOD/GD | |
| # of Stories Part'l 2-Story | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls PLYWOOD/AVG | | Walls DRYWALL/AVG | |
| Type [X] Det. [ ] Att. [ ] S-Det/End Unit | | Basement Area 100 sq. ft. | | Roof Surface CONC TILE/AVG | | Trim/Finish WOOD/GOOD | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish UNFINISHED % | | Gutters & Downspouts METAL/AVG | | Bath Floor VINYL/AVG | |
| Design (Style) COTTAGE | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type WOOD CSMT./AVG | | Bath Wainscot Tile Shwr End's/GD | |
| Year Built 95 YEARS+- | | Evidence of [ ] Infestation | | Storm Sash/Insulated NONE/Unknown | | Car Storage None | |
| Effective Age (Yrs) 22-28 YRS+- | | [ ] Dampness [ ] Settlement | | Screens YES/AVG | | [ ] Driveway # of Cars YES | |
| Attic [ ] None | | Heating [X] FWA [ ] HWBB [ ] Radiant | | Amenities | | Driveway Surface ASPHALT/TYP | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel GAS | | [X] Fireplace(s) # 1 [X] Fence Wood | | [ ] Garage # of Cars | |
| [X] Floor [ ] Scuttle | | Cooling [ ] Central Air Conditioning | | [X] Patio/Deck Wood [ ] Porch | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other NA | | [ ] Pool | | [ ] Att. [ ] Det. [ ] Built-in | |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe)

Finished area above grade contains: 5 Rooms 2 Bedrooms 1.50 Bath(s) 1,252 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) HARD WOOD FLOORS ON MAIN LEVEL; VAULTED CEILINGS IN LIVING ROOM, DINING AREA AND FOYER; STONE FIREPLACE IN LIVING ROOM; PEDESTAL SINKS IN BATHROOMS.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). AT THE TIME OF THE APPRAISAL, NO NECESSARY REPAIRS WERE NOTED.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe

DUE TO THE COMPLETE REMODELING OF THE DWELLING'S INTERIOR, AS WELL VIRTUALLY NO VISIBLE WEAR, THE EFFECTIVE AGE OF THE STRUCTURAL IMPROVEMENTS IS REDUCED BELOW IT'S ACTUAL AGE. NORMAL PHYSICAL DEPRECIATION IS APPLIED TO EFFECTIVE AGE IN THE COST APPROACH. NO FUNCTIONAL OR LOCATIONAL (EXTERNAL) OBSOLESCENCE WAS NOTED. *** See Additional Comments ***

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe

NA

Freddie Mac Form 70 March 2005    Page 1 of 6    Fannie Mae Form 1004 March 2005

Barnes & Havens Appraised

Complete Appraisal Analysis - Summary Appraisal Re,

## Uniform Residential Appraisal Report
File # 2Av2neDz

There are 33 comparable properties currently offered for sale in the subject neighborhood ranging in price from 839,000.00 to $ 8,950,000.00
There are 40 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from$ 790,000.00 to $ 3,286,999.00

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE, 2 NE DOLORES | SE LINCOLN ST | | NE COR LINCOLN ST | | 2 SW Perry Newberry/Fifth Wy | |
| APN- 010 126 022 | | APN- 010 127 023 | | APN- 010 128 007 | | APN- 009 163 002 | |
| Proximity to Subject | | +-1-2 BLOCKS NW | | +-1-2 BLOCKS SW | | +-8-9 BLOCKS SE | |
| Sale Price | REFI. | $ 1,475,000 | | $ 1,660,000 | | $ 1,233,500 | |
| Sale Price/Gross Liv. Area | 838.66 sq. ft. | $ 1,156.86 sq. ft. | | $ 1,121.62 sq. ft. | | $ 883.00 sq. ft. | |
| Data Source(s) | | MLS # 673127 | | MLS # 661914 | | MLS # 708383 | |
| Verification Source(s) | | DOC # 21275 | | DOC # 7805 | | DOC # 29704 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | CONV DOM 27 | | CONV DOM 58 | | CONV DOM 24 | |
| Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | | 03/15/07 COE | | 01/30/07 COE | | 04/13/07 COE | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | SL INFERIOR | +100,000 |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 4,000 SF+- | 4,000 SF+- | | 4,000 SF+- | | 4,875 SF+- | |
| View | FAR OCEAN | FAR OCEAN | | NEIGHBORHOOD | +50,000 | NEIGHBORHOOD | +50,000 |
| Design (Style) | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | SUPERIOR | -100,000 |
| Actual Age | A95+- E25+- | OLDER/UPDATED | | AVERAGE | | 53 YEARS+- | |
| Condition | GOOD | Remodeled | -50,000 | SUPERIOR | -50,000 | GOOD | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | -10,000 | Total Bdrms Baths | -10,000 |
| Room Count | 5 2 1.50 | 5 2 2 | -10,000 | 5 3 2 | -10,000 | 6 3 2 | -10,000 |
| Gross Living Area | 1,252 sq. ft. | 1,275 sq. ft. | | 1,480 | -27,360 | 1,396 | -17,280 |
| Basement & Finished | NO BASEMENT | Basement (Laundry) | | NO BASEMENT | | NO BASEMENT | |
| Rooms Below Grade | NONE | BASEMENT | | BASEMENT | | BASEMENT | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/NONE | AVERAGE | | FAU/NONE | | FAU/NONE | |
| Energy Efficient Items | AVERAGE | FAU/NONE | | AVERAGE | | AVERAGE | |
| Garage/Carport | 1 CAR GARAGE | 2/GARAGE | | 1 CAR GARAGE | | AVERAGE | |
| Porch/Patio/Deck | DECK | PATIO/DECK | -10,000 | 1 CAR GARAGE | | 1 CAR GARAGE | |
| FIREPLACE(S) | 1 FIREPLACE | 1 FIREPLACE | | PATIO | | PATIO | |
| OTHER | NONE | NONE | | 2 FIREPLACES | -10,000 | 1 FIREPLACE | |
| | OLP:$Refinance | OLP:$1,495,000 | | NONE | | NONE | |
| | | | | OLP:$1,695,000 | | OLP:$1,295,000 | |
| Net Adjustment (Total) | | + X - $ | -70,000 | + X - $ | -157,360 | X + - $ | 112,720 |
| Adjusted Sale Price | | Net Adj. 4.75 % | | Net Adj. 9.48 % | | Net Adj. 9.14 % | |
| of Comparables | | Gross Adj. 4.75 % $ | 1,405,000 | Gross Adj. 15.50 % $ | 1,502,640 | Gross Adj. 15.18 % $ | 1,346,220 |

I X did did not research the sale or transfer history of the subject property and comparable sales. If not, explain NA

My research did X did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) METROSCAN, AND/OR THE MLS
My research X did did not reveal any prior sales or transfers of the comparable sales for the prior year to the date of sale of the comparable sale.
Data Source(s) METROSCAN, AND/OR THE MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE W/I 3 YEARS | 06/29/06 $1,495,000 | NONE IN PRIOR 1 YEAR | NONE IN PRIOR 1 YEAR |
| Price of Prior Sale/Transfer | P/S 3/17/1995 $285,000 | P/S PRECEDED 1999 | 1,450,000 | P/S $795,000 |
| Data Source(s) | METROSCAN | METROSCAN | METROSCAN | METROSCAN |
| Effective Date of Data Source(s) | 05/16/07 | 05/16/07 | 05/16/07 | 05/16/07 |

Analysis of prior sale or transfer history of the subject property and comparable sales THE MOST RECENT PRIOR TRANSFER INFORMATION FOR
THE SUBJECT PROPERTY AND THE COMPARABLES IS REPORTED ABOVE.   COMPARABLE #4 IS THE ONLY PROPERTY TO
HAVE SOLD 1-YEAR PRIOR TO IT'S CURRENT SALE.

Summary of Sales Comparison Approach  LISTING PRICE AND DAYS ON THE MARKET INFORMATION ARE IN THE SALES ANALYSIS GRID.
***See Additional Comments ***

Indicated Value by Sales Comparison Approach $ 1,400,000
Indicated Value by: Sales Comparison Approach $ 1,400,000    Cost Approach (if developed) $ 1,241,400    Income Approach (if developed) $ NA
*** See Additional Comments ***  THE COST AND DIRECT SALES COMPARISON APPROACHES TO VALUE ARE USED IN THIS
VALUATION ASSIGNMENT. *** See Additional Comments ***

This appraisal is made X "as is", subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:
*** See Additional Comments ***
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,400,000 , as of 05/14/07 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                    Page 2 of 6                    Fannie Mae Form 1004 March 2005

Barnes & Havens Appraised

| | | | | | File No.  2Av2neDz | |
|---|---|---|---|---|---|---|

**ADDITIONAL COMPARABLES**

Borrower: JOHNSON
Property Address: 2ND AVENUE, 2 NE DOLORES
City: CARMEL    County: MONTEREY    State: CA    Zip Code: 93921
Lender/Client: NOLAN REALTY

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 2ND AVENUE, 2 NE DOLORES<br>APN- 010 126 022 | 3 LINCOLN ST<br>APN- 010 127 008 | | 3 NW SAN CARLOS/FIRST ST<br>APN- 010 116 004 | | | |
| Proximity to Subject | | +-1-2 BLOCKS NW | | +-1-2 BLOCKS NE | | | |
| Sale Price | REFI | | 1,500,000 | | 1,132,000 | | |
| Sale Price/Gross Liv. Area | 838.66 sq. ft. | $ 956.49 sq. ft. | | $ 1,347.62 sq. ft. | | $ sq. ft. | |
| Data Source(s) | | MLS # 640986 | | MLS # 631304 | | | |
| Verification Source(s) | | DOC # 72926 | | DOC # 74492 | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | CONV  DOM 26 | | CONV  DOM 59 | | | |
| Concessions | | NONE KNOWN | | NONE KNOWN | | | |
| Date of Sale/Time | | 08/22/06  COE | | 08/24/06 COE | | | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | | |
| Site | 4,000 SF+- | 4,000  SF+- | | 4,000  SF+- | | | |
| View | FAR OCEAN | FAR OCEAN | | FAR OCEAN | | | |
| Design (Style) | AVERAGE | AVERAGE | - - - - - - | AVERAGE | - - - - - - | | |
| Quality of Construction | AVERAGE | AVERAGE | | INFERIOR | +100,000 | | |
| Actual Age | A95+- E25+- | OLDER/UPDATED | - - - - - - | 53 YEARS+- | | | |
| Condition | GOOD | GOOD | - - - - - - | INFERIOR | +100,000 | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 5 | 2 | 1.50 | 6 | 3 | 2 | -10,000 | 4 | 2 | 1 | +10,000 | | | | |
| Gross Living Area | 1,252 sq. ft. | 1,552 sq. ft. | -36,000 | 840 sq. ft. | +49,440 | sq. ft. | |
| Basement & Finished | Basement (Laundry) | NO BASEMENT | - - - - - - | NO BASEMENT | | | |
| Rooms Below Grade | NONE | BASEMENT | | BASEMENT | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | FAU/NONE | FAU/NONE | | FAU/NONE | | | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | | |
| Garage/Carport | 1 CAR GARAGE | 1 CAR GARAGE | | 1/CARPORT | +5,000 | | |
| Porch/Patio/Deck | DECK | NONE | +5,000 | PATIO/DECK | - - - - - - | | |
| FIREPLACE(S) | 1 FIREPLACE | 1 FIREPLACE | | 1 FIREPLACE | | | |
| OTHER | NONE | NONE | | NONE | | | |
| | OLP:$Refinance | OLP:$1,525,000 | | OLP:$1,325,000 | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | -51,000 | ☒ + ☐ - | 264,440 | ☐ + ☐ - | |
| Adjusted Sale Price<br>of Comparables | | Net Adj. 3.40 %<br>Gross Adj. 4.07 % | 1,449,000 | Net Adj. 23.36 %<br>Gross Adj. 23.36 % | 1,396,440 | Net Adj. %<br>Gross Adj. % | |

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE W/I 3 YEARS | NONE IN PRIOR 1 YEAR | NONE IN PRIOR 1 YEAR | |
| Price of Prior Sale/Transfer | P/S 3/17/1995 $285,000 | P/S  1998  $603,000 | P/S  1998  $310,000 | |
| Data Source(s) | METROSCAN | METROSCAN | METROSCAN | |
| Effective Date of Data Source(s) | 05/16/07 | 05/16/07 | 05/16/07 | |
| Comment on Sales Comparison | *** See Preceding Page *** | | | |

Barnes & Havens Appraised

Complete Appraisal Analysis - Summary Appraisal Rep

## Uniform Residential Appraisal Report

File # 2Av2neDz

*** See Additional Comments ***

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.

| | | |
|---|---|---|
| ESTIMATED [X] REPRODUCTION OR [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ 1,100,000 |
| Source of cost data MARSHALL & SWIFT | Dwelling 1,252 Sq. Ft. @ $ 100.27 | =$ 125,538 |
| Quality rating from cost service AVG+   Effective date of cost data 6/05 | Sq. Ft. @ $ | =$ 9,655 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | DECK AND BRICK PATIO | 20,000 |
| *** See Additional Comments *** | Garage/Carport 324 Sq. Ft. @ $ 29.80 | |
| THE RCN UNIT COST FACTORS ARE BASED ON THE | Total Estimate of Cost-New | =$ 155,193 |
| MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK AND/OR | Less Physical Functional External | |
| THE BOECKH COST MANUAL AND/OR THE M&S HIGH VALUE | Depreciation 38,798 | =$( 38,798 ) |
| DWELLING GUIDE, NATIONALLY RECOGNIZED | Depreciated Cost of Improvements | =$ 116,395 |
| REPLACEMENTS COST PUBLICATIONS. | "As-Is" Value of Site Improvements | =$ 25,000 |
| *** See Additional Comments *** | | |
| Estimated Remaining Economic Life (HUD and VA only)  40-45+  Years | Indicated Value By Cost Approach | =$ 1,139,435 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ NA X Gross Rent Multiplier NA = $ NA | Indicated Value by Income Approach | | =$ 1,241,395 |

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? [ ] Yes [ ] No  Unit type(s) [ ] Detached [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

Total number of phases _____ Total number of units N/A _____ Total number of units sold _____

Total number of units rented _____ Total number of units for sale N/A _____ Data Source(s) _____

Was the project created by the conversion of existing building(s) into a PUD? [ ] Yes [ ] No  If Yes, date of conversion

Does the project contain any multi-dwelling units? [ ] Yes [ ] No  Data Source(s)

Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? [ ] Yes [ ] No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities N/A

Freddie Mac Form 70 March 2005                    Page 3 of 6                    Fannie Mae Form 1004  March 2005

Barnes & Havens Appraised

Complete Appraisal Analysis - Summary Appraisal Re

## Uniform Residential Appraisal Report

File # 2Av2neDz

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Barnes & Havens Appraised

Complete Appraisal Analysis - Summary Appraisal Rep

## Uniform Residential Appraisal Report

File #    2Av2neDz

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Barnes & Havens Appraisal

Complete Appraisal Analysis - Summary Appraisal Rej

## Uniform Residential Appraisal Report

File # 2Av2neDz

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Shelley Sturm Barnes_ | Signature _____ |
| Name  Shelley S. Barnes | Name _____ |
| Company Name  Barnes & Havens Appraised | Company Name _____ |
| Company Address  P.O. Box 222733 | Company Address _____ |
| Carmel, CA 93922 | |
| Telephone Number  831 626-3666 | Telephone Number _____ |
| Email Address | Email Address _____ |
| Date of Signature and Report  May 16, 2007 | Date of Signature _____ |
| Effective Date of Appraisal  05/14/07 | State Certification # _____ |
| State Certification #  AR 005766 | or State License # _____ |
| or State License # | State _____ |
| or Other | Expiration Date of Certification or License _____ |
| State  CA | |
| Expiration Date of Certification or License  10-21-2007 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 2ND AVENUE, 2 NE DOLORES | ☐ Did inspect exterior of subject property from street |
| CARMEL, CA  93921 | Date of Inspection _____ |
| APPRAISED   VALUE   OF   SUBJECT   PROPERTY   $ 1,400,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection _____ |
| Name  Ms. Debbie Inglewood | COMPARABLE SALES |
| Company Name  NOLAN REALTY | |
| Company Address  5777 East Via de Ventura, Suite 255 | ☐ Did not inspect exterior of comparable sales from street |
| LOS ANGELES, CA 90047 | ☐ Did inspect exterior of comparable sales from street |
| Email Address  nzappraisals@hotmail.com | Date of Inspection _____ |

Freddie Mac Form 70 March 2005    Page 6 of 6    Fannie Mae Form 1004 March 2005

Barnes & Havens Appraised

File No.    2Av2neDz

ADDITIONAL COMMENTS

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower or Owner | JOHNSON | | | | | |
| Property Address | 2ND AVENUE, 2 NE DOLORES | | | | | |
| City | CARMEL | County | MONTEREY | State | CA | Zip Code 93921 |
| Lender or Client | NOLAN REALTY | | | | | |

**LEGAL DESCRIPTION**

THE SUBJECT IS IDENTIFIED BY STREET ADDRESS, APN, A PLAT MAP, AND AN ABBREVIATED LEGAL DESCRIPTION THAT IS TAKEN FROM THE RECORDS OF THE COUNTY TAX ASSESSOR. THE FULL LEGAL DESCRIPTION CAN BE FOUND IN THE TITLE POLICY, WHICH IS A PART OF THE LOAN PACKAGE BUT WAS NOT MADE AVAILABLE TO THE APPRAISER PRIOR TO THE SUBMISSION OF THIS REPORT.

**LOAN CHARGES AND/OR SALE CONCESSIONS PAID ON BEHALF OF OWNER**
NO FINANCIAL ASSISTANCE, LOAN CHARGES, AND/OR SALES CONCESSIONS, BEING PAID ON BEHALF OF THE BUYER(S), ARE DISCLOSED IN THE PURCHASE AGREEMENT.

THIS APPRAISAL IS PREDICATED UPON THE EXTRAORDINARY ASSUMPTION THAT NO UNDISCLOSED FINANCIAL ASSISTANCE, LOAN CHARGES, AND/OR SALES CONCESSIONS ARE BEING PAID ON BEHALF OF THE BORROWERS.

**NEIGHBORHOOD DESCRIPTION**
CARMEL-BY-THE-SEA IS A COMMUNITY LOCATED ON THE HILLS THAT RISE ABOVE THE PACIFIC OCEAN, AT THE SOUTHWESTERLY BASE OF THE MONTEREY PENINSULA. MANY PROPERTIES HAVE VIEWS OF CARMEL BAY, THE PACIFIC OCEAN, AND/OR POINT LOBOS. BECAUSE OF THE TEMPERATE CLIMATE AND SCENIC BEAUTY, THE AREA HAS DEVELOPED AS A RESORT/SECOND HOME/ RETIREMENT COMMUNITY.

CARMEL-BY-THE-SEA IS SITUATED NEXT TO CARMEL BAY, WEST OF CALIFORNIA STATE HIGHWAY 1, ABOUT 120 MILES SOUTH OF SAN FRANCISCO. THE CITY OF CARMEL HAS A FULL TIME POPULATION OF APPROXIMATELY 5,000 AND A LAND AREA OF ABOUT ONE (1) SQUARE MILE. MANY OF THE HOUSES IN THIS CITY ARE WEEKEND OR SECOND HOMES. CARMEL IS DEVELOPED WITH BOTH AVERAGE TO VERY GOOD QUALITY, CUSTOM BUILT HOUSES OF VARYING SIZE, AGE, QUALITY AND ARCHITECTURE.

THE NEIGHBORHOOD IS NORTHWEST CARMEL; IT EXTENDS SOUTHERLY TO OCEAN AVENUE, AND NORTHERLY THROUGH CARMEL WOODS. DOWNTOWN CONVENIENCES AND A CITY BEACH ARE WITHIN WALKING DISTANCE. THE SUBJECT NEIGHBORHOOD IS DEVELOPED WITH DWELLINGS THAT ARE MIXED IN CHARACTER. THERE ARE MODEST, OLDER HOUSES; THERE ARE ALSO GOOD, EVEN VERY GOOD QUALITY, CUSTOM-BUILT HOUSES OF VARYING SIZE, AGE, STYLE, AND ARCHITECTURE. THE 'NEW' HOUSES IN THE AREA RESULT FROM OLDER DWELLINGS BEING RAZED-AND-REPLACED WITH NEW STRUCTURES.

SOME PROPERTIES HAVE NO OCEAN VIEWS; MANY HOMESITES HAVE ONLY VIEWS OF THE NEIGHBORHOOD, OTHERS HAVE VIEWS OF THE NEARBY WOODED HILLSIDES. SOME PROPERTIES HAVE TREE-FILTERED OCEAN VIEWS. OTHERS IN THE NEIGHBORHOOD ARE CLOSER TO THE WATER AND HAVE LESS-OBSTRUCTED VIEWS OF CARMEL BAY. A FEW PROPERTIES HAVE THE BEST VIEWS, WHICH INCLUDE CARMEL BAY, THE PACIFIC OCEAN, AND POINT LOBOS. AN OCEAN VIEW COMMANDS ADDITIONAL VALUE. THE LOCAL MARKET WILL PAY A PREMIUM FOR PROPERTIES WITH OCEAN/POINT LOBOS VIEWS. BUYERS PAY VERY SUBSTANTIAL PREMIUMS FOR THE PROPERTIES WITH OUTSTANDING VIEWS.

SHOPPING AND SERVICES ARE A SHORT DISTANCE SOUTH IN DOWNTOWN CARMEL. ADDITIONAL SHOPPING AND SERVICES ARE AVAILABLE A SHORT DRIVE EAST AT THE CROSSROADS, THE BARNYARD, AND THE CARMEL RANCHO SHOPPING CENTERS, WHICH ARE NEAR THE INTERSECTION OF HIGHWAY 1 AND RIO ROAD. A FEW DOCTORS OFFICES AND PROFESSIONAL OFFICES ARE ALSO LOCATED IN THIS AREA. ADDITIONAL SHOPPING AND SERVICES ARE AVAILABLE IN MONTEREY AND PACIFIC GROVE.

SEVERAL GOLF COURSES ARE NORTH OF CARMEL IN PEBBLE BEACH OR EAST IN CARMEL VALLEY. A SANDY OCEAN BEACH FORMS THE WESTERLY EDGE OF THE CITY OF CARMEL. NUMEROUS RESTAURANTS AND OTHER RECREATIONAL ACTIVITIES ARE LOCATED IN CARMEL. ADDITIONAL RECREATIONAL ACTIVITIES ARE LOCATED IN MONTEREY, PACIFIC GROVE AND CARMEL VALLEY.

TO PRESERVE THE 'UNIQUE' NATURE OF CARMEL-BY-THE-SEA, NEON SIGNS ARE NOT ALLOWED, FAST FOOD RESTAURANT ARE PROHIBITED, NEW AND USED CAR LOTS ARE PRECLUDED, ELECTRIC TRAFFIC SIGNALS HAVE NOT BEEN ERECTED, LIVE MUSIC IS NOT ALLOWED IN THE BARS OR RESTAURANTS, AND, OTHER THAN HOSPITALITY PROPERTIES, NO COMMERCIAL ENTERPRISES ARE ALLOWED TO LOCATE WITHIN 1/2 MILE OF THE BEACH.

CARMEL RIVER ELEMENTARY SCHOOL IS LOCATED NEAR THE INTERSECTION OF RIO ROAD AND STATE HIGHWAY 1. CARMEL HIGH SCHOOL IS NORTHEAST AT THE INTERSECTION OF STATE HIGHWAY 1 AND OCEAN AVENUE.

**MARKET CONDITIONS**
COMPETITIVE INTEREST RATES PRECLUDE MOST LOAN DISCOUNTS. PRIOR TO JUNE, 2000, AN UPWARD

Barnes & Havens Appraised

| | | | File No. | 2Av2neDz |
|---|---|---|---|---|

## ADDITIONAL COMMENTS
Page 2

| Borrower or Owner | JOHNSON | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 2ND AVENUE, 2 NE DOLORES | | | | | |
| City | CARMEL | County | MONTEREY | State | CA | Zip Code 93921 |
| Lender or Client | NOLAN REALTY | | | | | |

TREND IN PROPERTY VALUES CONTINUED FOR MORE THAN 24 MONTHS.  APPRECIATION WAS RAPID TO ABOUT JUNE 2000, THEN APPEARED TO STABILIZED BRIEFLY DUE TO STOCK MARKET ADJUSTMENTS EARLIER IN THE YEAR AND THE INCREASE IN THE INTEREST RATE BY THE FEDERAL RESERVE NEAR THE END OF MAY 2000. HOWEVER, APPRECIATION WAS A FACTOR THROUGHOUT THE YEAR AND DURING THE FIRST 1-2 MONTHS OF 2001.  AFTER THAT, PROPERTY VALUES BEGAN TO STABILIZE.  THE FEDERAL RESERVE REDUCED THE INTEREST RATE TWO TIMES IN JANUARY 2001, ON MARCH 20, 2001 (1/2%), ON APRIL 18, 2001 (1/2%), ON MAY 14, 2001 (1/2%), ON AUGUST 20, 2001 (1/4%), ON SEPTEMBER 17, 2001 (1/2%),  ON NOVEMBER 6, 2001, (1/2%),  ON NOVEMBER 6, 2002, (1/2%), AND ON JUNE 25, 2003, (1/4%). THE PRIME LENDING RATE, (BANK-TO-BANK),  AND MORTGAGE RATES ARE NEAR 45-YEAR LOWS.SINCE EARLY 2003, SALES ACTIVITY HAS BEEN SPURRED BY RECORD LOW INTEREST RATES. MARKETING TIMES AND PROPERTY INVENTORIES HAVE DIMINISHED.  AT PRESENT, DEMAND HAS OUTPACED SUPPLY, AND THE LOCAL MARKET IS EXPERIENCING SIGNIFICANT APPRECIATION. DISCOUNTS, BUYDOWNS, AND/OR OTHER SALES CONCESSIONS ARE VIRTUALLY NON-EXISTENT AS THEY ARE NOT NECESSARY TO FACILITATE SALES TRANSACTIONS AT THIS TIME.  VERY COMPETITIVE INTEREST RATE CONFORMING AND JUMBO LOANS ARE READILY AVAILABLE AND MAY BE OBTAINED FROM NUMEROUS BANKS, CREDIT UNIONS, MORTGAGE BANKERS, MORTGAGE BROKERS, AND OTHER LENDERS.  COMPETITIVE INTEREST RATES PRECLUDE MOST LOAN DISCOUNTS.

PRIOR TO JUNE, 2000, AN UPWARD TREND IN PROPERTY VALUES CONTINUED FOR MORE THAN 24 MONTHS.  APPRECIATION WAS RAPID TO ABOUT FEBRUARY, 2001.  THEN APPEARED TO STABILIZED BRIEFLY DUE TO STOCK MARKET ADJUSTMENTS EARLIER IN THE YEAR AND THE INCREASE IN THE INTEREST RATE BY THE FEDERAL RESERVE NEAR THE END OF MAY 2000. HOWEVER,  APPRECIATION WAS A FACTOR THROUGHOUT THE YEAR AND DURING THE FIRST 1-2 MONTHS OF 2001.  AFTER THAT, PROPERTY VALUES BEGAN TO STABILIZE.  THE FEDERAL RESERVE REDUCED THE INTEREST RATE TWO TIMES IN JANUARY 2001, ON MARCH 20, 2001 (1/2%), ON APRIL 18, 2001 (1/2%), ON MAY 14, 2001 (1/2%), ON AUGUST 20, 2001 (1/4%), ON SEPTEMBER 17, 2001 (1/2%), ON NOVEMBER 6, 2001, (1/2%),  ON NOVEMBER 6, 2002, (1/2%), AND ON JUNE 25, 2003, (1/4%). THE PRIME LENDING RATE, (BANK-TO-BANK), AND MORTGAGE RATES ARE NEAR 45-YEAR LOWS.

FROM EARLY 2003, SALES ACTIVITY HAS BEEN SPURRED BY RECORD LOW INTEREST RATES. MARKETING TIMES AND PROPERTY INVENTORIES WERE DIMINISHED; DEMAND OUTPACED SUPPLY AND THE MARKET EXPERIENCED SIGNIFICANT APPRECIATION.

HOWEVER, SINCE THE SUMMER OF 2005, INVENTORIES HAVE BEGUN TO INCREASE, AS FEWER BUYERS ARE IN THE MARKET FOR HOUSES.  IT APPEARS THAT APPRECIATION HAS ENDED, AND PROPERTY VALUES HAVE STABILIZED.

DISCOUNTS, BUYDOWNS, AND/OR OTHER SALES CONCESSIONS ARE VIRTUALLY NON-EXISTENT AS THEY ARE NOT NECESSARY TO FACILITATE SALES TRANSACTIONS AT THIS TIME.

## ADVERSE SITE CONDITIONS AND/OR EXTERNAL FACTORS
THE SITE HAS A TREE-FILTERED, FAR-OCEAN VIEW TO THE WEST. TYPICAL FOR THE AREA.

THE SUBJECT SITE IS OF TYPICAL SIZE, SHAPE, AND USE, WITH NORMAL STREET ACCESS.   NO ADVERSE CONDITIONS WERE NOTED.

## PHYSICAL DEFICIENCIES AND / OR ADVERSE CONDITIONS
ALTHOUGH A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS DID NOT REVEAL ANY HAZARDOUS SUBSTANCES IT IS POSSIBLE THAT TESTS AND INSPECTIONS BY A QUALIFIED EXPERT COULD REVEAL SUCH SUBSTANCES OR CONDITIONS. THE APPRAISER AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY OR LIABILITY OR ANY HIDDEN OR NON-APPARENT ADVERSE ENVIRONMENTAL CONDITIONS.  NO ADVERSE ENVIRONMENTAL CONDITIONS WERE NOTED DURING THE INSPECTION.

THE VALUE ESTIMATE IN THIS REPORT IS PREDICATED ON THE EXTRAORDINARY ASSUMPTION THAT THE SUBJECT PROPERTY IS NOT NEGATIVELY IMPACTED BY HAZARDOUS SUBSTANCES OR ADVERSE ENVIRONMENTAL CONDITIONS. ALTHOUGH A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS DID NOT REVEAL ANY HAZARDOUS SUBSTANCES IT IS POSSIBLE THAT TESTS AND INSPECTIONS BY A QUALIFIED EXPERT COULD REVEAL SUCH SUBSTANCES OR CONDITIONS. THE APPRAISER AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY OR LIABILITY OR ANY HIDDEN OR NON-APPARENT ADVERSE ENVIRONMENTAL CONDITIONS.

## SALES COMPARISON APPROACH
AFTER EXTENSIVELY RESEARCHING THE M.L.S. AND METROSCAN, THE PROPERTIES CITED IN THIS REPORT ARE CONSIDERED TO BE THE MOST PERTINENT COMPARABLES CURRENTLY AVAILABLE. SITE SIZE AND VIEW ADJUSTMENTS ARE BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES.

THE QUALITY OF CONSTRUCTION ADJUSTMENTS ARE BASED ON MLS DATA, REALTOR'S COMMENTS, VISUAL OBSERVATIONS, THE MARSHALL AND SWIFT RESIDENTIAL COST HANDBOOK, ABSTRACTION, AND THE BUILDING RESIDUAL TECHNIQUE.

File No.   2Av2neDz

## ADDITIONAL COMMENTS
Page 3

Borrower or Owner  JOHNSON
Property Address  2ND AVENUE, 2 NE DOLORES
City  CARMEL                County  MONTEREY              State  CA              Zip Code  93921
Lender or Client  NOLAN REALTY

THE LOCATION ADJUSTMENT IS BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES. SALE #3 IS INCLUDED AS A COMPARABEL BECAUSE IT IS A DWELLING OF VERYSIMILAR SIZE, WHICH HAS A VERY RECENT CLOSE-OF-ESCROW DATE. HOWEVER THIS SALE IS LOCATED FARTHER FROM THE OCEAN, CLOSE TO HIGHWAY 1, AN INFERIOR LOCATION.

AGE ADJUSTMENTS ARE NOT MADE BECAUSE, IN THE LOCAL MARKET, THE AGE OF A PROPERTY DOES NOT NECESSARILY PRODUCE A MEASURABLE SCALE OF PHYSICAL DEPRECIATION. THE PRICE BUYERS WILL PAY FOR A PROPERTY IS FAR MORE INFLUENCED BY IT'S CONDITION THAN IT'S AGE.

CONDITION ADJUSTMENTS ARE BASED ON THE M.L.S., REALTOR'S COMMENTS, AND VISUAL OBSERVATIONS.

VIEW ADJUSTMENTS ARE BASED ON ABSTRACTION DUE TO THE PAUCITY OF LAND SALES.

THERE ARE NOT THREE KNOWN SALES AVAILABLE WHICH FULLY CONFORM TO FNMA GUIDELINES; THUS, IT WAS NECESSARY TO USE COMPARABLES WHICH:
   • HAVE GROSS LIVING AREAS THAT VARY IN SIZE BY MORE THAN 15% OF THE SUBJECT'S
   • REQUIRED LARGE GROSS AND/OR NET ADJUSTMENTS
   • HAVE SALES DATES WHICH LCOSED ESCROW MORE THAN SIX MONTHSAGO

THIS IS NOT UNUSUAL WHEN APPRAISING IN AREAS WHERE DWELLINGS HAVE BEEN INDIVIDUALLY-BUILT OVER MANY YEARS, AND PROPERTIES HAVE MANY VARYING PHYSICAL CHARACTERISTICS.

ALL SALES ARE GIVEN SOME CONSIDERATION AS THEY ARE ALL THOUGHT TO BE MEANINGFUL INDICATORS OF THE SUBJECT'S CURRENT MARKET VALUE.

## RECONCILIATION
THE INCOME APPROACH WAS CONSIDERED BUT IS NOT UTILIZED BECAUSE THE BODY OF RENTAL DATA IN THIS PREDOMINANTLY OWNER OCCUPIED NEIGHBORHOOD IS INSUFFICIENT TO DEVELOP A HIGHLY MEANINGFUL MARKET RENT OR GROSS RENT MULTIPLIER (GRM).SPECIAL CONSIDERATION IS GIVEN TO THE SALES COMPARISON ANALYSIS.IN THE FINAL RECONCILIATION PROCESS AS THIS APPROACH UTILIZES PERTINENT SALES OF SIMILAR AND COMPETITIVE PROPERTIES IN THE SUBJECT MARKET AREA. THESE SALES REFLECT THE CURRENT ATTITUDES, PERCEPTIONS, THINKING AND ACTIONS OF BUYERS AS THEY INTERACT WITH SELLERS IN THE OPEN MARKETPLACE AND APPLY THE PRINCIPLE OF SUBSTITUTION. THE COST APPROACH IS SUPPORTIVE OF THE MARKET SALES BUT IS GIVEN LESS WEIGHT DUE TO THE PAUCITY OF PERTINENT LAND SALES. THE INCOME APPROACH WAS CONSIDERED BUT IS NOT UTILIZED BECAUSE THE BODY OF RENTAL DATA IN THIS PREDOMINANTLY OWNER OCCUPIED NEIGHBORHOOD IS INSUFFICIENT TO DEVELOP A HIGHLY MEANINGFUL MARKET RENT OR GROSS RENT MULTIPLIER (GRM).SPECIAL CONSIDERATION IS GIVEN TO THE SALES COMPARISON ANALYSIS IN THE FINAL RECONCILIATION PROCESS AS THIS APPROACH UTILIZES PERTINENT SALES OF SIMILAR AND COMPETITIVE PROPERTIES IN THE SUBJECT MARKET AREA. THESE SALES REFLECT THE CURRENT ATTITUDES, PERCEPTIONS, THINKING AND ACTIONS OF BUYERS AS THEY INTERACT WITH SELLERS IN THE OPEN MARKETPLACE AND APPLY THE PRINCIPLE OF SUBSTITUTION. THE COST APPROACH IS SUPPORTIVE OF THE MARKET SALES BUT IS GIVEN LESS WEIGHT DUE TO THE PAUCITY OR PERTINENT LAND SALES.

## CONDITIONS OF APPRAISAL
••• ••• THE APPRAISER(S) AND THE APPRAISAL FIRM DO NOT HAVE THE BENEFIT OF THE TITLE POLICY, CC&R'S, SURVEY, HAZARDOUS MATERIALS ANALYSIS, SEISMIC REPORT, TERMITE REPORT, SOILS REPORT, WELL REPORT, SEPTIC SYSTEM REPORT, HOME INSPECTION REPORT, BUILDING PERMITS OR ANY OTHER REPORTS/DOCUMENTS UNLESS SPECIFICALLY STATED OTHERWISE IN THIS APPRAISAL. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY AND/OR LIABILITY FOR ANY INFORMATION THAT MAY BE REVEALED BY ANY OR THESE REPORTS. THE APPRAISER(S) HAS NOT TESTED ANY COMPONENT OF THE SUBJECT INCLUDING BUT NOT LIMITED TO THE ROOF, GUTTERS & DOWN SPOUTS, WINDOWS, DOORS, PLUMBING - HEATING - WIRING SYSTEMS, APPLIANCES, FLOOR, FOUNDATION OR ANY OTHER MECHANICAL OR SEMI-MECHANICAL COMPONENT OF THE SUBJECT. THESE AND ALL OTHER COMPONENTS ARE REASONABLY ASSUMED TO BE IN THE SAME CONDITION AS THE BALANCE OF THE STRUCTURE, UNLESS SPECIFICALLY STATED OTHERWISE IN THIS REPORT. IF ANY PARTY ASSOCIATED WITH THE SUBJECT IS AWARE OF ANY ADVERSE CONDITIONS THEY HAVE NOT DISCLOSED THEM TO THE APPRAISER. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY FOR ANY HIDDEN OR NON-APPARENT CONDITIONS.THE APPRAISER(S) AND THE APPRAISAL FIRM DO NOT HAVE THE BENEFIT OF THE TITLE POLICY, CC&R'S, SURVEY, HAZARDOUS MATERIALS ANALYSIS, SEISMIC REPORT, TERMITE REPORT, SOILS REPORT, WELL REPORT, SEPTIC SYSTEM REPORT, HOME INSPECTION REPORT, BUILDING PERMITS OR ANY OTHER REPORTS/DOCUMENTS UNLESS SPECIFICALLY STATED OTHERWISE IN THIS APPRAISAL. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY AND/OR LIABILITY FOR ANY INFORMATION THAT MAY BE REVEALED BY ANY OR THESE REPORTS. THE APPRAISER(S) HAS NOT TESTED ANY COMPONENT OF THE SUBJECT INCLUDING BUT NOT LIMITED TO THE ROOF, GUTTERS &

File No.    2Av2neDz

**ADDITIONAL COMMENTS**
Page 4

Borrower or Owner  JOHNSON
Property Address  2ND AVENUE, 2 NE DOLORES
City  CARMEL                County  MONTEREY              State  CA              Zip Code  93921
Lender or Client  NOLAN REALTY

DOWN SPOUTS, WINDOWS, DOORS, PLUMBING - HEATING - WIRING SYSTEMS, APPLIANCES, FLOOR, FOUNDATION OR ANY OTHER MECHANICAL OR SEMI-MECHANICAL COMPONENT OF THE SUBJECT. THESE AND ALL OTHER COMPONENTS ARE REASONABLY ASSUMED TO BE IN THE SAME CONDITION AS THE BALANCE OF THE STRUCTURE, UNLESS SPECIFICALLY STATED OTHERWISE IN THIS REPORT. IF ANY PARTY ASSOCIATED WITH THE SUBJECT IS AWARE OF ANY ADVERSE CONDITIONS THEY HAVE NOT DISCLOSED THEM TO THE APPRAISER. THE APPRAISER(S) AND THE APPRAISAL FIRM ASSUME NO RESPONSIBILITY FOR ANY HIDDEN OR NON APPARENT CONDITIONS.

## ADDITIONAL COMMENTS

### SCOPE OF THE APPRAISAL
THE SCOPE OF THIS APPRAISAL INCLUDES A CURSORY VISUAL INSPECTION OF THE READILY ACCESSIBLE AREAS OF THE SUBJECT; ANALYSIS OF THE HIGHEST AND BEST USE; ASSEMBLY AND ANALYSIS OF MARKET DATA; AND USE OF THE THREE APPROACHES TO VALUE, WHEN APPLICABLE. THE SUBJECT IS VALUED WITH CONSIDERATION GIVEN TO THE PHYSICAL CONDITION OF THE IMPROVEMENTS AND THE SITE; THE CURRENT STATUS OF THE LOCAL AND REGIONAL ECONOMY; THE DEMAND FOR THE SUBJECT PROPERTY IN IT'S SPECIFIC LOCATION; THE PHYSICAL AND LEGAL LIMITATIONS ON THE USE OF THE SITE; AND THE CONTRIBUTION OF THE IMPROVEMENTS TO THE SITE AS-IF VACANT AND READY FOR DEVELOPMENT IN A HIGHEST AND BEST USE SCENARIO. THE THREE APPROACHES TO VALUE, WHEN APPLICABLE, ARE RECONCILED INTO A FINAL OPINION OF VALUE. THE SCOPE OF THIS APPRAISAL DOES NOT INCLUDE A PROFESSIONAL HOME INSPECTION, AN ENVIRONMENTAL SURVEY OR A REVIEW OF THE BUILDING PERMITS.

THOUGH CARE IS TAKEN IN THE PERPARATION OF THIS APPRAISL ASSIGNMENT, APPRAISRS ARE HUMAN, AND APPRAISERS MAKE MISTAKES.  eVERY CHARACTER IN THIS APPRAISAL REPORT IS MARGIN FOR ERROR.  THE APPRAISER RESERVES THE RIGHT TO CORRECT ANY ERRORS IN THIS APPRAISAL REPORT.

### EXPOSURE TIME
USPAP STANDARDS RULE 1-2 (c) STATES:

"WHEN THE PURPOSE OF AN ASSIGNMENT IS TO DEVELOP AN OPINION OF MARKET VALUE, THE APPRAISER MUST ALSO DEVELOP AN OPINION OF REASONABLE EXPOSURE TIME LINKED TO THE VALUE OPINION."

REASONABLE EXPOSURE TIME IS ONE OF A SERIES OF CONDITIONS IN MOST MARKET VALUE DEFINITIONS. EXPOSURE TIME IS ALWAYS PRESUMED TO PRECEDE THE EFFECTIVE DATE OF THE APPRAISAL.  EXPOSURE TIME MAY BE DEFINED AS FOLLOWS:

"THE ESTIMATED LENGTH OF TIME THE PROPERTY INTEREST BEING APPRAISED WOULD HAVE BEEN OFFERED ON THE MARKET PRIOR TO THE HYPOTHETICAL CONSUMMATION OF A SALE AT MARKET VALUE ON THE EFFECTIVE DATE OF THE APPRAISAL:  A RETROSPECTIVE OPINION BASED UPON AN ANALYSIS OF PAST EVENTS ASSUMING A COMPETITIVE AND OPEN MARKET."

BASED UPON SUPPLY/DEMAND CONDITIONS, AND, STATISTICAL INFORMATION ABOUT DAYS ON THE MARKET, IT IS ESTIMATED THAT A REASONABLE EXPOSURE TIME FOR THE SUBJECT PROPERTY WOULD BE CONSISTENT WITH THE NEIGHBORHOOD MARKETING TIME INDICATED ON PAGE 1 OF THE URAR APPRAISAL FORM.

### COMPETENCY OF THE APPRAISER
IN ACCORDANCE WITH THE COMPETENCY PROVISION OF THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE, I VERIFY THAT MY KNOWLEDGE AND EXPERIENCE ARE SUFFICIENT TO ALLOW ME TO COMPETENTLY COMPLETE THIS APPRAISAL ASSIGNMENT.

### DIGITAL SIGNATURE(S)
THE SIGNATURE(S) AFFIXED TO THIS REPORT AND CERTIFICATION, WERE APPLIED BY THE ORIGINAL APPRAISER(S) OR SUPERVISORY APPRAISER, AND, REPRESENT THEIR ACKNOWLEDGEMENTS OF THE FACTS, OPINIONS, AND CONCLUSIONS FOUND IN THE APPRAISAL REPORT.  EACH APPRAISER(S) APPLIED HIS OR HER SIGNATURE ELECTRONICALLY USING A PASSWORD ENCRYPTED METHOD. HENCE, THESE SIGNATURES HAVE MORE SAFEGUARDS AND CARRY THE SAME VALIDITY AS THE INDIVIDUAL'S HAND-APPLIED SIGNATURE.  IF THE REPORT HAS A HAND-APPLIED SIGNATURE, THIS COMMENT DOES NOT APPLY.

USE OF THE SUBJECT PROPERTY
THE SUBJECT PROPERTY IS RESIDENTIAL AND IS USED FOR SHELTER.

## COMMENTS ON COST APPROACH
THE BASE RCN COST FIGURES ARE AUGMENTED BY DISCUSSIONS LOCAL BUILDERS AND ARCHITECTS, REVIEW OF PROPOSED CONSTRUCTION BIDS AND/OR REFERENCE TO THE MARSHALL & SWIFT REPAIR &

| | | File No. | 2Av2neDz |
|---|---|---|---|

**ADDITIONAL COMMENTS**
Page b

| Borrower or Owner | JOHNSON | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 2ND AVENUE, 2 NE DOLORES | | | | | | |
| City | CARMEL | County | MONTEREY | State | CA | Zip Code | 93921 |
| Lender or Client | NOLAN REALTY | | | | | | |

REMODEL GUIDE. THE PHYSICAL DEPRECIATION FACTOR REFLECTS NORMAL AGE/LIFE ACCRUED DEPRECIATION MODIFIED BY THE ACTUAL CONDITION AND OBSERVED EFFECTIVE AGE OF THE SUBJECT. DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.  THE BASE RCN COST FIGURES ARE AUGMENTED BY DISCUSSIONS LOCAL BUILDERS AND ARCHITECTS, REVIEW OF PROPOSED CONSTRUCTION BIDS AND/OR REFERENCE TO THE MARSHALL & SWIFT REPAIR & REMODEL GUIDE. THE PHYSICAL DEPRECIATION FACTOR REFLECTS NORMAL AGE/LIFE ACCRUED DEPRECIATION MODIFIED BY THE ACTUAL CONDITION AND OBSERVED EFFECTIVE AGE OF THE SUBJECT. DUE TO THE PAUCITY OF RECENT PERTINENT LAND SALES IN THE SUBJECT NEIGHBORHOOD, THE LAND VALUE IS BASED ON ABSTRACTION. THE LAND VALUE AND THE LAND TO VALUE RATIO ARE TYPICAL FOR THE PROPERTY TYPE AND MARKET AREA.

DIFFERENCE BETWEEN MARSHALL & SWIFT COSTS AND LOCAL COSTS
EFFECTIVE NOVEMBER, 2005, FNMA BEGAN REQUIRING APPRAISERS TO USE 'REPLICABLE' COST FIGURES FROM NATIONALLY KNOWN AVAILABLE COST SOURCES.  APPRAISERS ARE NO LONGER ALLOWED THE DISCRETION TO USE 'LOCAL' BUILDING COSTS FROM LOCAL BUILDERS.

MARSHALL & SWIFT RESIDENTIAL COST HANDBOOK INDICATES IT 'SHOULD' COST +-$100 PER SQUARE FOOT TO  BUILD THE SUBJECT DWELLING,  AND +-$29 TO BUILD THE GARAGE.

MARSHALL AND SWIFT INDICATES IT SHOULD BE POSSIBLE TO REBUILD THE SUBJECT PROPERTY FOR THESE COSTS,   HOWEVER, IN THE LOCAL MARKET, IT IS HIGHLY UNLIKELY THAT THE SUBJECT COULD BE REBUILT SO INEXPENSIVELY.

IF THE SUBJECT PROPERTY WERE INLAND, IN SOUTH MONTEREY COUNTY - THE SALINAS VALLEY, COMMUNITIES LIKE GONZALES, GREENFIELD, OR KING CITY, IT IS POSSIBLE THE DWELLING MIGHT BE REBUILT AS INEXPENSIVELY AS MARSHALL & SWIFT INDICATES.

HOWEVER, IN 'COASTAL' MONTEREY COUNTY, BUILDERS ARE KNOWLEDGEABLE OF THE 'VALUE' CREATED BY THEIR WORK, AND, THEY CHARGE ACCORDINGLY. THIS ENSURES THE 'ENTREPRENEURIAL' PROFIT CREATED BY THEIR WORK ENDS UP IN THE BUILDER'S POCKET, AND NOT THE POCKET OF THE OWNER.  IN ALL PROBABILITY, THE ACTUAL COSTS TO REBUILD THE DWELLING WOULD LIKELY BE SIGNIFICANTLY HIGHER THAN THE COSTS INDICATED BY MARSHALL & SWIFT.  IT LIKELY WOULD BE VIRTUALLY IMPOSSIBLE TO LOCATE A BUILDER WHO WOULD REBUILD THE SUBJECT FOR COSTS AS INEXPENSIVE AS THOSE INDICATED BY MARSHALL AND SWIFT.

IN REALITY, IT WOULD COST APPROXIMATELY DOUBLE TO TRIPLE THE MARSHALL & SWIFT COSTS, TO REPLACE THE SUBJECT DWELLING, IN CARMEL.

FNMA REQUIRES APPRAISERS ARE TO USE MARSHALL AND SWIFT COSTS, NOT LOCAL COSTS. HOWEVER,  THE USPAP REQUIRES APPRAISERS TO NOT PRODUCE APPRAISALS THAT ARE MISLEADING. MARSHALL & SWIFT 'COSTS' ARE SUBSTANTIALLY BELOW LOCAL BUILDING COSTS; THEREFORE, USE OF MARSHALL & SWIFT BUILDING COSTS IS MISLEADING.

THIS PRESENTS A DILEMMA FOR APPRAISERS - FNMA REQUIRES APPRAISERS TO DO SOMETHING THAT THE USPAP PROHIBITS.

WHAT SHOULD APPRAISERS DO UNTIL THE GOVERNMENTAL AGENCIES REGULATING APPRAISERS AND APPRAISALS, RESOLVE THIS CONFLICT THEY HAVE CREATED?

UNTIL THE GOVERNMENTAL AGENCIES RESOLVE THE CONFLICT THEY HAVE CREATED, A COST APPROACH HAS  NOT BEEN ATTEMPTED, AS A FNMA-COMPLIANT COST APPROACH WOULD NOT BE USPAP COMPLIANT, AND WOULD RESULT IN AN EFFECTIVELY MEANINGLESS APPROACH TO VALUE. THEREFORE, THE COST APPROACH HAS NOT BEEN INCLUDED.

INSURABLE VALUE
THE MARSHALL & SWIFT COST APPROACH LIKELY DOES NOT REPRESENT THE 'TRUE' COST TO REBUILD THE SUBJECT PROPERTY.  IN ACCORDANCE WITH ADVICE RECEIVED FROM OREA AND AN ERRORS AND OMISSIONS INSURANCE COMPANY, THE MARSHALL & SWIFT COST APPROACH SHOULD NOT BE USED FOR INSURABLE VALUE, AS, IT WILL LIKELY COST SIGNIFICANTLY MORE TO REBUILD THE SUBJECT THAN MARSHALL & SWIFT COSTS INDICATE.



FRONT VIEW OF
SUBJECT PROPERTY

REAR VIEW OF
SUBJECT PROPERTY

STREET SCENE OF
SUBJECT PROPERTY

File No.     2Av2neDz

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner  JOHNSON | |
| Property Address  2ND AVENUE, 2 NE DOLORES | |
| City   CARMEL | County   MONTEREY |
| Lender or Client   NOLAN REALTY | State   CA     Zip Code   93921 |



2ND AVENUE, 2 NE DOLORES
KITCHEN



2ND AVENUE, 2 NE DOLORES
LIVING ROOM



2ND AVENUE, 2 NE DOLORES
BEDROOM

Barnes & Havens Appraised



File No.    2Av2neDz

## PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner  JOHNSON | |
| Property Address  2ND AVENUE, 2 NE DOLORES | |
| City  CARMEL   County  MONTEREY   State  CA   Zip Code  93921 | |
| Lender or Client  NOLAN REALTY | |

2ND AVENUE, 2 NE DOLORES
VIEW 1

Barnes & Havens Appraised



PHOTOGRAPH ADDENDUM

File No.    2Av2neDz

Borrower or Owner  JOHNSON
Property Address  2ND AVENUE, 2 NE DOLORES
City  CARMEL          County  MONTEREY          State  CA          Zip Code  93921
Lender or Client  NOLAN REALTY

**COMPARABLE #1**

SE LINCOLN ST
APN- 010 127 023

| | |
|---|---|
| Price | $1,475,000 |
| Price/SF | 1,156.86 |
| Date | 03/15/07 COE |
| Age | OLDER/UPDATED |
| Room Count | 5-2-2 |
| Living Area | 1,275 |
| Value Indication | $1,405,000 |

**COMPARABLE #2**

NE COR LINCOLN ST
APN- 010 128 007

| | |
|---|---|
| Price | $1,660,000 |
| Price/SF | 1,121.62 |
| Date | 01/30/07 COE |
| Age | 4 YEARS+- |
| Room Count | 5-3-2 |
| Living Area | 1,480 |
| Value Indication | $1,502,640 |

**COMPARABLE #3**

2 SW Perry Newberry/Fifth Wy
APN- 009 163 002

| | |
|---|---|
| Price | $1,233,500 |
| Price/SF | 883.60 |
| Date | 04/13/07 COE |
| Age | 53 YEARS+- |
| Room Count | 6-3-2 |
| Living Area | 1,396 |
| Value Indication | $1,346,220 |

Barnes & Havens Appraised



File No.    2Av2neDz

PHOTOGRAPH ADDENDUM

| | |
|---|---|
| Borrower or Owner | JOHNSON |
| Property Address | 2ND AVENUE, 2 NE DOLORES |
| City | CARMEL  County  MONTEREY  State  CA  Zip Code  93921 |
| Lender or Client | NOLAN REALTY |

**COMPARABLE #4**

3 LINCOLN ST
APN- 010 127 008

| | |
|---|---|
| Price | $1,500,000 |
| Price/SF | 966.49 |
| Date | 08/22/06 COE |
| Age | OLDER/UPDATED |
| Room Count | 6-3-2 |
| Living Area | 1,552 |
| Value Indication | $1,449,000 |

**COMPARABLE #5**

3 NW SAN CARLOS/FIRST ST
APN- 010 116 004

| | |
|---|---|
| Price | $1,132,000 |
| Price/SF | 1,347.62 |
| Date | 08/24/06 COE |
| Age | 53 YEARS+- |
| Room Count | 4-2-1 |
| Living Area | 840 |
| Value Indication | $1,396,440 |

**COMPARABLE #6**

| | |
|---|---|
| Price | $ |
| Price/SF | |
| Date | |
| Age | |
| Room Count | --- |
| Living Area | |
| Value Indication | $ |

Barnes & Havens Appraised



Barnes & Havens Appraised





File No.    2Av2neDz

| | |
|---|---|
| Borrower or Owner JOHNSON | |
| Property Address 2ND AVENUE, 2 NE DOLORES | |
| City CARMEL    County MONTEREY    State CA    Zip Code 9302 | |
| Lender or Client NOLAN REALTY | |

**LOCATION MAP**

Barnes & Havens Appraised

# EXHIBIT "L"

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $ 900,000 | Interest Rate 7.35 % | No. of Months 360 | Amortization Type: ☑ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | | No. of Units |
|---|---|---|
| 2nd Avenue  2 NE of Dolores Street    Carmel, CA 93921 | | |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| Please See Prelim | 2 1910 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): ☑ Refinance  ☐ Construction-Permanent | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made |
|---|---|---|---|---|
| 1995 | $ 285,000 | $ 776,000 | Lower Rate | Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: ☑ Fee Simple  ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

### III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Deborah Johnson | |

| Social Security Number 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 | Home Phone (incl. area code) 831-915-8339 | DOB (MM/DD/YYYY) 10/21/1960 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married  ☐ Unmarried (include single, ☐ Separated    divorced, widowed) | Dependents (not listed by Co-Borrower) no. 1  ages 17 | ☐ Married  ☐ Unmarried (include single, ☐ Separated    divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own  ☐ Rent 10 No. Yrs. 2nd Avenue 2 NE of Dolores Street Carmel CA 93921 | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  ☑ Self Employed The Core Financial Group 401 E. Hillcrest Blvd. Suite 21 Inglewood CA 90301 | Yrs. on this job 3 | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| | Yrs. employed in this line of work/profession 3 1/2 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business Senior Accounts Manager | Business Phone (incl. area code) (310) 412-2004 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Mac Form 65  01/04
Form 1003 Loanapp1.frm 01/04

Page 1 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003  01/04

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | $ |
| Overtime | | | | First Mortgage (P&I) | 4828 | |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 114.17 | 114.17 |
| Dividends/Interest | | | | Real Estate Taxes | 316.40 | 316.40 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ 5258.57 | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notices: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | Novastar Mortgage | * | 776,000 |
| Checking | | | 4828 | 23,000 |
| BofA | | | | 799,000 |
| Acct. no. | $ 15K | Acct. no. 3601000137 9791 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Savings | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Ing | 110K | | | |
| Ing | 27K | | | |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) Jetta | 12,000 | Acct. no. | | |
| Bmw 745 LI | 60,000 | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) Personal Property | 135,000 | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ | Net Worth (a minus b) ⇒ $ | Total Liabilities b. | $ |

Freddie Mac Form 65    01/04
Calyx Form 1003 Loanapp2.frm 01/04

Borrower _____
Co-Borrower _____

Page 2 of 4

Fannie Mae Form 1003    01/04

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2nd Avenue 2VE of Delores ST Carmel, CA 93921 | SFR | $1,100,000 | $776,000 | $0 | $4828 | $43057 | $0 |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☑ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☑ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☑ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☑ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☑ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ ☑ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☑ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☑ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☑ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☑ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☑ ☐ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☐ ☐ | ☐ ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

| Borrower's Signature X | Date 02/21/05 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

| | BORROWER | CO-BORROWER |
|---|---|---|
| | ☐ I do not wish to furnish this information | ☐ I do not wish to furnish this information |
| Ethnicity: | ☐ Hispanic or Latino ☑ Not Hispanic or Latino | ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☑ White | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: | ☑ Female ☐ Male | ☐ Female ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) J. Michael Galloway | Name and Address of Interviewer's Employer PMC - 700 Larkspur Landing #275 Larkspur Ca 94939 |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature / Date 02/29/05 | |
| | Interviewer's Phone Number (incl. area code) 866-365-6180 | |

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle # 255 Larkspur, CA 94939
DRE License # 01375482 Expires 4/16/07

## Authorization to Disclose

I/we, the undersigned, have applied for a real estate loan through Pacific Mortgage Consultants, Loan Broker. I/we hereby authorize the release of any and all information required or requested by Loan Broker, their assignees, or their credit reporting agencies in their attempt to complete the processing and/or approval of our loan request.

Necessary information may include, but would not be limited to; employment and/or related compensation information, savings and checking account verifications, loan status, payment histories, credit action and mortgage balances, etc.

Loan Broker is hereby authorized to utilize copies of this form in its efforts to receive the above listed information.

Thank you for your cooperation in expediting the return of the requested information attached hereon.

Printed Name: Deborah Johnson
Applicant Signature: _Deborah E. Joh_    Date: 01/27/05
Social Security #: 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
Birthdate: 10-21-50

Co-Applicant Signature: _____    Date: _____
Printed Name: _____
Social Security #: _____
Birthdate: _____

Agent Name: _____    Date: _____    Phone Number: _____

#10

Pacific Mortgage Consultants, Inc
700 Larkspur Landing Circle # 275, Larkspur, CA 94955
DRE License # 0137-2492 Expires 4/16/07

## Equal Credit Opportunity Act (ECOA)

The Federal Equal Credit Opportunity Act (ECOA) prohibits discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer credit protection act. The federal agency which administers compliance with this law is:
Federal Trade Commission, 6th Pennsylvania Avenue, N.W.    Washington, D.C. 20580

## The Housing Financial Discrimination Act of 1977
### Fair Lending Notice

It is illegal to discriminate in the provision of or in the availability of financial assistance because of the consideration of:

- **Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is unchanging or is expected to undergo change in anticipating a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.**

- **Race, color, religion, sex, marital status, national origin or ancestry.**

It is illegal to consider the racial, ethnic, religious or national origin composition of a neighborhood or geographical area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change, in appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern assistance for the purchase, construction, rehabilitation or refinancing of one to four family residences occupied by the owner and for the purpose of the home improvement of any one to four unit family residence.

If you have any questions about your rights, or if you wish to file a complaint, contact the management of this financial institution, or:

Department of Real Estate
520 W. 4th Street, Suite 350
Los Angeles, CA 90013-1105

Department of Real Estate
1515 Clay Street, Suite 702
Oakland, CA 94612-1462

## Notice to Applicant of Right to Receive Copy of the Appraisal Report

You have the right to a copy of the appraisal report that we obtain on your property, provided you have paid for, or are willing to pay for the appraisal. To request a copy of the appraisal report, please phone your loan officer or loan processor to submit a written request as soon as same agent to: Pacific Mortgage Consultants, Inc., 700 Larkspur Landing Circle Suite 275, Larkspur, CA 94939.

| | |
|---|---|
| Deborah Johnson | Deborah Johnson |
| Phone Name | Applicant Signature    Date |
| | |
| Print Name | Co-Applicant Signature    Date |
| | |
| Agent Name | Broker Name |

#11

**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle #273 Larkspur, CA 94939
DRE License # 01378452 Expires 4/16/07

## Privacy Policy

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications and other forms;
- Information about your transactions with us, our affiliates, or others; and
- Information we receive from a consumer reporting agency.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## Notice to Home Loan Applicant – California Credit Score Disclosure

In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer-generated summary calculated at the time of the request based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will get a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision to take action on the loan application.

If you have questions concerning the terms of the loan, contact the lender. If you have questions about your credit score or the information in the credit report from which the scores were computed, you can contact this credit bureau at the address and phone numbers listed below.

Equifax (800) 685-1111
P.O. Box 740256
Atlanta, GA 30374-0256

Trans Union (866) 887-2673
P.O. Box 4000
Chester, PA 19016-4000

Experian (888) 397-3742
P.O. Box 2104
Allen, Texas 75013

Acknowledgement of Receipt

Deborah Johnson                            Deborah E. Job            04/07/05
Printed Name                               Applicant Signature       Date

Printed Name                               Co-Applicant Signature    Date

Loan/Phone              Date               Phone Number

**#12**

**Pacific Mortgage Consultants, Inc**
730 Larkspur Landing Circle #235 Larkspur, CA 94939
DRE License # 01275942 Expires 4/16/07

## Broker and Borrower Document Certification

The undersigned Broker and Borrower(s) hereby certify that all copies of documents provided to _____ ("Lender"), for the purpose of underwriting and closing Broker and Borrower(s) loan are true and exact copies of the original documents provided by the borrower(s) and further certify that the original documents do not contain any alterations, revisions, erasures or whiteouts.

For purposes of this Broker and Borrower Document Certification, Broker and borrower(s) acknowledge that such certifications pertains to any and all documents provided by Borrower(s) to Broker for purpose of loan processing, underwriting and closing, and may include but are not limited to the following:

- Paystubs/Earning Statements
- W-2 forms
- Individual Income Tax Returns (IRS Form 1040)
- Partnership Tax Returns (IRS Form 1065)
- Corporate Tax Returns (IRS Form 1120)
- Bank/Savings/Credit Union Account Statements
- Cancelled Checks
- Business Balance Sheet and Income Statement
- Rental Agreements
- Purchase Contracts/Agreements

Note: In order to comply with investor requirements for sale of loans, the Lender may require the borrower(s) to provide original signatures on the first two pages of any tax returns.

Acknowledged by:

_____
Authorized Employee and Title

_____
Broker Name

_____
Broker Name

_____    Date _____
Borrower Signature    Date

_____
Co-Borrower Signature    Date

#13

**Pacific Mortgage Consultants, Inc.**
700 Larkspur Landing Circle # 275 Larkspur, CA 94939
DRE License # 01374482 Expires 4/1/2010

## Mortgage Loan Origination Agreement

You ( _____ ) agree to enter into this Mortgage Loan Origination Agreement with Pacific Mortgage Consultants/Broker to apply for a residential mortgage loan, from a participating lender with which we regularly do business upon such terms and conditions as you may request or a lender may require. You inquired into mortgage financing with Pacific Mortgage Consultants on ____ 20____. We are licensed as a "Mortgage Broker" under the state laws of California.

### Section 1. Nature of Relationship.

In connection with this mortgage loan:

- We will enter into separate independent contractor agreements with various lenders.
- While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or the best terms available in the market.

### Section 2. Our Compensation.

The lenders whose products we distribute generally provide their loan products to us at a wholesale rate.

- The retail price we offer you, your interest rate, will be higher than the wholesale rate. Just will include our compensation.
- In some cases, we may be paid all of our compensation by either you or the lender.
- Alternatively, we may be paid a portion of our compensation by both you and the lender. For example, in some cases, if you neither pay a lower interest rate, you may pay higher upfront points and fees.
- Also in some cases, if you would rather pay less up-front, you may be able to pay some or all of our compensation indirectly through a higher interest rate, in which case we will be paid directly by the lender.

We also may be paid by the lender based on (1) the value of the Mortgage Loan or related servicing rights in the market place or (2) other services, goods or facilities performed or provided by us to the lender.

By signing below, applicant(s) acknowledge receipt of a copy of this signed Agreement.

**MORTGAGE LOAN ORIGINATOR:**

**APPLICANTS:**

| | |
|---|---|
| By signing | Date |
| | _Please Number_ |
| Printed Name | Applicant Signature    Date |
| Phone Phone | Co-Applicant Signature    Date |
| Address | City, State, Zip |

#14

# EXHIBIT "M"

# OLD REPUBLIC TITLE COMPANY

2205 Fourth Street • Livermore CA • 94550 • (925) 443-1400 • FAX (925) 447-8247

Gerald Johnson and Deborah Johnson
2nd Avenue 2 NE of Dolores Street
Carmel, CA 93921

Date:  March 09, 2005
Escrow Number:  1114001775-TN
Property:    2nd Avenue 2 NE of Dolores Street
                Carmel, CA 93921
Reference:

Dear Gerald Johnson and Deborah Johnson

In connection with the escrow referenced above I have enclosed the documents listed below along with a brief description of the action I am requesting you take in respect to each item.

I also ask that you review the enclosed material and respond as requested at your earliest convenience so as to avoid any delay in the anticipated closing of this transaction.

If you have any questions regarding the content of the enclosed documents or the instructions regarding their disposition, please do not hesitate to contact me.

Sincerely,

Theresa Nigro
Escrow Officer

Please Fill Out, Sign and Return:
(*)   Statement of Information

TN/vh

Page 1 of 1

2205 Fourth Street • Livermore • 94550 • (925) 443-1400 • FAX (925) 447-8247

## CONFIDENTIAL STATEMENT OF INFORMATION

*This statement is to be signed personally by each party to the transaction and by both spouses/partners, if married/registered (Section 1 is to be completed by the husband/partner, and Section 2 by the wife/partner). This information is necessary because we have been asked to insure a transaction involving real property in which you are interested. In that regard, we may encounter judgments, bankruptcies, dissolutions and liens against persons with the same or similar name as yours.*

Property Address of Transaction: 2nd Avenue 2 NE of Dolores Street Carmel, CA 93921

Number & Street    City, State & Zip    Order Number 1114001775-TN/0707003629

Vacant Land:    Is any portion of the new loan    Improvements:    Is Property:

to be used for improvements?    ☐ Single Family

☐ Yes ☐ No    ☐ Yes ☐ No    ☐ Multiple Residence    ☐ Owner Occupied

☐ Commercial    ☐ Tenant Occupied

**1.** Name: _____

First    Middle (If None, write None)    Last

Social Security No.    Driver's License No.    Date of Birth    Place of Birth

Have you ever been issued, or used, any other Social Security Number? ☐ Yes ☐ No  If yes, what number did you use?

Status: ☐ Single ☐ Married* ☐ Divorced ☐ Widow/Widower ☐ Registered Domestic Partner    Mark One: ☐ Male ☐ Female

*Married or Registered On: _____ (Date)    At _____

*If married, spouse's name _____    *Spouse's name prior to marriage _____
*Your name prior to marriage _____    State resident since (date) _____

### OCCUPATIONS LAST TEN YEARS

Occupation    Firm Name    Address    No. Years
Occupation    Firm Name    Address    No. Years

### RESIDENCES LAST TEN YEARS

Number and Street    City and State    From (date)    To (date)    ☐ Own ☐ Rent
Number and Street    City and State    From (date)    To (date)    ☐ Own ☐ Rent

### FORMER MARRIAGES/REGISTERED DOMESTIC PARTNERSHIP

If no former marriage, write "none", otherwise complete the following:
Name of former spouse/partner: _____    Social Security No. _____
Deceased: ☐ Dissolution: ☐ Date: _____
First and last name(s) of children from this marriage _____ Where: _____
Name of former spouse/partner: _____    Social Security No. _____
Deceased: ☐ Dissolution : ☐ Date: _____
First and last name(s) of children from this marriage _____ Where: _____

**2.** (Spouse's/Partner's Name): _____

First    Middle (If None, write None)    Last

Social Security No.    Driver's License No.    Date of Birth    Place of Birth

Have you ever been issued, or used, any other Social Security Number? ☐ Yes ☐ No  If yes, what number did you use?

Status: ☐ Single ☐ Married* ☐ Divorced ☐ Widow/Widower ☐ Registered Domestic Partner    Mark One: ☐ Male ☐ Female

*Married or Registered On: _____ (Date)    At _____

*If married, spouse's name _____    *Spouse's name prior to marriage _____
*Your name prior to marriage _____    State resident since (date) _____

### OCCUPATIONS LAST TEN YEARS

Occupation    Firm Name    Address    No. Years
Occupation    Firm Name    Address    No. Years

### RESIDENCES LAST TEN YEARS

Number and Street    City and State    From (date)    To (date)    ☐ Own ☐ Rent
Number and Street    City and State    From (date)    To (date)    ☐ Own ☐ Rent

### FORMER MARRIAGES/REGISTERED DOMESTIC PARTNERSHIP

If no former marriage, write "none", otherwise complete the following:
Name of former spouse/partner: _____    Social Security No. _____
Deceased: ☐ Dissolution : ☐ Date: _____
First and last name(s) of children from this marriage _____ Where: _____
Name of former spouse/partner: _____    Social Security No. _____
Deceased: ☐ Dissolution : ☐ Date: _____
First and last name(s) of children from this marriage _____ Where: _____

I declare, under penalty of perjury, that the foregoing is true and correct.
Signature: _____    Date: _____
Home Phone: _____    Business Phone: _____
Signature: _____    Date: _____
Home Phone: _____    Business Phone: _____

TN/vh

On the reverse side is our *Confidential Statement of Information* form which we ask you to complete and return to us as soon as possible.

There really is a reason for our request for you to fill it out. We don't want you to think that we are unnecessarily interested in your personal affairs. We have been asked to insure the title to real property in which you are interested, and if you will give us the information called for, it will help us do our job quickly and accurately. All information will be treated as confidential.

Our state's population is growing rapidly. Please think for a moment how many of our residents have the same or similar names. In processing your order we will inevitably encounter judgments, bankruptcies, divorces and income tax liens against persons whose names are in some way similar to yours. Such matters must be considered unless eliminated by information showing you are not the person involved in these difficulties. You see, then, that we need to know something about you and your spouse, if you are married, so that we may promptly ignore all matters not directly affecting you or the property.

By completing this form in full, you are helping to make it possible for us to give you the kind of service we are sure you would like to receive.

TN/vh

# EXHIBIT "N"

DEVIN DERHAM-BURK, CHAPTER 13 TRUSTEE - DIVISION 5
STATE BAR NO. 104353
MAILING ADDRESS:    P.O. BOX 50013
                    SAN JOSE, CA 95150-0013

TELEPHONE:   (408) 354-4413
FACSIMILE:   (408) 354-5513

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA - DIVISION 5

| IN RE: | CHAPTER 13 CASE NO. 07-53614 MM |
|---|---|
| JOHNSON, DEBORAH ELIZABETH | **TRUSTEE'S OBJECTION TO CONFIRMATION WITH CERTIFICATE OF SERVICE**<br>341 Meeting: DECEMBER 19, 2007<br>Pre-Hearing Conference Date: FEBRUARY 22, 2008<br>Pre-Hearing Conference Time: 10:00 AM<br>Judge: MORGAN |
| Debtor(s) | Confirmation Hearing Place: U.S. Bankruptcy Court, Salinas |

Devin Derham-Burk, Trustee in the above matter, objects to the Confirmation of this 0% Plan for the following reasons:

1. The debtor does not qualify for Chapter 13 pursuant to Section 109(e).  Debtor has scheduled secured debt totaling $1,066,580.49.

Dated: December 18, 2007

/S/ Devin Derham-Burk

#104353 Chapter 13 Trustee

# EXHIBIT "O"

## ADDITIONAL REQUIRED CALIFORNIA DISCLOSURES

I. Proposed Loan Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __840,000.00__

    Initial Commissions, Fees, Costs and
    Expenses Summarized on Page 1: . . . . . . . . . . . . . . . . . . . . . . $ __7,104.50__
    Payment of Other Obligations (List):
        Credit Life and/or Disability Insurance (see VI below) $ _____
        Purchase Price / Payoff . . . . . . . . . . . . . . . . . . . . . . . . . . $ __783,763.00__
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

    Subtotal of All Deductions: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ __790,867.50__
    Estimated Cash at Closing . . . . . ☑ To You    ☐ That you must pay . . . . . . . . . . . . . . . . . . . $ __49,132.50__

II. Proposed Interest Rate: __2.180__ %     ☐ Fixed Rate    ☑ Initial Variable Rate

III. Proposed Loan Term: __360/360__     ☐ Years    ☑ Months

IV. Proposed Loan Payments: Payments of $ __3,168.19__ will be made ☑ Monthly ☐ Quarterly ☐ Annually for __360__ (number of months, quarters or years). If proposed loan is a variable interest rate loan, this payment will vary (see loan documents for details).

    The loan is subject to a balloon payment: ☑ No ☐ Yes. If Yes, the following paragraph applies and a final balloon payment of $ _____ will be due on _____ [estimated date (month/day/year)].

    NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES, AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.

V. Prepayments: The proposed loan has the following prepayment provisions:
    ☐ No prepayment penalty.
    ☐ Other (see loan documents for details).
    ☐ Any payment of principal in any calendar year in excess of 20% of the ☐ original balance ☐ unpaid balance will include a penalty not to exceed _____ months advance interest at the note rate, but not more than the interest that would be charged if the loan were paid to maturity (see loan documents for details).

VI. Credit Life and/or Disability Insurance: The purchase of credit life and/or disability insurance by a borrower is NOT required as a condition of making this proposed loan.

VII. Other Liens: Are there liens currently on this property for which the borrower is obligated? ☑ No ☐ Yes
    If Yes, describe below:

| Lienholder's Name | Amount Owing | Priority |
|---|---|---|
| | | |
| | | |

Liens that will remain or are anticipated on this property after the proposed loan for which you are applying is made or arranged (including the proposed loan for which you are applying):

| Lienholder's Name | Amount Owing | Priority |
|---|---|---|
| | | |
| | | |

NOTICE TO BORROWER: Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, costs, fees, and expenses even though you do not obtain the loan.

VIII. Article 7 Compliance: If this proposed loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned licensee certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the Real Estate Law.

    A. This loan ☐ may ☐ will ☐ will not be made wholly or in part from broker controlled funds as defined in Section 10241(j) of the Business and Professions Code.

    B. If the broker indicates in the above statement that the loan "may" be out of broker-controlled funds, the broker must inform the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds. DRE license information telephone number : 916-227-0770

| Name of Broker | License # | T. Michael Galloway | |
|---|---|---|---|
| | | Broker's Representative | License # |
| 2368 Research Drive | | | |
| Livermore, CA 94550 | | | |
| Broker's Address | | | |
| | | | |
| Signature of Broker | Date | OR   Signature of Representative | Date |

IX. NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of this form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

| | | | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Review completed on _____ by _____ | | | |
| Date | Broker or Designated Representative | Dept. of Real Estate License # | |

CALYX Form MDLS2.frm 2/99                       Page 2 of 2                      MLDS 554071293C

MAY-16-2008 FRI 09:19 AM                                                          P. 001/001

*Please doc Today! !!*

**FIRST FEDERAL BANK OF CALIFORNIA**

## LOAN DOCUMENT REQUEST FORM

**CONTACT AND LOAN INFORMATION:**
Broker Company: Pacific Mortgage    Contact Name: Sandy
Phone #: 925 583-1772    Broker E-mail Address: Sandy@calfundinggroup.com
Borrower Name OR LAR #: Deborah Johnson    Account Coordinator: Daniel Lewis

**LOAN PROGRAM, RATE & FEES:**

Loan Program: ☐ Fixed Advantage 60    ☐ Fixed Advantage 38    ☒ Standard Monthly Adjustable

Loan Amount: 840,000    Term/Months: 360/480 INDEX: CODI ✓ COFI ___ 12MAT ___
Initial Pay Rate: 2.150    Margin: 3.8    Life Cap: 10.150
Broker Rebate*: (2.00)% + .250 (☐ Check if .250 VIVA Rebate Decrease Applicable) ☐ ____%
Broker Points*: ___    See Wholesale Loan Approval Sheet for final Prepayment Penalty.
(*Rebate and points may not exceed 4.0 pts. + $350 or on VIVA 4.25 pts. + $350 of the loan amount. Please itemize these below. Rebates of 0.500 or higher and/or loan amounts > than $1 Million automatically have a prepayment penalty. Underwriter may require a Classic Prepayment Penalty – at their discretion. Max 80% LTV for best rebates > 2.00% on SIVA or VIVA).

| | Amount | Due | POC | | Amount | Due | POC |
|---|---|---|---|---|---|---|---|
| Appraisal Fee | 400 | ☒ | ☐ | Processing Fee | 1090 | ☒ | ☐ |
| Credit Report Fee | | ☐ | ☐ | Misc. Fee    POM | 495 | ☒ | ☐ |

If your LTV is 60% or below and you want 110% negative amortization (versus the standard 125%), please check here ☐

**CONDITIONS:**    **IMPOUNDS**:

Estimated HUD-1:    YES NO
☐(First Federal Fees must be correct) ☐ (Satisfied)    Hazard Insurance ☐ ☒
    Taxes ☐ ☒

Loan Fees
Underwriting: $100    Doc Review: $250
Doc: $250    Tax/Flood/Misc: $105

**impounds required on LTVs of 90% or greater. Note: California Fair Plan requires the original insurance policy.

**VESTING / ESCROW INSTRUCTIONS:**

Complete Vesting: Deborah E. Johnson, a married woman as her sole & separate property

**REDUCED DOCUMENT LOAN CERTIFICATION:**
By signing below, the undersigned ("Broker") hereby certifies that Broker does not know or have any reason to believe that the applicant(s) would not qualify if full documentation were required.

**RESPA COMPLIANCE CERTIFICATION:**
By signing below, the undersigned ("Broker") hereby certifies under penalty of perjury under the laws of the State of California that Broker is familiar with the provisions of the Real Estate Settlement Procedures Act ("RESPA") and the guidelines issued by the U.S. Housing and Urban Development Department (the "HUD Rules") regarding RESPA, and, in particular, is familiar with Section 8 of RESPA governing payments in connection with settlement services. Broker represents that (i) Broker is in compliance with RESPA and the HUD Rules, (ii) in connection with the loan being submitted on this form, Broker has performed specific services which justify the fee to be paid to Broker in accordance with RESPA and the HUD Rules, and (iii) Broker is not aware of any payments to third parties which are not in compliance with RESPA and the HUD Rules.

Broker hereby certifies that all of Broker's fees have been disclosed to the Applicant(s)/Borrower(s), and that the Applicant(s)/Borrower(s) have consented to the Broker's fees.

**Method of Delivery:**
E-Mail (to Escrow Only): KWARNER@ATC-CA.com
OR
FedEx Account Number ____

Note the following:
1) Any changes to the loan program or rate may delay the ordering of documents.
2) File will be moved to the Documents Department upon receipt of completed form (Broker of record*** must sign & date BELOW; License # required).
3) A re-draw fee of $250 will be charged if changes are received after documents are prepared.
4) Signed loan documents and complete original package must be in our office by 10:00 a.m. the day before funding.
5) No facsimile documents will be accepted at time of funding.
Return the Loan Doc's to:

E-mail Address of the Title Co: KWarner@ATC-CA.com (Northern California)

**CERTIFICATION:**
Authorized by (Broker***): [signature]    Date 5/4/05

Print Name: Michael Galloway    License #: 013714302
*** Broker of record or Broker's authorized (and FFB licensed) signer.    REQUIRED    Expiration Date

Please Fax to your Wholesale Loan Coordinator using the fax number listed on your Wholesale Loan Approval Sheet.

Rev.2.11.05

310-451-6556



**Pacific Mortgage Consultants, Inc**
700 Larkspur Landing Circle # 275 Larkspur, CA 94939
DRE License # 01378482 Expires 4/16/07

## *Mortgage Loan Origination Agreement*

*You (_____) agree to enter into this Mortgage Loan Origination
Agreement with Pacific Mortgage Consultants/Broker to apply for a residential mortgage loan from a
participating lender with which we from time to time contract upon such terms and conditions as you may request
or a lender may require. You inquired into mortgage financing with Pacific Mortgage Consultants on
_____, 20____. We are licensed as a "Mortgage Broker" under the state laws of California.*

*Section 1. Nature of Relationship.*
*In connection with this mortgage loan:*
- *We will enter into separate independent contractor agreements with various lenders.*
- *While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders
  or investors in the market and cannot guarantee the lowest price or the best terms available in the market.*

*Section 2. Our Compensation.*
*The lenders whose loan products we distribute generally provide their loan products to us at a wholesale rate.*
- *The retail price we offer you, your interest rate, total points and fees will include our compensation.*
- *In some cases, we may be paid all of our compensation by either you or the lender.*
- *Alternately, we may be paid a portion of our compensation by both you and the lender. For example, in
  some cases, if you rather pay a lower interest rate, you may pay higher up-front points and fees.*
- *Also in some cases, if you would rather pay less up-front, you may be able to pay some or all of our
  compensation indirectly through a higher interest rate in which case we will be paid directly by the lender.*

*We also may be paid by the lender based on (1) the value of the Mortgage Loan or related servicing rights in the
market place or (2) other services, goods or facilities performed or provided by us to the lender.*

*By signing below, applicant(s) acknowledge receipt of a copy of this signed Agreement.*

### *MORTGAGE LOAN ORIGINATOR:*                    *APPLICANTS:*

_____        _____          _____
*By Agent*                      *Date*            *Phone Number*

                                                  *Deborah E. John*          02/27/05
_____                          _____   _____
*Printed Name*                                    *Applicant Signature*       *Date*

_____                          _____   _____
*Printed Name*                                    *Co-Applicant Signature*    *Date*

_____                          _____
*Address*                                         *City, State, Zip*

# #14

REV. 4.01.2003

## FIRST FEDERAL BANK OF CALIFORNIA

### LOAN SUBMISSION SHEET

Account Executive Name: **Wendell**          FFB Broker No:

Company Name: **PMC**
Address: **2208 Research Drive**          Processor Name: **Sandy**
City: **Livermore** State: **Ca** Zip: **94550**          Processor E-Mail: **Sandy@cal-fundinggroup.com**
Telephone #: **925.583.1772**          Loan Officer Name: **Michael**
                                         Fax No: **925.294.9630**

Borrower Name: **Deborah Johnson**          Subject Property Address: **2nd Ave. 2NE of Dolores St.**
Co Borrower Name:          City: **Carmel** State: **CA** Zip: **93921**

Property Type: ☑ SFR ☐ PUD ☐ Condo ☐ 2 Units ☐ 3 Units ☐ 4 Units
Occupancy: ☑ Owner Occupied ☐ 2ⁿᵈ Home ☐ Investment (SIVA at VIVA only)
Loan Purpose: ☐ Purchase ☐ No Cash-Out Refinance (Rate/Term) ☑ Cash-Out Refinance          **870K    72.5%**
Purchase Price/Value: $ **1.2 mil**          Loan Amount: **900K**      LTV: **75** %
Other Financing: $ **0**          CLTV: **0** %

STEP 1 - SELECT A DOC TYPE: ☑          ☐ NINA   ■ SISA   ☐ SIVA   ☐ VIVA

STEP 2 - SELECT A PAY RATE PROGRAM:          ☑

| | NINA | SISA | SIVA | VIVA | (CHECK ONLY) |
|---|---|---|---|---|---|
| 1st [3/1 & 5/1] Year MTA Monthly Adjustable 30 Year/40 Year MTA [5/1 & 5/1 ARM] | | | | | |
| Min FICO | 660+ | 680+ | 680+ | 640+ | |
| Pay Rate up to 80% LTV | 2.75% | 2.35% | 2.25% | 2.25% | ☐ |
| Pay Rate up to 60% LTV | 2.25% | 1.85% | 1.75% | 1.75% | |
| 1st FICO [3/1 & 5/1] Year MTA Monthly Adjustable 30 Year/40 Year MTA [5/1 & 5/1 ARM] | | | | | |
| Min FICO | 660+ | 680+ | 680+ | 640+ | |
| Pay Rate up to 80% LTV | N/A | N/A | 1.75% | 1.75% | ☐ |
| Pay Rate up to 60% LTV | N/A | 1.35% | 1.25% | 1.25% | |
| 1st Qual Monthly Adjustable 30 Year/40 Year MTA [5/1 ARM] | | | | | |
| Min FICO | 660+ | 680+ | 680+ | 640+ | |
| Pay Rate up to 80% LTV | 2.00% | 1.80% | 1.50% | 1.80% | ☐ |
| Max 110% Neg Am | | | | | |
| Standard Monthly Adjustable 30 Year/40 Year MTA [FICO] | | | | | |
| Min FICO | 660+ | 620+ | 620+ | 620+ | |
| Pay Rate up to Program LTV* | 2.48% | 2.06% | 1.96% | 1.96% | ■ |
| Pay Rate up to Program LTV* | N/A | N/A | N/A | 1.25% | |
| Max 110% Neg Am, Owner Occupied | | | | | |
*Standard price increases apply on LTV's >80%.

STEP 3 - SELECT AN INDEX: ■ CODI   ☐ COFI   ☐ 12MAT          ☑

STEP 4 - PREPAYMENT PENALTY OPTIONS: ☑
■ Rebate Prepayment Penalty - Declining 3-Year based on rebate
☐ One Year Prepayment Penalty - VIVA/SIVA Owner Occ. PURCHASES ONLY (Max Rebate = 1 Point for One Year, 2% Prepay)
☐ Roll Over the Prior Prepayment Penalty (Prepayment Discount & Roll Over Form must be submitted)
Note: A Classic Prepayment Penalty may be required by Underwriter (2%,2%,1%)
    (Typically required when more than 1 financing within 12 months)
    Loans > $1 Million automatically get A Rebate Prepay of 0.00.

STEP 5 - CHOOSE NEGAM RECAST LIMIT* & IMPOUNDS: ☑
☐ 110% Recast      ☐ 125% Recast ( <=80.00% LTV )
( *- LOAN WILL RECAST AT CHOSEN PERCENTAGE OR 5 YEARS WHICHEVER OCCURS FIRST)
THE DEFAULT RECAST AT 80% LTV or less is 125%. 115% RECAST REQUIRED ON PAY RATES OF 1.25% OR LESS or LTV's of > 80%)
MATCH YOUR RECAST LIMIT CHOSEN WITH YOUR DOC ORDER.

LTV's ≥ 80%:   ☐ No MI (Included in the rate, allowed on VIVA and SIVA only)
               ☐ BPMI (Borrower Paid MI)

Impounds: ☑    ☐ Tax impounds (required on LTV's greater than 89.90%)
               ☐ 1320 Insurance Impounds
LMI Premium: ☐          Contact your AE.

Improve your margin if the following applies (Owner Occupied only):
| Criteria/Doc Type | Margin Improvement |
|---|---|
| > 700 FICO on Vista | -15 bps |
| < 65% LTV SIVA or VIVA | -10 bps |
| > 720 FICO on SIVA | -10 bps |

NOTE: See Matrix for LTV. See Rate sheet for additional adds to rates. Non-Owner loans are only available on the Standard Monthly Adjustable.

STEP 6 - TOTAL RATES FROM RATE SHEET:
Date of Rate sheet:
Fully Indexed/Fully Amortized Qual. Rate: **5.986** %
(IOK to Qualify on 40 Year Term. Max. DTI 38% Stated. 45% VIVA)
Points to Broker: **0** %
Rebate: **3.25** %
Margin/Floor: **3.49** %
Life Cap: **11.95** % (11.95% on rebates > 2%)
If the above is left blank, loan will be priced with a 1 point rebate.

Max Points (Taxa & 4 Points >$250 OR 4.25 & $250 If VIVA)

STEP 7 - CHOOSE TERM: ☑ 30 Year   ☐ 40 Years

STEP 8 - SUBMISSION:
☑ Appraisal has been/will be submitted via E-mail to: submitloan@firstfedca.com
Date submitted/will submit: **4/21**
Underwriter Review:
☐ An FFB Underwriter has previously reviewed this file.
Underwriter Name:

Loan Fees Total $659 comprised of:
Underwriting $300      Doc's $250
Redraw Charge $250      Tax/Flood/Wire: $109

*For reduced doc loans (NINA, SISA, SIVA) Broker Certification will be required at time of docs. See page 1.
www.firstfedca.com/brokersite

Loan Submission Sheet - Page 1 of 2