1  PAMELA L. COX (State Bar No. 191883)
2  **HEMAR, ROUSSO & HEALD, LLP**
   15910 Ventura Boulevard, 12th Floor
   Encino, California  91436
3  (818) 501-3800; (818) 501-2985 (Fax)
   e-mail: pcox@hemar-rousso.com
4  Refer to File Number: 3968-20080200-PLC

5  Attorneys for Defendant
   FIRST FEDERAL BANK OF CALIFORNIA
6

7

8              IN THE UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  DEBORAH E. JOHNSON and            CASE  NO. C08-00264PVT
    GERALD D. JOHNSON,
12                                    [Ordered Related to Case No. 08-
                                      01796PVT]
13              Plaintiffs,
                                      DEFENDANT'S REQUEST FOR
14        v.                          JUDICIAL NOTICE IN SUPPORT OF
                                      ITS MOTION TO DISMISS
15  FIRST FEDERAL BANK OF             PLAINTIFFS' SECOND AMENDED
    CALIFORNIA,                       COMPLAINT
16
                                      Hearing:
17                                    Date : October 7, 2008
                                      Time: 10:00 a.m.
18              Defendant.            Courtroom:  5
19                                    Patricia V. Trumbell, Magistrate

20  _____

21  **TO THE HONORABLE PATRICIA V. TRUMBELL, MAGISTRATE AND ALL**

22  **INTERESTED PARTIES:**

23      Defendant FIRST FEDERAL BANK OF CALIFORNIA (hereinafter "Defendant" or

24  "First Federal") hereby respectfully requests that the Court take Judicial Notice of the

25  following documents.  This request is made pursuant to Rule 201 of the Federal Rules of

26  Evidence in connection with Defendant's Motion to Dismiss Plaintiffs' Amended

27  Complaint for Failure to State a Claim Upon Which Relief can be Granted and Lack of

28  Subject Matter Jurisdiction.

                              1

## BASIS FOR JUDICIAL NOTICE

The Court may take Judicial Notice of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  That is true of each of the following:

1.  Note and Deed of Trust executed by Deborah Johnson on May 5, 2005, and recorded on May 16, 2005.  (The Court has already taken Judicial Notice of these documents in connection with Defendant's first Motion to Dismiss Complaint.  Copies of these documents are attached hereto as Exhibit "1" and Exhibit "2," respectively, for the court's reference and convenience).

2.  Order Granting in Part and Denying in Part Defendant First Federal Bank of California's Motion to Dismiss; Further Scheduling Order, entered on July 8, 2008 in the above-captioned case.  Attached hereto as Exhibit "3" and incorporated herein by reference is a true and correct copy of this Order.

3.  Order and Notice of Dismissal filed on January 4, 2008 in Plaintiff Deborah E. Johnson's Chapter 13 bankruptcy, Case No. 07-53614, and docket report re: Motion to Relief from Automatic Stay, true and correct copies of which are attached hereto as Exhibit "4."

DATED: August 25, 2008              HEMAR, ROUSSO & HEALD, LLP

                                    By: _____
                                        PAMELA L. COX
                                        Attorneys for Defendant
                                        FIRST FEDERAL BANK OF
                                        CALIFORNIA

PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen and not a party to the within action. My business address is Hemar, Rousso & Heald, , LLP ("the business") 15910 Ventura Blvd., 12th Floor, Encino, CA 91436-2829.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

On August 27, 2008, I served the foregoing document described as **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

**DEBORAH E. JOHNSON**
**PO Box 4448**
**Carmel, CA 93921-4448**

**GERALD D. JOHNSON (Pro Se, Filing Party)**
**PO Box 4448**
**Carmel, CA 93921-4448**

At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

__     I delivered such envelope(s) by hand to the offices of the addressees.

__     I caused such copies to be facsimiled to the persons set forth.

__     (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

XX     (Federal) I declare under penalty of perjury under the laws of the United States of America that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on August 27, 2008, at Encino, California.

*Lisa Fields*
LISA FIELDS

# EXHIBIT 1

AML WITH PAYRATE
NOTE SECURED BY DEED OF TRUST
(Adjustable Interest Rate Loan - CODI Index)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

U.S. $ 840,000.00

Loan No.: 49792970

Santa Monica, California

May 5, 2005

2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

(Property Address)

1.  In return for a loan that I have received, I promise to pay
    EIGHT HUNDRED FORTY THOUSAND AND 00/100

    Dollars (U.S. $ 840,000.00 ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  INTEREST
    (a) Interest Rate
         Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of 5.786% . This is my initial interest rate. The interest rate I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.
    (b) Interest Change Dates
         The interest rate I will pay may change on the 1st day of July, 2005 and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

    (c) Interest Rate Limit
         So long as I own the property securing this Note, my interest rate will never be greater than 10.150% , or lower than 3.800% . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be 4.354% percentage points above the greater of:

             (i) my initial interest rate, or
             (ii) my interest rate at the time of sale or transfer.

    (d) The Index
         Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index"). The Index is determined by the Lender based upon the average of the last twelve calendar months' most recently published monthly yields on dealer offering rates on nationally traded three-month certificates of deposit. The Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve, rounded to the nearest one-thousandth of one percentage point (0.001%). Information on such monthly yields on three-month certificate of deposit dealer rates is published by the Federal Reserve Board. The most recent Index figure available as of the date 15 days before each Interest Change Date is the "Current Index."
         If the Index or any Index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted Index as of the last preceding Interest Change Date on which the prior Index was available or the date of this Note, whichever occurs later, such that the sum of the substituted Index and the adjusted Margin will be similar to the sum of the prior Index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted Index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.

    (e) Calculation of Interest Rate Changes
         Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding 3.800% percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will by my new interest rate until the next Interest Change Date.

3.  PAYMENTS
    (a) Time and Place of Payments
         I will pay principal and interest by making payments every month.

         I will make my monthly payments on the first day of each month beginning on July 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."
         I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Grfe;!120270!119!!!!!!!!Qbhf !24!pg63

Lo No.: 49792970

(b) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of THREE THOUSAND ONE HUNDRED SIXTY-EIGHT AND 20/100

Dollars (U.S. $ 3,168.20). This amount may change.

My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on an interest rate of 2.150%. This lower payment amount will not reflect the actual interest rate that is being charged on my Note.

(c) Payment Change Dates

My monthly payment may change as required by Section 3(d) below beginning on the 1st day of July, 2006, and on that day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

(d) Calculation of Monthly Payment Changes

At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075 in the event the Full Payment is greater than such monthly payment. The result of this calculation is called the "Limited Payment." Unless Sections 3(f) or 3(g) below requires me to pay a different amount, I will pay the Limited Payment.

(e) Additions / Reductions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

(f) Limit on My Unpaid Principal; Increased Monthly Payment.

My unpaid principal can never exceed a maximum amount equal to ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%) of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

(g) Required Full Payment

On July 1, 2016, and on the same day every five years thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. At this time I will not have the option of paying the Limited Payment. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

4. NOTICES OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

Loan No.: 49792970

7. **LEGISLATION AFFECTING LENDER'S RIGHT**

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

8. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(a) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(b) Accrual of Interest on Unpaid Balance

In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

(c) Default

If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

(d) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(e) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(f) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

9. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

10. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

11. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

12. **SECURITY**

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: "Assumptions. During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

PAGE THREE

Loan No.: 49792970

### 13.  CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14.  LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

BORROWER(S):

_Deborah E. Jo_____ , By_Deral S. Jo_____ ,_

Deborah E. Johnson

_as her attorney in fact_

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjme;!120270&de!&Ull!!!!Qbhf !27!pg63

FUN 11004

FIRST FEDERAL BANK
OF CALIFORNIA
Corporate Office
401 Wilshire Boulevard
Santa Monica, CA 90401-9490

Loan No.: 49792970

## PREPAYMENT CHARGE RIDER TO
## NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated
May 5, 2005 by and between

Deborah E. Johnson, a married woman as her sole and separate property

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein
shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict
with any provision contained in the Note, the provisions hereof shall control.

1.    Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

   "5. BORROWER'S RIGHT TO REPAY

   I have the right to make payments of principal at any time before they are due. A payment of principal only
   is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am
   doing so. I may make a full prepayment or partial prepayments.

   Over the first three Loan Years, I may prepay an aggregate amount not exceeding $ 168,000.00     (20
   percent of the original loan amount; the "Permitted Prepayment") without penalty. During the first three
   Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a
   prepayment charge pursuant to the following schedule:

   FIRST LOAN YEAR:    $ 25,200.00

   SECOND LOAN YEAR:    $ 16,800.00

   THIRD LOAN YEAR:    $ 8,400.00

   After completion of the third Loan Year, there will be no prepayment charges for any full or partial
   prepayments. As used in this Note, "Loan Year" means each year during the term of this Note
   commencing thirty days before the first payment due date.

   The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or
   involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted
   acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict
   my right to prepay at any time without penalty, accrued but unpaid interest that has been added to
   principal.

   The Note Holder may require that any partial prepayments be made on the date monthly payments are due
   and be in the amount of one or more monthly payments which would be applied towards principal. Any
   partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the
   principal balance of the Note which shall not relieve me of the obligation to make the installments each and
   every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the
   amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes.
   My partial prepayment may reduce the amount of my monthly payments after the first Payment Change
   Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset
   by an interest rate increase."

2.    Partial Reduction and Deferral of Prepayment Charge

   a.    Upon Borrower's written request at time of prepayment, Lender will provide Borrower with a credit in the
        amount of $500.00 if an eligible new first trust loan that replaces this Loan ("New Loan") is obtained
        from Lender. If this Loan is submitted by a mortgage broker, Lender shall waive an additional amount of
        up to $500.00 in prepayment charges provided that the New Loan is submitted by the same mortgage
        broker that originally submitted this Loan to Lender. Any credits hereunder shall be in the form either of
        a reduction in the prepayment charge applicable to the New Loan or, at Borrower's option, a reduction in
        the amount of the prepayment charge payable by Borrower upon payoff of this Loan.

   b.    For purposes of this paragraph, eligible New Loans are as follows:

      i.    Borrower either (a) obtains a new first trust deed loan from Lender secured by the same property
           as this Loan (a refinance loan); or (b) obtains a new first trust deed loan from Lender secured by a
           different property and pays off this Loan at the same time as the New Loan closes; and

      ii.   The new loan must be subject to a prepayment charge for the first three years of the loan term;
           and

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!12Ⓒ278119!!!!!!!!Qbhf !28!pg63

Loan No.: 49792970

    iii.  The prepayment charge on the New Loan will include the remaining dollar amount of the outstanding prepayment charge computed on this Loan, less the reduction referred to in Subsection a. above; and

    iv.  The New Loan terms will include an adjustment to the rate (if the new loan is a 3 year fixed rate interest-only product) or margin (if the new loan is a monthly ARM product) in an amount necessary to compensate the Lender on the new loan that is equivalent, in Lender's sole judgment, to the yield on this Loan.

  c.  In the event that Borrower pays off this Loan in full, including payment of the prepayment charge, and within sixty days thereafter Borrower obtains a New Loan on another property from Lender, Borrower will be given a credit toward fees on the new loan in the amount referred to in Subsection a. above.

3.    Reduction of Prepayment Charge Upon Extension of New Loan to Buyer of Subject Property

At Borrower's and the buyer's written request, Lender will reduce the prepayment charge on this Loan by $500.00 ($1,000 if the same mortgage broker as Borrower used submits the loan from the buyer): if Borrower sells the property securing this Loan and the buyer finances the purchase with a new loan from Lender on the following terms and conditions:

  a.  The new loan may NOT include a payment by Lender to Borrower, the buyer of the property secured by the deed of trust on this Loan, a mortgage broker or any other third parties; and

  b.  The new loan must be subject to a prepayment charge on Lender's then current terms.

This provision does not constitute a commitment to make a new loan to Borrower or to any buyer of the subject property. Any new loan shall be subject to Lender's normal underwriting, credit review, appraisal, and other lending evaluation processes. This waiver applies only to the existing Loan, and not to any new loan.

4.    Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

_Deborah E. Johnson_ , _By [signature]_ , as her attorney in fact

Deborah E. Johnson

# EXHIBIT 2

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

Loan No. 49792970
Title Order No. 0707003629

Recorded at the Request of
Old Republic Title Company
Livermore

Stephen L. Vag~ ~f
Monterey County Recorder       CRROBERTA
Recorded at the request of        5/16/2005
**Old Republic Title**              8:00:00


DOCUMENT: **2005048551** | Titles: 1/ Pages: 10

Fees.... 
Taxes...        32.00
Other...
AMT PAID    $32.00

*Space above this line for recorder's use*

---

☐ CONSTRUCTION ☒ NON-CONSTRUCTION
Deed of Trust and Assignment of Rents
**ADJUSTABLE INTEREST RATE LOAN**

THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.

THIS DEED OF TRUST IS MADE ON          May 5, 2005                              The trustor is

Deborah E. Johnson, a married woman as her sole and separate property

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or" Beneficiary").

Borrower owes Lender the principal sum of
EIGHT HUNDRED FORTY THOUSAND AND 00/100

Dollars (U.S. $ 840,000.00).

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 06/01/2035. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance, if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust. For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in Monterey County, California:

AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 1 PAGE

010-126-022

Which has the address of     2nd Ave 2 NE of Dolores Street, Carmel, CA 93921

("Property Address")

FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE

FUN 20101 (2004-02-18) (OS 016)

Loan No. 49792970

TOGETHER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, rights of way, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter made a part of the property. The following items are added to the Property description, and shall also constitute the Property covered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property. All replacements and additions are also covered by this Deed of Trust.   Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the lien of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

Loan No. 49792970

(5) **Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) **Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided in Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) **Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "Impounds". Lender may estimate the Funds due on the basis of current data and reasonable estimates of future Impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of impounds as required by law.. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by .Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) **Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property: or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) **Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) **Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) **Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) **Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) **Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

Dbt f ;!18.64725!!!!!!Epd!$,!2: !!!!!Grhe;!120270̱3119!!!!!!!!Qbhf !33!pg63

FUN 20103 (2003-11-12)

Page 3

Loan No. 49792970

**(14) Acceleration Clause: Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

**(15) Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**(16) Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

**(17) Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

**(18) Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**(19) Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

**(20) Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

**(21) Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

**(22) Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

**(23) Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!12027031!9!!!!!!!Qbhf !34!pg63

**(32) Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**(33) Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

**(34) Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

**(35) Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

**(36) Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures; or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

**(37) Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq, ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99.499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**(38) Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**(39) Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**(40) Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**(41) Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower. This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

**(42) Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!1202708119!!!!!!!Qbhf !36!pg63

Loan No. 49792970

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit development ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owner Association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). Borrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation, By-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of this Deed of Trust in the manner provided in paragraph 10 hereof. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit; (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or creation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further agrees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or may in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by landowners.

Loan: 49792970

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

BORROWER(S):

_Deborah E. Ja_____ , by _Gerald D. Ja_____ ,
Deborah E. Johnson

as her attorney in fact

## ACKNOWLEDGMENT

STATE OF _California_ )
                        ) SS.
COUNTY OF _Monterey_ )

On _May 5, 2005_ , before me, _Theresa Tiliaia Castro_

personally appeared _Gerald D. Johnson_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

_Theresa Tiliaia Castro_ (Seal)

THERESA TILIAIA CASTRO
Comm. # 1452741
NOTARY PUBLIC-CALIFORNIA
Monterey County
My Comm. Expires Nov. 23, 2007

This Certificate must be attached to:

Title or type of Document: _Deed of Trust & Assignment of Rates._

Number of pages: _8_

Date of document: _May 5, 2005_

Signer(s) other than named above: _Deborah E. Johnson_

ACKNOW (2003-10-24)

Loan # 49792970

Order No. : 0707003629

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land referred to is situated in the State of California, County of Monterey, City of Carmel, and is described as follows:

PARCEL I:

Parcel "B" as shown on that certain Map filed August 27, 1980 in Volume 14 of Parcel Maps, at Page 58.

PARCEL II:

A non-exclusive easement for public utility purposes three feet wide, lying Southerly of and contiguous with the Northerly boundary of Parcel A as said parcel is shown on the map above referred to.

## END OF DOCUMENT

Dbt f ;!18.64725!!!!!!Epd!$;!2: !!!!!!Gjrhe;!12‌02‌7‌08119!!!!!!!!Qbhf !3: !pg63

# EXHIBIT 3

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| DEBORAH E. JOHNSON AND GERALD D. JOHNSON, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST FEDERAL BANK OF CALIFORNIA, <br><br> Defendant. | Case No.: C 08-01796 PVT <br><br> [and related case C 08-00264 PVT] <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FIRST FEDERAL BANK'S MOTION TO DISMISS; FURTHER SCHEDULING ORDER** <br><br> **[Docket No. 24]** |

12

13

14

15

16

17

**INTRODUCTION**

18

Following dismissal of the complaint with leave to amend, plaintiffs Deborah E. Johnson and

19

Gerald D. Johnson timely filed their first amended complaint alleging bank and mortgage fraud,

20

fraudulent transfer, truth in lending act violations, rescission and RICO claims. (collectively

21

"plaintiffs"). Defendant First Federal Bank of California ("Bank") moves to dismiss the first

22

amended complaint for lack of subject matter jurisdiction and for failure to state a claim.

23

Additionally, defendant Bank alleges that plaintiff Gerald D. Johnson lacks standing to allege truth

24

in lending violations and further alleges that such claims are barred by the statute of limitations.

25

Plaintiffs oppose the motion. On June 3, 2008, the parties appeared for hearing. Having reviewed

26

the papers and considered the arguments of plaintiffs and counsel for defendant Bank and for the

27

28

1    reasons set forth below, defendant Bank's motion to dismiss is granted in part and denied in part.[1]

2                                    **BACKGROUND**

3            Plaintiffs Deborah E. Johnson and Gerald D. Johnson are married and have resided at 2nd

4    Avenue 2NE of Dolores Street in Carmel By the Sea. ("residence") since 1995. Plaintiffs estimate

5    the residence has a current market value of $1.35-1.4 million.

6            In or around February 27, 2005, existing liens on the residence totaled $776,000 which

7    caused plaintiff Deborah E. Johnson and her mortgage broker, J. Michael Galloway of Pacific

8    Mortgage Consultants, Inc., to undertake efforts to obtain a loan on the residence. Mr. Galloway

9    submitted two loan applications identifying plaintiff Deborah E. Johnson as the sole borrower and a

10   letter verifying her employment at The Care Financial Group to defendant Bank. In the second loan

11   application, plaintiff Deborah E. Johnson listed her monthly income as $27,500. As attorney to

12   plaintiff Deborah E. Johnson, plaintiff Gerald D. Johnson executed the second Uniform Residential

13   Loan Application on her behalf.[2] Based on the two loan applications and various accompanying

14   documents, defendant Bank approved the loan and provided a notice of right to cancel to plaintiff

15   Deborah E. Johnson alone which was valid until midnight of the third business day following the

16   close of escrow. Escrow closed on May 5, 2005.

17          Prior to the close of escrow, both plaintiffs were named as borrowers on the loan papers.

18   Because of unsecured debt totaling $109,552, plaintiff Gerald D. Johnson alleges that his name was

19   removed from the loan papers at the close of escrow to facilitate final approval of the loan.

20   Notwithstanding the removal of his name however, plaintiff Gerald D. Johnson alleges that his

21   annual income of $155,000 was included on the loan papers. Indeed, plaintiffs now allege that

22   plaintiff Deborah E. Johnson had no income from January through June 2005. Plaintiff Gerald D.

23   Johnson also executed a quitclaim to the residence at the close of escrow to further facilitate final

24   approval of the loan.

25   

26          [1]    The holding of this court is limited to the facts and particular circumstances underlying
     the present motion.

27          [2]    Based on a power of attorney executed by Deborah E. Johnson on April 20, 2005,
28   plaintiff Gerald D. Johnson was appointed as her attorney in fact and was authorized to act on her behalf
     with respect to the residence. He was not listed as a co-borrower on either of the two loan applications
     submitted to the bank.

1    Plaintiff Gerald D. Johnson executed the final loan documents on behalf of his wife at the

2  close of escrow.  Later that same day, plaintiff Gerald D. Johnson forwarded to defendant Bank a

3  notice of the right to cancel on behalf of his wife and in his capacity as her counsel.  Specifically, he

4  stated that "[a]fter our complete review of the loan conditions, we are sorry to say that the loan

5  conditions fail to meet the present financial need for my daughter's education, we will continue to

6  review other options."  On May 8, 2008, plaintiff Gerald D. Johnson (again) on behalf of his wife

7  rescinded the notice of right to cancel.  He stated plainly that "[w]e have decided to proceed with the

8  closing of the loan and escrow on the previous terms."  Thereafter, defendant Bank funded the loan

9  on the residence and subsequently remitted payment totaling $16,800 to the mortgage broker, Mr.

10  Galloway.

11    The loan for an amount totaling $840,000 apparently included onerous terms such as a high

12  pre-payment penalty and high monthly payments (apparently without any payment toward the

13  principal).  Plaintiffs believed that the interest rate for the mortgage would remain fixed at 5.7

14  percent for three years. Based on the actual loan and other accompanying documents, plaintiffs

15  allege that defendant Bank engaged in predatory lending practices knowing that plaintiffs could

16  never meet their obligations under the loan.  Beginning in or around May 23, 2007, plaintiff

17  Deborah E. Johnson failed to remit any further monthly payments on the loan.

18    On July 11, 2007, defendant Bank sought to exercise its power of sale and recorded a notice

19  of default and election to sell under deed of trust.  ("NOD").  On October 16, 2007, a notice of

20  trustee's sale scheduled for November 8, 2007 was posted at the residence, mailed to plaintiffs and

21  published in the local newspaper.

22    On November 7, 2007, plaintiff Deborah Johnson filed an individual chapter 13 bankruptcy

23  petition.  In the various schedules accompanying her petition, the residence was identified as an

24  asset of the estate and the loan from the bank was identified as a liability.  Gerald Johnson was not

25  identified as a co-debtor on the loan whatsoever.  As a result of her bankruptcy filing, the trustee's

26  sale was postponed until February 8, 2008.  On January 11, 2008, Deborah Johnson sought to

27  convert her chapter 13 case to a chapter 7 case.  On January 16, 2008, defendant Bank filed a motion

28  for relief from the automatic stay to allow the bank to proceed with foreclosure of the residence.

1  The bankruptcy case has since been dismissed as a result of plaintiff Deborah Johnson's failure to

2  provide proper documentation of her current monthly income.

3          On November 16, 2007, plaintiff Gerald D. Johnson filed a chapter 7 bankruptcy petition.

4  His bankruptcy case was later dismissed for failure to file any of the proper schedules.

5          On February 8, 2008, defendant Bank proceeded with the non-judicial foreclosure.  The

6  trustee's deed upon sale was completed and recorded on February 12, 2008.

7          As of the petition date, the unpaid balance on the loan totals $962,311.64.  A second

8  mortgage on the residence held by National City totals $176,407.64.  Defendant Bank estimates that

9  encumbrances on the residence exceed its current market value of $1,050,000.

10          On January 15, 2008, plaintiffs filed a complaint alleging predatory lending violations,

11  including violations of the Truth in Lending Act, 15 U.S.C. section 1601 *et seq.*, as amended by the

12  Home Ownership and Equity Protection Act.  On March 10, 2008, defendant's motion to dismiss

13  was granted with leave to amend.  On April 1, 2008, plaintiffs filed their first amended complaint.

14          On April 17, 2008, defendant Bank moved to dismiss the first amended complaint.  On May

15  6, 2008, plaintiffs filed their opposition and on May 20, 2008, defendant Bank filed its reply.

16                                          **LEGAL STANDARD**

17          As set forth in the prior order of March 10, 2008, the following standards apply in a motion

18  to dismiss.  A complaint may be dismissed for failure to state a claim upon which relief can be

19  granted.  Fed. R. Civ. P. 12(b)(6).  The dismissal may be based on either the lack of a cognizable

20  legal theory or the absence of sufficient facts under a cognizable legal theory.  *Balistreri v. Pacifica*

21  *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) and *Robertson v. Dean Witter Reynolds, Inc.*, 749

22  F.2d 530, 533-534 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the allegations in

23  a complaint are taken as true and construed in the light most favorable to the nonmoving party.

24  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  "A complaint

25  should not be dismissed unless a plaintiff could prove no set of facts in support of his claim that

26  would entitle him to relief."  *Id.*  Generally, a motion to dismiss for failure to state a claim is viewed

27  with disfavor and rarely granted.  *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir.

28  1997).

1    However, mere conclusions couched in factual allegations are not sufficient to state a cause

2  of action. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). *See also, McGlinchy v. Shell Chem Co.,*

3  845 F.2d 802, 810 (9th Cir, 1988). The complaint must aver "[f]actual allegations [] enough to raise

4  a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 500 U.S. -, 127 S.Ct.

5  1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson,* 355 U.S. 41 (1957)). "[L]eave [to

6  amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Additionally, a

7  federal court may liberally construe the "inartful pleading" of parties appearing *pro se. Hughes v.*

8  *Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176 (1980).

9                                    **DISCUSSION**

10  **I.    Truth in Lending Act Claims**

11      **A.    Standing**

12      Defendant Bank again alleges that plaintiff Gerald D. Johnson does not have standing to

13  prosecute truth in lending violations because: (1) he was not a party to the loan; and (2) he is not

14  considered a "consumer" as defined by the applicable statutes.

15      "'To satisfy Article III's standing requirements, a plaintiff must show (1) [he] has suffered an

16  'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

17  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

18  likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

19  *Citizens for Better Forestry v. U.S. Dept. of Agriculture,* 341 F.3d 961, 969 (9th Cir. 2003).

20      Defendant Bank alleges (as before) that plaintiff Gerald D. Johnson lacks standing to

21  prosecute any violations of the Truth in Lending Act (as amended by HOEPA). First, defendant

22  argues that plaintiff Gerald Johnson is not a consumer as defined by the acts. A consumer is a party

23  to whom credit is offered or extended. Several factors militate against such a finding. For example,

24  only plaintiff Deborah E. Johnson was offered and ultimately extended a loan on the residence and

25  she alone listed the loan as a liability on her bankruptcy schedules. Her husband was not identified as

26  a co-debtor on the loan. For his part, plaintiff Gerald D. Johnson also did not list the loan on the

27  residence on any of his bankruptcy schedules. Additionally, both loan applications, the first of which

28  was completed by plaintiff Deborah E. Johnson herself, and approved by her mortgage broker,

1  identified her as the sole borrower on the loan. Thus, plaintiffs' own actions belie any assertion that

2  Gerald D. Johnson was a party to the loan on the residence. Second, plaintiff Gerald D. Johnson's

3  assertion that he was coerced or otherwise manipulated into removing his name from the loan papers

4  is demonstrably false, or at the least, not relevant to the claims at issue here.

5       Defendant Bank did not offer or extend credit to plaintiff Gerald D. Johnson. He is not listed

6  as a borrower on the loan. Therefore, he was not a consumer under the definition of the acts. Even if

7  his name was included on preliminary drafts of the loan papers, plaintiff Gerald D. Johnson was

8  removed from the loan papers before the loan was approved finally and extended only to his wife. He

9  cannot allege any injury in fact under these claims. Accordingly, plaintiff Gerald D. Johnson lacks

10  standing to allege violations of the Truth in Lending Act (as amended by HOEPA) and his claims are

11  dismissed with prejudice.

12       **B.    Statute of Limitations**

13       A motion to dismiss for failure to state a claim is proper where the facts and dates alleged in

14  the complaint indicate the claim is barred by the statute of limitations. *Jablon v. Dean Witter & Co.,*

15  614 F.2d 677, 682 (9th Cir. 1980). "Civil penalties under TILA and HOEPA are subject to a one-

16  year statute of limitations." *Barbera v. WMC Mortgage Corp., et al.,* Not Reported in F. Supp.2d,

17  2006 WL 167632 (N.D. Cal.). "'[T]he limitations period in Section 1640(e) runs from the date of

18  consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate

19  circumstances, suspend the limitations period until the borrower discovers or had reasonable

20  opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.'" *Walker*

21  *v. Washinton Mutual Bank FA,* 63 Fed. Appx. 316, 317 (9th Cir. 2003)(citing *King v. California,*

22  784 F.2d 910, 915 (9th Cir. 1986)).

23       Here, escrow closed on May 5, 2005. Plaintiffs brought the instant action on January 15,

24  2008, over two and one-half years later. Plaintiffs (again) have argued that defendant Bank directed

25  the escrow company to remove his name from the loan papers despite the inclusion of his income.

26  Plaintiff Gerald D. Johnson executed the loan papers as an attorney to his wife. Later he rescinded

27  the loan within the three day notice period. And even later (on May 8, 2005), he voided the

28  rescission which caused defendant Bank to fund the loan. By his own admission and his own actions,

1    plaintiff Gerald D. Johnson was aware of the alleged irregularities used to facilitate approval of the

2    loan at the close of escrow. Acting as counsel to his wife, presumably plaintiff Gerald D. Johnson

3    also caused his wife to be aware of the alleged irregularities at the close of escrow. Finally, plaintiff

4    Gerald D. Johnson acknowledged (again on behalf of his wife) the truth in lending disclosure

5    statement which sets forth the variable interest rate, gradually increasing payments due from July 1,

6    2005 to June 1, 2035 and the notice of a pre-payment penalty. Based on the facts alleged and taking

7    them as true, plaintiffs had knowledge of purported violations of the truth in lending act as soon as

8    escrow closed or at least, shortly thereafter. Therefore, plaintiffs have not alleged facts sufficient to

9    warrant suspension of tolling the statute of limitations. Accordingly, the violations of the Truth in

10   Lending Act (as amended by HOEPA) are dismissed with prejudice.

11          **C.    Rescission Claims**

12          Plaintiff Gerald D. Johnson alleges that in removing his name from the loan papers at the

13   close of escrow, defendant Bank deprived him of the opportunity to later rescind the loan. He further

14   alleges that despite the removal of his name from the loan documents, he was a party to the

15   loan and therefore, was entitled to receive notice of rescission. As discussed above, plaintiff

16   Gerald D. Johnson was removed from the loan papers prior to the execution of the final loan papers

17   which named his wife as the sole borrower. He was not a consumer under the definition in the acts.

18   Even assuming that he ought to have been provided with notice of rescission, he was aware of the

19   right to rescind since he actually rescinded the loan on behalf of his wife and later voided the

20   rescission several days later. Accordingly, plaintiff Gerald D. Johnson has no standing to assert he

21   was denied notice to rescind and this claim is also dismissed with prejudice. Plaintiffs have not

22   alleged that plaintiff Deborah E. Johnson was denied notice of rescission.

23   **II.    Fraud Claims**

24          Under California law, the elements of fraud are (1) misrepresentation (false representation,

25   concealment or nondisclosure); (2) knowledge of falsity ("scienter"); (3) intent to defraud, i.e., to

26   induce reliance; (4) justifiable reliance; and (5) resulting damage. *Barrier Specialty Roofing &*

27   *Coatings, Inc.,* 2008 WL 1994947 (E.D. Cal.). Under Rule 9(b), a party alleging fraud must state

28   with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "Malice,

1 intent, knowledge and other conditions of a person's mind may be alleged generally." *Id.*

2      In or about and between April 23, 2007 through June 18, 2007, plaintiffs allege that they

3 made repeated efforts to confirm with the bank the outstanding balance due on the loan. Plaintiffs

4 allege that defendant Bank repeatedly misrepresented to them the outstanding balance due on the loan

5 which hampered any efforts to refinance the loan and caused them to list the residence for sale in

6 July 2007. Additionally, plaintiffs allege that defendant Bank misrepresented the outstanding balance

7 due on the loan in various filings made in the bankruptcy court. These misrepresentations enabled

8 the bank to later foreclose on their residence. Finally, plaintiffs allege that they did not receive notice

9 of foreclosure and sale.

10      Plaintiffs have not shown that the amounts represented by defendant Bank were false or

11 otherwise fraudulent. *See, e.g., Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North*

12 *America, Inc.,* 2008 WL 1994947 (E.D. Cal.) ("The statement in question must be false to be

13 fraudulent."). Plaintiffs also have not shown that the alleged failure by defendant Bank to serve

14 notice of foreclosure and sale constituted fraud. Additionally, plaintiffs have not set forth the

15 requisite scienter or intent to defraud. In other words, plaintiffs have not alleged facts with the

16 particularity required under Rule 9(b). Accordingly, the fraud claims are dismissed with leave to

17 amend.

18 **III.   RICO Claims**

19      Plaintiffs have also alleged a RICO claim. 18 U.S.C. § 1964(c) provides a private cause of

20 action for RICO violations. *Virden v. Graphics One,* 623 F.Supp.1417, 1421 (C.D. Cal. 1986). To

21 allege a RICO claim, plaintiff must establish the following: (1) defendant participated in conduct: (2)

22 of an enterprise; (3) through a pattern; (4) of racketeering activity. *Id.* at 1430 (*citing Sedima,*

23 *S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275 (1985)). "[A] pattern of racketeering

24 activity 'requires at least two acts of racketeering activity.'" *Sedima, S.P.R.L. v. Imrex Company,*

25 *Inc.,* 473 U.S. at 496, fn. 14.

26      In the first amended complaint, plaintiffs allege that defendant Bank engaged in mail and wire

27 fraud. Presumably these would be the predicate acts to form the pattern of racketeering activity.

28 However, as discussed above, neither of these claims (nor any of the alleged fraud claims) have been

1   plead with the particularity required under Rule 9(b).  Even presuming that plaintiffs were able to

2   properly plead their fraud claims, it is unlikely that any set of facts in this case would meet the

3   threshhold for a RICO claim.  *See Bell Atlantic Corp. v. Twombly,* – U.S. –, 127 S. Ct. 1955, 1965,

4   1975 (2007).  ("[f]actual allegations must be enough to raise a right to relief above the speculative

5   level . . on the assumption that all the allegations in the complaint are true (even if doubtful in

6   fact).").  Nevertheless, plaintiffs are proceeding *pro se* and shall be allowed an opportunity to amend

7   their complaint in light of the liberal construction afforded to them in this circuit.  Accordingly,

8   defendant Bank's motion to dismiss this claim is granted with leave to amend.

9                                     **CONCLUSION**

10          For the foregoing reasons, defendant Bank's motion is granted in part and denied in part.

11   Except for the fraud and RICO claims, the remaining claims are dismissed with prejudice.  Plaintiffs

12   shall file their amended complaint no later than August 8, 2008.  The case management conference

13   scheduled for July 8, 2008 shall be continued to September 9, 2008 at 2 PM.

14

15          IT IS SO ORDERED.

16   Dated: *July 8, 2008*

17                                     _Patricia V. Trumbull_
                                       PATRICIA V. TRUMBULL
18                                     United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4

Form SFODM

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

| In re Debtor(s): | Case No.: 07–53614 MM 13 |
|---|---|
| Deborah Elizabeth Johnson | Chapter: 13 |

## ORDER RE DISMISSAL OF CASE FOR FAILURE TO COMPLY

1. Debtor failed to file, within 45 days after the date of filing of the petition, all of the following as required by section 521(a)(1) of the Bankruptcy Code:

* Statement of Current Monthly Income and means Test Calculation (Form B22)

2. Debtor failed to obtain an extension of time to file the foregoing under section 521(i)(3) of the Bankruptcy Code; and

3. The trustee has not requested that the case not be dismissed under section 521(i)(4) of the Bankruptcy Code.

Now, therefore, the court confirms that the above–entitled case was dismissed as a matter of law pursuant to section 521(i)(1) of the Bankruptcy Code.

Dated: 1/4/08

For the Court:

Gloria L. Franklin
Clerk of Court
United States Bankruptcy Court

**DebtEd, Salinas, DISMISSED, CLOSED**

# U.S. Bankruptcy Court
## Northern District of California (San Jose)
## Bankruptcy Petition #: 07-53614

*Assigned to:* Judge Marilyn Morgan
Chapter 13
Voluntary
Asset

*Date Filed:* 11/07/2007
*Date Terminated:* 02/21/2008
*Date Dismissed:* 01/04/2008

**Debtor**
**Deborah Elizabeth Johnson**
P.O. 4448
Carmel By The Sea, CA 93921-4448
SSN: xxx-xx-4449

represented by **Deborah Elizabeth Johnson**
PRO SE

**Trustee**
**Devin Derham-Burk**
P.O. Box 50013
San Jose, CA 95150-0013
(408) 354-8151

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 12/05/2007 | 10 | Request for Notice Filed by Creditor Recovery Management Systems Corporation. (Singh, Ramesh) (Entered: 12/05/2007) |
| 12/18/2007 | 11 | Objection to Confirmation of Plan *with Exhibits and Proof of Service* Filed by Creditor First Federal Bank of California (Terry, Wayne) (Entered: 12/18/2007) |
| 12/18/2007 | 12 | Objection to Confirmation of Plan *with Certificate of Service* Filed by Trustee Devin Derham-Burk (Derham-Burk, Devin (harbor)) (Entered: 12/18/2007) |
| 12/21/2007 | | Debtor (s) DID NOT Appear. Next Meeting of Creditors to be Held on 1/16/2008 at 1:45 PM at Salinas Quadrangle Suite 214. Section 341 Meeting of Creditors held on 12/19/2007. Tape Number: #26. |

| | | |
|---|---|---|
| | | Notes: 341 Continued to 1/16/08 @ 1:45pm; PHC. (Derham-Burk, Devin) (Entered: 12/21/2007) |
| 12/26/2007 | 13 | Amended Objection to Confirmation of Plan *with Certificate of Service* Filed by Trustee Devin Derham-Burk (Derham-Burk, Devin (harbor)) (Entered: 12/26/2007) |
| 01/03/2008 | 14 | Response to (RE: related document(s)11 Objection to Confirmation of the Plan). Filed by Debtor Deborah Elizabeth Johnson (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E) (jd, ) (Entered: 01/04/2008) |
| 01/04/2008 | 15 | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)5 Order to File Missing Documents). (jd, ) CORRECTIVE ENTRY: NOTICE NOT GENERATED, INCORRECT NOTICE SELECTED. Modified on 1/4/2008 (jd, ). (Entered: 01/04/2008) |
| 01/04/2008 | 16 | Order and Notice of Dismissal for Failure to Comply (RE: related document(s)5 Order to File Missing Documents). (jd, ) (Entered: 01/04/2008) |
| 01/06/2008 | 17 | BNC Certificate of Mailing (RE: related document(s)16 Order and Notice of Dismissal for Failure to Comply). Service Date 01/06/2008. (Admin.) (Entered: 01/06/2008) |
| 01/09/2008 | | Confirmation Hearing Continued re: Chapter 13 Plan. (Confirmation Hearing to be Held on 2/22/2008 10:00 AM at Salinas Quadrangle Suite 214) (er, ) (Entered: 01/11/2008) |
| 01/11/2008 | | Receipt of Conversion to Chapter 7 Filing Fee. Amount 25.00 from Gerald Johnson. Receipt Number 50066830. (lp) (Entered: 01/11/2008) |
| 01/11/2008 | 18 | Motion to Convert Case to Chapter 7 Fee Amount $25 Filed by Debtor Deborah Elizabeth Johnson (jd, ) (Entered: 01/14/2008) |
| 01/16/2008 | 19 | Motion for Relief from Stay ; *Memorandum of Points and Authorities and Declarations to Carol A. Baxter and Mark A. Bryant with Exhibits, and Proof of Service* RS #WRT-78, Fee Amount $150, Filed by Creditor First Federal Bank of California (Terry, Wayne) (Entered: 01/16/2008) |
| 01/16/2008 | | Receipt of filing fee for Motion for Relief From Stay(07-53614) [motion,mrlfsty] ( 150.00). Receipt number 5021127, amount $ 150.00 (U.S. Treasury) (Entered: 01/16/2008) |
| | | |

| 01/16/2008 | 20 | Notice of Hearing *with Proof of Service* (RE: related document(s)19 Motion for Relief from Stay *; Memorandum of Points and Authorities and Declarations to Carol A. Baxter and Mark A. Bryant with Exhibits, and Proof of Service* RS #WRT-78, Fee Amount $150, Filed by Creditor First Federal Bank of California (Terry, Wayne)). Hearing scheduled for 2/6/2008 at 02:30 PM at SanJose Courtroom 3070 - Morgan. Filed by Creditor First Federal Bank of California (Terry, Wayne) (Entered: 01/16/2008) |
|---|---|---|
| 01/16/2008 | 21 | Relief From Stay Cover Sheet (RE: related document(s)19 Motion for Relief From Stay, ). Filed by Creditor First Federal Bank of California (Terry, Wayne) (Entered: 01/16/2008) |
| 01/16/2008 | 22 | Order for Telephonic Hearing (RE: related document(s)19 Motion for Relief From Stay, ). Filed by Creditor First Federal Bank of California (Terry, Wayne) (Entered: 01/16/2008) |
| 01/29/2008 | 23 | Objection (RE: related document(s)19 Motion for Relief From Stay). Filed by Debtor Deborah Elizabeth Johnson (Attachments: # 1 Exhibit A part 1# 2 Exhibit A part 2# 3 Exhibit A part 3# 4 Exhibit B parat 1# 5 Exhibit B part 2# 6 Exhibit C part 1# 7 Exhibit C part 2# 8 Exhibit D# 9 Exhibit E# 10 Exhibit F# 11 Exhibit G) (jd, ) CORRECTIVE ENTRY: COURT MODIFIED FILE DATE. Modified on 2/1/2008 (ec, ). (Entered: 01/31/2008) |
| 02/06/2008 | | Courtroom Hearing Held (RE: Motion for Relief From Stay - related document(s) 19 ) (Off calendar. (order of dismissal 1/4/08))(mem, ) (Entered: 02/07/2008) |
| 02/13/2008 | 24 | Chapter 13 Trustee's Final Report and Account . (Derham-Burk, Devin (harbor)) (Entered: 02/13/2008) |
| 02/21/2008 | 25 | Final Decree. (ec, ) (Entered: 02/21/2008) |
| 02/21/2008 | | Bankruptcy Case Closed (ec, ) (Entered: 02/21/2008) |
| 02/23/2008 | 26 | BNC Certificate of Mailing - Electronic Order (RE: related document (s)25 Final Decree). Service Date 02/23/2008. (Admin.) (Entered: 02/23/2008) |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| |

| 08/25/2008 14:46:21 | | | |
|---|---|---|---|
| PACER Login: | hr0084 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 07-53614 Fil or Ent: filed From: 12/1/2007 To: 8/25/2008 Doc From: 0 Doc To: 99999999 Term: included Format: HTML |
| Billable Pages: | 2 | Cost: | 0.16 |